## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC. ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Docket No. _____** |
| v. ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| KENTUCKY FUEL CORPORATION, and ) | |
| JAMES C. JUSTICE COMPANIES, INC. ) | |
| **Defendants.** ) | |

### COMPLAINT

COMES the Plaintiff, New London Tobacco Market, Inc. ("NLTM"), by and through counsel, and for its Complaint against the Defendants states as follows:

### Parties, Jurisdiction and Venue

1. NLTM is a corporation chartered under the laws of Kentucky with its principal place of business in London, Kentucky. Its president is William G. Brownlow ("Mr. Brownlow").

2. James C. Justice Companies, Inc. ("Justice") is, upon information and belief, a corporation chartered under the laws of Delaware with its principal place of business in West Virginia.

3. Kentucky Fuel Corporation ("Kentucky Fuel") is, upon information and belief, a Delaware corporation with it principal place of business in West Virginia.

4. This Court has jurisdiction of this action because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

5. Venue is appropriate in this district and division pursuant to 28 U.S.C. § 1391 (a)

and (c) because the Defendant corporations reside in this district and division and because they are subject to personal jurisdiction in this district and division at the time this action is commenced.

## FACTUAL BACKGROUND

6. In October 2005, in a private foreclosure sale, NLTM acquired the membership interest in Deep Wood Mining, LLC ("Deep Wood"), and the common stock in Fivemile Energy Resources, Inc. ("Fivemile Energy Resources").

7. At the time of NLTM's acquisition of Deep Wood and Fivemile Energy Resources, Deep Wood owned certain leases of certain real property described on Exhibit 1 hereto (the "Deep Wood Leases") and had the right to mine coal on the property subject to the Deep Wood Leases pursuant to Surface Coal Mining and Reclamation Operations Permit no. 813-0264 issued to it by the Kentucky Department of Natural Resources (the "Deep Wood Permit"). At the same time, Fivemile Energy Resources owned certain leases of certain real property described in Exhibit 2 hereto (the "Original Fivemile Energy Resources Leases") and had applied for a Surface Coal Mining and Reclamation Operations Permit, which would give it the right to mine coal on the property subject to the Original Fivemile Energy Resources Leases. This application ultimately was approved, and on June 5, 2006 Permit no. 813-0269 (the "Fivemile Energy Resources Permit") was issued in the name of Fivemile Energy Resources.

8. In an "Assignment of Leases and Permits" dated as of October 5, 2005 (the "Original Assignment"), NLTM assigned the Deep Wood Leases and the Original Fivemile Energy Resources Leases, and the Deep Wood Permit and the Fivemile Energy Resources Permit application to Kentucky Fuels. A copy of the Original Assignment as amended through June 1, 2006 is attached hereto as Exhibit 3.

9. On or about October 31, 2005, NLTM and Kentucky Fuel entered into an amendment to the Original Assignment which changed the closing date to occur no later than November 30, 2005.

10. On November 23, 2005, Justice executed a Guaranty Agreement (the "Justice Guaranty"), pursuant to which it guaranteed the obligations of Kentucky Fuel to NLTM, as set forth therein. A copy of the Justice Guaranty Agreement is attached hereto as Exhibit 4.

11. Kentucky Fuel developed a pattern and practice of ignoring its obligation to maintain the Deep Wood and the Original Fivemile Energy Resources Leases and the Deep Wood Permit. These failures violated the implied covenant of good faith and fair dealing between Kentucky Fuel, Justice, and NLTM. For example, Kentucky Fuel failed to renew the Deep Wood Permit when it was to expire on August 14, 2008. Shortly before the Deep Wood Permit was scheduled to expire, NLTM learned that Kentucky Fuel had taken no steps with the Kentucky Department of Natural Resources to renew it. A failure to renew a mining permit can result in a substantial loss: the property covered by the permit cannot be mined, and obtaining a new permit takes a substantial amount of time and a substantial amount of money. To avoid such damage and loss, NLTM attempted on multiple occasions to contact Kentucky Fuel to remind it to renew the Deep Wood Permit. Kentucky Fuel, however, failed to return repeated telephone calls from NLTM. NLTM therefore took the necessary steps to renew the Deep Wood Permit. Had it not done so, the Deep Wood permit would have been terminated.

