# EXHIBIT 3

This Instrument Prepared By
R. Culver Schmid
Long, Ragsdale & Waters, P.C.
1111 Northshore Dr., Suite S-700
Knoxville, Tennessee 37919

## ASSIGNMENT OF LEASES AND PERMITS

THIS AGREEMENT is dated as of October 5, 2005, among NEW LONDON TOBACCO MARKET, INC. (referred to hereinafter as "NLTM" and "Seller"), and KENTUCKY FUEL CORPORATION, a Delaware corporation ("Kentucky Fuel").

1. <u>Recitals</u>.    NTLM is the agent for certain secured parties (the "Secured Parties") which made loans to Deep Wood Mining, LLC, a Kentucky limited liability company ("Deep Wood"). Deep Wood leased various properties pursuant to separate written lease agreements, a summary of such lease terms more particularly described in **Exhibit A** and outlined on the map attached hereto as **Exhibit B** (the leases and Deep Wood's rights therein are referred collectively hereinafter as the "Deep Wood Leases"). Deep Wood has the authority to mine the properties described in the Deep Wood Leases pursuant to Surface Coal Mining and Reclamation Operations Permit Number 13-0264 (the "Deep Wood Permit").

NLTM is the agent for certain secured parties (such secured parties, together with the Secured Parties, are referred to collectively hereinafter as the "Secured Parties") which made loans to Fivemile Energy Resources, Inc., a Kentucky corporation ("Fivemile"). Fivemile leased various properties pursuant to separate written lease agreements, a summary of such lease terms more particularly described in **Exhibit C** and outlined on the map attached hereto as **Exhibit D** (the leases and Fivemile's rights therein are referred collectively hereinafter as the "Fivemile Leases"). Fivemile has the authority to mine the property described in the leases pursuant to Surface Coal Mining and Reclamation Operations Permit which has been applied for by Fivemile (the "Fivemile Permit").

The Deep Wood Leases and the Fivemile Leases are referred to collectively hereinafter as the "Leases". The Deep Wood Permit and the Fivemile Permit are referred to collectively hereinafter as the "Permits".

The Seller wishes to assign to Kentucky Fuel the Deep Wood Leases, the Fivemile Leases, the Deep Wood Permit and the Fivemile Permit in accordance with the terms of this Agreement.



New London Tobacco Market\Bluestone\
Assignment of Leases and Permits Final
9369-001

1

At the time of Closing, Seller, on behalf of the Secured Parties, intends to hold all ownership interests in Deep Wood and Fivemile.

2.  <u>Assignment of Leases</u>.  For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller agrees at Closing (as hereinafter defined) to transfer, assign and convey to Kentucky Fuel all of Seller's or Deep Wood's and Fivemile's respective rights, title and interests in and to the Deep Wood Leases and the Fivemile Leases (including but not limited to the lease from the May family as lessor).

3.  <u>Assignment of Permits</u>.  For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller agrees at Closing (as hereinafter defined) to transfer, assign and convey to Kentucky Fuel all of Seller's or Deep Wood's and Fivemile's respective rights, title and interests in and to the Deep Wood Permit and the Fivemile Permit.  The foregoing assignments are subject to all applicable laws, rules and regulations imposed by the Commonwealth of Kentucky.

4.  <u>Acceptance</u>.  Kentucky Fuel for itself and its successors and assigns accepts the assignment of the Leases and Permits and expressly assumes only those obligations and liabilities of Deep Wood and Fivemile under the Leases and Permits (including payment of all rents owed by lessees under the Leases) arising, accruing or incurred from and after the date hereof except as expressly set forth herein described therein.

5.  <u>Purchase Price</u>.  The purchase price (the "Purchase Price") to be paid to the Seller is payable as follows: (a) payment to NLTM on behalf of the Secured Parties in the amount of $100,000 payable in cash at closing; (b) payment to NLTM on behalf of the Secured Parties of $100,000 in cash payable 30 days from the closing date; (c) installments in the amount of $2.00 per ton for the first 250,000 tons of Coal Tonnage (as hereinafter defined) mined under the Deep Woods Leases to be paid to NLTM on behalf of the Secured Parties by the tenth day of each month until all coal which is deemed part of the Coal Tonnage for the Deep Wood Leases has been mined; (d) installments in the amount of $2.00 per ton for the first 250,000 tons of Coal Tonnage (as hereinafter defined) mined under the Fivemile Leases to be paid to NLTM on behalf of the Secured Parties by the tenth day of each month until all coal which is deemed part of the Coal Tonnage for the Fivemile Leases has been mined; (e) installments in the amount of $1.00 per ton of Coal Tonnage mined after the first 250,000 tons of Coal Tonnage mined under the Deep Wood Leases; and (f) installments in the amount of $1.00 per ton of Coal Tonnage mined after the first 250,000 tons of Coal Tonnage mined under the Fivemile Leases.

For the purposes of this Agreement, "Coal Tonnage" shall mean all coal mined and sold by Kentucky Fuel or its successors and assigns from the properties described in the Deep Wood Leases or the Fivemile Leases (as

applicable).including but not limited to any real property subsequently leased by Bluestone or its successors and assigns which is an extension, from the properties described in the Deep Wood Leases or the Fivemile Leases.

NLTM shall accept all payments on behalf of the owners of the Secured Parties for distribution in accordance with separate agreement entered into between NLTM and the Secured Parties.

6. <u>Assignment of Royalty Credits</u>.    Seller assigns to Kentucky Fuel all rights to credits owed by lessors under the Leases for royalty fees previously paid by the Secured Parties under the terms of the Leases.

7. <u>Closing</u>. The closing ("Closing") of the sale described herein by Seller to Kentucky Fuel shall occur at a location designated by Seller and on a date agreed upon by Seller and Kentucky Fuel but no earlier than October 12 or later than October 31, 2005. At Closing the Seller shall deliver or cause to be delivered to Kentucky Fuel the Leases and Permits. Kentucky Fuel shall deliver or cause to be delivered to Seller at Closing the Purchase Price.

8. <u>Seller' Representations and Warranties</u>.    The Seller sells the Leases and Permits "AS IS" without any representations, covenants or warranties except as explicitly stated in this Agreement. Kentucky Fuel agrees that it has had the opportunity to review the Leases and Permits and accepts the assignment of such assets "AS IS" subject to all the terms described therein. Kentucky Fuel understands and accepts that the Fivemile Permit has not yet been issued but has been applied for and is in the process of being issued by the Commonwealth of Kentucky.

9. <u>Events of Default</u>.    If the Kentucky Fuel fails to perform under the terms of this Agreement, the Seller may exercise any and all rights and remedies available to Seller at law or in equity by reason of such default, including, but not limited to, the recovery of all fees and expenses incurred by the Seller and specific enforcement of the obligations of Kentucky Fuel described herein.

10. <u>Audit</u>. Seller may cause, at any reasonable time upon written notice to Kentucky Fuel, a complete audit to be made of Kentucky Fuel's coal mining operations relating to the Coal Tonnage for a period covered by the terms of this Agreement. Kentucky Fuel shall make available all books, records, and similar documents necessary to complete such audit. If such audit shall disclose Kentucky Fuel has failed to pay the Purchase Price required by the terms of this Agreement for the Coal Tonnage, Kentucky Fuel shall make immediate payment of such amounts and interest accrued from the date when such payment was due at the maximum rate of interest permitted by law and pay the costs of such audit.

11. <u>Indemnity</u>. Kentucky Fuel, now and at any time hereafter, shall indemnify the Seller (and the Secured Parties as the owner of Deep Wood or Fivemile) and their

officers, representatives, agents, attorneys, employees, predecessors, successors and assigns from and against any and all claims, liabilities, demands, actions or causes of actions asserted against them directly or indirectly as a result of this Agreement or the Leases and Permits.

12. <u>Exculpation</u>.  Neither the Seller, the Secured Parties nor any of their stockholders, directors, employees, agents or representatives shall have any personal liability under the terms of this agreement except as expressly set forth herein and as expressly set forth in that certain letter dated September 30, 2005 and included herein as Exhibit E.

13. <u>Only Written Agreements and Amendments</u>.  Neither Bluestone nor Seller shall be bound by any agreement on individual issues until (a) agreement is reached on all issues and (b) such agreement on all issues has been reduced to a written agreement signed by all parties.  Furthermore, in order to avoid any confusion or misunderstanding, the Seller and Kentucky Fuel also agree that this Agreement may only be amended in writing.

14. <u>Authorized Representatives</u>.  Each party shall provide reasonable evidence that the parties are duly authorized to execute this Agreement on behalf of Purchaser and Seller.

15. <u>Further Assurances</u>.  The Seller and Kentucky Fuel hereby covenant and agree to execute and deliver or cause to be executed and delivered, and to do or make or cause to be done or made, upon the reasonable request of either party, any and all instruments, papers, deeds, acts or things, supplemental, confirmatory or otherwise, as may be reasonably required to effect the terms of this Agreement.

16. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement concerning the subject matter and supersedes any prior or contemporaneous representations or agreements not contained herein concerning the subject matter of this Agreement.

17. <u>Costs</u>.  If any lawsuit, arbitration or other action is commenced or taken which arises out of or relates to this Agreement, the prevailing party shall be entitled to recover from the defaulting party all costs, fees and expenses, including all attorney fees and expenses, in connection therewith.

18. <u>Applicable Law</u>.  This Agreement shall be governed by the laws of the Commonwealth of Kentucky.

