UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NEW LONDON TOBACCO MARKET,
INC. and FIVEMILE ENERGY, LLC,

     Plaintiffs,

v.

KENTUCKY FUEL CORPORATION and
JAMES C. JUSTICE COMPANIES, INC.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. 6:12-CV-91-GFVT-HAI

REPORT AND RECOMMENDATION

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The Court considers three motions for sanctions (D.E. 131; D.E. 134; D.E. 170) filed by

Plaintiffs New London Tobacco Market, Inc. and Fivemile Energy, LLC requesting a default

judgment and an award of attorneys' fees against Defendants. The motions were referred to the

undersigned by District Judge Van Tatenhove pursuant to 28 U.S.C. § 636(b)(1)B) to hold a

hearing if necessary and issue a recommended disposition. D.E. 154; D.E. 180.[1]

The Court held a hearing on January 10, 2014, granted Plaintiffs leave to file the latest

motion for sanctions (D.E. 170), and ordered supplemental briefing concerning the notice

required under controlling law before issuing a default judgment as a sanction and describing

proposed facts to be taken as established pursuant to Federal Rule of Civil Procedure

37(b)(2)(A)(i).[2] D.E. 169. Defendants have filed responses to each motion (see D.E. 105; D.E.

144; D.E. 174), and Plaintiffs have filed replies to each response (see D.E. 118; D.E. 150; D.E.

---

[1] A fourth (though first in time) motion for sanctions filed at Docket Entry 80 was also referred to the undersigned, and a recommendation that the motion be denied as moot was entered on February 20, 2014. D.E. 179. This recommendation was made because the relief sought in that motion for sanctions was subsumed in the subsequently filed motions for sanctions. *Id.* at 1–2. However, the Court noted that because no significant factual disputes exist, the facts described in the briefing on the motion for sanctions filed at Docket Entry 80 would be considered where relevant to the subsequently filed motions as well. *Id.* at 2. No objections to that Recommended Disposition were asserted by any party.

[2] References to specific rules of the Federal Rules of Civil Procedure are hereinafter abbreviated as "Rule __."

178).  Plaintiffs have also filed their supplemental briefing as ordered (D.E. 171; D.E. 172),

Defendants have responded (D.E. 174; D.E. 175), and Plaintiffs have replied (D.E. 177).

Without leave to do so, Plaintiffs filed an additional supplemental memorandum concerning

Defendants' purported bad faith, to which Defendants have responded.  D.E. 186; D.E. 188.

Each motion now stands fully briefed.

That briefing is dense and extensive.  Given the severity of the sanctions sought, the

Court has labored to examine and consider all aspects of the relief sought.  Based upon that

thorough review, the Court recommends that Plaintiffs' motions for sanctions be granted, in part,

and denied, in part, as described below.

## I. PROCEDURAL BACKGROUND

Plaintiffs initiated this action on May 8, 2012, through the filing of their Complaint

asserting three counts against Defendants.  D.E. 1.  On March 14, 2013, District Judge Van

Tatenhove granted leave for Plaintiffs to file their Amended Complaint (D.E. 39), which added

two counts for a total of five (D.E. 40).  The "facts" described below are based upon Plaintiffs'

factual allegations in their Amended Complaint.

Plaintiff New London Tobacco Market, Inc. ("NLTM") is a Kentucky corporation with

its principal place of business in London, Kentucky, and Mr. William G. Brownlow is its

president.  *Id.* at 1.  Plaintiff Fivemile Energy, LLC ("Fivemile") is a Tennessee limited liability

company with its principal place of business in Tennessee, and the members of Fivemile are Mr.

Brownlow and his wife, Cassandra Brownlow, both of whom are residents of Tennessee.  *Id.*

Fivemile is also the agent for NLTM, and brought this action in its capacity as NLTM's agent.

*Id.*  Defendant James C. Justice Companies, Inc. ("Justice Companies") and Kentucky Fuel

Corporation ("Kentucky Fuel") are Delaware corporations with their principal places of business

in West Virginia. *Id.* at 1–2. The Kentucky Secretary of State's website lists James C. Justice, II, Stephen W. Ball, and James T. Miller as the current officers for both Defendants.

In October 2005, NLTM acquired the membership interest in Deep Wood Mining, LLC ("Deep Wood") and the common stock in Fivemile Energy Resources, Inc. ("Fivemile Energy Resources"). D.E. 40 at 2. At that time, Deep Wood owned leases of real property ("Deep Wood leases") and had the right to mine coal on the property pursuant to a Surface Coal Mining and Reclamation Operations Permit ("SCMRO Permit"). Fivemile Energy Resources likewise owned leases of real property ("Original Fivemile leases"), but had not yet obtained a SCMRO Permit allowing it to mine coal on most of the property subject to the Original Fivemile leases. *Id.* at 2. On October 5, 2005, NLTM assigned the Deep Wood leases and SCMRO Permit, the Original Fivemile leases, and the Fivemile Energy Resources SCMRO Permit application to Kentucky Fuel. *Id.* at 3. On November 23, 2005, Justice Companies executed a guaranty agreement in which it guaranteed the obligations of Kentucky Fuel to NLTM. *Id.* On June 5, 2006, the Fivemile Energy Resources SCMRO Permit was issued. *Id.*

In general, Plaintiffs claim that Kentucky Fuel ignored its obligation to maintain both the Deep Wood and Original Fivemile leases, as well as the Deep Wood SCMRO Permit, and that Kentucky Fuel never intended to mine the properties in question. *Id.* at 3–4. Plaintiffs also claim that Kentucky Fuel did not pay the required annual minimum royalties for 2009 and 2010 to the lessors/property owners for either set of leases, and failed to sufficiently renew or extend the leases.

