UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, INC., | ) ) ) ) | Civil No. 12-91-GFVT |
| Plaintiff, | ) ) ) |  |
| V. | ) ) | **MEMORANDUM OPINION** |
| KENTUCKY FUEL CORPORATION and JAMES C. JUSTICE COMPANIES, INC., | ) ) ) ) | **&** **ORDER** |
| Defendants. | ) ) |  |

*** *** *** ***

This matter is before the Court pending review of the March 25, 2014 Report and Recommendation of United States Magistrate Judge Hanly A. Ingram. [R. 189.] The Report addresses an array of sanctions motions [R. 131; R. 134; R. 170] which were referred for his consideration. [R. 154; R. 180]. On April 11, Defendants filed objections to this Report. [R. 190.] These objections trigger this Court's obligation to conduct a *de novo* review on all those topics to which they object. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the reasons set forth below, the Defendants' objections to the Magistrate Judge's Recommended Disposition shall be

**OVERRULED** and the Recommendation shall be **ADOPTED**. Additionally, the Court considers the remaining relevant portions of the Defendants' Motion for Summary Judgment. [R. 125.] For the reasons explicated herein, it will be **DENIED**.

# I

The Magistrate Judge conducted an evidentiary hearing on the issues raised in Plaintiffs' multiple sanctions motions and sets out the factual and procedural background in his March 25, 2014 Recommended Disposition. [R. 189]. He divided his findings of fact into five thematic categories: (1) Defendants' Initial Disclosures; (2) Proceedings Concerning Defendants' Counsel of Record; (3) Discovery Into the Sale of Fivemile Leases and Permits & Outstanding Royalties; (4) Discovery Into Defendants' Financial Information from 2005-Present; and (5) the Deposition of James C. Justice, III. [R. 189 at 5-13.] Defendants explain that, because the Magistrate Judge's conclusions appear to rely on only three of these categories, its objections to the Report are similarly limited. [R. 190 at 3-4.] Consequently, Defendants objections are limited to the following topics: (1) Discovery into the Sale of Fivemile Leases and Permits & Outstanding Royalties; (2) the Deposition of James C. Justice, III; and (3) Discovery into Defendants' Financial Information from 2005-Present. [*See* R. 190.] Even within these three categories, the "[d]efendants do not challenge the accuracy of any particular Finding of Fact" but only argue that "other facts deserve emphas[is] for purposes of this Court's *de novo* review." [1] [R. 190 at 4.] Finally, it is also noteworthy that the Defendants do not object to the Magistrate's factual findings relating to either of the remaining two categories addressing initial disclosures and counsel of record.[2] [R. 190 at FN 3.] The Magistrate Judges succinctly summarized his

---

[1]    To the extent that the Defendants disagree with how the Magistrate Judge focused on or emphasized certain facts, these doubts do not amount to particularized objections that require the Court to reconstruct the Magistrate Judge's carefully done factual explanation. As such, the Court need not sift through and weigh again every fact found by the Magistrate Judge. If Defendants had sought such a review (they did not), then specific objections to his factual findings would have been required. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). With that said, the Court will consider, in the context of the objections being advanced, those facts and circumstances which Defendants believe deserve greater emphasis.

[2]    Only one minor exception exists. Defendants take issue with what they perceive to be the Magistrate's finding that Defendant argued "that the change in counsel had has a lingering ripple effect." [R.

proposed factual findings in the following way:

1. Defendants failed to produce documents related to the reported sale of the Fivemile leases and permits requested by Plaintiffs' Requests for Production Nos. 7–8 within three days of the September 19, 2013 entry of the Protective Order at Docket Entry 124 because nearly 1,000 documents were not produced until October 25, 2013.

2. Defendants failed to supplement their responses to Plaintiffs' Interrogatories Nos. 8–9 and Request for Production No. 1 concerning minimum annual royalties due in 2013 because no supplementation was ever made.

3. Defendants failed to produce all the financial documents ordered by the Court to be produced on October 15, 2013, despite the fact that District Judge Van Tatenhove overruled Defendants' objections to that order.

4. Mr. Justice failed to appear for his properly noticed deposition that was scheduled in accordance with the Court's Order of July 30, 2013.

[R. 189 at 14-15.]

Neither party objects to the legal framework articulated in the Report. Rather, Defendant's objections challenge the Magistrate Judge's conclusions resulting from his application of law to the facts. For the reasons stated above, it is unnecessary to restate either the facts or the law, both of which have already been thoroughly and thoughtfully described. Nevertheless, the Court will endeavor to briefly restate both the legal framework and pertinent facts throughout this Order for purposes of clarity and thoroughness. For the reasons stated above, the Court incorporates the Magistrate Judge's discussion of the record and applicable legal framework into this order.[3]

---

190 at FN 3.] This is a misreading of the recommendation. The Magistrate explains that Plaintiff's counsel (Mr. Lucas) suggested that, despite having acquired counsel, "the ripple effect [caused by the problems in acquiring and keeping counsel] lingers on." [R. 189 at 7; R. 191 at 7.] The Magistrate Judge does not attribute this statement to the Defendants.

