UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NEW LONDON TOBACCO MARKET,　　)
INC., and FIVEMILE ENERGY, LLC,　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　)　　　No. 6:12-CV-91-GFVT-HAI
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　RECOMMENDED DISPOSITION[1]
KENTUCKY FUEL CORPORATION and　　)
JAMES C. JUSTICE COMPANIES, INC.,　　)
　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)

*** *** *** ***

On September 30, 2014, District Judge Van Tatenhove adopted the undersigned's Report and Recommendation ("R&R") and granted default judgment against Defendants as to liability on Counts I, II, and V of the Amended Complaint. D.E. 206. The R&R concluded that "Plaintiffs should be awarded reasonable expenses, including attorneys' fees, related to their motions for sanctions (including that at Docket Entry 80 . . .) and for their attempt to depose Mr. Justice (including preparation time for the deposition)." D.E. 189 at 29. Subsequently, District Judge Van Tatenhove directed the undersigned to "recommend[] how much should be awarded to Plaintiff's counsel in compensation for attorney's fees and reasonable expenses relating to their motions for sanctions and attempt to depose Mr. Justice." D.E. 227 at 7.

---

[1] Ordinarily, an award of attorneys' fees under Rule 37 is a non-dispositive matter that may be finally decided by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 (6th Cir. 1998) *aff'd sub nom. Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999) (considering a magistrate judge's award of attorneys' fees under Rule 37); *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2015 WL 4742686, at *1 (S.D. Ohio Aug. 11, 2015) (collecting cases for the proposition that an order awarding attorneys' fees under Rule 37 is a non-dispositive pre-trial matter); *Zang v. Zang*, No. 1:11-CV-884, 2014 WL 5426212, at *4 (S.D. Ohio Oct. 22, 2014) (same). The award herein is expressly based upon Rule 37. *See* D.E. 189 at 28-29. In this case, however, Plaintiffs have asserted a claim for all fees based upon the contract at issue. D.E. 40 at 10-11, 15-16. Because of the overlap between that claim and the fees addressed herein, the Court resolves this matter by way of a recommended disposition pursuant to 28 U.S.C. § 636 (b)(1)(B). This approach comports with the District Judge's referral of the matter to the undersigned to "recommend[]" the amount of the award. D.E. 227 at 7.

## I. Procedural Posture

The parties have made several filings regarding the award of attorneys' fees and expenses related to Plaintiff's successful motions for sanctions.  The first round of briefing began on October 10, 2014, when Plaintiffs filed their first Statement of Attorneys' Fees and Expenses. D.E. 208.  They sought a total of $97,165.00, and supported their Statement with declarations from attorneys Scott M. Webster and John A. Lucas, and William G. Brownlow, IV, president of New London Tobacco Market (NLTM) and manager of Fivemile Energy.  D.E. 208-1, -2, -3. On October 15, Defendants filed objections to Plaintiffs' statement, seeking a hearing on the issues.  D.E. 209.  Plaintiffs then filed a reply on October 24.  D.E. 211.  On November 25, 2014, Plaintiffs moved for oral argument.  D.E. 221 at 1.

On November 6, 2015, the Court conducted a teleconference and authorized Plaintiffs to supplement their motions for sanctions and expenses.  D.E. 238.  On November 17, 2015, Plaintiffs filed their Supplemental Statement of Attorneys' Fees and Expenses.  D.E. 240.  This new statement was more detailed than the one submitted in October 2014, and was accompanied by declarations from Mr. Lucas and Mr. Webster.  D.E. 240-1, -2.  The amount sought was $97,137.25.  D.E. 240 at 2.  The Court considers this statement to have superseded the October 2014 statement, and the November 2015 declarations form the evidentiary basis of the recommendations herein.   On December 8, 2015, Defendants filed their objections to the Supplemental Statement.  D.E. 241.  Defendants continued to insist that a hearing was needed to address their objections.  *Id*. at 2, 9-10.  On December 21, 2015, Plaintiffs replied to Defendants' objections.  D.E. 244.  The reply brief was accompanied by six declarations.  D.E. 244-1 to -6. In light of this additional briefing on the attorneys' fees issue, Plaintiffs updated their request for fees and expenses, resulting in a total of $110,499.75.  D.E. 244 at 11.

On January 25, 2016, the undersigned ordered Defendants to "file a supplemental brief identifying in detail the specific factual issues the defendants believe require an evidentiary hearing.  In addition to identifying the disputed factual questions, the defendants shall identify any legal authorities they believe require that an evidentiary hearing be held in this case."  D.E. 246 at 1.  Defendants filed their supplemental brief in support of their motion for an evidentiary hearing on February 15, 2016.  D.E. 256.  Plaintiffs responded on February 26.  D.E. 257.  For the reasons explained below, the Court finds that an evidentiary hearing is not warranted, the issues are ripe, and they can be decided on the existing record.

