IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| **NEW LONDON TOBACCO MARKET, INC.** | ) | |
| **FIVEMILE ENERGY, LLC** | ) | |
| | ) | No. 6:12-CV-00091-GFVT-HAI |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **KENTUCKY FUEL CORPORATION, and** | ) | |
| **JAMES C. JUSTICE COMPANIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT

Defendants' Memorandum in Support of Motion to Set Aside Default (D.E. 304-1) makes three arguments: (1) that their conduct supposedly does not warrant the entry of a default judgment of this magnitude, (2) that setting aside the default judgment will not cause "sufficient prejudice" to Plaintiffs, and (3) that they supposedly have meritorious defenses, "particularly to the damaged calculations." The latter two arguments are two of the three factors that the Sixth Circuit has held should be considered in reviewing whether to set aside a default judgment. *See Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 976 (6th Cir. 1991) (Whether to set aside entry of a judgment by default "is controlled by three factors: 1. Whether the plaintiff will be prejudiced; 2. Whether the defendant has a meritorious defense; and 3. Whether culpable conduct of the defendant led to the default.") (internal citations and quotations omitted).

While the Sixth Circuit has applied these same three factors to defaults arising from discovery sanctions under Rule 37, the weight to be given to each of these three factors in the context of a sanctions-based default is left to the discretion of the trial court. *See id.* at 976-77 (holding the three factor test applies but giving no weight to any one factor over the other). In their

brief, however, the Defendants omit any discussion of the third factor – "whether culpable conduct of the defendant led to the default." *Id.* at 976. When all factors are considered, in light of the extreme abuse that was the basis for default in this case, the Defendants' Motion should be denied for the reasons set forth below.

A.   **The Court will Determine the "Magnitude" of the Default Judgment When It Considers Defendants' Objections.**

The greater part of the Defendants' Memorandum in Support of their Motion to Set Aside Default is devoted to their complaint about the amount of damages recommended by the Magistrate Judge. Thus, the Defendants claim that their conduct "does not warrant a default of this magnitude" even though the magnitude of the award has not yet been determined, but remains for future determination by this Court. The Defendants' present Motion is just another vehicle for them to attempt to dispute the recommended damages. That issue is now before this Court and Defendants have presented their objections to the damages in the form of their Objection (D.E. 305). This Court will give due consideration to those objections, but the prior Default Judgment should rise or fall on its own merits. Those merits have previously been considered both before the Magistrate Judge and again by this Court when the Defendants objected to the Magistrate Judge's Report & Recommendation for Default Judgment.

In fact, this present Motion represents the Defendants' *fifth* bite at the apple to avoid a default judgment. They first litigated and argued this issue before Magistrate Judge Ingram in connection with the Plaintiffs' motions for sanctions. Next, they took advantage of their right to object to the Magistrate Judge's Report & Recommendation for a default judgment and briefing that issue before this Court. Their third bite at the default judgment apple was when they filed a Motion to Alter or Amend this Court's Memorandum Opinion and Order. D.E. 212. That Motion was denied in D.E. 227. Their fourth attempt was in a *second* Motion to Alter or Amend. D.E. 232. That Motion to Alter or Amend was also denied. D.E. 255.

Thus, Defendants' present complaints "about the magnitude" of the damages to be awarded by this Court in the future are misplaced. That decision should be made in the context of their Objections to the Magistrate Judge's Report & Recommendation.

Further, the "magnitude" of the default judgment is not a factor recognized by the Sixth Circuit in considering a motion to set aside default. *See United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 845 (6th Cir. 1983). *United Coin* is the preeminent case in the Sixth Circuit for the factors considered in motions to set aside default, which identifies only the above three factors. The Defendants essentially ask this Court to adopt a fourth factor to apply in determining motions to set aside default. In support of this argument, the Defendants present cases that are largely unpersuasive. The majority of the cases the Defendants rely upon are district court opinions from outside the Sixth Circuit. *See* D.E. 304-1, p. 4. Most of these cases are unreported, and all of these cases can be distinguished from the present case because they involve defaults arising from a defendant's failure to respond to the complaint. In addition, the Defendants misinterpret and rely on two cases from the Sixth Circuit Court of Appeals that do not support their arguments.

