UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, LLC, <br><br> Plaintiffs, <br><br> V. <br><br> KENTUCKY FUEL CORPORATION and JAMES C. JUSTICE COMPANIES, INC., <br><br> Defendants. | Civil No. 12-91-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Defendants' Motion to Set Aside Default. [R. 304.] After extensive briefing, on September 30, 2014, this Court entered Default as to liability against Defendants according to Federal Rule 37(b)(2)(A). [R. 206.] Defendants request that this Court overturn the finding of default liability, but the factors for consideration of overturning a default weigh heavily in favor of maintaining default as to liability. Accordingly, the Motion to Set Aside Default [R. 304] is **DENIED**.

**I**

Defendants have a long history of contumacious practice in this case that began in 2012. Their violations occurred in four large categories.

First, the obstruction started with the very first deadline in the pretrial scheduling order. Defendants were to serve their initial disclosures on October 3, 2012, and they did not comply. [*See* R. 80-1 at 1.] After a conference call, Defendants were admonished by the Magistrate Judge to comply with the scheduling order and produce documents no later than November 27,

2012.  [*See* R. 24]  In defiance of the Court's order, Defendants produced documents postmarked November 28, 2012.  [*See* R. 80-1 at 2.]

Second, Defendants failed to follow the Court's order when obtaining counsel.  Defendants' first counsel of record, Billy Shelton, indicated he would be withdrawing from the case on February 15, 2013, and indicated replacement counsel would be shortly forthcoming.  [R. 56-5 at 5.]  On March 4, 2013, Defendants indicated they had obtained replacement counsel, Allen W. Dudley, Jr., but had not yet submitted paperwork for him to be admitted pro hac vice.  [*See* R. 36.]  The Magistrate Judge ordered that Defendants submit the required paperwork by filed promptly.  [*Id*.]  Again defying the Court's order, Mr. Shelton actually withdrew his representation on June 24, 2013, and Mr. Dudley entered as counsel on July 29, 2013.  [R. 60; R. 95.]  On July 22, 2013, three attorneys from Frost Brown Todd entered their appearance and quickly withdrew their appearance on July 26, 2013.  [R. 79; R. 89.]  Defendants blame much of their lack of response to discovery requests on this inability to obtain counsel, though they indicated in March that they had obtained Mr. Dudley.  [*See* R. 169.]

Third, Defendants did not respond to discovery requests.  Plaintiffs entered their First Set of Interrogatories and Requests for Production of Documents on January 4, 2013, and Defendants were to respond within thirty (30) days.  [R. 80-1.]  Plaintiffs entered their Second Set of Requests for Production of Documents on January 18, 2013, and Defendants were again required to respond within thirty (30) days.  [*Id*.]  Defendants missed both deadlines and Plaintiffs requested a telephone conference with the Magistrate Judge, which was held on February 27, 2013.  [R. 33.]  The Magistrate Judge set new deadlines for responding to Plaintiff's requests and Defendants complied.  However, Plaintiffs believed that Defendants' responses were incomplete as to the Fivemile leases and permits [R. 56-1], leading to another

telephone conference on May 6, 2013. This series of exchanges led to the Magistrate Judge granting Plaintiff's motion to compel Defendants to produce the Fivemile leases and permits. [R. 99.] Defendants were given seven (7) days from July 30, 2013, to comply with the Magistrate's order and they did not comply. Defendants instead filed a motion for a protective order. [R. 103.] Magistrate Ingram again held a telephonic conference on August 13, 2013. [R. 114.] After briefing, the Magistrate granted in part and denied in part the Defendants' protective order. [R. 122.] The Court again ordered Defendants to produce the Fivemile leases and permits that were not protected by the Protective Order on September 19, 2013. [R. 124.] Plaintiffs filed for sanctions on October 8, 2013, as the discovery Defendants had turned over was likely incomplete. [R. 131.] Indeed, on October 25, 2013, Defendants turned over nearly 1,000 emails related to the Fivemile leases, over a month after the Magistrate Judge ordered. [R. 144.] Further, Plaintiffs reported that discovery responses concerning minimum royalty payments to Fivemile landowners were not provided and a deposition revealed some information previously provided to Plaintiffs was inaccurate. [R. 150 at 6.]

