# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| **NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, LLC**<br><br>**Plaintiffs,**<br><br>**V.**<br><br>**KENTUCKY FUEL CORPORATION and JAMES C. JUSTICE COMPANIES, INC.,**<br><br>**Defendants.** | **Civil Action No. 6:12-cv-91-GFVT-HAI**<br><br>**Judge Gregory F. Van Tatenhove**<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO 28 U.S.C. §§ 144 AND 455 FOR RECUSAL BY <u>MAGISTRATE JUDGE INGRAM</u>** |

Defendants, Kentucky Fuel Corporation ("Kentucky Fuel") and James C. Justice Companies, Inc. ("Justice"), by counsel, having moved this Court pursuant to 28 U.S.C. §§ 144 and 455 for recusal by Magistrate Judge Ingram,[1] respectfully state as follows:

## <u>INTRODUCTION</u>

Two federal statutes govern the recusal of members of the judiciary on the grounds of bias or prejudice.  28 U.S.C. § 144 states in part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. …

28 U.S.C. §455 also provides an avenue for recusal:  "[Any justice, judge, or magistrate of the United States] shall also disqualify himself in the following circumstances:  where he has a

---

[1] Although eventually denied by Judge Van Tatenhove [Doc. 355], Defendants respectfully submit that their arguments in favor of their Motion for Withdrawal of the Referral to Magistrate of Damages Hearing [Doc. 344] remain valid and incorporate their Memo in Support of that Motion [Doc. 344-1] by reference.  The Order entered by Magistrate Judge Ingram seven days after Defendants filed the referenced Motion [Doc. 345], along with other evidence recounted herein, clearly demonstrates Magistrate Judge Ingram's bias against Defendants.

personal bias or prejudice concerning a party…"  28 U.S.C. §455(b)(1).  As demonstrated by the Affidavits of James C. Justice, III, on behalf of Defendants, and of Johnny L. Turner, Esq. co-counsel for Defendants, filed herewith, as well as the arguments set forth below, Magistrate Judge Ingram has demonstrated bias and prejudice against Defendants sufficient to warrant his recusal.

## ARGUMENT

Defendants willingly acknowledge that they have perhaps on certain occasions failed to adhere to the precise letter and spirit of their discovery obligations in this matter.  However, a review of the record by counsel for Defendants – counsel who have not been involved for an extensive amount of time and who therefore may have a more neutral perspective – demonstrates that there is indeed validity to Defendants' belief that matters that have come before the Magistrate Judge are not considered with an open mind, but with a pre-existing belief that Defendants' position is always erroneous and that Defendants and their employees always act in bad faith.  This belief on the part of Defendants is supported not simply by the fact that nearly every request by Plaintiffs for sanctions, for rulings in their favor and for extensions of time has been granted, while Defendants have repeatedly and consistently "lost" on their own, parallel Motions.  It is also supported by the tone and tenor of Magistrate Judge Ingram's rulings. By way of example:

> In response, Defendants' counsel apologized to the Court for failing to file a brief summary of the dispute and attempted to excuse his conduct by stating that he believed that the parties had resolved that dispute.  ….

[D.E. 45,  p. 2 (emphasis added)]

2

> … a complete lack of diligence [by Defendants] that prevents a finding of good cause in support of the requested extension.  Moreover, neither Defendants nor their in-house counsel acted with sufficient diligence to obtain representation so as to support a finding of good cause.

[D.E. 167, p. 3]

In denying a Motion by Defendants to seal certain tax records, the Magistrate Judge included

unnecessary and inflammatory comments unrelated to whether the records should be sealed:

> Like virtually every aspect of this case, the sealed status of the documents at issue has a protracted history. Although these documents concern Defendants' past finances, it was Plaintiffs who filed them in the record. As Described in Plaintiff's response brief on this motion, the Court ordered Defendants to produce their tax returns in October 2013.  None of the tax-related documents at issue were produced until March 2016. After Plaintiffs received these documents from Defendants, they filed them in the record (provisionally under seal) to alert the Court to what they considered an ongoing defiance of the Court's discovery orders.  Plaintiffs believed the records were phony, and asked the Court to consider this deceptive conduct in assessing damages on their substantive claims.

[D.E. 343, p. 2 (citations omitted)]

> Essentially, Defendants ask this Court to make up the Rules as it goes along, despite that the Rules "govern the procedure in all civil actions and proceedings in the United States district courts[.]" Fed. R. Civ. P. 1.

[D.E. 345, n. 3]

> Defendants purposely refused to cooperate in discovery and abide by many of the Court's orders. Importantly, during the year-long period for discovery, Defendants never served any timely written discovery requests, and their deadline to do so expired ***four years ago***. In other words, they knowingly chose to forego taking any discovery in the case. Their purposeful conduct precludes a finding of excusable neglect to support re-opening discovery.

Doc. 345, p. 1 (emphasis in original).

Despite the fact that Defendants explained why Mr. Justice had not appeared for his

deposition (he was required to meet in Chicago with third parties from several foreign countries

who insisted on his attendance – his prior counsel offered other dates for the deposition but never

3

got a positive response), the Magistrate Judge ignored that explanation and put a very negative spin on the situation:

> One of the Defendants' corporate officers simply chose, <u>without</u> <u>explanation</u>, not to appear for his properly-noticed deposition.