12. By 2010, Kentucky Fuel had not begun mining operations on the property subject to either the Deep Wood Leases or the Original Fivemile Energy Resources Leases or Permits. Further, in addition to learning that Kentucky Fuel had taken no steps to renew the Deep Wood

Permit, in 2010 NLTM also learned that Kentucky Fuel had not paid the Deep Wood and Fivemile Energy Resources lessors/property owners the Annual Minimum Royalties required by their leases in either 2009 or 2010. Kentucky Fuel also did not extend or sign new leases with any of the Deep Wood or the Fivemile Energy Resources lessors.  Instead, consistent with its lackadaisical attitude toward maintaining the leases, Kentucky Fuel allowed the Deep Wood and Original Fivemile Energy Resources Leases to expire without renewing them.  NLTM also learned that Kentucky Fuel had never taken any action to have the Deep Wood Permit or the Fivemile Energy Resources Permit (which had been issued in June 2006) transferred to its name.

       13.     On September 10, 2010, Kentucky Fuel was issued a Cessation Order by the Kentucky Department of Natural Resources for failure to properly reclaim their 2005 mining on certain property covered by the Strong Brothers Permit, which property had been leased by Kentucky Fuel (the "Strong Brothers Property"). Kentucky Fuel no longer had a lease on the property covered by the Strong Brothers Permit, and the Strong Brothers Property owner refused to lease to Kentucky Fuel because of its failure to either report production or pay royalties in 2005. Kentucky Fuel wanted to mine certain properties covered by the Strong Brothers Permit in conjunction with satisfying the Cessation Order. However, Kentucky Fuel no longer had a lease on the Strong Brothers Property.  It needed NLTM's assistance in obtaining such a lease because the property owner refused to deal with Kentucky Fuel due to its prior bad faith.  Kentucky Fuel and NLTM agreed that if NLTM or its agent, Fivemile Energy, LLC, could acquire such a lease and assign it to Kentucky Fuel, this would be to Kentucky Fuel's benefit.  Kentucky Fuel again confirmed it would also mine the properties covered by the Fivemile Energy Resources Permit.

14. Mr. Brownlow formed a new Tennessee limited liability company, Fivemile Energy, LLC, to act as agent for NLTM to acquire leases of the property covered by the Strong Brothers Permit. Fivemile Energy, LLC also leased from many of the prior lessors the real property covered by the Fivemile Energy Resources Permit and the Deep Wood Permit. In the Fourth Amendment discussed below Fivemile Energy, LLC conveyed those leases to Kentucky Fuel.

15. On or about November 22, 2010, NLTM, Kentucky Fuel, Justice, Deep Wood, Fivemile Energy Resources, and Fivemile Energy, LLC entered into an agreement styled "Fourth Amendment of Assignment of Leases and Permits" attached hereto as Exhibit 5 (the "Fourth Amendment").

16. In the Fourth Amendment, the parties agreed, among other things, to the following:

    a. Kentucky Fuel re-assigned to NLTM the Deep Wood Leases and Deep Wood Permit.

    b. Fivemile Energy, LLC assigned to Kentucky Fuel the leases that it had acquired, and which were described in Exhibit C to the Fourth Amendment (the "New Fivemile Energy Leases"). The New Fivemile Energy Leases involve some but not all of the properties that had been previously leased pursuant to the Deep Wood Leases and the Original Fivemile Energy Resources Leases, but which had expired as set forth above.

    c. In Section 10 of the Fourth Amendment, Kentucky Fuel covenanted "to use commercial and reasonable good faith and best efforts to maximize within the constraints of industry standard the amount of coal extracted from these real properties."

    d. Kentucky Fuel agreed to pay certain royalties to NLTM as set forth in Section 5 of the Fourth Amendment. These royalties included royalties per ton of coal mined from

the Original Fivemile Energy Resources Leases and the New Fivemile Energy Leases, in the amount of at least $2.00 per ton on the first 250,000 tons of coal mined from these leases, and $1.00 per ton after the first 250,000 tons of coal mined on these leases.