19. <u>Notices</u>.  All notices hereunder to either party hereto shall be delivered in writing by certified mail, postage prepaid, or delivered by telecopier, subsequently confirmed by certified mail, addressed to the party for whom intended at the address specified below.  Any party shall have the right to change its address for notice by giving notice hereunder, and shall also have the right by giving notice

hereunder to require that copies of any notice be given to not more than two additional persons or addresses. Any notice sent by certified mail shall be deemed given on the date of receipt as shown on the return receipt and any notice given by telecopier shall be deemed given on the date of receipt as evidenced by confirmations of such telecopy; provided, however, that if any party shall refuse to accept delivery of any notice, such notice shall be deemed given when tendered for delivery. Such notices shall be addressed,

(a)    if to the Seller:

New London Tobacco Market, Inc.
c/o William G. Brownlow, IV
P.O. Box 340
London, Kentucky 40743-0340
Telephone: (606) 878-9000
Telecopier: (606) 864-6195

(b)    if to Kentucky Fuel:

James C. Justice III, Executive Vice President
P.O. Box 1085 (Zip Code 25802-1085)
818 N. Eisenhower Drive
Beckley, West Virginia 25801
Telecopier: (304) 255-6106
Telephone: (304) 252-8528

20. Counterparts. This Agreement may be signed in any number of counterparts with the same effect as if the signatures hereto and thereto were upon the same instrument.

21. Assignment. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns; provided, however, Kentucky Fuel shall have no right to assign its obligations hereunder without the prior written consent of the Seller, such consent to be provided Seller in their sole discretion. Seller may assign their rights and obligations hereunder upon providing written notice to Kentucky Fuel.

22. Collateral Security. In order to secure the payment of the Purchase Price, and all other obligations of Kentucky Fuel described herein and in any other documents entered into in connection with the transactions described herein, Kentucky Fuel hereby transfers, grants, bargains, sells, confirms and conveys unto NLTM, and its successors and assigns, a first lien and security interest on and in the following assets:

(a)    Kentucky Fuel's interest in the Deep Wood Leases and the Fivemile Leases;

(b)   Kentucky Fuel's interest in the Deep Wood Permit and the Fivemile Permit.

NLTM shall have and hold the foregoing, with all rights, privileges and appurtenances thereto, for its own proper use and benefit; provided, however, that if Kentucky Fuel shall properly pay or caused to be paid to NLTM on behalf of the Secured Parties the portion of the Purchase Price owed hereunder in accordance with the terms herein, then the interests and rights granted, conveyed and assigned herein shall cease and be void, but shall otherwise remain in full force and effect. NLTM on behalf of the Secured Parties shall have all rights available to a first lienholder, mortgagee or secured party granted under the applicable laws. Kentucky Fuel shall at the request of Seller execute all documents necessary to confirm and perfect such rights including but not limited to security agreements, mortgages, deeds of trust, financing statements and other documents required by applicable law. NLTM, on behalf of the Secured Parties, shall have the right to file with the appropriate governmental authorities all documents necessary to confirm and perfect such liens and security interests.

24. <u>Termination</u>.   In the event Seller, and the Secured Parties it represents, are unable to take legal ownership of all the ownership interests of Deep Wood and Fivemile by the time of the Closing, Seller may terminate this Agreement and its obligations hereunder upon providing written notice to Purchaser.

25. <u>Guaranty</u>.     Bluestone Industries, Inc., a Delaware corporation, is the owner of all the capital stock of Kentucky Fuel and unconditionally and absolutely guarantees the payment and performance of the obligations of Kentucky Fuel described herein. Bluestone shall provide to Seller prior to Closing financial statements or other reasonable evidence of its ability to perform its guaranty obligation.

IN WITNESS WHEREOF, the parties hereto have executed, or caused their authorized representatives to execute their name, all as of the date and year written above.

NEW LONDON TOBACCO MARKET, INC.

By: _William G. Brownlow_
Name: WILLIAM G. BROWNLOW
Title: PRESIDENT


KENTUCKY FUEL CORPORATION

By: _Tom Lusk_
Name: TOM LUSK
Title: C.O.O.

STATE OF _Tennessee_
COUNTY OF _Knox_

    Before me, the undersigned Notary, of the state and county aforementioned, personally appeared William G. Brownlow, IV, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be President of **NEW LONDON TOBACCO MARKET, INC.**, the within named bargainor, and that he as such officer, executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself as such officer.

    WITNESS my hand and seal this _5th_ day of _October_, 2005.

                       _Jamie L. Armstrong_
                       Notary Public

My commission expires: _____

    My Commission Expires July 13, 2009

*(Notary seal: JAMIE L. ARMSTRONG — STATE OF TENNESSEE NOTARY PUBLIC — KNOX COUNTY, TN)*

STATE OF _WV_
COUNTY OF _Raleigh_

    Before me, the undersigned Notary, of the state and county aforementioned, personally appeared _Tom D. Lusk_, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself/herself to be _C. O. O._ of **KENTUCKY FUEL CORPORATION** the within named bargainor, a Delaware corporation, and that he/she as such officer, executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself/herself as such officer.

    WITNESS my hand and seal this _5th_ day of _October_, 2005.

                       Notary Public

My commission expires: _6-1-2015_

*(Notary seal: OFFICIAL SEAL NOTARY PUBLIC STATE OF WEST VIRGINIA JAMES T. MILLER 104 MUNSON DRIVE BECKLEY, WV 25801 My commission expires June 1, 2015)*

# EXHIBIT A

Deep Wood Leases

EXHIBIT

A



# Deep Wood Mining, LLC

Lease Schedule Summary for Stray Branch/Cane Creek Permit #813-0264

| Lessor name | Address | App roxi mat eAcr es | Fee or WG | Royalty and Anniversary date | Te rm | Wheela ge | phone |
|---|---|---|---|---|---|---|---|
| Zeta Keith | 3700 Hampton Place Middletown, Ohio 45042 | 262 | WG | June 4, 2001 $1000 paid 5 yrs Total $5000 PD $.50 per ton | 5+ | | 513-422-4023 |
| Fred Russell | 7432 Islander Ln. Hudson, Fl. 34667 | 100 on two tract s | FEE | August 9, 2001 $5000 PD $2.00 per ton $1000 per year | 5+ | $.15 per ton | 727-869-5039 cell 267-0792 |
| Glenn Neace** ****** *sold to Frankie Robinson in 03 | 185 Hoss Cat Lane Hazard, Ky 41701-7350 16 Lonnie Ln. Jackson, Ky 41339 | 110 | WG | June 26, 2001 $5000 PD $.50 per ton $1000 yr *********** Frankie deceased 05 | 5+ | | 606-439-4987 666-9716 |
| James Herald | 1147 Curt Rd Jackson, Ky 41339 | 68 | FEE | July 8, 2001 $5000 PD $2.00 per ton $1000 per year | 5+ | | 606-295-2610 |
| Charles R. Keith | 1050 Stray Branch Rd Jackson, Ky 41339 | 50 | WG | August 18, 2001 $5000 PD $.50 per ton $1000 yr | 5+ | | 606-666-5141 |
| Charles Moore | 2114 Stray Branch Rd Jackson, Ky 41339 | 55 | WG | June 26, 2002 $550 per year $.50 per ton $2750 pd | 5+ | | 606-666-8711 |
| Ernest Shouse | 809 Curt Rd Jackson, Ky | 300+ | FEE | July 27, 2001 $2500 per year | 5+ | $.15 per ton | 606-295- |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 41339 | | | $2.00 per ton $12,500 pd | | | 3168 |
| Ida Spicer (Reed) | 667 Curt Road, **PO Box 366,** Jackson, Ky 41339 | 169 | FEE | July 7, 2001 $1500 per year $2.00 per ton $7500 pd | 5+ | | 606-295-3181 |
| Ervin Napier | 1261 Curt Rd Jackson, Ky 41339 | 160 | FEE | July 8, 2001 $2500 per year $2.35 per ton $12,500 pd | 5+ | | 606-295-5824 |
| ******* Tim Gross and Earl Gross | 341Bethlehem Rd Jackson, Ky 41339 | 56 | WG | June 15, 2001 $1000 per year (500 each) $.50 per ton $5000 pd 3 yr extension given 8/9/05 | 5+ | | 606-666-2926 606-666-5954 |
| Jesse Banfield | 2230 Stray Branch Rd PO Box 883 Jackson, Ky 41339 | 235 | WG | May 19, 2001 $1000 per year $.50 per ton $5000 pd | 5+ | | 606-666-7428 |
| Gary Herald | 2277 Hwy 1110 Jackson, Ky 41339 | 47 | FEE | June 15, 2001 $1000 per year $2.00 per ton $5000 pd | 5+ | $.25 per ton | 606-666-9037 |
| Earnest Howard et al | 5105 Ormanton Drive Ghanna, Ohio 43230-6000 | 81 | WG | June 23, 2001 $1000 per year $.50 per ton $5000 pd-mining must begin yr 3 or no recoupables | 5+ | $.25 per ton | 614-794-3216 |
| Verlin Howard et al | 3137 North Street—Rt 123 Lebanon, Ohio 45036 | 208 | WG | June 23, 2001 $2000 per year $.50 per ton $10,000 pd-mining must begin yr 3 or no recoupable | 5+ | $.25 per ton | 937-746-9595 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Walker Robinson | 95 Fire Trail Rd Jackson, Ky 41339 | 75 | WG | May 30, 2001 $1000 per year $.50 per ton $2000 pd (he did not receive 04 payment) | 5+ | | 606-666-5338 |
| Rose Mary Gross | 739 Stray Branch Rd—PO BOX 549 Jackson, Ky 41339 | 110 | WG | July 5, 2001 $1000 per year $.50 per ton $5000 pd 3 yr extension given 9/05 | 5+ | | 606-666-7951 |
| Amos Richardson | 735 Markham Fork Rd Jackson, Ky 41339 | 137 | WG | May 26, 2001 $1000 per year (PAID 3 Years) $.50 per ton $3000 pd (cancelled) may renew if mining starts) | 3+ | $.15 per ton includes both tracts | 606-295-5471 |
| Amos Richardson and Mary Bailey | same | 50 | WG | July 14, 2001 $833.33 per year *****PD 5 yrs $4166.65 | 5+ | | 606-295-7145 |
| Cora Smith-sold to Doug Terry 3/05 | P O Box 134 Mount Orab, Ohio 45154 | 70 (two tracts) | FEE | June 20, 2001 $1000 per year $2.00 Fee $5000 pd | 5+ | | 937-444-3076 |
| Clarence Hall | 1812 Stray Branch Rd Jackson, Ky 41339 | 142 | WG | May12, 2001 $1000 per year $.50 per ton $5000 pd | 5+ | | 606-666-5654 |
| Eddie Reynolds | 94 Reynolds Drive Jackson, Ky 41339 | 75 | FEE | January 2002 $1000 per year $2.00 per ton $4000 pd | 5+ | $.15 per ton wheelage Must build | 606-295-7148 |