On September 10, 2010, the Kentucky Department of Natural Resources issued a Cessation Order to Kentucky Fuel regarding leased property covered by the Strong Brothers SCMRO Permit ("Strong Brothers property"). *Id.* at 4–5. At a later date, Kentucky Fuel no

longer had a lease on the property, and the property owners refused to lease to Kentucky Fuel because, according to Plaintiffs, Kentucky Fuel failed to report production or pay royalties in 2005. *Id.* at 5. Mr. Brownlow then formed Fivemile, which acted as an agent for NLTM to acquire the Strong Brothers property leases in order to assign the leases to Kentucky Fuel. *Id.* Fivemile was also used to acquire new leases from many of the prior lessors of the property covered by the Fivemile and Deep Wood SCMRO Permits. *Id.*

On or about November 22, 2010, Plaintiffs, Defendants, and Fivemile Energy Resources entered into an agreement titled "Fourth Amendment of Assignment of Leases and Permits" ("the Fourth Amendment"). *Id.* The Fourth Amendment contained several provisions, including: 1) that Kentucky Fuel re-assign to NLTM the Deep Wood leases and SCMRO Permit; 2) that Fivemile assign to Kentucky Fuel the Deep Wood and Original Fivemile leases it had reacquired (collectively "the Fivemile leases"), which did not include all of the previous leases; 3) Kentucky Fuel's covenant "to use commercial and reasonable good faith and best efforts to maximize within the constraints of industry standards the amount of coal extracted from these real properties;" 4) that Kentucky Fuel pay certain royalties to NLTM for coal mined on the Original and new Fivemile leases; 5) that Kentucky Fuel pay NLTM a non-recoupable minimum monthly royalty of $10,000.00 per month for ten months beginning on December 1, 2010, a single non-recoupable royalty on November 1, 2011, and an annual minimum royalty ("the minimum royalties") thereafter; 6) that Kentucky Fuel pay NLTM a monthly retainer fee; 7) that Kentucky Fuel provide to Fivemile all payments due under the Strong Brothers leases within seven days of any request for such payment; and 8) Justice Companies' reaffirmation of its obligations under the guaranty, including the obligations of Kentucky Fuel under the original guaranty and the Fourth Amendment. *Id.* at 5–7.

Plaintiffs then identify nine examples of evidence of Kentucky Fuel's bad faith non-performance of the provisions of the Fourth Amendment. *Id.* at 7–9. Finally, the Amended Complaint lists the five counts charged against Defendants. The first count alleges that Defendants breached the Fourth Amendment by failing to pay NLTM the minimum royalties and monthly retainer fee. *Id.* at 10–11. Count II alleges that Defendants breached the Fourth Amendment by failing to mine coal on the Fivemile properties, thus depriving Plaintiffs of royalty payments based on tons of coal mined. *Id.* at 11. Count III alleges that Defendants have failed to reimburse Fivemile for making lease payments due under the Strong Brothers leases. *Id.* at 12. Count IV alleges that Defendants have failed to mine the property covered by the Deep Wood leases and SCMRO Permit. *Id.* at 12–14. Finally, Count V alleges that Defendants committed fraud by promising to make payments pursuant to the Fourth Amendment in order to induce NLTM to enter in to the Fourth Amendment, all the while having no intention of doing so. *Id.* at 14.

## II. PROPOSED FINDINGS OF FACT[3]

### A. Defendants' Initial Disclosures

Judge Van Tatenhove ordered Defendants to serve their initial disclosures pursuant to Rule 26(a)(1) by August 30, 2012. D.E. 16 at 1. Those disclosures were not provided as ordered. Instead, written disclosures were served on October 3, 2012, but Defendants indicated only that documents were being gathered for review despite the dictates of Rule 26(a)(1)(A)(ii). D.E. 80-1 at 1–2. After an initial call with the undersigned concerning the production of such documents that included a reminder to defense counsel of the importance of keeping the case on track with the scheduling order (D.E. 22), the Court ordered, on November 27, 2012, the

---

[3] "To recite the facts of this case is nearly to decide it." *Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 954 (6th Cir. 2013).

production of all documents identified in Defendants' initial disclosures "not later than November 27, 2012." D.E. 24. The documents were served via mail postmarked November 28, 2012. D.E. 80-1 at 2.

**B. Proceedings Concerning Defendants' Counsel of Record**

On May 8, 2012, when the case was initiated, Billy R. Shelton was counsel of record for Defendants. On February 15, 2013, in response to an email from Plaintiffs' counsel inquiring as to responses to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, Mr. Shelton indicated that he would be withdrawing from the case and that he hoped to have a substitution of counsel motion filed by Monday (February 18, 2013). D.E. 56-5 at 5.

On March 4, 2013, the Court held a telephonic status conference to discuss the schedule and discovery progress. D.E. 36. During that call, Defendants stated that paperwork for the application of corporate counsel, Allen W. Dudley, Jr., to practice pro hac vice was in progress. *Id.* The Court ordered that paperwork to be filed promptly. *Id.* Mr. Dudley forwarded his certificate of good standing to Mr. Shelton on April 24, 2013, more than seven weeks after the Court's Order. D.E. 72 at 2. Mr. Shelton filed his motion to withdraw on June 24, 2013, two months later. D.E. 60. On July 2, 2013, the Court granted Mr. Shelton's motion to withdraw and ordered Defendants to obtain new counsel and have such counsel enter an appearance within 14 days. D.E. 62.

Barry D. Hunter, Medrith Lee Norman, and Rebekah G. Ballard, all of the firm Frost Brown Todd, entered their appearances on July 22, 2013, twenty days after the deadline set by the Court's order. D.E. 79. Also on July 22, 2013, Plaintiffs filed their first motion for sanctions, which argued that Defendants did not comply with the Federal Rules of Civil Procedure or the Court's Orders, particularly in regard to obtaining counsel of record. D.E. 80.

The next day, July 23, 2013, Frost Brown Todd filed a notice of withdrawal (D.E. 81), which the Court denied because the notice did not comply with Local Civil Rule 83.6. D.E. 87. Counsel then filed a motion to withdraw on July 26, 2013 (D.E. 89), which the Court granted in a telephonic conference on July 29, 2013 (D.E. 101). Also on July 29, 2013, more than three months after sending Mr. Shelton his certificate of good standing, Mr. Dudley filed a motion for admission to practice pro hac vice. D.E. 95. On July 30, 2013, the Court granted the motion (D.E. 97), and Mr. Dudley has remained counsel of record since that time. According to Plaintiffs, these issues with substitution of counsel prevented depositions of the corporate Defendants and of various employees (both current and former) from occurring as scheduled. D.E. 80-1 at 8.

Defendants filed a response to Plaintiffs' first motion for sanctions on August 7, 2013. D.E. 105. Plaintiffs filed a reply on August 23, 2013. D.E. 119. On December 12, 2013, District Judge Van Tatenhove referred the pending motions for sanctions to the undersigned (D.E. 154), and oral argument was held on January 10, 2014 (D.E. 169). At the hearing, Plaintiffs' counsel argued that while Defendants eventually acquired counsel, "the ripple effect of [Defendants' failure to timely acquire new counsel] lingers on."