[3] At docket entry 198, Plaintiffs submit what they term to be "Supplemental authority." Plaintiffs assert that this authority, the Order of another Court, demonstrates that the tactics employed by the Defendants in this case are not isolated but, rather, are calculated business tactics employed by the Defendants in various venues. The Court does not consider this authority in this Order as the Magistrate Judge did not consider it in preparing his recommendation. This is consistent with the Magistrate Judge's decision not to consider similar

## II

## A

Federal Rule 37(b)(2)(A) provides, in relevant part, that "[i]f a party or a party's officer, director, or managing agent…fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The rule then enumerates seven options for how to sanction the party, one of which is "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). The rule further provides, with regard to attorney fees and expenses, that:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). In the Sixth Circuit, entry of default judgment pursuant to Rule 37 is reviewed for an abuse of discretion. *Stooksbury v. Ross*, 528 F. App'x 547, 552 (6th Cir. 2013) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). Furthermore, despite the fact that an entry of default is a "'drastic step which should be resorted to only in the most extreme cases,'" *Stooksbury*, 528 F. App'x at 552 (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir. 1983)), "the district court does not abuse its discretion in entering a default judgment where a 'party has the ability to comply with a

---

supplemental authorities which Plaintiffs placed in from of him at Docket Entry 186. *See* R. 189 at FN 7.
    Just as the Court will not consider Plaintiffs' supplemental authority, the Court will not consider Defendants' very late-supplied supplemental authority and affidavits. [*See* R. 204.] Objections to the Report and Recommendation were due to this Court no later than 14 days following the Report's entry. Defendants supplied their objections which the Court has considered. [R. 190.] The Court will not consider new objections and justifications supplied by Defendants *over six months* following the Report's submission. These late-filed affidavits are simply 'more of the same' from Defendants and are exemplary of the conduct that has led to today's entry of default judgment. To consider these objections, at this point, would further prejudice Plaintiffs by obligating them to expend additional time and energy briefing. Defendants also provide no legal authority to suggest that the Court must consider these late objections.

discovery order and does not,'" *Stooksbury*, 528 F. App'x at 552 (quoting *Abbe,* 916 F.2d at 1073

(quoting *Reg'l Refuse Sys. v. Inland Reclamation Co.,* 842 F.2d 150, 154 (6th Cir. 1988))).

The test for determining whether a defendant's conduct in not cooperating with discovery

is sufficiently egregious to justify an entry of default judgment involves the consideration of four

factors:

> 1) whether the defaulting party's failure to cooperate with discovery was willful and
> in bad faith as opposed to an inability to cooperate; 2) whether the adversary was
> prejudiced; 3) whether the defaulting party was warned that his failure to cooperate
> could lead to a default judgment; and 4) whether less drastic sanctions were imposed
> or considered before the default judgment was ordered.

*Stooksbury*, 528 F. App'x at 552-53 (citing *Abbe*, 916 F.2d at 1073 (quoting *Regional Refuse,*

842 F.2d at 154.))  "Although no one factor is dispositive, dismissal [or default judgment] is

proper if the record demonstrates delay or contumacious conduct.  *United States v. Reyes*, 307

F.3d 451, 458 (6th Cir. 2002).  Conduct is deemed contumacious when it is in "willful

disobedience of a court order."  Black's Law Dictionary (9th ed. 2009) (defining "Conduct.")

Put another way, "[c]ontumacious conduct refers to behavior that is perverse in resisting

authority and stubbornly disobedient."  *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir.

2013) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)

(quoting *Webster's Third New International Dictionary* 497 (1986) (internal citations omitted));

*see also Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005) (For conduct to be considered

in bad faith, it "must display either an intent to thwart judicial proceedings or a reckless

disregard for the effect of [his] conduct on those proceedings.") (citations omitted).  The burden

is on defendants to show that its "failure to comply was due to inability, not willfulness or bad

faith."  *Reyes*, 307 F.3d at 458 (quoting *Regional Refuse Sys., Inc.,* 842 F.2d at 154.  Thus, the

Sixth Circuit presumes that default judgment "is not an abuse of discretion if the party has the ability to comply with a discovery order but does not." *Id.*

## 1

Defendants object to the Magistrate's recommendation regarding its failure to timely produce documents related to the reported sale of the Fivemile leases and permits.[4] Plaintiffs first propounded Interrogatories and Requests for Production regarding the leases and permits on January 4, 2013. [R. 80-1 at 3.] A second set of interrogatories were issued on January 18. [*Id.*] Defendants had 30 days to respond to each set of Interrogatories and Requests. *See* Fed.R.Civ.P. 33(b)(2) & 34 (b)(2)(A). On February 27, the Court ordered the Defendants to comply with these discovery requests and provided hard deadlines, all within March of 2013. [R. 35.] The Defendants timely responded, although Plaintiffs contested that the responses were incomplete and filed a motion to compel. [R. 56-1.] The Court partially granted that motion to compel on July 30, ordering that documents related to the reported sale of the leases and permits was due within seven (7) days. [R. 99.] The Defendants responded, not by turning over the documents, but by requesting the entry of a protective order. [R. 103.] After status conferences and briefing, the Court approved and entered an agreed protective order on September 19. [R. 124.] Despite the fact that the Defendants were ordered to produce the contested documents within three days of the entry that agree protective order [R. 122 at 4], they did not comply until a month later when, on October 25, the Defendants produced nearly 1,000 emails. [R. 131-1 at 4.] The Magistrate Judge deemed this production to be a "document dump," noting that the documents were not neatly organized or bates stamped. [R. 189 at 10; R. 131-1 at 4.] Finally, as explained

---

[4]      Defendants do not object to the Magistrate Judge's findings regarding their failure to provide supplemental discovery regarding minimum royalty payments, discussed more *infra*.

by the Magistrate Judge, the Defendants have never provided supplemental discovery regarding minimum royalty payments made to Fivemile landowners (although Plaintiffs have independently confirmed such royalty payments exist). [R. 189 at 10.] Plaintiffs have asked for, and the Magistrate Judge has recommended, that default judgment be entered against Defendants for this behavior.