## II.  Legal Standards

Discovery sanctions are governed by Federal Rule of Civil Procedure 37.  The Court has already determined that sanctions are warranted under Rule 37(b) for Defendants' failure to comply with court orders (D.E. 189 at 15, 28; D.E. 206 at 4) and under Rule 37(d) for Mr. Justice's failure to appear at his scheduled deposition (D.E. 189 at 23; D.E. 206 at 16).  Under Rule 37(b)(2)(C), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with court orders], unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Under Rule 37(d)(3), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to attend the deposition], unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Even though the Sixth Circuit reviews a District Court's award and apportionment of attorneys' fees under Rule 37 for an abuse of discretion, *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 490-91 (6th Cir. 2014), the District Court must make clear findings:

> In order to facilitate appellate review of a fee award, a district court must provide a concise but clear explanation of its reasons for the award. The district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why. Failure to provide such an explanation requires us to remand the case for further consideration.

*Smith v. Serv. Master Corp.*, 592 F. App'x 363, 366 (6th Cir. 2014) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997)). The District Court must also carefully consider all objections:

> Where a party raises specific objections to a fee award, a district court should state why it is rejecting them. Even if the defendant raises objections in a generalized manner, a district court has an obligation to review the billing statement and eliminate those portions of the fee which are unreasonable on their face.

*Smith*, 592 F. App'x at 367 (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990)).

The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 F. App'x 323, 328 (6th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The applicant "should exercise 'billing judgment'" and should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id*. at 437 n.12. Courts may also award reasonable fees and expenses associated with the preparation and presentation of fee applications. *McCarthy*, 763 F.3d at 493.

The process of determining a reasonable fee award ordinarily begins with the court's calculation of the "lodestar" figure, which is generated by multiplying the number of hours

reasonably expended on the litigation by a reasonable hourly rate. *Graceland Fruit*, 320 F. App'x at 328 (quoting *Hensley*, 461 U.S. at 433). There is a strong presumption that the lodestar figure represents a "reasonable" fee. *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The Supreme Court has adopted a set of twelve factors known as the *Johnson* factors to aid courts in calculating reasonable attorneys' fee awards. *Blanchard v. Bergeron*, 489 U.S. 87, 91-92 (1989). A court "may apply the *Johnson* factors during its initial calculation of the attorney-fee award or when the court is considering a request for an enhancement." *Graceland Fruit*, 320 F. App'x at 329; *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard*, 489 U.S. at 91 n.5 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The Court's duty in awarding fees is "to make an award of fees which is 'adequate to attract competent counsel, but which do not produce windfalls to attorneys.'" *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) (quoting *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 633 (6th Cir. 1979)).

The parties in this case dispute the hourly rate of Mr. Lucas, whose office is in Knoxville. In calculating the lodestar's "reasonable hourly rate," a court should "initially assess the prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Some Sixth

Circuit authority suggests that the "relevant community" in this case would be the Eastern District of Kentucky:

> [W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

*Adcock-Ladd*, 227 F.3d at 350.  On the other hand, "There is some Sixth Circuit authority that the relevant market need not be local to the venue."  *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014).  "District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."  *Id*. (quoting *Louisville Black Police Officers Org.*, 700 F.2d at 278).

When the applicant seeks fees for out-of-town counsel, the court must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation."  *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir. 1995) (citation omitted).

### III.  Documentation

In this case, the Plaintiffs have submitted the following documentation in support of their claim for fees and expenses:

- The updated declaration and timesheet submitted by attorney John A. Lucas.  D.E. 240-1. This time sheet includes a description of the work done for each entry and specifies the

person in Mr. Lucas's firm who performed the work.  The fees sought by Mr. Lucas total **$89,838.25**.

- The updated declaration and timesheet submitted by local counsel Scott M. Webster. D.E. 240-2.  This timesheet provides a description of the work done for each billed entry, and seeks a total of **$7,160.00**.

- The declaration of NLTM president William G. Brownlow, IV, which requests reimbursement of **$139.00** for travel expenses.  D.E. 208-3.

- A supplemental declaration by Mr. Lucas explaining his hourly rate (in this case $425), his qualifications, and the hourly rate and qualifications of the staff members whose work appears on his timesheets.  D.E. 244-1 at 1-4.

- A supplemental timesheet by Mr. Lucas which accounts for work done between October 22, 2014, and December 21, 2015.  D.E. 244-1 at 7-8.  The requested fees total **$12,662.50**.

- A supplemental timesheet by Mr. Webster which accounts for work done between October 11, 2014, and December 18, 2015.  D.E. 244-6.  The requested fees total **$700**.

- A document styled "TN Rate Report."  D.E. 244-1 at 6.  This document compiles the hourly rates charged by 35 Tennessee Attorneys and notes their law firm, their position within their firms, and their dates of graduation from law school and admission to the bar. As Plaintiffs point out (D.E. 244 at 6), the Sixth Circuit relied on this report in *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 370 (6th Cir. 2014).