The first Sixth Circuit case the Defendants rely upon is *Amernational*. In that case, the Sixth Circuit Court of Appeals determined that the default at issue should have been set aside based on the three factors set forth in *Union Coin*. *See Amernational*, 925 F.2d at 976-78 (applying the three factors, prejudice to the plaintiff, a meritorious defense, and culpable conduct). In its opinion, the Court recognizes culpability as the "final factor" in its analysis. *Id.* at 978. After the Court of Appeals determined that the Rule 60(b) criteria was met and that the district court should have set aside the default, the Court observed that the amount of damages awarded "strengthened" the Court's conclusion, especially since the district court relied on an "estimate" as the sole proof of damages. *See id.* at 978. Therefore, contrary to the Defendants' argument, the size of the damages awarded was not definitive, nor was it even a "factor" considered by the Sixth Circuit Court of

3

Appeals in determining the propriety of the district court denying a motion to set aside default. The Defendants' characterization of this case is incorrect and unpersuasive.

The other Sixth Circuit case the Defendants rely upon is *General Environmental Science Corp. v. Horsfall*. 1994 U.S. App. LEXIS 13398.[1] This case involved multiple defendants who withheld responses to certain discovery topics that would either incriminate the defendants in a foreign country or divulge trade secrets or otherwise confidential information. *Id.* at *8-19. The Sixth Circuit held that the default judgment should be vacated because whether the conduct of the defendants was culpable was "too close a question to justify a default judgment." *Id.* at *34 (citing *United Coin*, 705 F.2d at 846). The Court later stated that the amount of damages "only compounds" that the default should be vacated. *Id.* (citing *Amernational*, 925 F.2d at 978). However, the Court's reasoning was not based on the amount of damages awarded, but rather the fact that the amount sought in the Complaint was "a fraction" of the amount ultimately awarded by default. *Id.* at *35 ("awarding a default judgment for nearly $12 million on an action that [the plaintiff], itself, originally valued at a fraction of that sum constitutes an excessively harsh, even draconian penalty under the facts presented."). In this case, by contrast, the recommended compensatory damages award is consistent with the damages sought in the Amended Complaint and the recommended punitive damages are approximately one-half of what was requested. This case is therefore totally dissimilar from *General Environmental.*

The authority the Defendants rely upon does not support its argument that the "magnitude" of damages awarded upon default is a factor in setting aside a default judgment in the Sixth Circuit. Under existing authority from the Sixth Circuit Court of Appeals, in this circuit the Court's inquiry is restricted to the three factors of *Union Coin* that have long been the standard in this Circuit.

---

[1] This case is both unreported and not recommended for citation in specific situations according to the rules of the Sixth Circuit.

### B. The Defendants' Culpable Conduct and Bad Faith

The Sixth Circuit recognizes that even where there is no prejudice to the plaintiff and where the defendant has presented a meritorious defense, a default should not be set aside where the defendant's conduct was willful. *See Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986) (recognizing that "when the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion ***in the absence of a willful failure of the moving party to appear and plead.***") (emphasis added); *United States v. $22,050.00 United States Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (quoting *Shepard*, 796 F.2d at 194). Therefore, in determining whether to set aside a default, district courts give the greatest weight and deference to whether the defendant acted willfully or with culpable conduct that resulted in the default. *Id.*

#### 1. Prior findings of Culpable Conduct and Bad Faith

The Court has previously described Defendants' culpable conduct and bad faith. *See, e.g.,* D.E. 189 at 16-19, 21-23, 26; 29; D.E. 206 at 6-11, 13-16, 18; 21; D.E. 251 at 1-3, 5-6; D.E. 255 at 1. There is no need to repeat those findings here. Although the Defendants avoid any discussion of the ramifications of their conduct, they do offer one excuse that requires rebuttal. They attempt to minimize their culpable misconduct by arguing that their actions "do not evidence the intent to thwart the judicial proceedings…." D.E. 304-1 at 7. The Magistrate Judge's findings, however, refute this: "Defendants converted this Court's processes into a tool for obstruction and delay." D.E. 302 at 29. He further found that Defendants' culpable misconduct "sets an unfortunate new low in the undersigned's experience." *Id.* at 19, n.4. This factor obviously militates against setting aside the default judgment.