Additionally, on January 4, 2013, in Plaintiffs' First set of Written Interrogatories and Requests for Production, they requested information on Defendants' finances. [R. 80-1 at 3.] Defendants were to respond within thirty (30) days but they did not. On April 9, 2013, the Magistrate ordered Defendants to produce redacted copies of pages from their tax returns. [R. 47.] Plaintiff agreed to allow Defendants additional time to produce these documents while a Motion to Dismiss was pending. Plaintiffs filed a Motion to Compel on July 18, 2013, [R. 76] and after briefing, the Magistrate ordered Defendants to produce documents by October 15, 2013. [R. 128.] Defendants objected on October 15, 2013, [R. 133] and this Court overruled their objections on December 16, 2013. [R. 156.] Essentially, Defendants never produced the

required tax returns and continued making objections and motions for reconsideration and not complying with the Court's repeated order. In fact, Defendants turned over their tax returns on March 10, 2016, over three (3) years later. [R. 265.] On March 15, 2016, Plaintiffs, noticing discrepancies in the tax returns, emailed Defendants to inquire if the tax returns they had received were actual tax returns. [*See id*.] They were not, but were forms prepared by accounting firms and Defendants then agreed to submit their actual tax returns on April 1, 2016. [*See id*.] Plaintiffs outlined the differences between the first and second set of tax returns, proving that, even with their extremely late compliance with the Court's order, they did not actually comply at all. [*Id*. at 5.]

Fourth, James C. Justice, II was to be deposed on July 31, 2013, at 9:00 a.m. [R. 66.] Following a Motion for Protective Order [R. 90], Motion for Extension of Time [R. 91], and Motion for Withdrawal of Counsel [R. 89], the Magistrate Judge again held a telephonic conference, parties agreed to continue with the deposition. [R. 98.] After a considerable amount of effort from Plaintiffs to schedule the deposition, Mr. Justice did not actually appear for his deposition that was eventually scheduled for November 7, 2013, at 9:00 a.m. [R. 170-1 at 3.] Mr. Justice has never been deposed.

**II**

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." "When a defendant seeks relief from a default . . . the district court enjoys considerable latitude under the 'good cause shown' standard." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). "What constitutes good cause for setting aside an entry of default is within the discretion of the court." *Seye v. Community Yellow Cab NKMgmt., LLC*, 2011 WL 3739142, *1 (E.D. Ky. Aug. 2, 2011) (citing 10A Fed. Prac. &

Proc. § 2696 (2011)); *see also Krowtoh II LLC v. ExCelsius Intern., Ltd.*, 330 Fed.Appx. 530, 534 (6th Cir. 2009) ("This Court reviews a district court's decision to deny a motion to set aside an entry of default for an abuse of discretion.").

In determining whether there is "good cause" to set aside an entry of default, the Sixth Circuit has instructed courts to consider three equitable factors: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006) (quoting *Waifersong, Ltd.*, 976 F.2d at 292) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-46 (6th Cir. 1983) (setting forth the "good cause" standard in the Sixth Circuit and finding that the district court erred in reaching a determination of no good cause without considering all three factors). These factors are to be "balanced" and will be addressed in turn. *Waifersong, Ltd.*, 976 F.2d at 292.

**A**

Under the first factor, when determining whether a defendant's culpable conduct led to the default, the court should consider the defendant's behavior "in the general context of determining whether a petitioner is deserving of equitable relief." *Waifersong, Ltd.*, 976 F.2d at 292. For a defendant's conduct to be treated as culpable, "mere carelessness is not enough; rather, there must be 'either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings.'" *Southern Elec. Health Fund v. Bedrock Servs.*, 146 Fed. Appx. 772, 777 (6th Cir. 2005) (quoting Shepard Claims Serv., Inc. v. William Darrah & Assocs., 796 F.2d 190, 194 (6th Cir. 1986)). Further, a defense of ineffective assistance of counsel is not appropriate at this junction, as "clients must be held accountable for the acts and

omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993).

Here, even under the more lenient standard afforded to Defendants, their behavior cannot be excused. Defendants failed to find counsel to represent them, repeatedly missed deadlines, and generally wasted this Court's resources on repeated admonishments to comply with discovery deadlines. Defendants seek to shift blame onto their attorney, who was "inexperienced" and claim that they were essentially *pro se* while their attorney A.J. Dudley represented them as in-house counsel. [R. 304-1 at 5.] But clients hired their attorney as their representative and his actions are imputed to them. This Court finds it significant that the attorney Defendants claim was ineffective was in fact their own general counsel. Defendants were not *pro se* and their attorney's actions are assumed to be their own. Further, Defendants' bad behavior continued up until March 2016, when they provided misleading tax returns in response to a 3-year-old order from the Magistrate. Defendants also argue that they were "never warned that their litigation conduct was placing them in jeopardy." [*Id.*] In making this argument, Defendants blanketly ignore the repeated admonishments, phone conferences, and orders issued by this Court and the Magistrate Judge to comply with discovery deadlines since this case began in 2012. [*See* R. 22; R. 24; R. 36; R. 35; R. 124; R. 122; R. 128; et al.] More specifically, Plaintiffs actually filed for default judgment twice before it was granted, putting Defendants on notice. [R. 131; R. 134.] Defendants also claim they didn't have time to rectify the issue of Mr. Justice's violation for not showing up for his deposition because of a timing issue with default being entered. [R. 304-1 at 6.] However, by Defendant's own chronology, Mr. Justice failed to show up for his deposition on November 7, 2013, and default was not entered until September 30, 2014. [*Id.*] Defendants admit, "as they must," their additional