[Doc. 345, p. 2 (emphasis added)]

> The record establishes many other acts of defiance. Defendants acknowledge that "the determination [to re-open discovery] is an equitable one which takes into account all of the relevant circumstances." Here, those circumstances establish that <u>continued</u> <u>misconduct</u> <u>is</u> <u>to</u> <u>be</u> <u>expected</u> <u>if</u> <u>discovery</u> <u>were</u> <u>allowed</u> <u>at</u> <u>this</u> late point.

[Doc. 345, p. 2 (emphasis added)]

> Defendants have employed an "alarming" and "appalling" strategy of delay and obstruction.   … There is no reason, on this record, to expect that Defendants' behavior will improve if discovery is allowed.

[D.E. 345, pp. 4-5 (quoting an earlier Order by Judge Van Tatenhove)]

This negative tone on the part of the Magistrate Judge is not only evident in the referenced excerpts of his writings, it has been noted by representatives of Defendants, including Mr. Justice and their counsel, Mr. Turner.  See <u>e.g.</u>, Affidavit of James C. Justice, III, attached as **<u>Exhibit A</u>**:

> It has been apparent to me throughout these proceedings that the early "missteps" by Kentucky Fuel and the Justice Companies have completely prejudiced the Magistrate against us.

Exhibit A, ¶ 4.

> It is also apparent to me that no matter how diligent Defendants are, on every issue that comes before Magistrate Judge Ingram we are already judged by him to be acting in bad faith and no matter what are the facts Defendants cannot obtain fair, impartial or even-handed limited relief from him.

<u>Id.</u>, ¶ 5.

4

Regardless of how diligently we have worked to adhere to the Court's Orders and to operate in this litigation in good faith, time and time again we are met with resistance and angry language from the Magistrate.

Id., ¶ 6.

Neither I nor other representatives of Defendants with whom I have discussed this matter believe that we have any chance of success at the upcoming evidentiary hearing because the Magistrate Judge is so clearly biased against us.

Id., ¶ 7.

Long-time counsel for Defendants in this and other matters also believes the Magistrate

Judge has exhibited prejudice and bias with respect to Defendants:

I have been practicing law in Kentucky for over forty years, including working with Judge Karl M. Forrester before he became a Judge, and practicing before him when he was named to the Bench.

Affidavit of Johnnie L. Turner, attached as **Exhibit B**, ¶ 2.

In all my years of practice before both state and federal courts, I have never seen such inflammatory and prejudicial language as that included in many of Magistrate Judge Ingram's Orders.

Id., ¶ 3.

I have also never been involved in a case where the Court rules almost exclusively for one side and almost exclusively against the other. Several such rulings in this matter have, in my experience and opinion, been egregiously prejudicial to Defendants and biased against them.

Id., ¶ 4.

Based on the above-quoted Orders and Affidavits,[2] Defendants respectfully submit that,

under 28 U.S.C. § 144, sufficient evidence of personal bias and prejudice on the part of the

Magistrate Judge has been presented by Defendants, and that this matter should proceed no

---

[2]   These Affidavits state facts and reasons on which the Affiants' respective beliefs as to the Magistrate's prejudice and bias are based and therefore meet the requirements of 28 U.S.C. § 144. See, e.g. Smith v. Insurance Co. of North America, 213 F.Supp. 675 (M.D. Tenn. 1962), aff'd in part and rev'd in part on other grounds, 334 F.2d 673 (6th Cir. 1964), cert. den. 380 U.S. 915 (1965).

further until another Judge can be assigned to hear it.  Likewise, pursuant to 28 U.S.C. § 455, Magistrate Judge Ingram should be required to disqualify himself on the basis of his personal bias and prejudice.  See also United States v. Whitman, 209 F.3d 619 (6th Cir. 2000) (recusal required when Judge's conduct had the effect of creating the impression that impartial administration of law was not his primary concern).

The most recent ruling by the Magistrate Judge further demonstrates his bias.  Defendants (now represented by new counsel who have had no involvement in any proceedings in which Defendants have failed to fully meet their procedural obligations since that firm's entry into this case) moved for a brief (6 day) extension of the deadline for the parties to exchange Witness and Exhibit Lists.  Defendants were cognizant of the Magistrate's admonition about seeking extensions but believed that the Court and opposing counsel would likewise recognize and take into consideration the fact that unexpected matters (and earlier full week AAA commercial arbitration in New Jersey and multiple briefing obligations and deadlines in other matters) often arise in a busy litigation practice, and that when a very short requested extension will work no significant prejudice, professional courtesy and a sense of reasonableness weigh in favor of granting a requested extension.  In this case, Magistrate Judge Ingram once again ruled against Defendants, providing a very limited extension of 48 hours, which placed obvious pressure on counsel for Defendants given the brevity of the extension granted.  [D.E. 380]