e. In addition, Kentucky Fuel agreed to pay NLTM a non-recoupable minimum royalty of $10,000 per month beginning on December 1, 2010, and continuing for 10 months; a single non-recoupable minimum royalty of $15,000 on November 1, 2011, and an annual minimum royalty of $75,000 beginning on December 1, 2011 (the "Minimum Royalties").

f. Further, in paragraph 9 of the Fourth Amendment Kentucky Fuel agreed to pay NLTM a "monthly retainer fee in the amount of $10,000" beginning on December 1, 2010 (the "Monthly Retainer Fee"). Each payment made on the first of the month was "paid in arrears," *i.e.*, each payment was for the preceding calendar month that had just ended.

g. In Section 19 of the Fourth Amendment Justice reaffirmed its obligations under the Justice Guaranty and confirmed that such obligations include the obligations of Kentucky Fuel in the Fourth Amendment as well as the obligations pursuant to the original Justice Guaranty.

17. When Kentucky Fuel entered into the Fourth Amendment, it did not intend to perform it in good faith. Prior to the execution of the Fourth Amendment Kentucky Fuel had not made good faith efforts to mine the properties discussed herein. From and after the execution of the Fourth Amendment, Kentucky Fuel continued its bad faith non-performance. It has not performed the Fourth Amendment in good faith, has not taken steps necessary to perform in good faith, and has breached its covenant of good faith and fair dealing.

18. Kentucky Fuel's continued bad faith as described above includes, and is evidenced by, among other things, the following:

   a. In the Fourth Amendment, Kentucky Fuel agreed to pay NLTM Minimum Royalties of $10,000 per month and Monthly Retainer Fees of $10,000 per month, beginning on December 1, 2010.  However, Kentucky Fuel's did not pay NCTM any of the required payments for the first four months after the execution of the Fourth Amendment.  Kentucky Fuel delayed paying these Minimum Royalties or Monthly Retainer Fees until May 20, 2011.

   b. On May 20, 2011, Kentucky Fuel paid NLTM the sum of $100,000, which was the total of the Monthly Retainer Fees ($50,000) and of the Minimum Royalties ($50,000) due as of April 1, 2011.

   c. After May 2011, Kentucky Fuel did not pay any more Monthly Retainer Fees or Minimum Royalties.  Other than the $50,000 paid in May 2011, described immediately above, Kentucky Fuel has failed and refused to pay the Minimum Royalties required by Section 5(f) of the Fourth Amendment.  As of the date this Complaint is being filed, the unpaid Minimum Royalties due and owing to NLTM are $150,000.00. Such Minimum Royalties continue to accrue as provide in the Fourth Amendment, with a Minimum Royalty of $75,000 being payable on December 1, 2012, and annually thereafter.

   d. Other than the $50,000 paid in May 2011, as described above, Kentucky Fuel also has failed and refused to pay the Monthly Retainer Fees as required by Section 9 of the Fourth Amendment.  As of the date this Complaint is being filed, the unpaid Monthly Retainer Fees are $130,000, consisting of the $10,000 per month from May 1, 2011, through May 1, 2012.  Such Monthly Retainer Fees continue to accrue at the rate of $10,000 per month.

   e.  Kentucky Fuel and Justice are knowledgeable and experienced coal miners. In order to mine the Fivemile property, certain government permits are required. One permit

required is the State of Kentucky Mining Permit, which NLTM assigned to Kentucky Fuel. Another required permit is an Army Corp of Engineers 404 permit. A 404 permit allows for the placement of overburden or spoil into nearby valleys. It takes many months to obtain approval for a 404 permit. The optimal amount of coal cannot be extracted without a 404 permit. Commercially reasonable mining practices require a miner to apply for and obtain a 404 permit in order to be prepared to mine. Kentucky Fuel has advised Plaintiff that it has made no effort to apply for a 404 permit on the Fivemile property. This failure by Kentucky Fuel to complete the necessary steps to obtain the necessary regulatory approval needed to start mining is further indication of its bad faith.