Bridge

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Hobert Fletcher ▪▪▪▪▪▪▪▪ | 10165 Gratis-Jacksonburg Rd. Summerville, Ohio 45064 | 125 | Coal Harbor Hollow —— may be WG —— | Nov 2002 $2500 per year $7500 advance paid for three years royalty $2.50 Fee Surface $1.00 per ton Due 11-30-05 Williams Branch Fee | 3+ | $.25 per ton | 937-787-4326 |
| Simon Turner | 409 Canterbury Circle Canton, Michigan 48187-3801 | 125 | WG | $750 Year $.50 per ton July 12, 2002 $4000 pd | 4+ | | 734-844-0049 |
| Diamond May Coal Company Stephen Dicks | 1876 Yellow Creek Rd Sassafras, Ky 41759 | 350 | WG owns coal | 3/11/05 $10,000 per year $.50 ton or 2% whichever is greater for surface use above 1120 (5a) | 3 years plus | $.10 per ton or (0.5%) | 606-435-7004 |
| Howard Spicer | 10116 Crescent Drive Florence, Ky 41042 | 38 | FEE | March 27, 2002 $2.25 per ton $700 per year $2800 pd | 4+ | | 859-371-5886 |
| WG Coal Sales | Box 89 Hazard, Ky 41701 | 1700 | Mineral Owner | July 21, 2001 $20,000 per year $2.00 per ton or eight percent $100,000 pd | 5+ | | 606-633-4486 |
| Luther Herald, et al | Box 499 Jackson, Ky. 41339 | 30 | Fee | July 1, 2003 $500 yr $2.35 ton $1800 pd to Rocky/Luther (ownership may be disputed) | 5+ | | 606-693-0846 |

TOTAL SURFACE
ACRES=3200 as of 7/14/05
TOTAL RECOUPABLE ROYALTIES > 256,583 as of 9/5/05

# EXHIBIT B

## INTENTIONALLY DELETED

# EXHIBIT C

Fivemile Energy Resources, Inc. Leases

EXHIBIT

C

## FIVEMILE ENERGY RESOURCES, Inc.
### 256 Duntreath
### Frankfort, Kentucky 40601
### (502-352-6381) (502-330-0121)
### LEASE SUMMARY TABLE
Permit # 813-0269

| Lessor Name | Address | Ph # | # Acres | Fee or surface only | Royalty (annual minimum and tonnage) | Whelage | term | Date signed |
|---|---|---|---|---|---|---|---|---|
| Ivan and Geralene Caudill | 690 Hensley Rd. Haddix, Ky 41339 | 606-398-2433 | 241 | Surface only | $1200 yr $.50 ton $6000 pd | | 5 Yrs | 10/20/01 |
| Roger Arrowood heirs- (Brenda Napier) | 2434 Seine Rd Lexington, Ky 40504 | 859-255-9031 | 156 | Fee | $1000 yr $2.00 $4000 pd | | 5 yrs | 10/27/01 |
| Newton Stamper Heirs--- Wilma Stamper | 26 Park Ave Winchester Ky 40391 | 859-744-7004 | 158 | Surface Only | $1000 yr $.75 ton $4000 pd | | 5 yrs | 10/27/01 |
| Harvey Gross | 1983 Mill Creek Rd Jackson Ky 41339 | 606-295-2448 / 2532 | 79 | Fee | $300 yr $2.00 ton 1200 pd | | 5 yrs | 1/26/02 |
| Jeffery Howell, et al | P.O. Box 19 Jackson Ky | 606-666-4733 | 293 | MINERAL ONLY | $3000 $3000 $5000 $5000 $1.50 or 6% 16000 pd | | 4 yrs | 2/21/02 |
| Granvill Turner | 1922 Mill Creek Rd Jackson, Ky 41339 | 606-295-5061 | Two tracts/ 175 | Fee on Mill Ck/ Surface only Middle Fk | $800 yr. $2.00 Fee $.50 surface 3200 pd | | 5 yrs | 2/09/02 |
| Darrell Spicer | 395 Kolb Rd West Harrison Ind | 812-637-5801 | 130 | Surface only on Joe Little | $1000 yr $.75 ton (see addendum) | $.15 ton | 5 yrs | 3/01/02 |

1

| Name | Address | Phone | Acres | Type | Terms | Extra | Years | Date |
|---|---|---|---|---|---|---|---|---|
| | 47060 | | | Fork | 4000 pd | | | |
| Ned Little Heirs—Edith Keene | 2412 Homestead Place Cinn, O 45211 | 513-662-1350 | 64 | Surface Only on Joe Little Fork | $1500 yr $.50 ton 6000 pd | | 5 yrs | 3/07/02 |
| John F Arrowood Heirs—Bermin Arrowood | 14951 Irvine Rd Winchester Ky 40391 | 859-745-1545 | 175 | Surface Only on Joe Little Fork | $1000 yr $.75 ton (see addendum) 4000 pd | $.15 ton | 5 yrs | 3/01/02 |
| Elizabeth Arrowood Heirs—Levisa Watts | P O Box 243 Lost Creek Ky 41348 | 606-666-7278 | 25 | Surface Only on Buzzard Fork of Canoe | $700 yr $.50 ton 2200 pd | Mae Mays is due $400 and NL is owed 200 | 5 yrs | 3/09/02 |
| Preston Arrowood Heirs—c/o Robert Johnson | 121 Johnson Road Nicholasville Ky 40356 | 859-887-3863 885-4386 | 35 | Surface Only on Buzzard Fork | $500 yr $.50 ton 2000 pd | | 5 yrs | 4/26/02 |
| Turner Trust—Darrell Herald C/O Fred Combs | 1138 Main St. PO Box 744 Jackson, Ky. 41339 | 606-666-8833 | 569 | Mineral only | $3000 yr $1.50 ton $6000 PD | | 5 yrs. | Lease executed 12/12/03 @ Combs Real Estate Office |
| Eli Sebastian et al | 714 Monroe St. Newport, Ky 41071 | 859-291-2048 | 100 | surface | $1000 yr. $.75 ton 4000 pd | | 5 yrs | 5/19/02 |
| Cleve Gambill—dba---Howard's Creek | 808 Rubel Ave. Louisville, Ky 40204 | cell 502-931-6603 | 311 | Fee | $2.25 per ton plus 20% of Lessee's override on | $.10 ton | 5 yrs | 12/18/02 |

2

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Timber Company | | work 502-625-3830 | | | certain acreage | | |
| Matt Hounshell | 4685 Cedar Lane Alexandria, Ky 41001 | 859-635-3709 | 90 | Surface only | $500 yr $.75 per ton $2000 pd | | 5 yrs. | 7/27/02 |
| James Thomas | 401 Hensley Rd Jackson, Ky 41339 | 606-295-4360 | 150 | Fee | $1000 yr $2.25 per ton $4000 pd | | 4 yrs. | 7/26/02 |
| Doyle Thomas/Krouc Noble— 105 Adams Ridge Hazard, Ky 41701 | 1571 Greening Rd. Carsonville Mi.48419 | 810-622-9619 ----- 606 436-4540 | 100 | Fee | $1000 yr $2.25 per ton $4000 pd | | 4 yrs. | 8/2/02 |
| Jackie Howell | JR Newton Arrowood Tract | 859-268-3231 | 500 | mineral | $1.50 ton or 6% | | 4 years | PENDI NG |
| Ron Deaton | P.O. Box 222 Chavies, Ky 41727 | 606-438-5307 | 150 | surface | $1.00 ton $500 $1000 $1500 $2000 3000 pd | | 5 yrs. | Feb 15, 2003 |
| Brant Deaton, (sold to Kenny Woods) Raz Hoskins | P. O. Box 222 Chavies, Ky 41727 | 606-438-5307 | 100 | surface | $.75 ton $1000 yr. 3000 pd | | 5 yrs. | Feb 15, 2003 |
| Rosa McIntosh (C/O Sam Johnson, son) | 1038 Mackland Drive, Lawrenceburg, Ky 40342 | 502-839-9446 | 155 | surface | $.50 ton $1,000 yr 2600 pd* Doug for addresses -- several heirs | (one of three children have not signed | 5 yrs. | 7/3/02 |
| Elmer | Howard's | 606- | 400 | | | | | PENDI |