## C. Discovery Into the Sale of Fivemile Leases and Permits & Outstanding Royalties

Plaintiffs propounded their First Set of Interrogatories and Requests for Production of documents on January 4, 2013. D.E. 80-1 at 3. Under Rules 33 and 34, Defendants' responses to Plaintiffs' discovery were due within thirty days.[4] Plaintiffs propounded their second set of

---

[4] Federal Rule of Civil Procedure 33(b)(2) provides that a party who has been served interrogatories "must serve its answers and any objections within 30 days after being served with the interrogatories," unless the parties stipulated to a different time period under Rule 29. Federal Rule of Civil Procedure 34(b)(2)(A) likewise provides that "[t]he party to whom the request [for production] is directed must respond in writing within 30 days after being served," unless the parties stipulated to a different time period under Rule 29.

requests for production of documents on January 18, 2013 (D.E. 80-1 at 3), again triggering a thirty-day response period.

On February 20, 2013, the Court scheduled a telephonic conference for February 21, 2013, after Plaintiffs' counsel contacted Chambers to request such a conference to resolve the issue of Defendants' failure to respond to Plaintiffs' discovery. D.E. 33. The telephonic conference was later rescheduled for February 27, 2013. D.E. 34. During the conference, the Court ordered Defendants to serve their written responses to Plaintiffs' first set of written discovery requests not later than March 7, 2013, and their written responses to Plaintiffs' second set of requests for production of documents not later than March 14, 2013. D.E. 35. The Court further ordered Defendants to begin the production of responsive documents not later than March 7, 2013, and ordered that that production be completed by March 21, 2013. *Id.*

Defendants responded and provided documents in a timely manner, however, Plaintiffs believed Defendants' responses were incomplete. D.E. 56-1 at 2. On May 6, 2013, the Court conducted a telephonic status conference, and scheduled another telephonic status conference for June 6, 2013, as the Court was holding monthly status conferences in this case at that point. D.E. 53. During the June 6, 2013, telephonic conference, the Court granted Plaintiffs leave to file a motion to compel certain items of discovery on or before June 17, 2013. D.E. 55. On June 17, 2013, Plaintiffs filed a motion to compel, seeking, *inter alia*, documents relating to the sale of the Fivemile leases and permits to a Greek entity and supplemental responses related to unpaid annual minimum royalties. D.E. 56-1 at 6–8. Defendants responded to the motion to compel on June 24, 2013, (D.E. 58), and Plaintiffs filed a reply on July 3, 2013 (D.E. 65).

On July 30, 2013, the Court granted in part Plaintiffs' motion to compel. D.E. 99. The Court ordered Defendants to produce documents related to the reported sale of the Fivemile

leases and permits requested by Plaintiffs' Requests for Production Nos. 7–8 within seven days of the date of the order. *Id.* The Court further ordered Defendants to supplement their responses to Plaintiffs' Interrogatories Nos. 8–9 and Request for Production No. 1 concerning minimum annual royalties due in 2013 within ten days of the date of the order.[5] *Id.* Plaintiffs contend that Defendants failed to comply with both aspects of the Court's Order.

On August 8, 2013, Defendants filed a motion for a protective order, arguing that dissemination of documents related to the reported sale of the Fivemile leases and permits would, without such a protective order, prejudice Defendants. D.E. 103. The Court denied the motion as improperly filed, and scheduled a telephonic status conference for August 9, 2013. D.E 106. The telephonic status conference ultimately occurred on August 13, 2013, during which the Court ordered the Clerk to re-open Defendants' motion for a protective order. D.E. 114. The Court also ordered Defendants to supplement the motion not later than August 16, 2013, Plaintiffs to respond by August 26, 2013, and Defendants to file any reply by September 3, 2013. *Id.*

On September 10, 2013, following the briefing of the supplemental motion for a protective order (D.E. 115; *see* D.E. 119; D.E. 121), the Court issued an order granting in part and denying in part Defendants' motion for a protective order. D.E. 122. The Court found that there was a need for a protective order, but that Defendants' proposed protective order overreached in two ways, and thus ordered the parties to file a proposed agreed protective order in conformity with the Court's Order on or before September 18, 2013. *Id.* The Court also ordered Defendants to produce documents relating to the reported sale of the Fivemile leases and

---

[5] Reasonable expenses, including attorneys' fees, were also awarded pursuant to Rule 37(a)(5)(C). D.E. 99; D.E. 116.

permits within three days of the entry of the protective order (*Id.*), which was approved by the Court on September 19, 2013.  D.E. 124.

On October 8, 2013, Plaintiffs filed their second motion for sanctions, stating that they had not received the documentation related to the Fivemile leases and permits as ordered by the Court (*see* D.E. 122) or any supplementation of the discovery responses related to the minimum royalty payments as ordered (*see* D.E. 99).  D.E. 131.  Plaintiffs initially claimed that the production of documents related to the sale of the Fivemile leases and permits was insufficient because only 41 documents were produced and no "electronic" documents were produced, which Plaintiffs contended could not possibly have been a complete production because a complicated transaction like the one at issue would generate voluminous documentation.  D.E. 131-1 at 4. Defendants then produced "nearly" 1,000 emails on October 25, 2013 (D.E. 144), despite the fact that the Court ordered production to occur within three days of September 19, 2013.  D.E. 122.  Plaintiffs contend not only that this production was untimely, but that the production constitutes a "document dump" and because the documents were not Bates-stamped, there is no record of what was, and was not, produced, and therefore there is no way to determine if the production was actually complete.  D.E. 131-1 at 4.

Plaintiffs contend that no supplemental discovery responses concerning minimum royalty payments made to Fivemile landowners were ever served as ordered by the Court, but that they have independently confirmed that payments were made by Defendants in 2013 (*see* D.E. 131-2), which would necessarily mean that information required to be disclosed existed.  *Id.* Plaintiffs also contend that the deposition of Mr. Ball, in the capacity as a Rule 30(b)(6) designee, confirms that additional payment activity had occurred in 2013 that was not provided

by Defendants to Plaintiffs, and that the previously provided information was inaccurate. D.E. 150 at 6.