Defendants do not rebut the above recited facts but, instead, offer additional pieces of context that they believe demonstrate the Plaintiffs' true, ulterior motives in seeking sanctions. First, they argue that "before the contents of [the disputed] production were even reviewed, the Plaintiffs were plotting a way to divert attention" from the substance of the disclosure and instead, plotting "how best to stage a procedural challenge." [R. 190 at 5-7.] They cite to an email that was sent, by mistake, to Defendants' counsel, Mr. A.J. Dudley. [R. 190 at 5-6.] Second, they argue that the Plaintiffs' sanction motion [R. 131] was intended to compensate for the fact that Plaintiffs did not file a motion for summary judgment. [R. 190 at 7.] Neither of these pieces of information do anything to explain why the Defendants were unable to comply with Court Orders regarding discovery. Defendants also argue that, because depositions were not yet noticed at the time they disclosed the nearly 1,000 emails and because Plaintiffs ultimately depended on the content of some of these emails in depositions, that the delay in their disclosure was not prejudicial. [R. 190 at 7.] None of these emphasized facts are particularly persuasive.

Defendants challenge the Magistrate Judge's findings regarding each element of the *Regional Refuse* test. They argue that the above-described behavior fails to support a finding of bad faith and, further, that their delays have not significantly prejudiced the Plaintiffs. They

further contend that they were not properly notified that default judgment was a possible sanction and argue that a lesser sanction would have been sufficient. The Court will address each factor in turn.

With regard to bad faith, the Defendants have done nothing to suggest that they were honestly trying to comply with the Court's orders. The burden is on Defendants to show that its "failure to comply was due to inability, not willfulness or bad faith." *Reyes*, 307 F.3d at 458 (quoting *Regional Refuse Sys., Inc.,* 842 F.2d at 154). Defendants have never, and at the time of the filing of their objections still had not, provided a reason for their non-compliance.[5] As discussed above, the Defendants have never provided supplemental discovery regarding minimum royalty payments. [R. 131-2; R. 192 at 4.] They do not even argue that they were unable to comply with the Court orders. Without even making such an argument, the Court is left to believe that they could have complied but elected not to do so. This is, by definition, contumacious and enough to conclude they acted in bad faith. But alas, this is not Defendants' only error; even when Defendants did actually respond to discovery requests, the responses were incomplete, late and sloppy. For example, the October 25 email disclosure occurred one month after the Court-imposed deadline [R. 122; R. 124] and months after they were originally compelled to disclose the information. [R. 99.]

---

[5]    Defendants do direct a few derisive remarks at past counsel, noting that "[p]rior counsel for Defendants never propounded discovery onto Plaintiffs in nearly thirteen months as counsel." [R. 190 at FN7.] Defendants do not suggest, however, that prior counsel was solely responsible for the discovery violations and such an argument would not be taken well as their non-compliance has continued since prior counsel's withdrawal. The Magistrate Judge dedicated a section of his Recommended Disposition to the proceedings concerning Defendants' counsel of record. [*See* R. 189 at 6-7.] The Court notes that Counsel who drafted the objections currently before the Court has also moved on since its filing. [*See* R. 196.] Nevertheless, the Court agrees with Plaintiffs that Defendants "continuing pattern of contempt for the Court's orders and their obstruction of discovery show that their non-compliance is not lawyer-driven." [R. 131-1 at 1.]

Defendants' arguments that Plaintiffs were not sufficiently prejudiced to justify sanctions are unavailing. [R. 190 at 10.] Defendants' first argument boils down to a suggestion that because Plaintiffs made-do with the discovery they did receive, everything is fine. [R. 190 at 10.] No blood, no foul. The fact that Plaintiffs' were resourceful and did everything they could to be prepared for depositions with the discovery they had does not mean that they were not prejudiced by the discovery's tardiness. Second, Defendants argue that what was "*not* in the 1,000 emails" also supports their position that Plaintiffs did not suffer prejudice. In Defendants words, there was no "smoking gun" and, they conclude, "because no email produced on October 25, 2013 aides Plaintiffs' ability to prove their case, even less (or no) prejudice accrued to Plaintiffs when those emails were sent when they were." [R. 190 at 10.] Defendants do not get to decide what emails aid "Plaintiffs' ability to prove their case." The Court concluded that Plaintiffs were owed certain discoverable information and ordered the Defendants to turn that information over. Plaintiffs were prejudiced each time the Defendants "prevent[ed] [them] from obtaining evidence essential to the preparation" of its case. *Allstate Ins. Co.*, 703 F.3d 953 at 956. Additionally, as a result of this behavior and the pending sanctions motion, the Plaintiffs' trial date has now been continued over nine months and will undoubtedly be continued further. [*See* R. 169.] Plaintiffs also argue they were prejudiced by the form in which they received the emails because nothing was organized or bates stamped. As a result, Plaintiffs contend it was very difficult to determine whether production was actually complete. [R. 131-1 at 4.] Plaintiffs have been further prejudiced because of the waste of time and money dealing with these abuses. *See Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 377 (6th Cir. 2008).