- A declaration by Tennessee attorney Thomas S. Scott, Jr., accompanied by his curriculum vitae.  D.E. 244-2.  Mr. Scott declares that "high-quality . . . experienced attorneys in

complex litigation" in the Tennessee state courts and the Eastern District of Tennessee charge $300 to $450 and hour.  *Id.* at 1.

- A declaration by Tennessee attorney R. Culver Schmid, accompanied by his curriculum vitae.  D.E. 244-3.  Mr. Schmid states that he has served as corporate counsel for NLMT for over ten years, and that he advised Mr. Brownlow to retain Mr. Lucas for this litigation.  Mr. Schmid states that Mr. Lucas's rate of $425 an hour is within the range of rates in the Knoxville community, given his reputation and experience.  *Id.* at 2.

- A supplemental declaration by William G. Brownlow, IV.  D.E. 244-4.  Mr. Brownlow explains that he had previously retained Mr. Lucas to represent NLTM in a "very complex" lawsuit in 1994.  *Id.* at 1.  He states that he planned to hire Mr. Lucas in this matter even before Mr. Schmid recommended him, and provides his reasoning for hiring Mr. Lucas.  *Id.* at 2-3.

- A declaration by Tennessee attorney William D. Vines, III, accompanied by his curriculum vitae.  D.E. 244-5.  Mr. Vines describes Mr. Lucas as "the first and top choice of commercial litigators" in the Knoxville area.  *Id.* at 1.

In all, Plaintiffs seek a total of **$110,499.75** in fees (based on the hours documented multiplied by their respective rates) and expenses.

### IV.  Objections

The Court will now consider Defendants' objections to Plaintiffs' requested fees and expenses.  In short, the undersigned will recommend that all of Defendants' objections be overruled, with one exception, and that the Court should award $109,789.75 in attorneys' fees and expenses.

Before addressing the substance of Defendants' objections, the Court will address Defendants' request for an evidentiary hearing.  In their objections to Plaintiffs' Supplemental Statement of November 2015, Defendants argued that "Plaintiffs have not submitted affidavits or other information necessary to make an accurate determination as to the reasonableness of either the hours spent or the fee charged."   D.E. 241 at 9.   In response, Plaintiffs attached six declarations to their reply brief.   D.E. 244.   The Court then ordered Defendants to "file a supplement brief identifying in detail the specific factual issues the defendants believe require an evidentiary hearing.   In addition to identifying the disputed factual questions, the defendants shall identify any legal authorities they believe require that an evidentiary hearing be held in this case."   D.E. 246.

Although "a fee application may be decided without a hearing," *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995), the Court agrees with Defendants that a hearing is required when the facts are disputed and the record is not sufficiently clear to determine the facts based on the filings alone.   *See* D.E. 256 at 3.   "A hearing must be held only where the court cannot fairly decide disputed questions of fact without it."   *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3d Cir. 1987).   And the applicant's evidentiary burden is greater if the applicant seeks an enhanced award beyond the lodestar amount, or when excessive hours are claimed.   *See* D.E. 256 at 5-6 (citing *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 567-68 (1986); *Coulter v. Tennessee*, 802 F.2d 146, 150-51 (6th Cir. 1986)).

Defendants agree that, in most instances, reasonable attorney fees can be calculated from the affidavits and the written record.  Here, the declarations submitted by Plaintiffs have the same force and effect as sworn statements.   28 U.S.C. 1746.   But Defendants argue an

evidentiary hearing is necessary in this case because "Plaintiffs seek adjustments that go beyond the limits" set by case law.  D.E. 256 at 6.  On the contrary, as explained below, Plaintiffs do not claim excess hours.  Nor do they seek an upward adjustment from the lodestar amount.[2]  Nor are Plaintiff's timesheets so ambiguous or redundant that the Court requires a hearing to resolve their deficiencies.  The record underlying this claim for fees and expenses is sufficiently developed such that no evidentiary hearing is needed.  *See James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) ("[W]here the evidence before the court allows it to make findings based upon that evidence, the court need not jump through the hoop of an evidentiary hearing."); *Dublin Eye Associates, P.C. v. Massachusetts Mut. Life Ins. Co.*, No. 5:11-cv-128-DCR-EBA, 2015 WL 226046, at *2 (E.D. Ky. Jan. 16, 2015) (finding no hearing necessary under similar circumstances).

No hearing is necessary.  The various declarations are specific enough and sufficiently reliable on their face to support the factual findings made herein.  The Court will now consider Defendants' objections in light of the documentation and legal standards described above.