#### 2. The Defendants' efforts to misled Plaintiffs and the Court with phony tax returns.

In considering Defendants' culpable conduct, then the Court also should consider the

5

Defendants' attempt to both mislead the Plaintiffs and the Court by tendering phony tax returns. The recent Report & Recommendation did not discuss them in detail, although it observed that this conduct "stretching even beyond the entry of default judgment as a sanction, constitutes relevant litigation conduct that supports the award of prodigious sanctions." D.E. 302 at 20, n.5. The discussion below therefore will describe in summary form what they did. As the Court will see, this type of conduct militates against awarding them any further relief.

In early 2016, the Defendants attempted to purge themselves of contempt of Court by passing off fraudulent documents as their tax returns. They got caught. They changed their story. The second story did not hold up either. They changed it again. With each story they sank further into a Serbonian Bog made of their own falsehoods and deception. Plaintiffs will not add unduly to the length of this Memorandum by describing the deception fully here. The complete story has been told in several filings. The most comprehensive is in D.E. 273 (filed under seal). The Defendants object to what they call Plaintiffs' "hysterical characterization of these events." D.E. 304-1 at 7, n.3. Plaintiffs are content to let the Court review the record of these tax returns and decide for itself. The following is an abbreviated summary.

On March 10, 2016, as they were facing the prospect of a report and recommendation on the amount of damages, including punitive damages, and in an obvious effort to mitigate their long-standing contempt of Court, the Defendants tendered what they represented were their tax returns for 2005–2013. Defendants' counsel's transmittal letter (D.E. 265-1) represented that the documents were "copies of tax returns prepared for Kentucky Fuel Corporation and James C. Justice Companies, Inc." That was not true.

Plaintiffs' counsel was concerned about certain "red flags" that indicated the documents were not what they were represented to be. He wrote to Defendants' counsel on March 15, 2016. *See* D.E. 265-20. That letter inquired, among other things, whether the purported tax returns produced five days earlier had actually been filed with the IRS.

When they got Plaintiffs' counsel's March 15, 2016 letter, the Defendants realized that their efforts to deceive had not worked. So, they changed their story in a letter dated March 18, 2016. *See* D.E. 265-21. In their second story, Defendants acknowledged that the documents they had previously represented as being "tax returns prepared for Kentucky Fuel Corporation and James C. Justice Companies, Inc." (D.E. 265-2 to 265-19) actually were ***not*** tax returns filed with the IRS. Defendants' second letter instead claimed that they were "prepared by internal accounts [sic] for each of the companies" and that they supposedly were then reviewed by Mr. Justice and others. They supposedly were "then forwarded to an outside firm for review and incorporation within other returns." Subsequent developments, however, have shown that every one of those statements was untrue.

On April 1, 2016, two weeks after floating their second story, Defendants tendered another set of documents that they represented were the "consolidated returns and financial information for James C. Justice Companies, Inc." for 2005–2013. *See* D.E. 265-22. These documents were also bogus. *See* discussion of discrepancies in D.E. 273 at 5-6 and D.E. 265 at 5-6.

The Defendants changed their story again when they filed their Motion to Strike (D.E. 269) and supporting Memorandum (D.E. 269-1). In those documents Defendants told yet another story about their alleged tax returns. It confirmed that their prior representations were not true. It also showed that Defendants were indeed trying to deceive both the Plaintiffs and the Court.

Defendants' third story was that the first set of alleged tax returns produced on March 10, 2016, were not really "copies of Defendants' tax returns prepared for Kentucky Fuel Corporation and James C. Justice Companies, Inc." as they represented at the time (*see* D.E. 265-1). Defendants' third story was that they were what Defendants call "pro-forma stand-alone returns." D.E. 269-41, ¶ 7; D.E. 269-1, p. 3. Unlike true tax returns, they allegedly were prepared according to GAAP, "not IRS standards." *Id.*, p. 5. This "explanation," however, raised more new questions

7

and highlighted more contradictions with their first two stories. The discrepancies in their third story are discussed in D.E. 273 at 6-12 and will not be repeated in detail here.