violations and failure to comply with discovery requirements, but claim that these violations were not meant to "thwart the judicial proceedings." [*Id*. at 6, 7.] Defendants do not offer any explanation why their actions should not be perceived as attempting to thwart judicial proceedings and this Court cannot think of any reason this may be the case.

Defendants have offered no viable defense to this first element. For the foregoing reasons, it is evident to this Court that Defendants' culpable conduct directly led to the entry of default, and their behavior was intended to thwart judicial proceedings and was not committed out of mistake or error.

**B**

Concerning the second factor, to assert a "meritorious defense" the defendant does not have to demonstrate a likelihood of success, but simply must state a defense that is "good at law." *Southern Elec. Health Fund*, 146 Fed. Appx. at 777 (citing *United Coin Meter Co.*, 705 F.2d at 845). The "key" to this inquiry focuses on "the determination of 'whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *Id*. (quoting *INVST Fin. Grp, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 399 (6th Cir. 1987)).

Defendants claim they have presented a meritorious defense in their Objection to the Magistrate Judge's Recommended Disposition. Though Defendants did not specify which objection they are referencing, as they have objected to each recommended disposition from Judge Ingram since the beginning of this case, this Court has looked at the objection to Judge Ingram's most recent R&R to assess their potential for a meritorious defense. [*See* R. 305.] From reading their objections, though it seems the Defendants have presented a meritorious defense, their fatal flaw is presenting information from two new experts who had never

7

previously been identified by Defendants. Experts witness reports were to be submitted by June 1, 2013, [R. 16.] and were instead submitted by Defendants on February 14, 2017. [R. 310.] Though these expert reports may ultimately be admitted for the sole purpose of addressing the amount of damages, they would certainly not be admitted in trial.

Therefore, the second element is met, as the meritorious defense cited by Defendants [R. 304-1 at 9] would not change the "outcome of the suit after a full trial," as the additional expert evidence presented in the objection [R. 305] would not even be admissible in trial.

C

Under the third factor, mere delay is insufficient to establish prejudice. *INVST Fin. Grp, Inc.*, 815 F.2d at 398 (6th Cir. 1987). For prejudice to occur, the setting aside of an entry of default "must 'result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'" *Southern Elec. Health Fund*, 146 Fed.Appx. at 778 (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Here, this Court is most concerned with setting aside default, which will allow Defendants more opportunity for "fraud or collusion," leading to "difficulties of discovery." *Southern Elec. Health Fund*, 146 Fed. Appx. at 778. Defendants' bad behavior has been repeated and rehashed by this Court and the Magistrate Judge over and over. [*See* R. 189 at 17.] Defendants have not proven themselves capable or willing to comply with discovery guidelines even to the current date, as they attempt to submit reports from new experts over 3 years after the deadline to designate experts. [*See* R. 310.] If Defendants were serious about proceeding with this case in compliance with the Court's orders, they would have done so to this point. Nothing

in the record indicates to this Court that Defendants would comply with additional discovery orders if this case were sent back to discovery.

The third factor is met as well. This Court has no reason to believe that Defendants would become model litigants if default was reversed and this case were sent back to the beginning of discovery. Reversing the decision to enter default as to liability would give Defendants more opportunity to fraud this Court and waste judicial resources attempting to make Defendants comply with discovery rules.

## D

All three factors from *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006), weigh in favor of keeping the finding of default liability in place. However, because these three factors are to be considered equitably, this Court could still choose to overturn the default, as this Circuit highly favors giving each party its turn in court. *See United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010). However, the Court sees nothing in this record to indicate overturning the default already entered. Parties still have significant time and opportunity ahead of them to dispute individual claims related to damages, but Defendants have forfeited their right to discuss liability. They were given chance after chance to comply with the court's orders and chose to not do so.

## III

Because Defendants' culpable conduct led to the default entered against them, the Defendant has not presented a meritorious defense that would change the outcome of a trial, and the Plaintiff would be prejudiced by reversing the finding of default, this Court **DENIES** the Defendant's Motion to Set Aside Default [R. 304.]. *See Burrell*, 434 F.3d at 831-32. Further proceedings regarding damages will be managed by the Magistrate.

This the 23rd day of June, 2017.

Gregory F. Van Tatenhove
United States District Judge