The current scheduling Order [Doc. 373], which Magistrate Judge Ingram only begrudgingly agreed to when Defendants' previous lead counsel moved to withdraw, is likewise of concern.  The Order provides for basic identification of proposed witnesses and exhibits by the parties to each other, with the parties' final Witness Lists (with a summary of expected testimony) and final Exhibit Lists due on the same date that the parties' objections to these

Witness Lists and Exhibits Lists are to be filed *and* that the Parties are to submit pre-hearing memoranda. [Doc. 373, ¶3] Defendants respectfully submit that the volume of documents involved (Plaintiffs' proposed Exhibit list includes 142 separate Exhibits (many of which include several pages), in addition to the fact that the final Exhibit and Witness lists may vary from the proposed lists recently exchanged, make it nearly impossible to determine which Witnesses and Exhibits are objectionable on the same day they are received and to also formulate a pre-hearing memorandum also on the same day the final lists are received. This is a highly unusual time frame for addressing the complex issues and volume of information involved. This additional burden could not have been fully anticipated or known until the sheer volume of Plaintiffs' exhibits was known. Indeed, it was the extensive list of Plaintiffs' planned exhibits and the short time frame for responding to them that caused Defendants to re-examine the Scheduling Order and to review the Magistrate's other rulings, which revealed just how one-sided the Magistrate's attitude and rulings have been.

Defendants therefore also respectfully submit that it would be appropriate for the Court to remove the evidentiary hearing from Magistrate Judge Ingram's docket, to move it to the Court's own docket, and to schedule a telephonic conference with counsel to establish a fair, more reasonable and efficient hearing date and interim deadlines. This would also serve the additional benefit of allowing the Court to expound upon a recent ruling and to hear and rule on a newly-filed pending Motions.

First, Defendants filed an extensive, detailed Motion for a Ruling as to the Measure of Damages [Doc. 375], with substantiating factual evidence. The Motion was filed in light of an

agreement entered into between Kentucky Fuel and GSI Coal & Mining, LLC ("GSI")[3] pursuant to which GSI intends to mine all of the mineable and merchantable coal at the Five Mile property at issue and to pay an override to Kentucky Fuel, from which Kentucky Fuel will make the override payments to New London.  Defendants assert that by virtue of this agreement, Plaintiffs' damages will be limited to the "delay costs" associated with the allegedly later-than-expected payment of the overrides by Kentucky Fuel to New London.  However, in an Order issued on this date the Magistrate Judge summarily indicated the Motion has been overruled, and that the explanation will be provided at the beginning of the evidentiary hearing. [Doc. 387] This leaves Defendants "in the dark" as to why their Motion was denied and how that will impact the evidence they will be permitted to present and the issues they will be permitted to explore at the evidentiary hearing – to place counsel for Defendants in the position of not knowing the basis for Magistrate Judge Ingram's ruling and having to react or respond to that ruling and then comply with it on the first day of an evidentiary hearing is unfair to Defendants to say the least.

In addition, Plaintiffs recently renewed their Motion for Sanctions [Doc. 378], which Motion is not yet fully briefed.  Defendants respectfully submit that this Motion should be heard prior to the evidentiary hearing rather than being hurriedly addressed at the outset of the already-limited evidentiary hearing.  Doing so could significantly streamline the issues to be heard and determined at the evidentiary hearing.

Defendants have worked diligently to demonstrate to the Court, including to the Magistrate Judge, that they take this matter seriously and to comply with all Orders issued during the past twelve months.  Defendants mean no disrespect by this Motion, but they also submit that

---

[3]    An agreement that Mr. Brownlow, the principal person at New London, knew about and to which he consented.

the Motion is well-grounded and is not simply a reaction to rulings that have not been in

Defendants' favor.  Defendants understand that their liability has been established, but

respectfully submit that they are entitled to a neutral decision maker as to the extent of that

liability – something they do not believe will be possible if the evidentiary hearing proceeds as

currently scheduled.

For all these reasons, Defendants respectfully request that the Court enter an Order of

recusal by Magistrate Judge Ingram from this matter and schedule a telephonic hearing to set the

hearing on this Motion and to reschedule the evidentiary hearing and set more reasonable and

efficient interim deadlines after the pending Motions have been decided by the Court.  A

proposed Order is tendered herewith.

Respectfully submitted,

 /s/ Richard A. Getty
RICHARD A. GETTY
DANIELLE HARLAN
          and
MARCEL RADOMILE

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky  40507
Telephone:  (859) 259-1900
Facsimile:  (859) 259-1909
E-Mail:  rgetty@gettylawgroup.com
E-Mail:  dharlan@gettylawgroup.com
E-Mail:  mradomile@gettylawgroup.com

COUNSEL FOR DEFENDANTS,
KENTUCKY FUEL CORPORATION AND
JAMES C. JUSTICE COMPANIES, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the Memorandum in Support of Defendants' Motion Pursuant to 82 U.S.C. §§ 144 and 455 for Recusal by Magistrate Judge Ingram was served on the 21st day of November 2018, electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order upon all parties in the electronic filing system in this case.

/s/ Richard A. Getty_____
COUNSEL FOR DEFENDANTS

dhbpld2086