   f.  The property owners of the property in the Fivemile permit area entered into leases, the terms of which included a minimum annual royalty and a production royalty. The leases were for a five year term and most were entered into in 2002 and 2003. The leases typically contained provisions that once mining began the lease would extend for the duration of the mining. In 2008 Kentucky Fuel could have extended the leases by either starting mining or executing new leases. At a minimum (and arguably) the lease could have been extended by making the annual minimum royalty payment. In 2009 and 2010, Kentucky Fuel did not start mining, did not sign new leases and did not make the minimum annual royalty payments.

   g.  Fivemile Energy assigned the New Fivemile Leases to Kentucky Fuel in November 2011. As of the date of this filing, Kentucky Fuel still is not making the required annual minimum royalty payments on those leases when due.

   h.  Notwithstanding its covenant to mine as set forth in Section 10 of the Fourth Amendment, Kentucky Fuel has not attempted to mine any of the coal subject to the Original Fivemile Energy Resources Leases or the New Fivemile Energy Leases or the Fivemile Energy

Resources Permit. It has not used commercial and reasonable good faith nor its best efforts to maximize the amount of coal extracted from those properties.

## COUNT I
### (Breach of Contract – Minimum Royalties and Monthly Retainer Fees)

19. NLTM reaffirms and realleges the allegations of the above paragraphs as set forth fully herein.

20. Kentucky Fuel's failure to pay the required minimum royalty payments to NLTM is a breach of contract that has caused damages to NLTM in the amount of $150,000.00 as of the filing of this Complaint.

21. Kentucky Fuel's failure to pay the Monthly Retainer Fee payments is a breach of contract that has caused damages to NLTM in the amount of $130,000 as of the filing of this Complaint.

22. Justice has failed to pay the Monthly Retainer Fee payments as required by Section 9 of the Fourth Amendment. Pursuant to its guaranty, Justice presently is liable to NLTM in the amount of $280,000 for the unpaid Minimum Royalty Payments and the Monthly Retainer Fees, and is further obligated to pay all such future fees that accrue from and after the filing of this Complaint.

23. Kentucky Fuel's failure to pay the Minimum Royalty Payments and the Monthly Retainer Fee is a default under Section 7 of the Fourth Amendment. NLTM has incurred and will continue to incur fees and expenses in enforcing the terms of the Fourth Amendment. At the present time, those fees and expenses exceed the sum of $15,000.00. NLTM is entitled to recover such fees and expenses from Kentucky Fuel and Justice, pursuant to the terms of the Fourth Amendment and the Justice Guaranty.

## COUNT II
### (Breach of Contract – Payments Per Ton of Coal to be Mined)

24. NLTM reaffirms and realleges the allegations of the above paragraphs as set forth fully herein.

25. Kentucky Fuel has breached the Fourth Amendment as described therein. Pursuant to Section 7 of the Fourth Amendment, NLTM selected and retained an independent arbiter for the purpose of determining the amount of royalties that would have been paid by Kentucky Fuel to it under the terms of the Fourth Amendment. A copy of the independent arbiter's report is attached hereto as Exhibit 6. The independent arbiter has determined that the lost royalties that would have been paid by Kentucky Fuel, but for its default are $16,990,000.00. This amount is based on a royalty rate of $2.00 per ton for the first 250,000 tons of coal mined and $1.00 per ton for coal mined over 250,000 tons. If Kentucky Fuel had not breached its contract as described above, and had mined the coal, then it would have been obligated to pay NLTM 2% of the average monthly selling price per ton of coal mined if that amount was greater than $1.00 per ton. NLTM reserves the right to amend this Complaint to claim this loss.

26. As a direct and proximate result of this breach, NLTM has been damaged in the amount of at least $16,990,000.00. Pursuant to Section 7 of the Fourth Amendment this amount is immediately due and payable by Kentucky Fuel.

27. Pursuant to the Justice Guaranty, Justice is indebted to NLTM in the amount of at least $16,990,000.00.

**COUNT III**
**(Breach of Contract – Failure to Mine Property Covered by**
**the Deep Wood Leases and Permit)**

28.   As described above, Kentucky Fuel breached its implied contract of good faith and fair dealing with NLTM by failing to maintain the Deep Wood Leases and to mine the property covered by those Leases.