| Name | Address | Phone | Acres | Type | Terms | Notes | Years | Date |
|---|---|---|---|---|---|---|---|---|
| Hensley | Creek Rd Jackson, Ky | 398-2021 | | | | | | NG DISCUSSION |
| John Henry Arrowood Tract (Spring Hollow) | C/O Levisa Watts P.O. Box 243 Lost Creek, Ky 41348 | 606-666-7278 | 300 | FEE | $1,400 yr and $2.25 per ton $3600 pd* call Doug for addresses | Mae Mays is transferring to son Randal | 5 Yrs. | 11/23/02 |
| Gaylord Stacy | | | 125 | Fee | | | | Pending |
| Andy Combs | Jackson, Ky | 295-3236 | 500 | Fee | | | | Pending |
| Ben Spicer | 32789 Taylor Grade Rd Bowling Green, Fl 33834 | 941-776-3657 | 56 | Surface | $1000 yr $.75 ton Non-recoup 3000 pd* | | 5 yrs. | 12/28/02 |
| James Spicer Heirs (Beulah Kidd) | 1402 Holly Ridge Run Ft. Wayne, In 46845 | 260-497-9703 | 113 | surface | $1000 yr $.75 ton Non-recoup 2700 pd* | One of nine has not signed | 5 yrs. | Feb 10, 2003 |
| Letch Spicer Heirs c/o Ben Spicer | 32789 Taylor Grade Rd Duette, Fl 33834 | 941-776-3657 | 78 | Surface | $1000 yr $.75 ton Non-recoup 3000 pd | | 5 yrs. | 12/28/02 |
| Ronnie Spicer c/o Virgil Spicer | California | 295-4961 | 150 | Fee | | | | Pending |
| Paul Combs | P. O. Box 851 Jackson, Ky 41339 | 295-2371 | 400 | Surface | $1500 yr $.75 ton 4500 pd | | 5 yrs | 2/08/03 |
| Phillip & Sharon Caudill | 690 Hensley Rd. Haddix, Ky 41339 | 661-724-2009 | 95 | Surface | $1000 yr $.50 ton $3000 pd | $.05 whe elag | 5 yrs. | 8/22/03 |

4

| Name | Address | Phone | Acres | Type | Terms | Royalty | Term | Date |
|---|---|---|---|---|---|---|---|---|
| pcaudill@verizon.net | | or 860-3641. | | | | e | | |
| Alice Gray, et al | 70 Turner Drive Jackson, Ky. 41339 | 606-666-0008 | 50 | FEE | $500 yr. $2.50 ton | | 5 yrs. | pending |
| Walter & Gladys Strong | PO Box 886 Jackson, Ky 41339 | 606-398-2268 | 100 | fee | See Rodney | 502-727-4342 | | |
| Larry Hensley | 4262 Hwy 1110 Saldee, Ky. 41339 | 606-398-2364 | 108 | Fee | $350. yr lease for road use only $700 pd | $.15 ton for first 100k, then $.12 ton | 5 yrs. | 2/28/04 |
| Vicki Lynn Wells | 3855 Hwy 1110 Haddix, Ky 41339 | | 450 app. | Fee | $1000 yr $2.50 ton $2000 pd | $.12 whe elag e | 5 yrs. | 2/28/04 |
| Charlie/Dora Sebastian Heirs C/O **Bobby Turner** | 11139 Hwy 1110 Wolfcoal, Ky 41339 | 606-398-2682 | 38 | Fee (six heirs) | $380 per year $2.50 ton $760 pd | | 5 yrs | 5/29/04 |
| Roger and Easter Turner Tract C/O Price Turner | 8259 W. Main St Alexandria, Ky 41001 | 859-635-9229 | 117.56 | Fee (seven heirs) | $700 yr $2.25 ton $1200 pd | | 5 yrs. | 4/20/04 |
| Carl Buford Gross | 19 Strong Branch Rd. Hazel Green, Ky 41332 | 606-662-4993 | 35 | surface | $300 per year $.60 per ton $600 pd. | DB 194 Pg 153 | 5 yrs. | 7/28/04 |
| JOE LITTLE | | | | | | | | |

| PROJECT | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Tommy Hall | 920 Maple Ave Dayton, Ky 41074 | 859-431-2265 | 150 | FEE Property on Joe Little Fork | $1750 yr $2.50 ton (see addendum) 7000pd | $.15 ton | 5 yrs | 3/01/02 |
| Lester Gross | 4730 Pond Creek Rd Alexandria, Ky 41001 | 859-635-0367 | 500 (Mineral only) | mineral | $500 year— $1.50 ton $1500 pd | | 5 yrs. | 6/24/02 pay 10/12/03 |
| Mima Combs | 1496 Old Buck Rd Jackson, Ky 41339 | 606-295-7293 | 500 — Surface over Lester Gross min | surface | $500 yr $.75 ton 1500 pd | | 5 years | 10/12/02 |
| Sizemore Fork Project | | | | | | | | |
| Georgia Turner, et al ***Wolfcoal/Altro area | 742 S. Main St Franklin, Ohio 45005 | 937-855-4598 | 1251 | 800 Fee 450 Surface | $2000 yr. $2.00 or 8% Fee $1.00 or 4% surface $8000 pd | | 5 yrs | 7/30/02 |
| WOLFPEN PROJECT | | | | | | | | |
| Hershel Arrowood, et al | Box 123 Jackson, Ky. 41339 | 663-0329 | 300 | WOLFPEN PROJECT | $1000 yr $.75 ton $3000 pd | | 5 yrs | 7/03 |
| Jack & Dorothy Mullins | 529 Buzzard Fork Rd. Jackson, Ky 41339 | 606-295-7188 | 249 | Surface | $1000 yr $1 ton $3000 pd | surv ey | 5 yrs. | 8/7/03 |
| Vancleve PROJECT: Gary & | 1145 White Oak Creek Rd | 606-666-8384 | 450 app acres | FEE | $1000 yr $2.75 per ton or 6% | $.10 whe elag | 5 yrs | 10/2/04 |

6

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loreda Dunn | Jackson, Ky 41339 | | | | $1000 pd. | e | | |
| Greg and April McKenzie | 8349 Hwy 15 North Jackson, Ky 41339 | 606-666-8632 | 150 app acres | FEE | $2000 yr. $2.50 per ton $3000 pd | $.10 whe elag e | 5 yrs | 9/6/04 |
| James and Connie Rice | PO Box 164 Vancleve, Ky 41385 | 606-666-4859 | 120 app acres | Fee | $1000 yr $2.50 or 8% $1000 pd | $.10 whe elag e | 5 yrs. | 11/6/04 |
| GEORGES BRANCH PROJECT: Anita Christine Turner | 10748 Hwy 1110 Wolfcoal, Ky 41339 | 606-398-2581 | 150 app acres | One tract Fee; one tract surface only | $1000 yr or 8% plus $2.50 for Fee (half for surface only) $1000 pd | $.10 whe elag e | 5 yrs | 11/2/04 |
| Sam B. Herald and Ettia Faye | 19 Elm St Wilder, Ky 41071 | 859-291-8731 | 200 acres app | One tract Fee; one surface only | $1000 yr $2.50 or 8% $1000 pd | $.10 whe elag e | 5 yrs. | 11/18/04 |

Total surface acres leased =approximately 7,695
Total mineral acres leased= approximately 5,987
(Not yet leased in red)
Total royalties PAID as of August 25, 2005=$139,260.

# EXHIBIT D

## INTENTIONALLY DELETED

<u>EXHIBIT E</u>

Doug Terry Letter dated October 5, 2005

EXHIBIT

E

**T & R Mining, LLC**
**256 Duntreath**
**Frankfort, Kentucky 40601**

October 5, 2005

Bluestone Industries, Inc.
Attn: Stephen W. Ball, General Counsel
P.O. Box 1085
Beckley, West Virginia 25802-1085.

Re:    Deep Wood, LLC Leases and Permit No. (813-0264) and
       Fivemile Energy Resources, Inc. Leases and Permit No. (813-0269)

Dear Mr. Ball:

I am writing in reference to the above listed properties and permits (the "Leases and Permits"). There is a more detailed list of the Leases and Permits contained in the agreement between Kentucky Fuel Corporation and New London Tobacco Market, Inc. During the time period when the Leases and Permits were acquired by the respective entities I served as an officer for Fivemile Energy Resources, Inc. (President), and T&R Mining, LLC (Vice President), Deep Wood Mining, LLC (Vice President). Also during the pertinent time frame I was an owner of both Fivemile and T&R. T&R during this time period was the owner of Deep Wood. In each of these capacities I have become and remain thoroughly familiar with the Leases and Permits.

As an inducement to Bluestone, or any of its affiliates including but not limited to Kentucky Fuel Corporation, (collectively referred to hereafter as "Bluestone") to enter into a transaction with New London Tobacco Market, Inc. whereby Bluestone will purchase the Leases and Permits this letter shall serve as an agreement on behalf of myself individually and T&R Mining, LLC to indemnify and hold harmless Bluestone from any and all liabilities, damages, causes of action, or any other claims of any nature, whenever made, resulting from, related to, or associated with the Leases and Permits for the time period beginning on May 12, 2001 or the date the first lease or permit was acquired whichever shall have occurred first through October 12, 2005 or the date the Leases and Permits are formally transferred to Bluestone, whichever shall occur last. To the extent I or any entity I am associated with shall receive any royalties or other benefits from the Leases and Permits I agree that Bluestone may set off and withhold against those royalties any amounts which may be due to Bluestone from me or any entity which I am associated with as a result of this agreement of indemnification.