**D. Discovery Into Defendants' Financial Information from 2005–Present**

Plaintiffs' request for Defendants' financial information from 2005–present originated in the same way as the request for the Fivemile leases and SCMRO Permit documentation: in Plaintiffs' First Set of written Interrogatories and Requests for Production propounded on January 4, 2013, with Defendants' responses due thirty days later. D.E. 80-1 at 3. On April 9, 2013, the Court ordered Defendants to produce copies of pages from their tax returns from 2005–present (but the Court allowed confidential financial information to be redacted) and copies of all balance sheets and financial statements prepared from 2005–present that list any address for Kentucky Fuel by April 9, 2013. D.E. 47. Plaintiffs did request complete and unredacted tax returns from 2005–present, but agreed to defer discovery of same until Defendants' motion to dismiss Plaintiffs' fraud claim was denied, or to withdraw their request if the motion was granted. *Id.* Specifically, Defendants were ordered to produce those documents within fifteen days of entry of an order denying the motion to dismiss. *Id.* However, the Court granted Plaintiffs permission to file a motion to compel those documents before adjudication of Defendants' motion to dismiss if Plaintiffs believed that "their discovery and trial preparation are being impeded by lack of the complete and unredacted financial documents discussed herein." *Id.*

Plaintiffs filed a motion to compel on July 18, 2013, seeking Defendants' tax returns, balance sheets, and financial statements from 2005–present. D.E. 76. Plaintiffs stated in their motion that because the discovery deadline at that time was August 31, 2013, Plaintiffs needed to acquire the documents promptly or else they would lose the opportunity to question Defendants

about them.  *Id.*  Defendants filed a response to the second motion to compel on August 7, 2013 (D.E. 104), and Plaintiffs filed a reply the following day (D.E. 108).  Plaintiffs filed a second reply on August 23, 2013.  D.E. 117.  On October 8, 2013, the Court granted Plaintiffs' motion to compel and ordered Defendants to produce their tax returns, balance sheets, and financial statements from 2005–present within seven days of the date of the order, meaning a deadline of October 15, 2013.  D.E. 128.

On October 15, 2013, Defendants filed objections to this Court's order requiring production of tax returns, balance sheets, and financial statements.  D.E. 133.  On October 18, 2013, Plaintiffs filed a supplement to their second motion for sanctions (D.E. 131), stating that they had not received the documentation ordered, and argued that because Defendants had not obtained a stay of this Court's Order, they were required to comply with the Order and timely produce the discovery.  D.E. 134.  On December 16, 2013, Judge Van Tatenhove overruled Defendants' objections.  D.E. 156.

At the oral argument held on the motions for sanctions on January 10, 2014, defense counsel asked for leave to file a motion to argue that the financial documents of Justice Companies need not be produced because its only role was as a guarantor, which would leave only the financial information of Kentucky Fuel to be produced.  Of course, by that time, discovery had been closed for approximately six weeks.  *See* D.E. 98 at 1.  Recognizing that this was a request for reconsideration asserting an objection that was well-known to Defendants from the outset of the case but never previously raised, the undersigned rejected defense counsel's request to seek reconsideration.  D.E. 169.

Following the oral argument, Plaintiffs' counsel received year-end financial statements for Kentucky Fuel for only 2010, 2011, and 2012, but no tax returns were produced for either

Kentucky Fuel or Justice Companies, though apparently the returns for Kentucky Fuel are "rolled up into" its parent, Justice Companies. D.E. 170-2; D.E. 175 at 2. Indeed, Defendants provided no documents whatsoever concerning Justice Companies. *Id.*

**E. Deposition of James C. Justice, II**

Plaintiffs' initially noticed the deposition of James C. Justice, II, a corporate officer and director of both Defendants, to occur on July 31, 2013, at 9:00 a.m. D.E. 66. On July 26, 2013, Defendants filed a Motion for Protective Order, seeking to delay the depositions noticed by Plaintiffs for thirty days in order for new counsel of record to familiarize themselves with the case and comply with any proper outstanding discovery requests. D.E. 90.

The Court held a telephonic conference on July 29, 2013, to discuss Defendants' motions for withdrawal of counsel (D.E. 89), for a protective order (D.E. 90), and for an extension of time to complete discovery (D.E. 91). D.E. 92; D.E. 101. Following the conference, the Court issued an order which, *inter alia*, denied Defendants' motion for a protective order as moot because the parties agreed to continue the depositions "to be reset at a date, time, and location as the parties may agree, or, absent such an agreement, at a date, time, and location of [Plaintiffs'] choosing." D.E. 98.

Plaintiffs' counsel emailed defense counsel on October 18, 2013, offering to take the requested depositions at defense counsel's office in Roanoke, Virginia rather than in Knoxville, Tennessee, "provided that the Defendants agree to produce their employees and other persons within their control (such as Steve Ball) in Roanoke, at the Defendants' expense with a subpoena." D.E. 150-2. On October 22, 2013, Plaintiffs' counsel re-noticed Mr. Justice's deposition and that of Mr. Ball for November 6, 2013, in Knoxville, Tennessee. D.E. 140; D.E.

141.  Defense counsel emailed Plaintiffs' counsel the same day questioning the location of the depositions.  D.E. 150-3.

On November 4, 2013, Plaintiffs' counsel agreed to move the depositions back one day, thus scheduling Mr. Ball and Mr. Justice for deposition on November 7, 2013.  D.E. 150-5.  On November 6, 2013, defense counsel alerted Plaintiffs' counsel that Mr. Ball, scheduled for the following day along with Mr. Justice, would not be able to attend his deposition, which Plaintiffs' counsel construed to mean that neither Mr. Ball nor Mr. Justice would be appearing for their depositions.  D.E. 150-6.  Discussions ensued concerning rescheduling the depositions.  By letter dated November 4, 2013, Plaintiffs' counsel confirmed to Defendants' counsel that, as an accommodation, Mr. Justice would be deposed on November 7 beginning at 9:00 a.m., and Mr. Ball's deposition would be on the same day at 1:30.  D.E. 150-5.  Mr. Ball was deposed as agreed beginning at 1:30 p.m., but Mr. Justice did not appear.  D.E. 170-1 at 3.  At oral argument, defense counsel contended that, while the notice to take Mr. Justice's deposition was not improper per se, counsel was not appropriately consulted before the depositions were set.