A finding of bad faith supplants the need for notice.  *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) ("Where a plaintiff has not been given notice that dismissal is contemplated, 'a district court should impose a penalty short of dismissal **unless the derelict party has engaged in 'bad faith or contumacious conduct**.'" (quoting *Harris v. Callwood,* 844 F.2d 1254, 1256 (6th Cir. 1988) (emphasis added)).  Even if the Court had not concluded that the Defendants acted in bad faith, the Defendants were nevertheless on notice that serious sanctions including default judgment were a possibility.  As the Magistrate Judge acknowledged, explicit notice was not given.  Such explicit notice is not, however, required; "there [are] no magic-words prerequisite to dismissal [or default judgment] under Rule 37(b)."  *Allstate Ins. Co.*, 703 F.3d at 956.  Furthermore, Defendants were definitely aware that default judgment was a possibility as early as October 8, 2013 because that is when Plaintiffs first asked for the Court to impose a sanction of default judgment.  [*See* R. 131.]  *See Abbe*, 916 F.2d at 1079 ("The court's delay in ruling on the banks' first motion for sanctions, followed by its order compelling the defendants to comply with discovery, was sufficient to put them on notice of the consequences of their failure to cooperate.")  Nevertheless, the Defendants non-compliant behavior has continued to the present date.  Furthermore, the Defendants were sanctioned in this case even earlier, in August 2013, by the Magistrate Judge when they were charged $4,311.67 "in connection with its fees attributable to presenting the issues concerning Kentucky Fuel Corporation's principal place of business and the sale or assignment of the FiveMile leases and permits" in August, 2013.  [R. 99; R. 116.]  This lesser sanction should have also placed them on notice that greater sanctions were possible.  Finally, with regard to the fourth factor, the Courts' lesser sanction was apparently insufficient to motivate Defendants to cooperate with the discovery process.  The Sixth Circuit

has explained they are "loathe to require the district court to incant a litany of [ ] available lesser sanctions" and in *Harmon,* affirmed the district court's dismissal on a record that did not even articulate whether lesser sanctions were considered. *See Harmon*, 110 F.3d at 368.

While no single factor is dispositive, *Reyes*, 307 F.3d 451, 458, it is clear that in a case when every factor points towards the entry of default judgment (as in this case) that default judgment is an appropriate tool to use. Again, the Court refers back to the burden placed on Defendants to show that its "failure to comply was due to inability, not willfulness or bad faith." *Reyes*, 307 F.3d at 458 (quoting *Regional Refuse Sys., Inc.,* 842 F.2d at 154). The Defendants do not even argue that its non-compliance was due to inability. The entirety of their argument focuses on what the Defendants perceive to be Plaintiffs' wrongs. Defendants' behavior is, by definition, contumacious as it is in "willful disobedience of a court order." Black's Law Dictionary (9th ed. 2009) (defining "Conduct.") For all of these reasons, the well-reasoned recommendation of the Magistrate Judge will be adopted.

## 2

Like the leases and permit documentation, discussed *supra*, Plaintiffs requested tax returns, balance sheets, and financial statements (financial information) through Interrogatories and Requests for Production on January 4, 2013. [R. 80-1 at 3.] The rules provide Defendants 30 days to respond. On April 9, over three months after the information was requested, the Magistrate Judge held a status conference to address the disputes.[6] Following that status conference, he ordered Defendants to immediately produce "copies of pages from their tax

---

[6]      The Magistrate Judge asked Plaintiffs to submit a statement regarding its position on the discovery dispute on or before April 2. Plaintiffs complied. Defendants were similarly asked to submit a statement of its position on or before April 4. Defendants did not comply, "frustrating the Court's ability to fully analyze the dispute prior to the call." [R. 47 at 1.]

returns, federal and state (for all states where the Defendants file tax returns), from 2005 to the present that list any address for Kentucky Fuel Corporation."  [R. 47 at 2.]  Defendants were further ordered to turn over "copies of all balance sheets and financial statements prepared from 2005 to the present."  [*Id*.]  Defendants were given until April 15 to supplement its response with additional tax returns or else any requests for extensions that might have been filed in connection with its 2012 returns.  [*Id*.]  The Magistrate Judge ruled that the disclosure of "complete and unredacted copies of both Defendants' income tax returns (state and federal), balance sheets and financial statements" from 2005 through that date could be deferred until this Court ruled on a pending motion to dismiss.  If the motion to dismiss was denied then Defendants had fifteen days to turn over the information.  [*Id*.]  Finally, the Defendants requested leave to file further objections to the disclosure of these documents during that fifteen day window but the Magistrate Judge denied that request on the grounds that Defendants had waived objections to producing such documents.  [*Id*.]  Plaintiffs were granted the right to file a motion to compel production of the financial documents prior to this Court's ruling on the motion to dismiss only if "their discovery and trial preparation are being impeded by the lack of the complete and unredacted financial documents."  [*Id*.]