## A.

Defendants object to "69 entries made by lead counsel and local counsel between March 27, 2014 and October 10, 2014"—entries that total $23,815.00—on the basis that such fees are outside the scope of an allowable reward.  D.E. 241 at 3; D.E. 256 at 11.  Defendants note that "Plaintiffs' last motion for sanctions [D.E. 170] was submitted to the Magistrate on March 25, 2014 and his report was rendered the same day.  However, Plaintiffs continue to seek recovery of attorneys' fees for work performed during the next six months."  D.E. 241 at 3.  Defendants fault Plaintiffs for "seeking to recover for fees incurred in responding to Defendants' objections to the

---

[2] Defendants argue there is no "sound reason" justifying "an upward adjustment of any fee" in this case. D.E. 241 at 9; *see also* D.E. 256 at 10.  Plaintiffs disavow that they seek an upward adjustment:  "in this case . . . no upward adjustment from Plaintiffs' counsel's normal hourly rates has been requested.  In fact, the rate billed by Mr. Lucas is below his normal hourly rate."  D.E. 244 at 3.  The undersigned does not consider this fee issue to involve a request for an upward adjustment.  The parties' disagreement concerns the proper calculation of the lodestar amount.

Report and Recommendation [D.E. 190]." *Id*.  Essentially, Defendants argue that Plaintiffs may not recover fees incurred between the March 24, 2014 R&R and Plaintiffs' filing of their initial statement of fees and expenses (D.E. 208).

However, Judge Van Tatenhove's order tasks the undersigned with "recommending how much should be awarded to Plaintiff's counsel in compensation for attorney's fees and reasonable expenses relating to their motions for sanctions and attempt to depose Mr. Justice." D.E. 227 at 7.  The Court believes that the time Plaintiffs' attorneys expended responding to Defendants' objections to the R&R was in fact "relating to their motion for sanctions."

The March 2014 R&R recommended that Plaintiffs' motions for sanctions be granted. D.E. 189.  Defendants then objected to that recommendation.  D.E. 190.  That objection, and Plaintiffs' response thereto, were obviously related to the motions for sanctions that the R&R recommended granting.  Had Defendants' objections to the R&R succeeded, Plaintiffs' motions for sanctions would have been denied upon Judge Van Tatenhove's *de novo* review.  The contested entries fall within the scope of Judge Van Tatenhove's order granting Plaintiffs' motions for sanctions.

Defendants argue that this is an unjust result:  "attorney's fees should not be imposed where Defendants have exercised their right of appeal provided under 28 USC § 636(b)(1) and Rule 72(b)." D.E. 241 at 4.  They argue that the "threat of continued attorney's fees" could deter parties from exercising their right to *de novo* review by the District Judge.  *Id*.; *see also* D.E. 256 at 11-12.  The Court does not see it that way.  It is Defendants' contumacious conduct that engendered this litigation over attorneys' fees.  Plaintiffs proved their entitlement to these sanctions.  And their right to respond to Defendants' objections to the R&R was just as strong as Defendants' right to object.  Disallowing fees incurred in responding to the objections would

create a perverse incentive to abandon a party's efforts to obtain justified sanctions. Nor does Defendants' argument change the fact that the parties' post-R&R briefing was related to Plaintiffs' motions for sanctions. *See* D.E. 227 at 7. Thus, Defendants' objection based on the scope of the award lacks merit.

## B.

Defendants object to Plaintiffs' "charges for time incurred in receiving and reviewing material used in filing their notice of supplemental authority." D.E. 241 at 3 n.1. They note that the Court sustained their motion to strike this material. *Id.* The undersigned recommends sustaining this objection and omitting these fees.

On August 6, 2014, Plaintiffs filed a Notice of Filing Supplemental Authority "in opposition to Defendants' Objections" to the R&R. D.E. 198. Plaintiffs wished to supplement the record with

> an "Order Granting Plaintiffs' Motion for Sanctions" entered by the Circuit Court of Raleigh County, West Virginia in the case styled *Phillips Machine Service, Inc., et al. v. Southern Coal Corporation, Kentucky Fuel Corporation, et al.*, Civil Action No. 13-CV-818(B), pursuant to which the court granted the ultimate sanction of dismissing the Defendants' Counterclaim because the Justice Company-Defendants had refused to produce financial documents as ordered by the court, unilaterally cancelled the deposition of Mr. James C. Justice, III, ignored deadlines including one court-ordered deadline, withheld evidence, and provided incomplete discovery responses which they failed to supplement.

*Id.* at 1. Defendants moved to strike the notice of supplemental authority and the attached exhibit. D.E. 199.

Plaintiffs responded to the motion to strike. D.E. 200. The response included another exhibit, an agreed order entered by the Kentucky Energy and Environmental Cabinet that "involves hundreds of noncompliance violations and cessation orders by multiple Justice companies, including Kentucky Fuel Corporation." D.E. 200 at 8. Defendants sought an

extension of time to reply to Plaintiffs' response to their motion to strike.  D.E. 201.  Plaintiffs responded to the motion for an extension of time.  D.E. 202.  As part of his order adopting the R&R, Judge Van Tatenhove granted Defendants' motion to strike.  D.E. 206 at 25.  In a footnote, Judge Van Tatenhove stated that he did not consider Plaintiffs' supplemental authority because it was not considered in the R&R.  *Id*. at 3 n.3.