What the Defendants' third story does show, however, is (1) the Defendants misrepresented the first set of returns when they produced them on March 10, 2016, because they were not genuine authentic tax returns; (2) the explanation given in their second story was not true; and (3) they produced the first set of returns in an effort to continue to flaunt the Court's orders but while attempting to deceive the Court and Plaintiffs into thinking that they had finally complied.

      **3.**     **Throwing Dudley Under the Bus.**

The Defendants claim that *they* are not responsible. They blame their former counsel, A. J. Dudley, Esq., for the Default Judgment. In prior filings they blamed his predecessor. *See* D.E. 206 at 8, n.5. Mr. Dudley represented the Defendants for more than a year and at the time when most of Defendants' sanctionable acts occurred. They claim that he was "inexperienced" and supposedly did not properly advise them of the consequences of disobeying Court orders. D.E. 304-1 at 5. These are not allegations that should be made lightly against a respected member of the Bar. But, they have been.

We know that these allegations have been made lightly, because the Defendants do not provide *any* evidentiary support for them. They simply throw out the conclusory allegations, with no support. Based upon the observations of the undersigned counsel, Mr. Dudley was an honest, ethical attorney who did the best that he could given the hand that he was dealt. For example, when questioned by Magistrate Judge Ingram at the January 10, 2014 hearing about the Defendants' continuing violation of the Court's orders to produce their tax returns, Mr. Dudley stated: "…I'm confident we have James C. Justice Company tax returns in Roanoke, and I can get those promptly, very immediately." D.E. 206 at 14. The Court can draw the obvious inference that he made this commitment because of the advice that he intended to give the Defendants and, no doubt, his hope that his clients would not persist in their violations of the Court's orders after he reported to them

about the hearing.  Of course, he was wrong.  Plaintiffs note that it was not long thereafter that Mr. Dudley abruptly left the Defendants' employment.

Even if the Defendants had supported their Motion with affidavits or evidence setting forth facts that Mr. Dudley's legal representation was the cause of their default, that would be legally irrelevant.  In *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 396-97, (1993) the Supreme Court held that the acts or omissions of an attorney are attributable to his client. Thus, even if Mr. Dudley were at fault, his clients "must be held accountable for the acts and omissions of their attorney." *Id.*  For all of these reasons, Defendants' efforts to avoid the consequences of their own decisions by blaming them on a lawyer who is no longer before the Court should be rejected.

    **4.**    **The Defendants Continue to Misrepresent Their Discovery Violations.**

When Defendants are seeking to set aside the default judgment it also is significant that their culpable conduct continues to this day.  Here are two examples.  The first relates to the Defendants' failure to produce documents relating to the minimum royalty payments (or lack thereof) to the underlying Fivemile landowners.  The Defendants seek to excuse this culpable misconduct, claiming that they "believed the issue was moot" after their Rule 30(b)(6) representative, Attorney Steve Ball, was questioned about these payments and unable to answer them.  D.E. 304-1 at 6. However, if Defendants were acting in good faith they had many opportunities to attempt to produce these documents.  The first was when a document production was requested.  The second was when the Motion to Compel was granted and the documents were ordered to be produced.  The third was after the deficiencies were pointed out at Mr. Ball's Rule 30(b)(6) deposition.  The fourth was when Plaintiffs filed their Motion for Sanctions.  The fifth was after oral argument before the Magistrate Judge on January 10, 2014 on the issue of sanctions.  The sixth was after the filing of the Magistrate's Report & Recommendations for default judgment.  The seventh was after the entry of this Court's Memorandum Opinion & Order confirming the Magistrate's Report &

Recommendation and awarding default judgment. The unfortunate fact is that this default continues to this very day.