29.   NLTM's contract with Kentucky Fuel had required Kentucky Fuel to pay it a royalty of $2.00 per ton on the first 250,000 tons of coal mined on the Deep Wood Properties, and $1.00 per ton on all tons of coal mined thereafter.  There are an estimated 8,113,136 tons of recoverable coal on the Deep Wood Property.  The royalties payable to NLTM therefore would have been $8,363,000.00, had Kentucky Fuel not breached its contract as described herein.  NLTM was damaged in that amount at a direct and proximate result of Kentucky Fuel's breach.

30.   To mitigate its damages resulting from Kentucky Fuel's failure to mine and maintain the Deep Woods Property and Leases, NLTM agreed to accept a re-conveyance of the Deep Wood Leases and Permit in the Fourth Amendment as described above, so that it could enter into a transaction with a third party regarding the Deep Woods Property.

31.   To further mitigate its damages caused by Kentucky Fuel's breach, in December 2011, NLTM entered into an agreement with Revelation Energy, LLC ("Revelation Energy"), pursuant to which it assigned to Revelation Energy the Deep Wood Leases and Permits. Revelation Energy had previously acquired the mineral leases for the Deep Wood Property, but could not mine that property until it acquired the Deep Wood Leases and Permit from NLTM.

32.   NLTM's contract with Revelation Energy requires Revelation Energy to pay it $0.25 per ton on all tons of coal mined from the Deep Wood Properties.  If Revelation Energy mines the

recoverable coal on the property subject to the Deep Wood Leases and Permit, and pays the royalties to NLTM then it will reduce the amount of damages caused by Kentucky Fuels' breach by the amount of royalties paid by Revelation Energy. Based upon the amount of recoverable coal on the Deep Wood Properties, it is estimated that the total amount of future royalties payable by Revelation Energy will be $2,028,284.00. The present value of these future royalties is no more than $1.5 million.

33. After crediting Kentucky Fuel for the amount of royalties expected to be paid pursuant to NLTM's contract with Revelation Energy, NLTM's damages caused by Kentucky Fuel's breach of contract with respect to the Deep Wood Properties still would be at least $6,863,000.00.

34. Pursuant to the Justice Guaranty, Justice is indebted to NLTM in the amount of at least $6,863,000.00

WHEREFORE, New London Tobacco Market, Inc. prays that the Court take jurisdiction of this action, impanel a jury of twelve to try this case, and for the following relief:

(1) Judgment against Kentucky Fuel Corporation and James C. Justice Companies, Inc. for compensatory damages as follows:

    a. Compensatory damages in the amount of $150,000.00, or such other amount as may be due as of the time of trial for the minimum royalty payments, judgment for $130,000.00, or such other amount as may be due as of the time of the trial for the monthly retainer fees, and judgment for the amount of fees and expenses incurred by NLTM in connection with the enforcement of the terms of the Fourth Amendment, all pursuant to Count I, hereof;

    b. Compensatory damages in the amount of at least $16,990,000.00, pursuant to

Count II hereof;

   c. Compensatory damages in the amount of $6,863,000.00, or such other amount that the evidence may show is due and owing, pursuant to Count III hereof;

 (2) A declaration that Kentucky Fuel Corporation and James C. Justice Companies are liable for Minimum Royalties and Monthly Retainer Fees each month;

 (3) Such other and further relief as may be necessary and proper; and

 (4) A trial by jury on all claims.

      */s/ Scott M. Webster*
      Scott M. Webster
      **Jensen, Cessna, Benge & Webster**
      303 South Main Street
      London, Kentucky 40741
      (606)878-8845 - Telephone
      (606)878-8815 - Facsimile
      *scottwebster@windstream.net*

      John A. Lucas (TN Bar No. 011198)
      (*pro hac vice* application to be submitted)
      **MERCHANT & GOULD, P.C.**
      110 Tyson Blvd., Suite 203
      Alcoa, Tennessee 37701
      (865) 380-5960 - Telephone
      (865) 380-5999 - Facsimile
      *jlucas@merchantgould.com*
      **Counsel for Plaintiff**