This agreement to indemnify and hold harmless encompasses all potential liabilities that could have occurred during the above referenced time period. However, in no event shall myself, or the partners, shareholders, or officers of Fivemile, Deep Wood, or T&R be responsible for activities or violations of Bluestone in its capacity as new owners that may occur after the closing between Bluestone and New London Tobacco Market, Inc.

This letter shall also certify that as of this date, no action of any type has been filed in any court in regard to the Leases and Permits and that the Leases and Permits are currently held by the entities contained herein. This letter shall further certify that during the time frame referenced above no mining or related activities took place on the Leases and Permits and to my knowledge no mining or related activities took place on the Leases and Permits prior to their acquisition.

1

Sincerely,

Doug Terry, both individually and as
Vice President of T&R Mining, LLC

## AMENDMENT TO THE
## ASSIGNMENT OF LEASES AND PERMITS

This Amendment to the Assignment of Leases and Permits between NEW LONDON TOBACCO MARKET, INC. (referred to hereinafter as "NLTM" and "Seller") and KENTUCKY FUEL CORPORATION, a Delaware corporation ("Kentucky Fuel") (the "Assignment") is entered into to be effective as of the 31st day of October, 2005.

### WITNESSETH:

WHEREAS, the parties hereto desire to amend the aforesaid Assignment as set forth herein.

NOW, THEREFORE, in consideration of the foregoing, and the other terms and conditions set forth herein, the parties hereto agree as follows:

Paragraph 7 is amended and restated as follows:

"Closing. The closing ("Closing") of the sale described herein by Seller to Kentucky Fuel shall occur at a location designated by Seller and on a date agreed upon by Seller and Kentucky Fuel but no earlier than October 12 or later than November 30, 2005. At Closing the Seller shall deliver or cause to be delivered to Kentucky Fuel the Leases and Permits. Kentucky Fuel shall deliver or cause to be delivered to Seller at Closing the Purchase Price."

Except as specifically modified hereby, the terms and provisions of the Assignment are hereby ratified and confirmed and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date provided herein.

NEW LONDON TOBACCO MARKET, INC.

By: _____

Name: _WILLIAM G. BROWNLOW_

Title: _PRESIDENT_

KENTUCKY FUEL CORPORATION

By: _____

Name: _James C. Justice II_

Title: _Executive Vice President_

## SECOND AMENDMENT TO THE
## ASSIGNMENT OF LEASES AND PERMITS

This Second Amendment is made as of the _23rd_ day of November, 2005 by and between **NEW LONDON TOBACCO MARKET, INC.** (referred to hereinafter as "Seller") and **KENTUCKY FUEL CORPORATION**, a Delaware corporation ("Purchaser").

## W I T N E S S E T H:

Seller and Purchaser previously executed an Assignment of Leases and Permits dated October 5, 2005 (the "Assignment"). The parties now desire to amend the terms of the Assignment to add additional provisions.

NOW, THEREFORE, in consideration of the foregoing, and the other terms and conditions set forth herein, the parties hereto agree as follows:

1. Unless otherwise defined herein, the capitalized terms in this Second Amendment shall have the same meaning as in the Assignment.

2. Section 2 of the Agreement is amended and restated to read:

   Assignment of Leases. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller agrees at Closing (as hereinafter defined) to transfer, assign and convey to Kentucky Fuel all of Seller's or Deep Wood's and Fivemile's respective rights, title and interests in and to the Deep Wood Leases and the Fivemile Leases (including but not limited to the lease from the May family as lessor); provided, however, notwithstanding the foregoing, the Lease between Deep Wood Mining, LLC and Jessie Banfield dated May 19, 2001 shall not be transferred and shall be retained by Deep Wood Mining, LLC or its successors and assigns.

3. A new Section 6 is amended and restated to read:

   Assignment of Royalty Credits. Seller assigns to Kentucky Fuel all rights to credits owed by lessors under the Leases for royalty fees previously paid under the terms of the Leases by the Secured Parties through October 5, 2005. Seller shall receive from Purchaser a credit for royalty fees paid by Seller to such lessors from October 5 through the Closing; provided, however, Purchaser's obligation to pay such amount to Seller shall not begin until Purchaser or its agent has mined 250,000 tons of Coal Tonnage at which time Purchaser shall reimburse Seller for such royalty fees as an additional amount paid with the installment payments made on Coal Tonnage mined after the first 250,000 tons of Coal Tonnage.

4. A new Section 26 is added to read as follows:

Limitation of Liability. In the event a Federal Bankruptcy Court prevents the assignment contemplated herein prior to or at any time after the transfer of the Leases and Permits, any recourse or remedy available to Purchaser against Seller for actual damages incurred by Purchaser (if any) as a result of such actions shall be limited to the actual amount of Purchase Price paid to and received by Seller pursuant to the terms of this Agreement by the time of such action. For example, if a bankruptcy court prevents the assignment of the Fivemile Leases within the first ninety (90) days after the transfer of such leases to Purchaser, Purchaser may recover from Seller for the actual damages it incurs as a result of such action an amount not to exceed the $100,000 of the Purchase Price paid within thirty (30) days of the Closing plus any royalty payments actually paid during such time to Seller. Thereafter, Seller shall have no further obligation and such limited recourse against Seller shall constitute the Purchaser's sole remedy against Seller. Notwithstanding the foregoing, in the event of a bankruptcy filing by Deep Wood Mining, LLC or Fivemile Energy Resources, Inc., Purchaser may reduce the payments required by this Agreement by its legal fees, costs or expenses incurred in attempting to protect Purchaser's interest in the Leases and the Permits.

5. A new Section 27 is added to read:

Secured Party Authority. Seller represents that it is the authorized agent for the Secured Parties and has the power and authority to execute this Agreement and all documents related thereto.

6. A new Section 28 is added to read:

Lease Default. Seller has not received any written notice that an event of default created by a lessee exists under the terms of the Leases.

7. A new Section 29 is added to read:

Post Closing Lease. Purchaser shall have no obligation to pay Seller any additional Purchase Price after Closing until Seller shall assign to Purchaser a leasehold interest in the approximately 150 acres of real property owned by Jesse M. Banfield (or his heirs, successors and assigns) and Irene Banfield pursuant to terms similar to the terms and conditions described in the May 19, 2001 "Coal Lease" between the Banfields and Deep Wood Mining, LLC.

8. Except as specifically modified hereby, the Assignment shall remain in full force and effect.

9. This Second Amendment shall bind and inure to the benefit of the parties, their successors or assigns. This amendment may be executed in multiple counterparts which shall constitute a single instrument.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date first above written.

NEW LONDON TOBACCO MARKET, INC.

By: _____

Name: William G. Brownlow

Title: President


KENTUCKY FUEL CORPORATION

By: _____

Name: _____

Title: _____

RCS/New London Tobacco/Bluestone/Assignment of Lease – 2<sup>d</sup> Amendment
9369-001

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date first above written.

NEW LONDON TOBACCO MARKET, INC.

By: _____
Name: William G. Brownlow
Title: President


KENTUCKY FUEL CORPORATION

By: _Tom W. Lusk_
Name: _Tom D. Lusk_
Title: _C.O.O._

## THIRD AMENDMENT TO THE
## ASSIGNMENT OF LEASES AND PERMITS

This Third Amendment is made as of the 1st day of June, 2006 by and between **NEW LONDON TOBACCO MARKET, INC.** (referred to hereinafter as "Seller") and **KENTUCKY FUEL CORPORATION**, a Delaware corporation ("Purchaser").

### WITNESSETH:

Seller and Purchaser previously executed an Assignment of Leases and Permits dated October 5, 2005, as amended by the First Amendment to the Assignment of Lease and Permits dated October 31, 2005, as amended by the Second Amendment to the Assignment of Leases and Permits dated November 23, 2005 (collectively, the "Assignment"). The parties now desire to amend the terms of the Assignment to add to the list of assigned leases the lease agreement between Deep Wood Mining, LLC ("Deep Wood") and Kentucky May Coal Company ("KMCC") dated March 11, 2005, a copy of which is attached hereto as **Exhibit A** (the "Lease"). Effective as of May 1, 2006, Enterprise Mining Company, LLC ("EMC") acquired the property from KMCC. Deep Wood was notified of this acquisition by letter from EMC dated May 17, 2006, attached hereto as **Exhibit B.**

NOW, THEREFORE, in consideration of the foregoing, and the other terms and conditions set forth herein, the parties hereto agree as follows:

1. Unless otherwise defined herein, the capitalized terms in this Third Amendment shall have the same meaning as in the Assignment.

2. Exhibit A is amended to add the Lease.

3. Except as specifically modified hereby, the Assignment shall remain in full force and effect.

4. This Third Amendment shall bind and inure to the benefit of the parties, their successors or assigns. This amendment may be executed in multiple counterparts which shall constitute a single instrument.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date first above written.

NEW LONDON TOBACCO MARKET, INC.

By: _____

Name: William G. Brownlow

Title: President

KENTUCKY FUEL CORPORATION

By: _____

Name: _Thos. D. Lusk_

Title: _C.O.O._

# EXHIBIT A

## MAY LEASE

# LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease" or "Agreement") dated this _11_ day of _March_ 2005, by and between **KENTUCKY MAY COAL COMPANY**, a Virginia corporation, whose address is 1876 Yellow Creek Road, Sassafras, KY 41759 (the "Lessor") and **DEEP WOOD MINING, LLC.**, whose address is 163 East Main Street, Suite 200, P.O. Box 1598, Lexington, KY 40588-1598 (the "Lessee").