### F. Summary of Proposed Factual Findings

Based upon the foregoing, Plaintiffs have established that:

1. Defendants failed to produce documents related to the reported sale of the Fivemile leases and permits requested by Plaintiffs' Requests for Production Nos. 7–8 within three days of the September 19, 2013 entry of the Protective Order at Docket Entry 124 because nearly 1,000 documents were not produced until October 25, 2013.

2. Defendants failed to supplement their responses to Plaintiffs' Interrogatories Nos. 8–9 and Request for Production No. 1 concerning minimum annual royalties due in 2013 because no supplementation was ever made.

3. Defendants failed to produce all the financial documents ordered by the Court to be produced on October 15, 2013, despite the fact that District Judge Van Tatenhove overruled Defendants' objections to that order.

4. Mr. Justice failed to appear for his properly noticed deposition that was scheduled in accordance with the Court's Order of July 30, 2013.

## III. PROPOSED CONCLUSIONS OF LAW

### A. Entry of Partial Default Judgment and an Award of Attorneys' Fees Are Appropriate Pursuant to Rule 37(b)(2)(A)

Rule 37(b)(2)(A) allows for the imposition of various sanctions "[i]f a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Rule specifically enumerates sanctions that can be imposed, including "rendering a default judgment against the disobedient party." *Id*. at Rule 37(b)(2)(A)(vi).[6] The Rule further provides that "[i]nstead of or in addition . . . the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Case law firmly establishes that entry of a default judgment is not an abuse of discretion "if a party has the ability to comply with a discovery order and does not." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). The Court is required to consider what are sometimes referred to as the "*Regional Refuse*" factors, specifically whether the failure to cooperate in discovery is the result of willfulness, bad faith, or fault; the prejudice caused to the moving party; whether the disobedient party was warned that its failure to cooperate could

---

[6] Plaintiffs also vaguely refer to the Court's inherent power to impose sanctions pursuant to *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) in their motions. *See* D.E. 80 at 6; D.E. 131-1 at 9-10. At oral argument, however, Plaintiffs' counsel acknowledged that Rule 37 squarely covers Defendants' non-compliance and that therefore use of the Court's inherent authority to sanction is not necessary.

result in entry of a default judgment; and the imposition of less drastic sanctions. *Id. See also Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988). "Although no one factor is dispositive, dismissal [or default judgment] is proper if the record demonstrates delay or contumacious conduct." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002).

**1. Defendants' violations were the product of bad faith and contumacious conduct**

The record amply supports a finding of bad faith and contumacious conduct for many reasons. Defendants have violated numerous Court orders specifically requiring the disclosure of certain information despite having the ability to comply. No supplementation concerning minimum annual royalties due in 2013 has ever been made. Defendants could easily have searched for and timely produced the 1,000 emails concerning the sale of the Fivemile leases and permits that were produced a month after the deadline created by the combination of the Court's Orders of September 10, 2013, and September 19, 2013. *See* D.E. 122; 124. During the oral argument, counsel for Defendants indicated that he could get the financial documents for Justice Companies "promptly" and "immediately," meaning they certainly should have been produced as ordered by the Court. Instead, Defendants chose not to do so apparently in reliance upon an objection not presented to the Court until the oral argument on the sanctions motions, specifically that, as a mere guarantor, the financial information of Justice Companies is not relevant to Plaintiffs' fraud claim. *See* D.E. 47; D.E. 133. Defendants plainly had the ability to comply with the Court's orders, but chose to treat them as mere paper tigers. Indeed, having appropriately responded to some of Plaintiffs' discovery, but refusing other discovery even after Court-ordered, Defendants' refusal is the very definition of contumaciousness.

Defendants cite an unpublished Opinion and Order entered by Magistrate Judge Edward B. Atkins for the proposition that Plaintiffs must provide "compelling evidence" to support a

finding of bad faith. *See Martin Co. Coal Corp. v. Universal Underwriters Ins. Servs., Inc.*, No. 7:08-CV-93-ART-EBA, Opinion & Order dated March 4, 2011, filed at Docket Entry 152. This Court's reading of that Opinion is that Judge Atkins did not intend the phrase "compelling evidence" to describe a sanctions movant's evidentiary burden, and Defendants offer no authority suggesting otherwise. Judge Atkins was summarizing his finding, not articulating such a subtle point of law.

Defendants no doubt rely upon this single phrase from Judge Atkins's Opinion in an attempt to heighten Plaintiffs' burden of proof because Defendants have offered no legitimate explanation for their pattern of delay and non-compliance. That pattern began at the very outset of the case with their failure to serve initial disclosures as ordered. It continued at nearly every turn in discovery, except for information that Defendants apparently were willing to provide. It continued through and following the oral argument on the various motions for sanctions the Court now considers. Indeed, that oral argument was held the day that the pretrial conference in this case was scheduled to occur. *See* D.E. 154 (converting pretrial conference to a status conference); D.E. 159 (converting the status conference to oral argument). At that time, Defendants still had not provided the full and complete financial information or supplemental responses concerning minimum royalty payments as ordered by the Court. Defendants have ***never*** claimed that they are unable to comply with this Court's orders. Case law amply supports default judgment based upon such a record. *See Reyes*, 307 F.3d at 458 (dismissal [or by extension default judgment under *Abbe*] is appropriate if the record demonstrates delay or contumacious conduct); *Abbe*, 916 F.2d at 1079 (willful bad faith as opposed to inability to comply supports entry of default judgment). Thus, even the threat of default judgment and appearing before the Court to defend the motions for sanctions was not sufficient to foster

compliance by Defendants.  No steps were taken to produce the supplemental minimum royalty information, the financial information concerning Justice Companies, or the complete financial documents for Kentucky Fuel.  Bad faith is therefore apparent.[7]

Defendants' bad faith, contumacious conduct, and resultant delays in case progress strongly favor the entry of a default judgment.

## 2. Plaintiffs were prejudiced by Defendants' bad faith refusal to provide discovery

The record establishes many forms of prejudice to Plaintiffs.  First, as the claimants in the case, their day in court has been delayed by Defendants' misconduct.  Indeed, despite the parties jointly indicating that the case would be ready for trial by January 6, 2014 (*see* D.E. 15 at 3), trial has now been delayed by at least several months.  While it is true that the rolling nature of Plaintiffs' motions for sanctions have contributed to that delay, obviously the detailed analysis of the severe sanctions sought requires time-consuming care and attention.  To be clear, Plaintiffs have validly moved for sanctions, and any delay caused by filing those motions is derivative of the underlying delays in discovery caused by Defendants.