Plaintiffs filed such a motion to compel on July 18, arguing that they needed the information to prepare for depositions in advance of the August 31 discovery cutoff.  [R. 76.] On October 8, the Magistrate Judge granted the motion to compel, ordering that "Defendants **SHALL** produce their tax returns (state and federal), balance sheets, and financial statements, from 2005 to the present, within **seven (7) days**."  [R. 128.]  On October 15, the date that financial information was again due to be turned over, Defendants filed objections to the

Magistrate Judge's order with this Court. Defendants did not, however, seek a stay of the Order compelling them to turn over the financial information. [R. 133.] On December 16, this Court overruled Defendants' objections, ordering that, "[t]o the extent they have not already, Defendants are ordered to comply with [the Magistrate Judge's] Order [to Compel]." [R. 156.] Nevertheless, as of the January 10 oral argument, Defendants still had not turned the financial information over. Instead, during the oral argument on sanctions, defense counsel sought leave to advance new arguments about why Defendants should not have to disclose the financial documents, arguing for the first time that the Justice companies were "merely a guarantor for Kentucky Fuel's obligation under the Fourth Amendment." [R. 191 at 91.] The Magistrate Judge was unwilling to consider this argument, explaining that Defendants were essentially asserting "an objection to the discovery and then to the Court's order months after the fact after the objections period was already -- well, after objections were already allowed and contemplated by the rules." [Id at 96.] The Magistrate construed the request as a very late motion to reconsider a past ruling and concluded he was not going to revisit his earlier order. [*Id*. at 96.] Following the sanctions hearing, the Plaintiffs received year-end financial statements for Kentucky fuel for the years 2010, 2011 and 2012 but never received tax returns for either Kentucky Fuel or Justice Companies.[7] [R. 192 at 10.] This means that, to date, Defendants have still not complied with this Court's Order to disclose the financial information between 2005-2009 nor fully complied with the Court's order to turn over tax returns for 2010-2012. [*Id*.]

---

[7] Defendants note that no tax returns exist for Kentucky Fuel because they are "rolled up" into the Justice Companies' returns. [R. 190 at 24; R. 191 at 94.] Counsel for Defendants explained that this, at least in part, informs their hesitation in turning the returns over. The Magistrate Judge reminded Counsel, however, this is "not a basis to tinker with what's been ordered," referring to the Court's Order to Compel the financial documents disclosure. [R. 191 at 95.]

Now, in their objections, the Defendants again argue that the "Justice companies [are] merely a guarantor of Kentucky Fuel's obligation to Plaintiff's under the Fourth Amendment." [R. 190 at 23.] Defendants acknowledge this is the same argument that the Magistrate Judge refused to consider because it was determined to be both late and waived. [R. 190 at FN13.] To consider the substance of this late, and waived, argument would further prejudice the Plaintiffs who have already been significantly impacted by Defendants dilatory tactics. The Court, therefore, does not consider the argument now for the same reasons that the Magistrate Judge refused to consider it on January 10. Second, Defendants also argue against default judgment on the grounds that they have substantially complied because they turned over financial statements from 2010-2012. [R. 190 at 24.] This argument, too, is unconvincing.

Defendants possess "either an intent to thwart [these] judicial proceedings or a reckless disregard for the effect of [their] conduct on th[e]se proceedings." *Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005). Again, Defendants do not even bother to argue that they could not comply with the Court's orders. In fact, the Magistrate Judge engaged in a conversation with counsel for Defendants at the January 10 hearing that demonstrates the non-disclosure is a simple case of non-compliance. Magistrate Judge Ingram confirmed with defense counsel that the tax information had still not been produced. [R. 191 at 97.] He then asked, "it's not a question of an inability to comply with the Court's order. It's simple as non-compliance, correct?" Mr. Dudley, counsel for defendants responded, "Your Honor, I do have the Kentucky Fuel financial statements with me and I'm confident we have James C. Justice Company tax returns in Roanoke, and I can get those promptly, very immediately." [*Id.*] Dudley then confirmed that disclosure of those documents, even immediately, would still be late. [*Id.*] Even after this

dialogue, as explained above, Defendants have not fully complied. The Court also notes that back in October of 2013, the Defendants should have asked the Court to stay the Order to Compel while its objections were being considered. Absent a stay, they should have turned that information over on October 15, 2013. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *Guiden v. Leatt Corp.*, 5:10-CV-00175, 2013 WL 4500319 (W.D. Ky. Aug. 21, 2013) ("the filing of an objection does not automatically stay a Magistrate Judge's order to produce discovery.") Defendants never sought a stay of the discovery order, but just chose not to comply. Defendants disregard for Court orders is not passive or mistaken but is deliberate.

Defendants argue that because discovery had closed in November and the financial documents will be most useful to Plaintiffs in calculating punitive damages in conjunction with count five, the fraud count, which was the subject of a motion to dismiss that was denied by this Court on December 16, 2013, that their late disclosure was not all that prejudicial to Plaintiffs. [R. 190 at 24.] Defendants acknowledge this does not "excuse[] their lack of production" but argue that it does "mitigate[] against the prejudice to Plaintiffs." [R. 190 at 25.] Plaintiffs strongly disagree, arguing that they need the financial information to prove that Kentucky Fuel made a larger profit in selling or transferring the Fivemile leases and permits than it did in mining them. [R. 192 at 23.] The Court notes again this is not the only prejudice the Plaintiffs have borne. Plaintiffs entire case has been delayed and Defendants behavior has resulted in "an unnecessary waste of time, money, and effort." [R. 192 at 19.]