As discussed in Part IV.A, Plaintiffs' fees associated with defending against Defendants' objections to the R&R are properly considered in this sanctions award.  However, the reasoning underlying Part IV.A does not extend to Plaintiffs' unsuccessful attempt to file new evidence in the record without leave of the Court.  As Defendants correctly pointed out in their motion to strike, Plaintiffs' filing of the supplemental authority 134 days after the entry of the R&R was "untimely and in contravention of 28 USC § 636(b)(1)(C), FRCP Rule 72(b)(2) and Local Rule 7.1."  D.E. 199 at 1.  The Court, in its discretion, does not believe the fees incurred in preparing the untimely "supplemental authority" are properly related to their motions for sanctions.

Accordingly, the undersigned recommends sustaining Defendants' objections to twelve entries on Mr. Webster's timesheet, *i.e.*, the ones from August 5, 2014, to September 9, 2014.  Each of these entries concerns either the notice of supplemental authority, Defendants' motion to strike, or Defendants' motion for extension of time.  D.E. 240-2 at 9-10.  The entries total $710.00.  Mr. Lucas's corresponding timesheet, D.E. 240-1 at 3-9, does not contain any entries during this period.[3]

---

[3] Mr. Lucas's timesheet does contain a reference to "[e]mails to Mr. Webster regarding filing draft motion regarding declaration regarding Greenthorn" on March 25, 2014.  D.E. 240-1 at 7.  "Greenthorn" would be a reference to the agreed order by the Kentucky Energy and Environmental Cabinet that Plaintiffs eventually filed as an exhibit to their response to Defendants' motion to strike.  D.E. 200.  This entry corresponds to the day the R&R was entered. It is not clear from the timesheet what sort of "draft motion" Mr. Lucas was considering at this point.  However, in Plaintiffs' response to Defendants' memorandum in support of an evidentiary hearing, Plaintiffs explain the origin of this timesheet entry.  D.E. 257 at 9-10.  Considering both the date of the entry and the Plaintiffs' explanation for the entry, it appears that at that stage of the litigation researching the "Greenthorn" case was related to Plaintiffs'

**C.**

Defendants' next objection is that much of the time charged on Plaintiffs' counsels' timesheets was "unrelated to the actual preparation of pleadings" on the sanctions motions.  D.E. 241 at 5.  Defendants pinpoint 26 entries in Mr. Lucas's timesheets.  *Id*.  They further object to 52 entries from Mr. Webster's timesheets, most of which "are for receiving, reviewing, and responding to email from co-counsel."  *Id*. at 6.  Defendants argue that, considering these 78 entries, the number of hours Plaintiffs charged is not reasonable under the lodestar analysis.  *Id*. at 5.

The Court has reviewed each of the timesheet entries to which Defendants object.  Frankly, the Court does not grasp Defendants' theory as to why these entries are unrelated to Plaintiffs' motions for sanctions or the deposition of Mr. Justice.  Both Mr. Lucas and Mr. Webster affirm, under penalty of perjury, that such a  relation exists.  D.E. 240-1 at 1; D.E. 240-2 at 1.  Defendants fail to explain why the fees associated with these 78 entries, which on their face are sufficiently related to the sanctions motions or deposition, should not properly be awarded.  Baldly asserting that the entries are "unrelated" to the sanctions motions and deposition— without more—is insufficient to raise a contested issue of fact.  *See Graceland Fruit, Inc. v. KIC Chemcials, Inc.*, 320 F. App'x 323, 330 (6th Cir. 2008) (upholding a fee award when the objections provided "little detail" as to which portions of the work were "problematic"); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1403 (6th Cir. 1995) ("Conclusory assertions 'that plaintiff's counsel employed poor billing judgment . . . do not suffice to establish that there was error.'" (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991))).

---

motions for sanctions, regardless of the fact that, months later, the "Greenthorn" agreed order became an exhibit in the chain of filings related to Plaintiffs' supplemental authority that was stricken from the record.

**D.**

Defendants object to the rates charged by Mr. Lucas's staff.  In their December 2015 Objections to Plaintiffs' supplemental statements, Defendants noted that "a number of Mr. Lucas' staff are identified only by initials.  There is no information as to their position nor experience level or specific hourly rate."  D.E. 241 at 6-7.  To address this issue, Plaintiffs' reply memorandum and exhibits provided additional information.  First, Mr. Lucas's supplemental declaration named the staff members who appear on the timesheets, provided some biographical information, and specified their hourly rates.  D.E. 244-1 at 1-3.  Second, the "TN Rate Report" showed that associate attorneys charged between $190 and $335 per hour.  *Id*. at 6.  In their most recent brief, Defendants argue only that many of the associates' and paralegals' hours "are duplicative of Mr. Lucas's charges."  D.E. 256 at 8.

Defendants lodge no specific objection to the associates' and paralegals' hourly rates. They make no attempt to identify which time sheet entries are duplicative of Mr. Lucas's work. Rather, it should be expected that Mr. Lucas and his staff will work in concert and perform tasks with overlapping subject matter.  As discussed in the previous section, bald and undeveloped assertions like this do not raise a contested issue of fact.