The second example is Defendants' failure to produce documents relating to the New Lead transaction. The Defendants claim – incorrectly – in their Memorandum of Law in Support of their Motion to Set Aside Default that "any deficiency in [the New Lead] production was remedied by October 25, 2013…." D.E. 304-1 at 5. That is not true. As is discussed in D.E. 271 (Plaintiffs' Memorandum in Support of Renewed Motion Under Rule 55, filed under seal) and in Plaintiffs' Memorandum in Response to Defendants' Objections to Report & Recommendation filed contemporaneously herewith in Section II B at pp. 4-8, the Defendants never produced numerous documents relating to the New Lead transaction. The Plaintiffs were able to obtain some of these documents from other sources; others have been identified from existing documents, but never produced to this day. And, of course, these are only the missing documents Plaintiffs have been able to identify. We still do not know the full extent of Defendants' withholding of these documents.

**C.      The Defendants Do Not Have a Meritorious Defense to Justify Setting Aside the Default Judgment.**

The Defendants claim that the default judgment should be set aside because they have meritorious defenses, "particularly to the damage calculations performed by the Magistrate Judge." D.E. 304-1 at 9. They devote one paragraph to this argument, referring to their Objections to the Report & Recommendation.

First, although this is a factor for consideration under the Sixth Circuit's decision in *Amernational Industries, supra*, it should be given less weight in this context, where the default judgment is the result of a sanctions award, than in the typical case where a default judgment has been entered due to a failure to respond to a complaint. A Defendant who has missed a deadline for responding to a complaint has not yet even raised any defenses. In setting aside a default based

upon non-culpable or excusable conduct where no answer has been filed, consideration of whether the Defendant has a valid defense or whether it is merely a stalling tactic would be appropriate. In cases such as this one, however, where sanctions have been awarded because of the Defendants' "consistent pattern of obfuscation throughout the case" (D.E. 206 at 21), the fact that the Defendants have raised defenses in their answer should be entitled to less weight. Part of Magistrate Judge Ingram's findings is pertinent on this issue. The Defendants had disputed the award of prejudgment interest on the grounds that they had a meritorious defense and had disputed liability. Magistrate Judge Ingram, however, held:

> Merely asserting a defense to such liability in their Answer does not paint the whole picture regarding their conduct. Instead, that assertion was a necessary procedural step to defend the case and set up a posture in which they could drag things out through litigation misconduct. They may have reasonably disputed liability for the lost tonnage royalties at the onset of the case, but raising that dispute was one small step taken to further their 'appalling' pattern of conduct.

D.E. 302 at 28-29.

Indeed, in cases where the default is the result of discovery abuses and contumacious conduct after an answer has been filed, the Defendant will always have raised some defense. Otherwise, there would have been no need for discovery. To attach great weight to this factor therefore would be equivalent to negating the possibility of default judgment due to misconduct during the course of case preparation and discovery.

Second, the Defendants' argument about their supposedly meritorious defenses to the damages calculations is based upon the argument that it would have been uneconomical to mine the Fivemile coal and Defendants could not have made a profit doing so. *See, e.g.,* D.E. 305 at 1-3, 15-20. This economic argument, however, depends completely upon the unauthorized, late expert reports filed by the Defendants (without seeking leave of Court for the late filing) with their Objections. Such expert opinion testimony has been previously rejected by this Court. *See* D.E. 206 at 4, n.3. This latest attempt to file late expert testimony also should be rejected. The Plaintiffs

have fully addressed this in their Memorandum in Response to Defendants' Objections to Report & Recommendation in Sections III (Standard of Review) and IV B 1 (discussing improper reliance upon late expert opinions), and in their Motion to Strike Opinions of Late-Designated Experts and Related Portions of Defendants' Objections to Report & Recommendation and supporting Memorandum, both of which are being filed contemporaneously with this Memorandum.

Because Defendants claimed "substantial defense" based upon their economic arguments is dependent upon this expert testimony and because the late expert testimony that supposedly supports that defense is inadmissible, the Defendants cannot meet this element to set aside the default judgment.

**D.     No Prejudice?**

By again making their "no prejudice" argument, the Defendants are again attempting to re-litigate what the Court has already found. The Court has repeatedly found that the Defendants' actions have prejudiced the Plaintiffs. *See, e.g.,* Doc. 189 at 18-20; D.E. 206 at 9, 15, 21; D.E. 239 at 2; D.E. 251 at 5. This prejudice would only be compounded if Plaintiffs were now forced to "go back to square one" by setting aside the default judgment and re-opening discovery, and all the other relief that Defendants seek.