WHEREAS, Lessor acquired the Surface on those certain tracts of land located on the waters of Stillhouse Branch, a tributary of the North Fork of the Kentucky River in Breathitt County, Kentucky, being more particularly shown on map as Exhibit 1 attached hereto and made a part hereof as if specifically set forth herein (the "Leased Premises"); and

WHEREAS, the Lessor now desires to lease to Lessee and Lessee desires to lease from Lessor all the rights to mine and remove all mineable and merchantable coal located in the Hazard 5-A and all overlying seams on the Leased Premises all under the terms and conditions more particularly set out herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby agree as follows:

1.    <u>Lessee Rights</u>.  Lessor does hereby LET and LEASE unto Lessee and Lessee does hereby lease from Lessor, all of Lessor's interest in the surface and coal in the Prater seam and all seams and riders above (whether or not such seams and/or riders have a specific geological identity) on the Leased Premises for the purpose of mining and removing all mineable and merchantable coal in the said seams that can be mined and removed by all mining methods including the strip, area, mountaintop removal, contour, deep, and auger mining methods.  Lessee agrees to energetically pursue and prosecute the mining of the Hazard No. 5-A and all overlying seams.  Together with the right of ingress and egress to the Leased Premises, to prospect, to survey, to drill, to bore, to test, to explore for, to excavate and to mine by any mining method without leaving support for the surface or anything therein or thereon and to perform all other things necessary or convenient and to mine, remove, convey and carry away said coal mined with the equipment used; the right to use free of charge, sand, gravel, stone and water in and from the Leased Premises, but in all events, subject to the rights of adjacent and adjoining land owners.  Without limiting the generality of the foregoing, the right to excavate, remove and damage the surface overlying the coal, to drain and impound waters and water courses and construct silt fences; the right to construct, erect and maintain spoil banks, hollow fills and cuts; the right to construct, maintain and use the buildings, structures, improvements, roads, ways, railroads, sidetracks, and utility ways and lines; the right to place on, erect, maintain and operate the Leased Premises and to remove therefrom at any time, any or all machinery, equipment, supplies and other things; the right to store equipment, machinery, topsoil, refuse, overburden, and coal on said Leased Premises regardless of source; the right to deposit or otherwise place earth and rock from other lands on the Leased Premises; the right to complete such grading, seeding, and other reclamation work on the Leased Premises as may be required by federal and state laws, rules, or regulations in order to obtain a full release of any performance bond posted by Lessee whether during the term of the Lease or thereafter; and to utilize the surface of the Leased Premises for

the purpose of removing the earth overlying said coal and to deposit the same on said Leased Premises and on adjoining premises; together with the right to appropriate and/or to protect water or water supplies and the Lessee shall have and exercise all necessary and convenient mining, production, and transportation rights, including surface mining rights, rights-of-way, easements and privileges, lawful, usual and convenient, for the full and complete enjoyment of the rights and privileges herein demised.

For purposes of this Lease, "mineable and merchantable coal" means such coal as can, at the time the same is reached in the mining operations, be mined at a reasonable profit by the use of machinery and methods which at the time are modern and efficient.

2.　　Term. The term of this Lease shall be for a period of three (3) years (the "Primary Term") from the date hereof with the privilege vested in the Lessee to extend this Lease under the same terms and conditions as herein contained for two (2) additional one (1) year periods (the "Extension Term(s)"); such extension periods to be automatic unless Lessee, in its sole discretion, notifies Lessor to the contrary at least thirty (30) days prior to the expiration of the then current term.

3.　　Taxes. Lessor shall pay all taxes including real estate taxes assessed on the surface estate hereby leased and upon submission to Lessee of paid tax receipts, Lessee shall within thirty (30) days of receipt reimburse Lessor the amount paid as to any portion of any year that this Lease is in effect but Lessee shall not be held in default for failure to reimburse tax receipts not submitted to Lessee.

4.　　Records and Inspections. (a) During the term of this Lease, Lessee shall keep and maintain books and records, including sales contracts (whether in printed, electronic or other format), in support of coal mined from the Leased Premises and sold by Lessee. All such information shall be made available to Lessor and its representatives, provided Lessor shall keep and shall cause its representatives to keep all such information strictly confidential and not disclose such information to any third party.

(b)　　Upon advance notice to Lessee, Lessor and/or its designees shall have the right and privilege of entering the works and mines of Lessee in or upon the properties covered by this Lease to inspect Lessee's operations thereon and to make surveys, take coal samples and measure stockpiles and coal pits.

(c)　　Lessee shall provide Lessor with a copy of Lessee's then current mining plan for the Leased Premises.

5.　　Surveys and Maps. Lessee shall employ a professional mining engineer, licensed in Kentucky, whose duty it shall be to make surveys, determine mine elevations, and prepare mining plans and maps of the Leased Premises and Lessee's operations hereunder on a scale as required under applicable laws. Such map(s) shall be posted every three months, or more often as the need requires, and shall show accurately and completely all known mine workings within the Leased Premises. Lessee shall furnish Lessor a copy of such map(s) every three months.

2

6.    Reservations. Lessor excepts and reserves from this Lease all coal, mineral, oil and gas (including coalbed gas) and mineral substances or combination thereof, other than the coal herein leased, together with the exclusive right to mine, bore for, produce, prepare, store, manufacture and market such excepted oil, gas (including coalbed gas), other coal, mineral and mineral substances; and, also excepts and reserves the right to deal, maintain, operate and use under, over, across and through the leasehold such roads, ways, tramroads, railroads, sidings, and other transportation facilities, and power and telephone lines, water and pipelines, to transport from any source wherever located, coal, coke (and other products of coal), water, timber, oil and gas, and other minerals and substances for any and all purposes aforesaid. Lessor excepts and reserves the right to use, lease or otherwise dispose of any surface and subsurface unoccupied or unused by Lessee and the right to lease to tenants for the purpose of occupying and farming the same, any of such lands not occupied or used by such Lessee. Lessor excepts and reserves the right to use stone, sand, clay, land, water, timber and other minerals and products in and on such lands, to make excavations, and sink or bore slopes, shafts, drifts, tunnels, drains and walls, to erect buildings, houses, shops, coal loading and tippling facilities, machinery, preparation plants and cleaning facilities, and other structures and improvements, and the full right of ingress and egress as may be necessary or convenient in the development of such land and other lands or in the proper exercise of the rights hereby excepted and reserved, including the right to use such roads as are built on the land, and further the right to at any time to mortgage or otherwise encumber its interest; provided, however, any such mortgage or encumbrance shall provide that Lessee's right of possession shall not be affected by the mortgagee and the Lease shall not be terminated by any foreclosure or sale provided that the Lessee attorns to the holder of the mortgage or purchaser at any foreclosure sale. Provided, however, that Lessee shall have and is hereby granted the right to take and use such water, stone, clay, sand, gravel and slate on the leasehold as may be reasonably required in connection with its operations hereunder.

7.    Lessee Obligations. Lessee shall ascertain what mining rights and privileges Lessor controls and shall thoroughly familiarize itself with the boundary lines of the leasehold before the removal of any coal therefrom. If, in order to mine and remove said coal by any of the mining methods specified herein, Lessee shall need any rights, easements and privileges in addition to those controlled by Lessor, including without limitation surface disturbance rights, Lessee shall be responsible for obtaining the same at its own expense.

8.    Compliance With Law and Insurance. Lessee shall conduct all of its mining operations and activities hereunder in accordance with the laws, rules and regulations of the United States and of the Commonwealth of Kentucky, applicable thereto. Lessee shall observe, fully comply and abide by all applicable federal, state, and local environmental, health and safety laws, and regulations of any regulatory body acting with jurisdiction over Lessee's and/or Lessor's activities on the Leased Premises under this Lease.

Lessee agrees that he has been provided the Progress Fuels Summary of Code of Ethics, said Code of Ethics has been shared with and executed by all employees of Lessor who shall be on the Leased Premises and the Code of Ethics shall be fully adhered to by Lessee and its employees.

Lessee, its agents, representatives, employees, subcontractors, successors, and assigns, if any, (collectively the "Lessee Group") shall also comply with all applicable Lessor health, safety,

3

and security rules, programs, and procedures that apply to the Leased Premises. Lessor will make available to Lessee copies of any Lessor rules, programs, and procedures that may apply to the Leased Premises, including without limitation, Lessor's Code of Ethics and practice and procedure handbooks, upon Lessee's request.

9.    Insurance. As a condition precedent to the commencement of operations hereunder, Lessee shall at its sole cost take out with an insurance company acceptable to Lessor and pay all premiums on, and keep in force during the entire term of this Lease, general comprehensive liability and property damage insurance in an amount not less than One Million ($1,000,000) Dollars for any one person, One Million ($1,000,000) Dollars for any one accident, and Five Hundred Thousand ($500,000) Dollars property damage for any one accident together with contractual coverage of no less limits to insure obligations under paragraph 10 of this Lease, and shall deliver a copy of such policy or certificate of insurance to Lessor. This coverage shall also include any trucks or other equipment hired, rented, or leased by Lessee in its operations with such automobile insurance policies containing no less limitations of liability than as set forth for the general comprehensive liability and property damage insurance coverage. Lessee agrees to comply with federal and Kentucky law pertaining to worker's compensation insurance coverage, including black lung payments and coverage. If at any time such insurance shall cease to be in force and effect, then Lessee shall suspend and Lessor may stop all operations of Lessee hereunder until such insurance shall be reinstated. In the event the insurance is not reinstated within thirty (30) days after it ceases, this shall be grounds for immediate termination of this Lease by Lessor. Furthermore, such insurance policies shall provide for thirty (30) days written notice to Lessor of termination or substantial change in coverage. Lessor shall be listed as an additional insured under the above described policies and Lessee shall provide Lessor with written confirmation from Lessee's insurance carriers or authorized agents that Lessor is an additional insured under such policies.