Second, the delays in orderly written discovery necessarily interfered with Plaintiffs' discovery by deposition.  Plaintiffs could not meaningfully assess whom to depose or when to do so without having the written discovery the Court ordered to be produced.

Third, Defendants have obstructed the search for truth in this case by withholding information ordered to be produced.  Discovery is intended as an orderly process to allow the parties to fully investigate the claims and defenses to then allow the fact-finder to perform its function.  Defendants have prevented that process from working effectively by withholding

---

[7] Plaintiffs have also attempted to establish that Defendants' tactics in this case are not isolated instances of noncompliance, but are instead the result of their typical business practice of delay.  *See* D.E. 186.  To support that contention, Plaintiffs rely upon various findings concerning similar conduct in other forums.  *See id*.  However, what matters to this Court is Defendants' conduct in this case and how that conduct violated this Court's orders.

information the Court has determined to be subject to discovery. Indeed, Defendants have only selectively disclosed information to Plaintiffs, meaning produced information they intend to share but withholding information they want to keep from the fact-finder. For instance, part of Plaintiffs' theory is that Defendants violated the covenant in the Fourth Amendment "to use commercial and reasonable good faith and best efforts to maximize within the constraints of industry standards the amount of coal extracted from these coal properties." D.E. 40 at 6. Obviously, because a purchaser presumably would not purchase a worthless asset, information concerning the sale of the Fivemile leases and permits is highly relevant to whether coal was mineable and, if so, its value. In other words, Plaintiffs certainly had the right of full discovery into all aspects of that transaction. Defendants, however, failed to timely comply with the Court's orders requiring that discovery. Were this prejudice a matter of a short, isolated delay, the prejudice would not be severe enough to warrant sanctions. Here, however, Defendants stubbornly evaded Plaintiffs' discovery requests for months and produced the 1,000 emails concerning the sale of the Fivemile leases and permits a month after ordered to do so and with only a month left in discovery for Plaintiffs to investigate a complicated transaction. When cast against the backdrop of Defendants' various delays and obstructive tactics in the case as a whole, the prejudice caused by this delayed production takes on greater significance.

Additionally, it is impossible to assess the extent of the prejudice to Plaintiffs caused by Defendants' failure to provide the supplemental discovery concerning minimum royalty payments made in 2013 and failure to provide all the financial information ordered to be produced. Defendants have merely stubbornly withheld that information, so its impact upon Plaintiffs' case preparation and presentation is unknown.

Finally, Plaintiffs have wasted "time, money, and effort in pursuit of cooperation which [Defendants] were legally obligated to provide." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997).

At oral argument, Defendants attempted to minimize the prejudice caused by arguing that during a Rule 30(b)(6) deposition of Kentucky Fuel, it was admitted that no steps had been taken to mine coal due to market conditions. The argument goes that such admission is the critical piece of evidence Plaintiffs have been seeking in the case all along, and that other facts Plaintiffs might have established through proper discovery would therefore have minimal impact on the case as a whole. But it is not up to Defendants to determine what is or is not sufficiently important to Plaintiffs to prove their case. The Rules and this Court's orders entitle Plaintiffs to full discovery, but that was denied due to Defendants' discovery misconduct.

The prejudice factor strongly favors the entry of default judgment.

### 3. Defendants were sufficiently on notice of the possibility of default judgment

Next, the Court considers whether the disobedient party "was warned that failure to cooperate could lead to dismissal [or default judgment]." *Reg'l Refuse*, 842 F.2d at 155. It is true that the Court never expressly warned Defendants that default judgment was possible. However, such an express warning is not required and "[t]here is no magic words prerequisite to dismissal [or default judgment] under Rule 37(b)." *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (affirming a dismissal under Rule 37(b) despite the argument that there was no explicit warning of dismissal). Indeed, "[n]o one factor is dispositive" in the analysis of whether default judgment is appropriate pursuant to Rule 37(b). *Id.*

Defendants were undoubtedly on notice that their misconduct could result in harsh sanctions for many reasons. Plaintiffs' first motion for sanctions in the form of default judgment

was filed on October 8, 2013. D.E. 131. The second such motion was filed on October 18, 2013. D.E. 134. Yet Defendants' conduct in violation of this Court's orders persisted and continues to this day—long after oral argument was held on the motions. As in *Universal Health Group*, after Plaintiffs sought the entry of a default judgment, Defendants were on clear notice that "continued abuses could cause that result" but they continued to violate this Court's orders. *Universal Health Grp.*, 703 F.3d at 956. *See also Harmon*, 110 F.3d at 368 (holding that a pending motion to dismiss was sufficient to put the sanctioned party on notice that the court was contemplating dismissal). Additionally, discovery sanctions in the form of attorneys' fees were previously awarded to Plaintiffs pursuant to Rule 37(a)(5)(A), so the risk of additional sanctions was evident. D.E. 116.

Finally, even if an express warning of the entry of default judgment from this Court were required, no one *Regional Refuse* factor is determinative. *Reyes*, 307 F.3d at 458 ("[N]o one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct."). In that sense, default judgment is warranted on the basis of Defendants' bad faith and contumacious conduct, the prejudice described above, and the ineffectiveness of lesser sanctions. Indeed, "where a plaintiff has not been given notice that dismissal [or default judgment] is contemplated, 'a district court should impose a penalty short of dismissal [or default judgment] **unless the derelict party has engaged in 'bad faith for contumacious conduct.'**'" *Harmon*, 110 F.3d at 267 (quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)) (emphasis added). Thus, the findings above of bad faith and contumacious conduct adequately support the entry of default judgment despite the lack of express notice to Defendants by the Court of such a possibility.

### 4. Less drastic sanctions do not sufficiently address Defendants' conduct

The Court has thoroughly considered all sanctions enumerated in Rule 37(b)(2), and finds that only entry of a default judgment sufficiently addresses Defendants' misconduct in this case. This is so for many reasons. First, lesser sanctions were previously imposed in the form of attorneys' fees pursuant to Rule 37(a)(5)(A). *See* D.E. 99; D.E. 116. Indeed, those sanctions were awarded in connection with the discovery of the very documents relating to the sale of the Fivemile leases and permits that Defendants later produced in an untimely fashion. In other words, even a monetary sanction imposed in connection with an order compelling production was not sufficient to result in compliance by Defendants.