The Court's discussion of notice and the appropriateness of lesser sanctions, discussed

*supra* II B 1, is incorporated by reference herein.  Defendants were on notice that their behavior warranted sanctions and that serious sanctions were being considered.   Lesser sanctions were already levied against Defendants and with their track record of not respecting Court orders, the Magistrate Judge nor this Court have any reason to believe that Defendants would start respecting Court Orders at this late juncture.  Accordingly, default judgment is equally appropriate for the Defendants' refusal to timely and completely disclose the above described financial information to Plaintiffs.

## B

A court may sanction a party when "a party or a party's officer … fails, after being served with proper notice, to appear for that person's deposition."  Fed. R. Civ. P. 37(d)(1)(A)(i).

Plaintiffs first noticed the depositions of Steve Ball, Vice President of Operations for the Justice Companies, and James C. Justice III, Vice President and Director of both corporate Defendants,  to occur on July 31, 2013.  [R. 66; R. 67.]  However, due to Defendants' difficulties in obtaining counsel of record, the parties reached an agreement to continue the "depositions to be reset at a date, time, and location as the parties may agree, or, absent such an agreement, at a date, time, and location of Plaintiff's choosing."  [R. 98 at 1.]  On October 18, plaintiffs' counsel emailed defense counsel and offered to take the depositions at defense counsel's office in Roanoke, Virginia.  [R. 150-2.]  On October 22, after no response was received from defense counsel, the Plaintiffs re-noticed the depositions for November 6, 2013 in Knoxville, Tennessee. [R. 140; R. 141.]  Later that day, defense counsel responded, sending an email questioning the location change for the depositions.  [R. 150-3.]  On November 4, defense counsel requested that the depositions be moved back one day and plaintiffs' counsel agreed to accommodate the

change.  [R. 150-5.]  On November 6, the day before depositions were scheduled to occur, plaintiffs' counsel was informed that Mr. Ball would not be able to appear for his scheduled deposition.  [R. 150-6.]  Positions were clarified through subsequent emails and it became clear that Mr. Ball could attend his deposition but Mr. Justice would not be attending.  [R. 150-6.]  The reason provided was that a "meeting in Chicago has not gone as planned" and so Justice would not be able to make it.  [R. 150-3 (Nov. 6 email from Mr. Dudley).]  Counsel for Defendants described the meeting as "being very important to our company and involves roughly a half dozen non-justice participants from a variety of locations spread far and wide."  [*Id.*]  Mr. Ball was deposed on November 7 but Mr. Justice, despite being properly noticed, did not appear.  [R. 170-1 at 3.]  The Magistrate Judge recommends that Justice's failure to appear warrants an entry of default judgment.  [R. 189 at 25.]

Defendants first complain that Plaintiffs did not expend enough effort in attempting to comply with the Magistrate's order to reschedule depositions "at a date, time, and location as the parties may agree" before concluding the "absen[ce of] such an agreement" and choosing "a date, time, and location of Plaintiff's choosing."  [R. 98 at 1.]  Defendants attempt to shift the burden to Plaintiffs by arguing that "Counsel for Plaintiffs have never communicated why, after just two business days, their commitment to take depositions in Roanoke suddenly reversed." [R. 190 at 13.]  This argument is nothing more than a red herring, sidestepping the more relevant question of why Mr. Justice did not show up for his deposition in the first place.  As the Magistrate Judge noted, "[n]o explanation has ever been offered by Defendants as to why Mr. Justice did not appear, nor is there any claim that he was unable to appear."  [R. 189 at 23.]  This continues to be true as an explanation for this behavior is completely absent from the Defendants' objections.  [*See* generally R. 190 at 12-23.]  Remarkably, Defendants believe that

their neglect is somehow forgivable because they offered to reschedule Justice's deposition following his non-appearance. [R. 190 at 18.] "[M]isconduct is not any less misconduct because it is executed with a veneer of good intentions." *Reg'l Refuse Sys., Inc.*, 842 F.2d at 156.

While Defendants have cited Mr. Justice's meeting as the reason for his failure to appear, they have failed to provide any actual, specific reasons why this meeting rendered Justice *unable* to attend the deposition. Instead, what is produced is more a showing that it might have been inconvenient for Justice to attend. Much discussion is made in the report and recommendation, objections, and response to Mr. Ball and Justice's travel arrangements. [R. 189 at 23; R. 190 at 14; R. 192 at 12.] It is said that Justice was on a plane with Ball but just got dropped off before his deposition. Ball then stated that he and Mr. Justice had not talked about the depositions while they were on the plane together. Ball was also unable to answer with any specificity any questions regarding why Mr. Justice was absent. [R. 161-1 at 37.] Plaintiffs claim and the Magistrate suggests that it is unlikely Ball did not speak to Justice about the depositions and that it is unlikely Ball would not have known why Justice failed to appear. This dispute about travel arrangements is really not central to the Court's decision. What is central is that Mr. Justice had been properly noticed for his deposition and then failed to appear. He has never explained why he was *unable* to attend. Since Defendants have failed to even present an argument that they were unable to comply, as opposed to unwilling, the Court assumes that Justice's absence was willful and in bad faith.