**E.**

Defendants object to Mr. Lucas's hourly rate, arguing that it is not a reasonable rate under the lodestar analysis.  D.E. 241 at 6-9.  They observe that Mr. Lucas charged Plaintiffs $425 an hour, while Mr. Webster charged $200 an hour.  *Id*. at 6.  Defendants argue that Plaintiffs provided "no proof as to the customary hourly rate charged by comparable attorneys practicing within the Eastern District [of Kentucky].  We know only that the Knoxville counsel charges at a rate more than twice that of Plaintiffs' local counsel."  *Id*. at 8.

15

In their reply brief and accompanying documentation, Plaintiffs provided an explanation for Mr. Lucas's greater hourly rate. They explain that they are not requesting an upward adjustment, rather $425 is below Mr. Lucas's normal hourly rate. D.E. 244 at 3. In his December 18, 2015 declaration, Mr. Lucas states,

> Until recently, my standard hourly rate was $450 per hour. That standard rate has been raised and currently is $475 per hour. The rates charged for my time as well as the time of lawyers and staff are consistent with the market rates for attorneys and staff of comparable experience in Tennessee. However, I have billed my clients in this case at a reduced rate of $425. These are the only clients I am currently representing when I am charging a reduced rate. The remainder of my clients are billed at $450 or $475 per hour for my time.

D.E. 244-1 at 3-4.

Mr. Lucas's statement regarding his fee is supported by the declaration of attorney Thomas Scott (D.E. 244-2 at 1) and of attorney R. Culver Schmid (D.E. 244-3 at 2), both of whom state that, given his experience, Mr. Lucas's fee is reasonable for the Knoxville market. The Tennessee Rate Report, previously relied upon by the Sixth Circuit, also supports the reasonableness of Mr. Lucas's fee. D.E. 244-1 at 6.

Importantly, both R. Culver Schmid, corporate counsel for NLTM, and William G. Brownlow, IV, president of NLTM, explain why it was important for them to specifically hire Mr. Lucas for this litigation. Mr. Culver explained he was "intimately familiar with Mr. Lucas' practice having been associated with him in the same law firm for seven (7) years." D.E. 244-3 at 2. He "specifically recommended" Mr. Lucas for this case because he expected this to be "a difficult, lengthy and drawn out battle to enforce [the] contract." *Id*.

Similarly, Mr. Brownlow explained,

I first retained John A. Lucas, Esq., in connection with a lawsuit by New London Tobacco Market, Inc. ("NLTM") (v. Graham L. Cole) in the Eastern District of Kentucky in approximately 1994. That lawsuit was a very complex matter. Because of Mr. Lucas' performance and representation of NLTM in that case, I

16

made the decision that he would be my first choice as litigation counsel in any future complex matters.

D.E. 244-4 at 1.  He states that when Mr. Schmid recommended hiring Mr. Lucas, "[t]his was, of course, consistent with my pre-existing desire to use him as NLTM's litigation counsel."  *Id*. at 2.  Mr. Brownlow further explained,

> Most of NLTM's records are retained at my home office in Knoxville, Tennessee, and I conduct NLTM business from Knoxville.  Given the nature of this case, it was important for me to be able to retain counsel with whom I was previously familiar from work in complex matters for several reasons.  First, it was important to me to have lead counsel from Knoxville where I live and with whom my wife and I could interact regularly in Knoxville.  I also wanted counsel in Knoxville so that he could work with and coordinate regularly with my corporate counsel, Mr. Schmid.  Second, the amount in controversy was quite large and based upon my previous relationship with Mr. Lucas, I had confidence in his ability to handle substantial matters.  Also, based upon the business practices of the Defendants, and of their president, Mr. James Justice, I knew that it would be essential to have highly experienced and seasoned counsel because the Defendants would be formidable adversaries and difficult to deal with.

D.E. 244-4 at 2-3.

Mr. Lucas's capabilities are supported by the declaration of attorney William D. Vines, III, who says Mr. Lucas "is respected as the most able commercial litigator in [the Knoxville] area," and that for years he "has been the first and top choice of commercial litigators."  D.E. 244-5 at 1.

In calculating the lodestar's "reasonable hourly rate," a court should "initially assess the prevailing market rate in the relevant community."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The court in *Adcock-Ladd* explained that "when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending," the "prevailing market rate" will be defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command

within the venue of the court of record." *Id*.  However, the court also found it erroneous to conclude that "the hourly rate prevailing within the venue of the court wherein the case was commenced will *always* constitute the maximum allowable reasonable hourly rate for legal work performed by a foreign counselor." *Id*.  In *Adcock-Ladd*, there was a "special need" to hire counsel in Washington, D.C., because a witness had to be deposed there. *Id*. at 351.  Under these circumstances, "the base-point reasonable hourly rate" for the Washington attorney's work, "for lodestar tabulation purposes, was his customary Washington, D.C. $300 per hour fee." *Id*.