Defendants' argument that setting aside the Default Judgment would not prejudice the Plaintiffs has to be considered in light of their simultaneous effort to designate three new expert witnesses in their Objections to the Magistrate Judge's Report & Recommendation. The impropriety of these late designations is addressed in Plaintiffs' Memorandum in Response to Defendant's Objections, which is filed contemporaneously with this Memorandum. But, make no mistake about it:  taken together with the present Motion, it is obvious that what the Defendants are attempting to do is reset the calendar back to March 2013, designate new experts, continue with discovery and avoid all consequences for their actions leading to the Default Judgment. Thus, Defendants' scenario would allow them to designate new experts, would require discovery of those

experts, would require rebuttal experts by Plaintiffs and more discovery of those experts, more *Daubert* motions, more briefing, discovery about Mr. Dudley's interactions with Plaintiffs (since their attempt to blame him constitutes a waiver of the attorney-client privilege), and more delay followed by more delay. And, of course, legal fees would continue to increase, consistent with Defendants' prior tactics in this case. All of this reinforces the truth of the now-established allegations in ¶ 24 of Plaintiffs' Amended Complaint that not paying their debts is part of Defendants' business plan and strategy. D.E. 40 at 10.

In addition, plaintiff suffers prejudice where setting aside the default will result in delay and "provide greater opportunity for fraud and collusion." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (internal citation and quotations omitted). Further, a defendant's previous pattern of misconduct is sufficient proof that setting aside a default would provide a greater opportunity for fraud and collusion and that, therefore, the plaintiff would be prejudiced. *See Toledo Hotel Investors Ltd. P'ship v. American Contract Designers, Inc.*, 1991 U.S. App. LEXIS 14862, at *4-5 (6th Cir. July 1, 1991) (finding prejudice where the defendants had greater opportunity for fraud and collusion that was "borne out by the pattern of conduct already exhibited in this case.") (unreported and not recommended for publication). Here, the Plaintiffs would suffer more prejudice if the default were set aside for three reasons. First, there has already been a considerable delay over the span of more than 3 years as a result of the Defendants' sanctionable conduct. Second, as outlined above, the Defendants' previous pattern of fraudulent and sanctionable conduct is sufficient proof that setting aside the default would create greater opportunity for the Defendants to again employ fraud or collusion in the subsequent proceedings. Finally, in light of the assertions made in the Defendants' most recent Objection to the Magistrate's Report and Recommendation, the Plaintiffs have serious concerns as to the future collectability of any judgment against the Defendants. In the Objection, the Defendants assert that there is significant risk that a judgment will serve as a "death warrant" that will "bankrupt these

13

Defendants[.]" (D.E. 305). Based on these admissions, Plaintiffs are concerned about fraudulent conveyances and that any collectability on a future judgment will be made more difficult the longer this case remains without a final judgment. By setting aside the default and prolonging this litigation, there would be a greater likelihood that a judgment could not be fully collected against the Defendants, since they have indicated in their filings that their financial status is questionable.

For the above reasons, Defendants' Motion to Set Aside Default Judgment should be denied.

/s/ John A. Lucas
*John A. Lucas (011198)
*W. Edward Shipe (023887)
**Wagner, Myers & Sanger, P.C.**
1801 First Tennessee Plaza, 800 S. Gay St.
Knoxville, TN 37901-1308
865.525.4600 (telephone)
865.524.5731 (facsimile)
jlucas@wmspc.com
eshipe@wmspc.com
***admitted pro hac vice***

Scott M. Webster
Tooms, Dunaway & Webster
1306 West Fifth Street, Suite 200
P.O. Box 905
London, Kentucky 40743-0905
606.864.4145 (telephone)
606.878.5547 (facsimile)
swebster@toomsdunaway.com
***Counsel for New London Tobacco Market, Inc., and Fivemile Energy, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt of this 14th day of February, 2017.

/s/ John A. Lucas