10.    Indemnification. Lessee agrees to observe and perform all conditions, limitations, and covenants with reference to the mining of said coal contained in any of the instruments under which Lessor holds title, and to save Lessor harmless from the breach, if any, of such limitations or covenants. Lessee hereby covenants and agrees that it shall indemnify, defend, and save harmless Lessor its parent and affiliates and their respective shareholders, directors, officers, employees, agents, and representatives (collectively the "Lessor Group") from and against all claims, demands, and law suits seeking to impose liability upon the Lessor Group for any damages resulting from injuries to persons (including occupational diseases) or property arising out of the operations of Lessee under this Lease, including in such indemnification, without limitation, all damages recovered and all court costs, attorney fees, and other expenses so arising. It is expressly understood and agreed that Lessee is an independent contractor with respect to the mining, removing, processing, and transporting of the coal hereunder, and that except as otherwise expressly herein provided and subject to Lessor's right to approve mining plans to recover the maximum amount of coal from the leasehold, Lessee shall have full and complete control over its mining operations hereunder, including the right to hire, supervise and discharge all persons employed by it and to exercise absolute control and dominion and shall be responsible to Lessor for performance only. Lessee further agrees that it shall indemnify, defend, and save harmless Lessor from and against all claims and liens for labor, materials, supplies, and equipment used in the performance of the work under this Lease and shall promptly satisfy or

4

remove by bond within twenty (20) days of recording thereof all liens upon the Leasehold. Any covenant of indemnity shall survive termination of this Lease.

11. <u>Royalties</u>. Lessee agrees to pay to Lessor as royalty for coal mined from the Leased Premises and all the rights and privileges conferred by this Lease, the following (the "Royalties"):

(a) For coal mined from the Leased Premises on which Lessor owns the surface rights, the tonnage royalty for all coal mined by any mining method hereunder except the highwall and auger mining methods shall be (i) two percent (2%) of the gross selling price or (ii) fifty cents ($0.50) for each ton of two thousand (2,000) pounds of mineable and merchantable coal which shall be mined, removed, prepared, shipped, and sold from the Leased Premises, whichever amount is greater.

(b) The term "gross sales price" shall mean the gross sum of money, without any deduction for commission, selling expenses or transportation costs, received by Lessee for each ton of mineable and merchantable coal sold in an arm's length sale to an unrelated party. Lessee acknowledges that coal is customarily sold F.O.B. at the shipping point and that the F.O.B. price includes all severance taxes, reclamation fees, black lung excise taxes and any other governmental exactions which may be a per-ton amount or a percentage of the selling price, and such severance taxes, reclamation fees, black lung excise taxes and other governmental exactions, whether included in the F.O.B. price or billed to the consumer as items, shall not be deducted for purposes of computing gross sales price, it being the intention of the parties hereto that Lessee's royalty shall be based on the full gross sales price. If coal is sold to an affiliated party or not in an arm's length transaction, then the prevailing sales price in Magoffin County for the same grade, character and quality of coal shall be considered and treated as the actual sales price so far as the computation of percentage royalty is concerned, the intent being that the calculation of Lessor's tonnage royalties shall be made as though each sale were made in an arm's length transaction.

(c) All coal mined from the Leased Premises shall be weighed on scales otherwise Lessee and/or Lessor, as appropriate, shall maintain all railroad, truck and/or barge scale weights, as appropriate, for all coal shipped.

12. <u>Annual Minimum Royalty</u>. Lessees covenant and agree to pay Lessor, as rental hereunder, an annual advance minimum royalty as follows ("Annual Minimum Royalty"):

(a) During the Primary Term of the Lease Agreement, the sum of Ten Thousand Dollars ($10,000.00) per Term Year.

(b) During any Extension Term of this Lease Agreement, the sum of Ten Thousand Dollars ($10,000.00) per Term Year. As used herein, "Term Year" shall mean and be construed as (i) that twelve-calendar-month period beginning on the date first above written and continuing on the same date of each year thereafter for each twelve-calendar-month period during the Primary Term of this Lease and (ii) each Extension Term of this Lease.

5

All Annual Minimum Royalty shall be due and payable on or before the first day of the respective Term Years hereof for which such payments are applicable. Lessee does and shall have the right to recoup the Annual Minimum Royalty paid hereunder against the tonnage royalty required under paragraph 8 of this Agreement at any time during the term of this Agreement.

13.   Wheelage.  Lessee may haul or transport coal from other lands over said tracts or parcels of land subject to Lessee paying to Lessor the Wheelage Fee, as hereinafter defined.  As consideration for this right to haul or transport coal over the tracts or parcels included on the Leased Premises, Lessee shall pay to Lessor a wheelage fee of one-half of one percent (0.5%) of the gross selling price or Ten Cents ($0.10) for each ton of two thousand (2,000) pounds of mineable and merchantable coal which hauled over the Leased Premises; whichever amout is greater (the "Wheelage Fee").  This Wheelage Fee shall be paid in the same manner and at the same time as the royalties paid under paragraph 11 of this Lease.

14.   Payments.  Unless otherwise set out herein, payment and settlement of all monies due hereunder shall be made by Lessee to and with Lessor, monthly on or before the 25th day of each month for all coal mined, shipped, and/or hauled during the preceding calendar month. Each monthly settlement shall be accompanied by a true and accurate statement which sets out the amount of coal paid for at the agreed rates and/or fees.

15.   Waiver of Property Line.  The Lessor grants to the Lessee the right to mine to his property line if a like right is acquired from adjoining property owners.

16.   Default and Termination.  In case Lessee shall fail in the observance or performance of any of the terms, conditions, covenants, stipulations, or agreements herein contained, and any such failure shall continue for a period of twenty (20) days after Lessor shall have given written notice of such default to Lessee, then and in that event, at the election of Lessor, the term and leasehold interest hereby created and all the rights and privileges of Lessee hereunder shall forthwith cease and terminate, and this Lease shall be forfeited, and Lessor shall be entitled to re-enter and take possession of the property, rights, and privileges hereby leased, and all improvements and personal property thereon, and to exclude Lessee therefrom, and to hold all the same free from claims of Lessee, anything contained to the contrary notwithstanding. A default by Lessee under any other agreement which Lessee may have with Lessor shall be deemed to be a default under this Lease.  Lessor may exercise any and all other remedies available to it under applicable law and all such remedies shall be cumulative.

An occurrence of any of the following conditions shall also be grounds for immediate termination of this Lease:  the revocation or suspension by any governmental authority of any permit held by Lessee and the failure by Lessee to obtain the re-issuance or reinstatement thereof within thirty (30) calendar days after such revocation or suspension; the ineligibility of Lessee at any time during the term to obtain surface disturbance permits or amendments or revisions thereto; the ineligibility of Lessor at any time during the term to obtain surface disturbance permits or amendments or revisions thereto by reason of the acts or omissions of Lessee, its officers, directors, shareholders, or agents; the taking of any enforcement action against Lessor (including, without limitations the issuance of any notice of noncompliance or cessation order or any permit suspension or revocation) by reason of the acts or omissions of Lessee, its officers,

6

directors, shareholders, or agents; or any other breach of the terms and conditions of this Lease.

17. **Assignment.** Lessee may not sell, assign, sublease, or transfer its rights and obligations set forth in this Lease in whole or in part, nor may it employ the services of a contract miner to mine the coal in, on or under the Leased Premises without the prior written consent of Lessor, such consent not to be unreasonably withheld.

18. **Notices.** It is hereby agreed by and between the parties hereto that any notice provided hereby to be given by the Lessor to the Lessee shall be given in writing by (i) United States Certified mail, (ii) hand delivery, (iii) overnight carrier, or (iv) facsimile to the following address:

> Kentucky May Coal Company, Inc.
> 1876 Yellow Creek Road
> Sassafras, KY 41759
> Fax No: 606 476-2145

and that any notice required hereby to be given by the Lessee to the Lessor, may be given in writing on his behalf, either by (i) hand delivery, (ii) by United States Certified mail, (iii) overnight carrier, or (iv) facsimile properly addressed to:

> Deep Wood Mining, LLC.
> 163 East Main Street
> Suite 200
> P. O. Box 1598
> Lexington, KY 40588-1598
> Fax No: _____

unless or until either party should notify the other in writing of any changes in their respective addresses for notices.

19. **Removal of Property After Termination.** At the expiration or termination of this Lease for any reason and cessation of all mining operations, Lessee shall have the right for a period not exceeding three (3) months from the termination date of the Lease to remove its personal property from the Leased Premises. Any such personal property not removed within that period shall, at the option of Lessor, become and remain the property of the Lessor. Nothing in this paragraph contained shall impair or restrict the right of the Lessee during said three (3) month period, and in addition thereto, Lessee shall have the right at any time after the expiration or termination of the Lease to enter upon the Leased Premises in order to complete or modify reclamation of the Leased Premises or to perform any or all work required by state and federal agencies.

20. **Reclamation After Termination.** At the expiration or termination of this Lease, for any reason whatsoever, Lessee shall have the right without charge to bring equipment on the Leased Premises to reclaim the surface of Leased Premises as required by law, and to perform such other works and actions thereafter as may be required to comply with existing or future

7

federal, state, or local reclamation rules and regulations including the terms of any surface mining permits that pertain to any part of the Leased Premises.