At the Court's request, Plaintiffs have detailed potential lesser sanctions for the Court's consideration. Specifically, Plaintiffs have briefed potential facts to be taken as true pursuant to Rule 37(b)(2)(A)(i), which the Court has thoroughly reviewed. *See* D.E. 172. Additionally, Plaintiffs originally moved for sanctions only in the form of striking Defendants' Answer and affirmative defenses, as well as an award of attorneys' fees. D.E. 80. Then Plaintiffs moved for harsher sanctions in the form of entry of a default judgment. *See* D.E. 131. Thus, the stakes steadily increased in severity. It was apparent during oral argument that the Court would thoroughly analyze the sanctions requests, meaning that Defendants knew well the potential consequences of their behavior. However, Defendants' violations continued even after oral argument was held on the motions for sanctions. On this record, the Court can fathom no sanction that will result in appropriate compliance by Defendants or sufficiently address Defendants' behavior other than entry of default judgment. It is clear that Defendants have treated this Court's orders as elective, which cannot be countenanced.

Thus, this factor favors entry of default judgment.

**B. Entry of Default Judgment and an Award of Attorneys' Fees are Appropriate Pursuant to Rule 37(d)**

Plaintiffs separately move for entry of default judgment for Mr. Justice's failure to appear at his deposition on November 7, 2013, but do so against the backdrop of Defendants' various violations of the Court's orders described above. D.E. 170. The Rule provides that "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party of party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A). The sanctions available are those listed in Rule 37(b)(2)(A)(i)–(vi), which include the entry of a default judgment. *See* Fed. R. Civ. P. 37(d)(3). Reasonable expenses, including attorneys' fees, "caused by the failure" are to be awarded "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*.

Plaintiffs describe Mr. Justice as a corporate officer and director of both Defendants. D.E. 66. Originally noticed for July 31, 2013, the Court ordered, based upon the agreement of the parties, that his deposition (and others) would be "reset at a date, time, and location as the parties may agree, or, absent such an agreement, at a date, time, and location of [Plaintiffs'] choosing." D.E. 98 at 1. The deposition was re-noticed to occur on November 6, 2013, but then following the discussions between counsel described in Part I.E., was reset to occur on November 7, 2013. D.E. 150-5. It is undisputed that Mr. Justice did not appear for his deposition.

No explanation has ever been offered by Defendants as to why Mr. Justice did not appear, nor is there any claim that he was unable to appear. Instead, the record reflects (and it is undisputed) that Mr. Justice flew on a private plane with Mr. Ball from Chicago to Roanoke, Virginia, Mr. Justice disembarked, and the plane continued to Knoxville to allow Mr. Ball to be

deposed as scheduled. D.E. 170-1 at 3–4. Why Mr. Justice did not remain on the plane to appear for his deposition properly scheduled in accordance with this Court's order of July 30, 2013, is a mystery.

The consequences of that failure to appear are clear—Plaintiffs were prejudiced again in their legitimate discovery efforts. According to Plaintiffs, Mr. Justice was involved in the negotiation of the Fourth Amendment that forms the basis of Plaintiffs' various causes of action D.E. 170-1 at 4. At a minimum then, Mr. Justice is an important fact witness concerning Plaintiffs' fraud claim because his knowledge of the negotiations could shed light on Defendants' intent when entering into the Fourth Amendment. Mr. Justice also personally approved all of Kentucky Fuel's expenditures, including payments to Plaintiffs, and made the decision not to mine the Fivemile property which is the central issue in the case. *Id.* Thus, by failing to appear for his deposition, Mr. Justice deprived Plaintiffs of legitimate and potentially highly important discovery.

Defendants' arguments that this failure to attend is not sanctionable are unavailing. First, Defendants argue that Plaintiffs' Rule 37(d) motion does not contain the certification required by Rule 37(d)(1)(B), which is true. However, the motion was filed with specific leave to do so granted by the Court (D.E. 169), which obviates the need for the meet-and-confer requirements of Rule 37(d)(1)(B). This case has reached the point at which it must proceed to disposition on the merits and the record of previous violations of Court orders by Defendants compels the conclusion that it is inappropriate to re-open discovery to require this meet-and-confer, which would reward Defendants for their dilatory tactics.

Second, Defendants claim that Mr. Justice's deposition was not scheduled in accordance with the Court's order of July 30, 2013, because that order required an attempt to agree to a

deposition schedule before Plaintiffs had the right to unilaterally schedule the deposition on their own terms. Defendants claim that Plaintiffs did not make good on their obligation to try to agree because after questioning on October 18, 2013, whether deponents would be produced by agreement in Roanoke as an accommodation to Defendants, Mr. Justice's deposition notice was served just two business days later (on October 22, 2013) to occur in Knoxville, meaning defense counsel was not given a reasonable opportunity to respond to the proposed accommodation. The record, however, reflects sufficient attempts by Plaintiffs to schedule the depositions of Mr. Ball and Mr. Justice by agreement so as to comply with this Court's July 30, 2013 order and support the conclusion that Mr. Justice's deposition was properly noticed.

Finally, Defendants' attempt to minimize the prejudice by claiming that deposing Mr. Ball was sufficient to address the matters Plaintiffs intended to ask Mr. Justice about is meritless. Mr. Justice was to be deposed as a fact witness, and the record establishes Plaintiffs' right to do so. Defendants do not have the right to pick and choose which depositions they will allow or are important to Plaintiffs.

When viewed in the context of Defendants' various violations of this Court's orders, Mr. Justice's entirely unexplained failure to attend his properly noticed deposition warrants the entry of default judgment. For all the reasons stated above, including that this Court has no reason to expect that Mr. Justice would appear at a deposition at this point if ordered, lesser sanctions do not sufficiently address Defendants' misconduct.