Justice's decision not to appear has served to prejudice Plaintiffs in significant ways by impeding discovery. First, Justice was an important fact witness as Plaintiffs argue that he was actually involved in the negotiation of the Agreement that is the basis of this litigation. [R. 170-

1 at 4.] His testimony could prove crucial to Plaintiffs' fraud claim as he arguably had knowledge of the negotiations and the Defendants' intent when entering into the Agreement. Second, Plaintiffs argue that Justice is even more important because Ball was so inadequately prepared for his deposition. Plaintiffs' response includes a full three-page list of topics that Justice needed to address. [*See* R. 192 at 24-40.] According to notes appended to the list, Ball actually confirmed during his testimony that Justice was the person to ask regarding some of the topics. [*See* R. 192 at 25 (According to Ball, Mr. Justice had to approve all payments to Plaintiffs and would be able to answer question related to "email instructing Kentucky Fuel employees not to pay $5,000 owed to Fivemile Energy.")] Of course, Defendants disagree and argue that Plaintiffs were not significantly prejudiced. They argue that Plaintiffs unanswered questions were irrelevant and outside the scope of the case. [R. 190 at 20.] Defendants do not get to choose how Plaintiffs prove its case.

As previously explained, Defendants were on notice and lesser sanctions do not sufficiently address the behavior. Monetary sanctions have already been imposed and the Court has no reason to believe, despite Defendants statements, that Mr. Justice would comply with a similar noticed deposition in the future.

## C

Defendants also argue that the discovery violations were not sufficiently related to count five, the fraud count, to justify the Court's entry of default judgment. [R. 190 at 27.] Specifically, Defendants suggest that neither the financial statements of Kentucky Fuel or the Justice Companies nor documentation relating to the Fivemile leases has a bearing on whether fraud happened in 2010. They further suggest that no evidence exists to show that Mr. Justice

was in communication with Plaintiffs when the Fourth Amendment was negotiated.  [*Id*.]  The

Magistrate Judge considered "whether there is a sufficient relationship between the discovery

and the merits sought to be foreclosed by the sanction to legitimate depriving a party of the

opportunity to litigate the merits." [R. 189 at 26 (quoting 8B Charles Alan Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 2283 (3d ed. 2013))].  With regard to count five, he

concluded that Defendants' conduct was sufficiently tied to the fraud count:

> As for Plaintiffs' fraud claim in Count V of the Amended Complaint (that includes a
> request for punitive damages), Mr. Brownlow attests that Mr. Justice "committed to mine
> the Fivemile properties, so [Plaintiffs] therefore agreed to include the 'Covenant to Mine'
> in the Fourth Amendment." D.E. 137-1 at 3. Plaintiffs claim that this was among
> Defendants' false representations made during the negotiations of the Fourth
> Amendment. Mr. Justice intentionally deprived Plaintiffs of relevant discovery
> concerning this commitment when he chose not to appear for his properly noticed
> deposition. Plaintiffs therefore have sufficiently linked the merits of their fraud claim in
> Count V to the discovery misconduct committed by Defendants.

[R. 189 at 28.]  Defendants do not object to the Magistrate's factual findings and his findings,

recited above, clearly tie Mr. Justice's testimony to the fraud count.

Brownlow's affidavit states that, during a negotiation with Steve Ball, at the Greenbrier

Resort in West Virginia, "Mr. Ball periodically excused himself from the table to go talk with

Mr. Jay Justice.  He would then come back to the table and report to us what Mr. Justice said.

One of the things that he reported was that Mr. Justice committed to mine the Fivemile

properties, so we therefore agreed to include the 'Covenant to Mine' in the Fourth Amendment."

[R. 137-1 at 3.]  Plaintiffs also argue that the tax returns which they have been deprived of are

relevant to the fraud count as they need to be able to "determine the extent of the increased

profits caused by the failure to mine."  [R. 192 at 23.]  Defendants have cited to no case nor

explained why these connections are insufficient to justify the entry of default judgment.

**D**

In its objections, the Defendants attempted to segregate all of its many violations and to suggest that, when viewed in isolation, no single violation was worthy of sanction. While the Court has considered Defendants' objections separately in this review, it is worth noting that when Defendants pattern of conduct is considered more broadly, it is even more appalling and further justifies the entry of default judgment. In addition to the multiple discovery abuses objected to, the Magistrate also summarized how the Defendants were dragging their feet in getting counsel appointed [R. 189 at 6-7] and were severely delayed (three-months) in serving initial disclosures [R. 189 at 5-6]. Each of these instances caused additional delay to Plaintiffs. In sum, Defendants' entire strategy in this case has been to delay, object and not-comply. Such a consistent pattern of obfuscation is exactly why the rules provide the sanction of default judgment. The Court is aware of the seriousness of entering default judgment but notes that a party that is serious about their duties to opposing counsel and the Court would spend more time attempting to comply with, as opposed to evading, Court Orders.

**III**

Prior to the filing of the motions for sanctions, the Defendants filed a motion for summary judgment as to Counts I, II, and IV of the Plaintiffs' Amended complaint. Due to the Court's entry of default judgment on Counts I, II, and V, *supra*, this motion is only partially still relevant. For this reason, the Court will only consider Defendants' motion as to Count IV.

**A**

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' " *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In deciding a motion for summary judgment, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). In terms of burden shifting, the moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324.) Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Id.* (internal citations omitted). The trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001) (citing *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Instead, "the nonmoving party has an affirmative duty to direct the court's

attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655.

## B

Defendants argue that there is no question of material fact regarding the question of whether Kentucky Fuel has a continuing obligation to pay for "shortfalls" in royalties on the Deep Woods Properties and Permit. [R. 125-1 at 7-10.] They cite to the sworn declaration of Stephen Ball, Senior Vice President of Operations of the Justice Companies and Kentucky Fuel Corporation, to support this contention. [R. 15-1 at 7.] In his declaration, Mr. Ball attests that:

> (4)    At the time the Fourth Amendment document was entered into by the parties, it was the intention of Kentucky Fuel Corporation and James C. Justice Companies, Inc. that all obligations of Kentucky Fuel Corporation and James C. Justice Companies, Inc. as they relate to the Deep Woods Properties and Permit would be extinguished upon the execution o fsaid document, including, but not limited to, the basis for relief sought in Count IV of Plaintiffs' Amended Complaint.
>
> (5)    It is my belief as a signing party familiar with all negotiations surrounding the execution of the Fourth Amendment, that all signing entities to the Fourth Amendment had the same understanding as to the extinguishing of any remaining liability on the part [of] Kentucky Fuel Corporation and James C. Justice Companies, Inc. as it relates to the Deep Wood Properties and Permit.

[R. 125-5 at 2.] Defendants also argue that the Fourth Amendment Agreement ("Agreement") does not include language referring to a continuing obligation or liability for any shortfall amount. [R. 125-1 at 8-9.]

Not all that surprisingly, Plaintiffs disagree with Defendants interpretation of the Agreement. Plaintiffs cite to the Declaration of William Brownlow, IV, who is the President of New London Tobacco and a member of Fivemile Energy LLC. [R. 137-1.] Brownlow was "personally involved in the negotiation, drafting and preparation of the Fourth Amendment" and attests that the covenant to mine (Article 10 of the Agreement) was included  because of

concerns he had about Kentucky Fuel not mining the property. [R. 13-1 at 1-2.] He argues that this "'Covenant to Mine' was intended to be a substantive commitment by Kentucky Fuel to mine the coal on the property." [R. 137-1 at 3.] Finally, he addresses the Declaration of Mr. Ball, explaining that he disagrees with Ball's assertion that "all signing entities to the Fourth Amendment had the same understanding as to the extinguishing of any remaining liabilities on the part of Kentucky Fuel Corporation and James C. Justice Companies, Inc., as it relates to the Deep Wood Properties and Permits." [R. 137-1 (referring to Ball's Declaration).] Plaintiffs also contend that Ball's statements are refuted by the actual language of the Agreement and cite to two provisions that they contend reaffirm the Defendants' obligation to comply with past agreements to mine the property. [R. 137 at 17 (referring to R. 40-5 at 3, 7.)]

The critical question presented is whether the parties did or did not intend to extinguish Defendants' obligations when they prepared the Agreement. The questions, as have been presented, constitute genuine disputes of material fact. Apparently both parties agree that extrinsic evidence is necessary to resolve this disagreement as the Defendants produced testimony from Mr. Ball to establish its position and Plaintiffs directly contradicted Ball's position with statements provided by Mr. Brownlow. The rule in the Sixth Circuit is that "disputed issues of contractual intent are factual issues not to be resolved at summary judgment." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 594 (6th Cir. 2001) (citing *United States v. Cello–Foil Prods., Inc.,* 100 F.3d 1227, 1234 (6th Cir.1996) (reversing summary judgment order and stating that "issues regarding parties' intent, with respect to agreements or contracts, present interpretative issues traditionally understood to be for the trier of fact")) (additional citations omitted); *see also Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (citing

*Manley v. Plasti–Line, Inc.,* 808 F.2d 468, 471 (6th Cir. 1987) ("Summary judgment is then proper only when the documents in question are undisputed and reveal that no question exists as to intent."). The question of what the parties intended when coming to this agreement cannot be resolved on the record before this Court so summary judgment is, therefore, inappropriate.

## IV

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED**:

1. The Magistrate's Recommended Disposition [R. 189] is **ADOPTED** as and for the Opinion of the Court;

2. As such, Plaintiffs' motions filed at Docket Entries 131, 134, and 170 **SHALL BE GRANTED IN PART** and **DENIED IN PART** as is consistent with the Report and Recommendation and this Order. Specifically, default judgment is **GRANTED** as to liability on Counts I, II, and V. As the Plaintiffs did not sufficiently tie their discovery-related injuries to the merits of the claims in Count III and IV, that Plaintiff's motions are denied as to those claims;

3. The Court will hold a hearing at a later date on the issue of what award of expenses, including attorney's fees, is appropriate;

4. The Defendants' Motion to Strike [R. 199] is **GRANTED** and Plaintiffs' Notice of Supplemental Authority at Docket Entry 198 is **STRICKEN** from the Record; and,

5. Defendant's Motion for Summary Judgment [R. 125] is **DENIED** as **MOOT** as to Counts I and II and **DENIED** on the **MERITS** as to Count IV.

This 30th Day of September, 2014.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**