The Sixth Circuit has also held that when a fee applicant seeks fees for out-of-town counsel, the court may authorize those fees if it determines that (1) "hiring the out-of-town specialist was reasonable," and (2) "the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995).  Even though some case law suggests that the Eastern District of Kentucky may not necessarily be the only "relevant community" for the lodestar analysis in this case,[4] the Court will follow *Adcock-Ladd* and assume that this District is the relevant community, and that Plaintiffs must satisfy the *Hadix* test in order to justify Mr. Lucas's hourly rate.  *See Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066-RHB, 2015 WL 3969816, at *3 (W.D. Mich. June 30, 2015) ("There is a presumption in favor of the community market rates.").

The Court finds that Plaintiffs have satisfied the *Hadix* test.  Mr. Lucas's $425 an hour fee is the reasonable hourly rate for the lodestar analysis.  First, Plaintiffs have shown that hiring Mr. Lucas (as opposed to someone from the Eastern District of Kentucky) was reasonable. *Hadix*, 65 F.3d at 535.  Mr. Brownlow, president of NLMT, explained that he and his company

---

[4] *See, e.g.*, *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983).

have a relationship with Mr. Lucas going back to 1994. D.E. 244-4 at 1. He explained that most of the company's records are in Knoxville. *Id.* at 2. He said it was important for him to have lead counsel where he lived so that he, his wife, and corporate counsel could coordinate effectively. *Id.* Mr. Brownlow also stated that in light of the stakes and Defendants' reputation, he "had confidence" in Mr. Lucas's ability, based on their previous relationship, to handle this challenging case. *Id.* at 2-3. Based on this declaration (along with the declarations of R. Culver Schmid and William D. Vines, III, extoling Mr. Lucas's skills and reputation), the Court finds that hiring Mr. Lucas was reasonable in this case.

Second, Plaintffs have shown that Mr. Lucas's rate is reasonable for an attorney of his "degree of skill, experience, and reputation." *Hadix*, 65 F.3d at 535. Mr. Lucas explains that he is charging a lower-than-normal rate of $425 an hour. D.E. 244-1 at 3-4.[5] The "TN Rate Report" and the declarations of Thomas Scott, Jr. and R. Culver Schmid corroborate that $425 is a reasonable rate for an attorney of Mr. Lucas's skill, experience, and reputation. *See* D.E. 244-1 at 6; D.E. 244-2 at 1; D.E. 244-3 at 2. Defendants have offered no evidence in rebuttal. The Court therefore finds Mr. Lucas's rate to be reasonable for a person of his qualifications in Knoxville, Tennessee. *See Geier v. Sundquist*, 372 F.3d 784, 791-92 (6th Cir. 2004) (instructing the district court to consider affidavits that supported out-of-town counsel's relatively large requested fee).

The Court also finds that Mr. Lucas's fee is reasonable under the *Johnson* factors. The following factors in particular weigh in favor of Plaintiffs' reasonableness in choosing Mr. Lucas as their lead counsel:

---

[5] This reduced hourly rate converts to a total discount of approximately $4,521.25 for the time spent by Mr. Lucas that is within the scope of the award in this case.

- The time and labor required.  On account of Defendants' tactics that led to these sanctions, this litigation has been unusually time-consuming and laborious for Plaintiffs. It was wise of them to choose experienced counsel like Mr. Lucas.

- The skill requisite to perform the legal service properly.  This factor is related to the first. Nothing in this case has come easily for Plaintiffs, and Mr. Lucas's diligence is commendable.

- The amount involved and the results obtained.  This litigation seeks damages of over $17 million (D.E. 40 at 15), and Plaintiffs' counsel have already succeeded in obtaining default judgment on three counts.

- The experience, reputation, and ability of the attorney.  The declarations of fellow attorneys and Mr. Lucas's CV establish his outstanding experience, reputation, and ability—facts Defendants do not attempt to challenge.

- The nature and length of the professional relationship with the client.  Here, Mr. Lucas represented NLTM as far back as 1994, and Mr. Brownlow explained why he had long planned to hire Mr. Lucas in the event a complex lawsuit arose.

*See Blanchard v. Bergeron*, 489 U.S. 87, 91-92 & n.5 (1989) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

This case is comparable to *Graceland Fruit, Inc. v. KIC Chemcials, Inc.*, 320 F. App'x 329 (6th Cir. 2008).  The District Court in that case awarded attorneys' fees to the defendant, including fees for counsel from New York City.  *Id.* at 329.  The District Court had reasoned that

> [The New York firm's] longstanding representation of [the defendant] in various matters over the years, as well as the New York connections to this case, provide the basis for upholding [New York counsel's] attorneys' fees as reasonable. Further, if [the defendant] had hired only local counsel to represent it throughout the litigation, the costs for getting local counsel "up to speed" on the facts of the case would have surely been costly.

*Id.* at 329-30.  The Sixth Circuit found that the District Court did not abuse its discretion in awarding New York counsel his normal hourly rate under *Hadix.  Id.* at 330.

Similarly, here, Mr. Lucas had a longstanding relationship with Mr. Brownlow and NLTM, and it was convenient for Mr. Brownlow to have lead counsel close at hand, without the need to communicate long distance throughout this protracted and contentious litigation.  The Court will therefore recommend awarding Lucas his full requested hourly rate of $425 an hour.

**F.**

Defendants raise a new argument in their brief in support of a hearing, namely that case law sets a 3% cap on attorneys' fee awards.  D.E. 256 at 7, 12.  They cite *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), which concerned an award of attorneys' fees in the wake of a successful civil rights suit.  The district court had restricted the amount of fees the attorneys could charge for the time spent preparing and litigating the attorney fee aspect of the case to "approximately 3% of the hours allowed in the main case."  *Id*. at 151.  The court noted that "in the private market place, lawyers do not usually charge, and clients do not usually pay, for the time it takes lawyers to calculate their fees."  *Id*. at 151.  Accordingly,

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary.  Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id*.

Defendants claim that Plaintiffs have exceeded that 3% benchmark:  "of the alleged $110,000.00 in attorney fees, $18,805.00 or approximately 17% are solely attributable to the preparation of their motion and litigation of their demand for attorney fees."  D.E. 256 at 12.

Plaintiffs counter that "this is not a run-of-the-mill fee application."  Indeed, because this case involves sanctions under Rule 37, it is readily distinguishable from *Coulter*.  Judge Van Tatenhove has already determined in accordance with Rule 37 that Plaintiffs are due all fees and expenses related to the motions for sanctions and the attempted deposition of Mr. Justice.  D.E. 227 at 7.  The guiding principle in this procedural posture is the lodestar analysis in light of Rule 37, not the 3% cap of *Coulter*.

## V.  Proposed Findings of Fact

The undersigned recommends that the District Judge make the following findings:

- Despite Defendants' objections, the hours and rates charged by Mr. Lucas, Mr. Webster, and Mr. Lucas's staff are reasonable.

- All the hours claimed on the timesheets accompanying Mr. Lucas's November 17, 2015 declaration, D.E. 240-1 at 3-9, are reasonably related to Plaintiffs' motions for sanctions and their attempt to depose Mr. Justice.  These hours, spanning from July 17, 2013, to October 10, 2014, when multiplied by the reasonable rates of Mr. Lucas and his staff, total **$89,838.25** in fees that should be awarded.

- With the exception of the twelve entries from August 5, 2014, to September 9, 2014, all the hours claimed on the timesheets accompanying Mr. Webster's declaration, D.E. 240-2 at 3-10, are reasonably related to Plaintiffs' motions for sanctions and their attempt to depose Mr. Justice.  For the reasons explained in Part IV.B, the hours related to the notice of supplemental authority at D.E. 198, which was stricken from the record, are not reasonably related to Plaintiffs' motions for sanctions and their attempt to depose Mr. Justice.  Those twelve entries total $710 in fees.  Subtracting that $710 from the

$7,160.00 Mr. Webster claims on these timesheets yields a total of **$6,450.00** in fees that should be awarded.

- Mr. Brownlow's claim for travel reimbursement of **$139.00**, which was not objected to by Defendants, should be awarded as being reasonably related to Plaintffs' motions for sanctions.  D.E. 208-3.  The expenses were incurred because Mr. Brownlow traveled from Knoxville to London to attend the January 10, 2014 hearing on the motions for sanctions.  *Id.*

- All the hours claimed on Mr. Lucas's supplemental timesheets, D.E. 244-1 at 7-8, are reasonably related to Plaintiffs' motions for sanctions.  These hours, spanning from October 22, 2014, to December 21, 2015, when multiplied by the reasonable rates of Mr. Lucas and his staff, total **$12,662.50** in fees that should be awarded.

- All the hours claimed on Mr. Webster's supplemental timesheets, D.E. 244-6 at 3, are reasonably related to Plaintiffs' motions for sanctions.  These hours, spanning from October 11, 2014, to December 18, 2015, when multiplied by Mr. Webster's reasonable rate, yield a total of **$700.00** in fees that should be awarded.

- When added together (and discounting the $710), these fees and expenses total **$109,789.75**.

## VI.  CONCLUSION

Plaintiffs have met their burden of establishing the lodestar in this case and justifying the fees and expenses sought.  The undersigned recommends sustaining only one of Defendants' objections—the one related to the supplemental authority that Judge Van Tatenhove ultimately struck from the record.  Accordingly, $710.00 will be subtracted from Plaintiffs' requested award of $110,499.75.

The undersigned therefore **RECOMMENDS** that Plaintiffs be awarded **$109,789.75** in attorneys' fees and expenses.   The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute.  *See also* Rule 72(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 16th day of March, 2016.

**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**