21. <u>Commingled Coal</u>. Lessee may commingle coal mined hereunder with other coal from other parties, and Lessee shall determine the amount of coal mined and sold from each operating mine and/or source, regardless of whether the mine is within the Leased Premises, on some other property or is purchased coal. However, Lessee agrees that such commingling shall not adversely affect the marketability of Lessor's coal, the intent being that Lessee shall take reasonable measures to insure the maximum marketability of all Lessor's coal seams. Any coal mined hereunder shall be weighed before commingling with coal from other lands.

22. <u>Entire Agreement</u>. This Lease is the complete and only agreement between the parties hereto, and expressly supersedes and stands in lieu of any prior discussions and understandings which may have taken place prior to the execution of this Lease. Lessor hereby expressly acknowledges that Lessee has made no representations other than what has been specifically set forth in this Lease.

23. <u>Amendments</u>. No amendments to this Lease shall be binding upon the parties hereto unless made by agreement in writing signed by the parties to this Lease.

24. <u>Applicable Law</u>. This Lease shall be construed in accordance with the laws of the Commonwealth of Kentucky and shall be binding upon the parties hereto, their respective successors and assigns. The parties hereby submit to the jurisdiction of the United States District Court for the Eastern District of Kentucky, Lexington Division, and/or the Circuit Court of Fayette County, Kentucky, as appropriate, for any dispute hereunder.

25. <u>Succession</u>. All of the terms and provisions of this Lease shall be binding upon and shall inure to the benefit of the respective successors and assigns, of the respective parties hereto and none of the terms, provisions, conditions, obligations and liabilities of this Lease shall be changed, modified, amended, waived, or released without the consent in writing of the Lessor and Lessee and signed by them.

26. <u>Assignment</u>. Lessee will not assign or transfer this Lease nor lease the premises hereby leased nor allow or provide for the mining of coal from the leasehold through or by contract mining, nor shall Lessee allow the removal of said coal by license without the written consent of Lessor first had and obtained, it being recognized between the parties hereto that Lessor shall be under no obligation to give such consent. If such consent be granted, it shall not be construed to be a waiver of the foregoing covenant as to any future assignment, transfer, lease or contract mining arrangement, and each successive assignment, transfer, lease or contract mining arrangement shall so stipulate. If such consent is granted, Lessee shall remain jointly and severally liable with the assignee(s) for performance under this Lease.

Ownership of fifty percent (50%) or more of the voting stock in or change of control in Lessee from the status as of the date of this Lease may not be transferred to another party without the express written consent of Lessor. The shareholders of Lessee shall execute a covenant to the effect that the sale of fifty percent (50%) or more of the voting stock in said corporation shall be

deemed an assignment.

Any assignment, transfer, lease, or contract mining arrangement, either voluntarily or involuntarily, in violation of this article, shall cause an immediate forfeiture hereof, and the rights and interests of Lessee shall forthwith cease and terminate. All of the terms, conditions, covenants, stipulations, and agreements to be performed by the parties hereto shall be binding upon their heirs, executors, administrators, successors, and assigns and shall inure to the benefit of the other of said parties and its or their heirs, executors, administrators, successors and assigns.

27.    <u>Memorandum of Lease</u>. Upon Lessee's request, Lessor shall execute and deliver to Lessee a Memorandum of Lease for recording purposes.

28.    <u>Surveys</u>. Lessee agrees to locate and survey the exterior boundary of the Leased Premises before the mining operations hereunder destroy or remove same; and when the mining is finished, the Lessee agrees as soon as practicable thereafter, to resurvey such boundary and place such permanent points and monuments as may be adequate and proper for the accurate relocation of the boundary so affected. Lessee agrees to furnish to Lessor a map or plat of the relocated boundary, certified by a licensed surveyor, together with copy of the surveyor's notes and such other supporting data as may have been used by Lessee in making such boundary relocation.

29.    <u>Timber Disclosure</u>. Kentucky May hereby provides notice to Deep Wood that Kentucky May does not own or control the timber on the property leased under this Agreement and, therefore, the timber and the rights to remove the timber from the Leased Premises are not included in this Agreement. To the best of Kentucky May's knowledge, ownership of the timber was specifically reserved by the Grantor in that certain deed by and between Marty Corporation and Kentucky May Coal Company, Inc. and is recorded in Deed Book 145, page 720 in the Knott County Clerk's office. Based on the foregoing, be advised that any unauthorized handling of the timber on the Leased Premises is a trespass. Deep Wood hereby further agrees to indemnify, defend and hold harmless Kentucky May for any damage to the timber on the Leased Premises arising from Deep Wood's operations under the Lease. The indemnity set out in this paragraph is addition to, and not in lieu of, the indemnity set out elsewhere in this Agreement.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

LESSOR:
KENTUCKY MAY COAL COMPANY,
INC.

By: _____

Its: _____

9

EXHIBIT 2
TO
LEASE AGREEMENT
BETWEEN
DIAMOND MAY COAL COMPANY
AND
DEEP WOOD MINING, LLC

THE LEASED PREMICES CONSISTS OF ONLY A PART OF THE PROPERTY DESCRIBED IN DEED BOOK 145, PAGE 720 OF THE BREATHITT COUNTY CLERK'S OFFICE.

BEING ALL OF THE SURFACE LAND LYING ABOVE THE 1080 CONTOUR ELEVATION INCLUDING ALL THE SURFACE LAND OVERLYING THE HAZARD 5-A COAL SEAM AND ALL OVERLYING COAL SEAMS. FOR A MORE DETAILED DESCRIPTION OF THE LEASED PREMICES REFER TO EXHIBIT 1 (THE MAP) ATTACHED HERETO.

The Lessor herein acquired all its right title and interest to the leased premises thru deed of conveyance dated May 27, 1981 and recorded in Deed Book 145, Page 720 of the Breathitt County Clerk's Office.

The Leased Premises are more particularly described in the following deeds of record:
Deed Book 127, Page 277
Deed Book 128, Page 184
Deed Book 126, Page 877
Deed Book 127, Page 467
Deed Book 127, Page 729
Deed Book 122, Page 467, all of which are of record in the Breathitt County Clerk's Office.

There is excepted, however, from the aforesaid conveyance that tract or parcel of land as described in a deed dated October 20, 1998 and recorded in Deed Book____, Page____ of the Breathitt County Clerk's Office, and is more particularly described as follows:

**LESSEE:**

DEEP WOOD MINING, LLC.

By: _____

Its: ___Vice President___

STATE OF _Ky._

COUNTY OF _Knott_ , TO-WIT

    I, _Stephen Dicks_ , a Notary Public of said County do hereby certify that _Leo Smith_ , its _Vice President_, who signed the writing above, for Kentucky May Coal Company, Inc., a Virginia corporation, has this day in my said County, before me acknowledged the said writing to be the act and deed of said limited partnership.

    Given under my hand and notarial seal this _10_ day of _March_ 2005.

    My commission expires the _22_ day of _January, 2009._

_____
Notary Public

STATE OF _Ky._

COUNTY OF _Knott_ , TO-WIT

    I, _Stephen Dick_ , a Notary Public of said County do hereby certify that _Douglas Terry_, its _Vice President_, who signed the writing above, for Deep Wood Mining, LLC., a _Ky._ corporation, has this day in my said County, before me acknowledged the said writing to be the act and deed of said limited partnership.

    Given under my hand and notarial seal this _9_ day of _March_ 2005.

    My commission expires the _22_ day of _January, 2009_.

_____
Notary Public

10



KY MAY COAL CO.
SURFACE

**EXHIBIT 1**

**BETWEEN**

**KENTUCKY MAY COAL CO.**

**AND**

**DEEP WOOD MINING, LLC**

- LEASE AREA

**BREATHITT COUNTY**

| Scale: 1"=1000' | Date: | |

## EXHIBIT B

### NOTIFICATION OF ACQUISITION

*117 Madison Ave Suite B*
*Whitesburg Ky 41858*

**ENTERPRISE MINING COMPANY, LLC**
*1876 YELLOW CREEK ROAD*
*SASSAFRAS, KENTUCKY 41759*
*Telephone: (606) 435-7000*
*Fax: (606) 476-2145*

May 17, 2006

Mr. Doug Terry
Deep Wood Mining Company, LLC
256 Duntreath Street
Frankfort, KY 40601

Re:     Lease Agreement dated March 11, 2005, by and between Kentucky May Coal
        Company and Deep Wood Mining, LLC ("Lease Agreement")

Dear Mr. Terry:

This letter is being sent to you to inform you that effective as of May 1, 2006, Enterprise
Mining Company, LLC ("EMC") acquired ownership of certain assets of Kentucky May
Coal Company including the property included in the above referenced Lease Agreement.

Any required notices, correspondence, or questions regarding the Lease Agreement
should be directed to:

        Enterprise Mining Company, LLC
        1876 Yellow Creek Road
        Sassafras, Kentucky 41759
        Attn: Land Department

Royalty payments will be handled out of an office located in Vinton, Virginia. All future
royalty statements and payments, or any change of address, should be directed to Mary
Meador at Enterprise Land and Reserves, Inc., P. O. Box 858, Vinton, Virginia, 24179, or
she can be reached at 540-344-4294.

EMC is a subsidiary of Alpha Natural Resources, Inc. ("ANR"). ANR is a reputable and
well known company with various coal holdings throughout Appalachia. EMC and ANR
wish to maintain a healthy relationship with all Lessees and look forward to working with
you in any future leasing matters.

Please feel free to contact us if you have any questions.

Thank you for your attention to this matter.

Sincerely,

Enterprise Mining Company, LLC
Land Department

cc:     Vicki Duffy
        Mary Meador