### III. PARTIAL DEFAULT JUDGMENT AS TO LIABILITY AND ATTORNEYS' FEES ARE THE APPROPRIATE SANCTIONS

Rule 37, its interpretive case law, and principles of fairness establish that any sanction imposed must be proportional to the violative conduct and its impact. Rule 37(b)(2)(A) identifies various sanctions available to the Court with severity escalating to dismissal or the

entry of default judgment. Case law indicates those lesser sanctions are required to be considered, which the Court has done, and that any request for sanctions should be met by the Court with a "measured" response. *See Universal Health Grp.*, 703 F.3d at 956 (noting the *Regional Refuse* factor of whether less drastic sanctions were considered and emphasizing a magistrate judge's "measured response" to an initial request for sanctions). The Court is mindful that the entry of a default judgment would deprive Defendants of their day in court, and takes that consequence very seriously. Indeed, at the oral argument, it was the Court (as opposed to either counsel) that raised the fundamental consideration of "whether there is a sufficient relationship between the discovery and the merits sought to be foreclosed by the sanction to legitimate depriving a party of the opportunity to litigate the merits." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2283 (3d ed. 2013). As the Rule puts it, any order imposing sanctions must be "just." Fed. R. Civ. P. 37(b)(2)(A).

But sanctions should be imposed where appropriate to protect this Court's authority and processes. "Too often the consequences [of violations of the Rules] are borne only by the innocent party, who must live with the violation . . . or else pay to brief and argue a motion to compel the offending party to do what the Rules required it to do all along." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 6060 F.3d 262, 277–78 (6th Cir. 2010). The Sixth Circuit has even observed that in the face of repeated motions and court orders that fail to result in compliance, the imposition of harsh sanctions is "salutary." *Universal Health Grp.*, 703 F.3d at 956.

The record firmly establishes that Defendants have treated this Court's orders as mere suggestions, picking and choosing which portions they want to comply with and which portions they want to ignore. Plaintiffs were deprived of timely legitimate written discovery (and possible related discovery by deposition) concerning the sale of the Fivemile leases and permits.

This information goes directly to Plaintiffs' claim that Kentucky Fuel did not use it best efforts to mine coal. Obviously, if a purchaser was willing to pay good and valuable consideration to acquire the Fivemile leases and permits, all information concerning that transaction is relevant to Plaintiffs' claim in Count II of the Amended Complaint, *i.e.*, that they are owed unpaid royalties because Defendants breached the Fourth Amendment despite the fact that the property was mineable, as well as to rebut Mr. Ball's contention that it was not due to market conditions. Additionally, as an officer of both Defendant corporations and a participant in the negotiation of the Fourth Amendment, as well as having made the decision not to mine the Fivemile property (D.E. 170-1 at 4), Plaintiffs had a clear right to question Mr. Justice about the mineability of the properties but were deprived of that right because Mr. Justice treated his deposition as optional. Finally, whether Defendants made minimum royalty payments due in 2013 also goes to their efforts to comply with the Fourth Amendment and are therefore relevant to Plaintiffs' breach of contract claim in Count II, but no such information ordered to be produced was actually produced. Thus, Plaintiffs have sufficiently linked the foreclosed discovery to the merits of this particular claim. Plaintiffs therefore are entitled to default judgment on Count II of the Amended Complaint.

Similarly, because Mr. Justice approved all of Kentucky Fuels's expenditures, including payments made to Plaintiffs, but Plaintiffs were not allowed to question him despite properly noticing his deposition, Plaintiffs are entitled to default judgment on their claim in Count I of the Amended Complaint. Plaintiffs had every right to obtain Mr. Justice's explanation as to why the minimum royalties (some of which were paid during this litigation) and monthly retainer fees due to them were not paid in a timely fashion or otherwise not paid at all. Plaintiffs have established that they are entitled to default judgment on Count I of the Amended Complaint.

As for Plaintiffs' fraud claim in Count V of the Amended Complaint (that includes a request for punitive damages), Mr. Brownlow attests that Mr. Justice "committed to mine the Fivemile properties, so [Plaintiffs] therefore agreed to include the 'Covenant to Mine' in the Fourth Amendment." D.E. 137-1 at 3. Plaintiffs claim that this was among Defendants' false representations made during the negotiations of the Fourth Amendment. Mr. Justice intentionally deprived Plaintiffs of relevant discovery concerning this commitment when he chose not to appear for his properly noticed deposition. Plaintiffs therefore have sufficiently linked the merits of their fraud claim in Count V to the discovery misconduct committed by Defendants.

Plaintiffs have not, however, on this record, sufficiently tied the foreclosed or late discovery to the merits of their claims in Counts III and IV for breach of contract concerning the Strong Brothers property leases or the Deep Wood leases/permit. It may very well be that Mr. Justice was the primary decision-maker concerning those issues as well, and that their relation to the Fourth Amendment would sufficiently link the merits of those claims to the discovery violations discussed herein, but that link is not clear to the Court despite extensive briefing and oral argument.

Plaintiffs seek an award of attorneys' fees in connection with their motions for sanctions, as well as an award of attorneys' fees in seeking and preparing for the deposition of Mr. Justice. *See* D.E. 80 at 1; D.E. 131 at 2; D.E. 134 at 3; D.E. 170 at 2. Rule 37(b)(2)(C) states: "Instead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Rule 37(d)(3) also provides for expenses against "the party failing to act . . . unless

the failure was substantially justified or other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(d)(3).

The finding above of bad faith negates any substantial justification for Defendants' conduct. As such, an award of expenses, including attorneys' fees, is appropriate in connection with Plaintiffs' motions for sanctions and in seeking and preparing for the deposition of Mr. Justice. Plaintiffs should be given a ten-day period to file a sworn statement of fees and expenses following the presiding District Judge's order concerning this recommendation.

## IV. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that Plaintiffs' motions filed at Docket Entries 131, 134, and 170 be **GRANTED IN PART AND DENIED IN PART**. Specifically, default judgment as to liability on Counts I, II, and V should enter in Plaintffs' favor. Although not described in the briefing, at oral argument Plaintiffs requested that they be granted leave to submit an affidavit concerning their damages. Given Plaintiffs' claim to be due certain payments on an ongoing basis, and that there is no evidence in the record otherwise establishing damages for the claim of fraud in Count V, the presiding District Judge should conduct appropriate proceedings to make sufficient findings concerning damages on Counts I, II, and V prior to the entry of final judgment.

Additionally, Plaintiffs should be awarded reasonable expenses, including attorneys' fees, related to their motions for sanctions (including that at Docket Entry 80 as it has informed this Court's recommendation) and for their attempt to depose Mr. Justice (including preparation time for the deposition).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See*

*also* Rule 72(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 25th day of March, 2014.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge