UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC., AND FIVE MILE ENERGY, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| KENTUCKY FUEL CORPORATION AND JAMES C. JUSTICE COMPANIES, INC., | ) ) ) |
| Defendants. | ) |

Criminal No. 6:12-cv-00091-GFVT-HAI

**MEMORANDUM OPINION**
**&**
**ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Due to extensive litigation misconduct, this Court entered default judgment against the Defendants on September 30, 2014 as to Counts I, II and V of the Plaintiffs' Amended Complaint. [R. 206.] The undersigned referred the issue of damages on those counts to Magistrate Judge Ingram for Report and Recommendation. [R. 383; R. 384.] Judge Ingram conducted a three-day evidentiary hearing and reviewed post-hearing briefing before issuing his exhaustive and carefully considered Recommendation. [R. 437.] The parties were given fourteen days to object to Judge Ingram's Recommendation, and both have done so. [R. 438; R. 444.] For the reasons that follow, the Court will **OVERRULE** the parties' objections and **ADOPT** Judge Ingram's recommendation, with sight modification.

**I**

**A**

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Recommended Disposition or else waive his rights to appeal. In order to receive *de novo* review by this Court, any objection to the recommended

disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Plaintiffs objected to the Report and Recommendation on July 10, 2019 [R. 438], and Defendants objected on July 24, 2019.[1] [R. 444.] In sum, Plaintiffs argue for declaratory relief in Count I and offer alternative methods of calculating damages with respect to Count V and punitive damages. [R. 438.] Defendants argue that Judge Ingram's recommended award for lost royalties is excessive, and that the award of damages for fraud and consulting services were in error. [R. 444.] Many of the parties' objections are sufficiently definite to trigger this Court's obligation to conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the motions, briefing, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural review.

**B**

Magistrate Judge Ingram's Recommended Disposition more thoroughly sets out the facts of this case, but a few will be repeated here. This lawsuit arises out of a contract to mine coal. On September 30, 2014, this Court entered default judgment against Defendants as to Counts I, II and V of the Amended Complaint. [R. 206.] Count I alleges Defendants breached Section 9 of the Fourth Amendment to the parties' contract by failing to pay required minimum royalty payments and failing to pay monthly retainer fees. Count II alleges that, because of the breach,

---

[1] Although seemingly outside fourteen-day objection period, Defendants objections were timely filed. [*See* R. 439; R. 440; R. 443.]

Defendants owe lost tonnage royalties, as calculated using an independent arbiter pursuant to Section 7 of the Fourth Amendment.  Finally, Count V alleges that Defendants committed fraud in the inducement of agreement to the Fourth Amendment of the parties' contract.  Plaintiffs previously voluntarily dismissed Counts III and IV.  [R. 251.]  Only the issue of damages remained, which the undersigned referred to Judge Ingram.  [R. 251.]  Two rounds of briefing followed, and Judge Ingram prepared an initial recommendation without holding a hearing.  The undersigned rejected that recommendation, finding it necessary to hold an evidentiary hearing on the issue of damages.  [R. 321.]  An evidentiary hearing was conducted before Judge Ingram from December 11 to December 13, 2018.  [R. 415; R. 416; R. 417.]  Judge Ingram considered the evidence presented at the hearing and post-hearing briefing to formulate the Recommendation that is before the Court.  [R. 437.]

As to Count I, Judge Ingram recommended damages of $970,000.00 in unpaid monthly retainer fees.  [R. 437 at 9.]  The Amended Complaint alleges that Kentucky fuel paid $50,000.00 in retainer fees in May 2011, but had not paid any since then.  The parties disputed whether retainer fees continued to accrue, or whether Defendant's obligation to pay retainer fees ceased when Plaintiffs initiated this lawsuit.  Judge Ingram found that the effect of default judgment is a finding for Plaintiffs that retainer fees have continued to accrue to the date of final judgment.  Accordingly, Judge Ingram found that, at the time of filing his recommendation, 102 months had passed since December 2010, when the first monthly payment was due, and therefore the retainer fees owed amounted to $1,020,000.00.  Subtracting the $50,000.00 already paid, Judge Ingram recommended awarding Plaintiffs $970,000.00 in unpaid retainer fees.

Judge Ingram further recommended against issuing a declaratory judgment holding that Plaintiffs are entitled to continue receiving annual payments of the $75,000.00 minimum royalty.

[R. 437 at 10.] To date, the parties agree that Defendants are current on the minimum royalties payments to Plaintiff, although most payments were made late. Plaintiffs argued that the Defendants continue to be obligated to pay the minimum royalties, but that the history of late payments and of this case indicate that they will likely fail to pay minimum royalties in the future. And although Defendants have continued to pay the royalties up until now, they have contested whether they are still contractually obligated to do so. Assuming without deciding that an actual controversy exists that would confer jurisdiction on the court to issue a declaratory judgment, Judge Ingram nevertheless recommended the Court decline to do so, in its discretion. Neither party put forth evidence regarding how the agreement to pay minimum royalties may be terminated, or whether and when it was terminated. Without a more detailed record on the content of the agreement as to this issue, Judge Ingram recommended against issuing a declaratory judgment for the Plaintiffs.

Damages under Count II consist of lost tonnage royalties for failure to mine. According to Section 7 of the Fourth Amendment to the parties' contract:

> Upon the occurrence of an Event of Default, NLTM and Fivemile Energy may exercise any and all right and remedies available to NLTM at law or in equity by reason of such Event of Default . . . In the alternative, NLTM and Fivemile Energy may determine the estimated lost royalties that it would have received but for the Event of Default by Kentucky Fuel and such amount shall be immediately due and payable by Kentucky Fuel under the terms of this Agreement. Such royalties shall be determined by an independent arbiter selected by NLTM for the purpose of determining the amount of royalties that would have been paid by Kentucky Fuel to NLTM under the terms of this Agreement.

[R. 40-5 at 6.] Under this provision, Plaintiffs hired Bob Conway, an independent arbiter, to calculate the lost tonnage royalties. [R. 40 at 11.] The Amended Complaint seeks $16,990,000 in damages based on Mr. Conway's report. Consistent with his previous recommendation [R. 302], Judge Ingram found that the independent arbiter's report establishes the appropriate

measure of damages on Count II, *i.e.*, $16,990,000. The contract was clear: Section 7 provides that damages may be calculated by an independent arbiter, and such damages "shall be immediately due and payable." [R. 437 at 17.] Judge Ingram further noted that there is no provision within the contract giving the Defendants the ability to challenge the estimate of the independent arbiter. *Id.* Therefore, Judge Ingram recommended damages as to Count II in the amount of $16,990,00, with 8% prejudgment interest compounded annually beginning May 1, 2012.

Finally, Count V alleges fraud in the inducement of the Fourth Amendment to the parties' contract. [R. 40 at 3, 7, 10, 14.] Plaintiffs allege "[Defendants] falsely and fraudulently represented to NLTM and Fivemile that they would make the payments required by the Fourth Amendment and perform their obligations thereunder in order to induce NLTM to execute the Fourth Amendment." *Id.* at 14. Plaintiffs sought compensatory damages "in the amount of $17,000,000, or such other amount that the evidence may show is due and owing." [R. 40 at 15.] Judge Ingram first determined that compensatory damages under Count V should include $20,000 "for unreimbursed lease payments for the Strong Brothers Property under Section 9 of the Fourth Amendment." [R. 437 at 31.] This amount appears to be undisputed, and Defendants make no mention of this figure in their objections to the Recommendation.

Calculating damages under this section beyond that is complicated. Judge Ingram ultimately put forth two distinct theories of damages for the Court to consider. The first theory is derived from the language of the controlling documents. *Id.* at 32. Judge Ingram reasoned that because "plaintiffs request compensatory damages 'in the amount of $17,000,000, or such other amount that the evidence may show is due and owing,'" that the proper measure of damages was lost royalties, as calculated in the Conway report, plus the unreimbursed Strong Brothers lease

5

payments. Judge Ingram thought that this figure would be "consistent with the Plaintiffs' anticipated benefit of their bargain." [R. 437 at 32; R. 302 at 14.] Judge Ingram reached this conclusion in part because he felt constrained by Rule 54 and its mandate that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." [R. 437 at 33; Fed. R. Civ. P. 54.] Therefore, under this first theory, Judge Ingram recommended $17,010,900, without prejudgment interest.

In the alternative, Judge Ingram recommended restitutionary damages based on the "NewLead figures,"[2] and dependent on the Court's decision whether or not to grant Plaintiff's Renewed Motion for Sanctions. [R. 378.] Judge Ingram's recommendation more thoroughly set out the procedural posture of the case and this motion specifically. The Court will endeavor to summarize. Plaintiffs filed a Motion for Sanctions based upon Defendants' failure to timely supplement discovery with production of over 5,000 documents relating to the transfer of the Fivemile lease and Permits to New Lead Holdings, Ltd. [R. 378.] The Court denied that Motion without prejudice, noting that the motion would be "best suited to be taken up in the course of the evidentiary hearing" before Judge Ingram. [R. 368.] Judge Ingram allowed the parties to "fully explore the NewLead transactions" at the December evidentiary hearing. [R. 437.]

Essentially, Plaintiffs argue that Defendants' failure to disclose impeded their ability to plead damages related to the NewLead deal. [R. 378 at 21.] To quote:

> This remedy—as a sanction under Rule 37—addresses and cures the prejudice caused by Defendants' concealment of the New Lead transaction and the documents relating to it. As noted above, Defendants' strategy prevented the [Plaintiffs] from knowing enough about the New Lead transaction to seek to amend their Complaint to specifically allege fraud damages based upon that transaction.

---

[2] On May 10, 2012, Defendant Kentucky Fuel entered an asset purchase agreement to transfer the Fivemile assets to Williams Industries, the purchase price for which was $8,500,000. Ultimately, Cypress Camon Energy and then NewLead became final purchasers of the Fivemile assets.

6

[R. 378-1 at 27.] Therefore, Plaintiffs' Renewed Motion for Sanctions seeks relief in the form of "Judgment on Plaintiffs' fraud claim for the value of the Fivemile Lease and Permit that the Defendants fraudulently induced Plaintiffs to transfer to them[.]" [R. 378 at 2.] Plaintiffs propose this "value" could be measured by "(1) the $21,855,000 specified in NewLead's SEC filing; (2) 'other evidence' of NewLead's expenditures'; (3) the amounts Kentucky Fuel was entitled to receive in connection with the NewLead transactions; or (4) the amounts Kentucky Fuel did receive in connection with the NewLead transactions." [R. 437 at 39.]

As Judge Ingram noted, "this is an unusual motion," because "Plaintiffs are not seeking an *additional* damages award on top of the damages flowing from the default judgment. Instead the remedy they seek is for the Court to adopt their preferred method for calculating compensatory (and by extension punitive) damages under Count V. [R. 437 at 39; R. 378-1 at 25.] Ultimately, Judge Ingram determined that, if the Court decided to adopt this alternative calculation of damages under Count V, the "Defendants should have to pay Plaintiffs the funds they actually received through the NewLead transactions." [R. 437 at 44.] Based on the evidence presented at the hearing, Judge Ingram put this figure at $3,827,876, plus $20,000 for the Strong Brothers properties, without prejudgment interest. [R. 437 at 45.]

Under each theory, Judge Ingram recommended the Court award punitive damages in a 1:1 ratio with the compensatory damages. [R. 437 at 55.] Accordingly, Judge Ingram recommended punitive damages in the Amount of $17,010,900 should the Court adopt his first recommendation, or $3,847,876 should the Court elect to grant Plaintiffs' Renewed Motion for Sanctions [R. 378] and adopt his alternative recommendation. *Id.* Finally, Judge Ingram determined that, pursuant to Section 14 of the Fourth Amendment, Defendants owe "all attorney fees and expenses" associated with this lawsuit. [R. 437 at 64; R. 40-5 at 7.] However, because

7

the litigation is ongoing, that amount cannot be accurately assessed. Therefore, Judge Ingram recommended the Plaintiffs be allowed to file an affidavit of fees and costs, with an opportunity to respond for Defendants, following the entry of an order addressing the Recommended Disposition. [R. 437 at 64.]

## II

### A

As to Count I, Plaintiffs object only to Judge Ingram's recommendation that this Court decline to award declaratory relief to the Plaintiffs. [R. 438.] This Court "may declare the rights and other legal relations of any interested party," seeking a declaratory judgment if there is "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Whether "a case of actual controversy" exists depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties, having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Of course, even when a case of actual controversy exists, the Court retains discretion to decide whether declaratory judgment is appropriate. *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). In deciding whether to grant declaratory relief, the Court considers "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue, or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *President v. Vance*, 627 F.2d 353, 364 n. 76 (D.C. Cir. 1980).

Here, the facts indicate that the issue of tonnage royalties is likely to arise again between these parties. While the parties agree that the payments are current, they seem to disagree about whether Defendants continue to be obligated to make payments. In addition, Plaintiffs point out

that "of twenty minimum royalty payments, only three have been paid on time." [R. 438 at 5.] Further, those three payments were not made until over four years into litigation of this case. *Id.* When Mr. Justice was asked whether the defendants would keep making the minimum royalty payments, he was hesitant to answer before ultimately stating "I would like to reserve our right to deal with that at a later date." *Id.* at 7.

However, as Judge Ingram aptly noted in his recommendation, "the issues of how the agreement may be terminated and whether or when the agreement was terminated have not been fully argued before the Court. No party has pointed to language in the agreements themselves concerning how the obligation to pay minimum royalties might be terminated." [R. 437 at 14.] The Court cannot clarify the legal relations at issue if it lacks evidence as to what those legal relations are. In other words, without contract provisions describing the ability, method, or lack thereof, to terminate the minimum royalty payments, any prospective relief afforded by this Court would be ill-informed. The Plaintiffs' objection is therefore **OVERRULED**. Judge Ingram's Recommended Disposition is **ADOPTED** as to the amount of Damages in Count I.

**B**

Plaintiffs made no objection to Judge Ingram's recommendation as to Count II. Defendants argue that the recommended amount of damages for lost royalties is excessive, and that the award of prejudgment interest was in error. [R. 444 at 10, 23.] Turning first to the issue of lost royalties, Defendants assert that the covenant to mine in the Fourth Amendment was not unrestricted, and that Kentucky Fuel interpreted the contract to mean it was only required to mine the coal if it could be done profitably. Consistent with the argument that the coal could not be profitably mined, Defendants contend that the arbiter's report is not reliable to supported calculation of damages.

9

"[T]he effect of a default is to establish the well-pleaded facts of the non-defaulting party[.]" *Smith v. Comm'r*, 926 F.2d 1470, 1477 (6th Cir. 1991). For this reason, "establishment of such facts through a default is no different than establishing such facts through deemed admissions." *Id.* As alleged in the Amended Complaint:

> Notwithstanding its covenant to mine as set forth in Section 10 of the Fourth Amendment, Kentucky Fuel has not attempted to mine any of the coal subject to the Original Fivemile Leases or the New Fivemile Leases or the Fivemile Permit. It has not used commercial and reasonable good faith nor its best efforts to maximize the amount of coal extracted from those properties.

[R. 40 at 9.]

Defendants' objection on this point merely reiterates the argument presented to Judge Ingram: they insist that the agreement only required them to mine merchantable coal. However, whether or not the covenant to mine was restricted in this way is a factual issue that was mooted with the entry of default. And even if the Court were to consider the issue, the evidence in the record and at the hearing suggests that Defendants' interpretation of the covenant to mine is in error. At the evidentiary hearing, Mr. Brownlow testified that the purpose of the Fourth Amendment was to "guarantee that the Fivemile Coal would get mined no matter what." [R. 437 at 18; R. 426 at 168-71.] Further, while an earlier draft of the Fourth Amendment included conditions on mining based on "economic circumstances," that language was negotiated-out of the final agreement. *Energy Mktg. Services, Inc. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 376 (S.D. Ohio 1999), *aff'd* 229 F.3d 1151 (6th Cir. 2000) (Finding parties did not intend to read-in language that had been expressly excluded from the contract).

Defendants also object to the use of arbiter Conway's report to calculate damages. [R. 444 at 16.] They argue that Conway's report is inaccurate because Conway "failed to consider other important factors" such as "barriers to the process of mining the property, such as difficulty

10

of accessing the coal, the absence of valley fill permits . . . the quality of the coal and the costs to extract, clean and process it, the market price for coal of the type that could be mined at Fivemile, and all other market forces making any effort to mine an essentially futile task." *Id.* According to Defendants, damages from lost tonnage royalties should be zero, because none of the coal could have been profitably mined. [R. 432 at 30.]

Again, Defendants simply reiterate the arguments made before Judge Ingram. Judge Ingram heard evidence on the points raised by the Defendants at the evidentiary hearing, some of which bolstered the reliability of Conway's report. [R. 437 at 20.] Although Mr. Ball and Mr. Justice testified that the coal would be difficult to mine and sell due to permitting and quality issues, the reliability of their testimony was undercut by Defendants' earlier arguments that their arrangements to mine the Fivemile coal with another mining company would generate enough money to pay the damages owed to NLTM. [R. 375-1.] In fact, Mr. Justice testified that "the full amount of damages is going to be paid by royalties generated by. . . the GSI mining." [R. 424 at 207.] Regardless, this objection is an attempt to relitigate the facts, and therefore **OVERRULED**.

Defendants also objected to the award of prejudgment interest to the damages under this Count. [R. 444 at 23.] They assert that the award was "improperly punitive and inequitable." According to Defendants, "when considering an award of prejudgment interest, '[t]he Court's duty is to balance the undisputed facts and equities and to decide whether prejudgment interest is appropriate.'" *Id.* Judge Ingram did just that. The Defendants have repeatedly engaged in discovery abuses, and defied orders of this Court. Their conduct has caused this litigation to move forward at an almost glacial pace, turning "this Court's processes into a tool for obstruction and delay." [R. 473 at 58.] Judge Ingram took this into account, and in his

11

Recommended Disposition was clear that "prejudgment interest is not being imposed to punish Defendants for any litigation misconduct. Rather, its purpose is to compensate Plaintiffs for the denial of access to money they could have received years ago if Defendants had not obstructed justice." [R. 437 at 58.] The Defendants admit that prejudgment interest exists to "compensate a plaintiff for the loss of the use of funds which it would have had available," and thereby put a plaintiff "in the position he or she would have occupied but for the defendant's wrongdoing." [R. 444 at 23.] Plaintiffs use of the funds at issue here was delayed substantially, beyond what is to be expected in the course of typical litigation, due to Defendants' misconduct. The Court finds that an award of prejudgment interest is appropriate.

Accordingly, Defendants' objections are **OVERRULED**. Judge Ingram's recommendation is **ADOPTED** as to the amount of damages under Count II.

### C

As to the award of damages under Count V of the amended complaint, the Court is left with the question of which calculation of compensatory damages, if any, to adopt. Count V alleges fraud in the inducement of the contract. It appears undisputed that the award under Count V should include $20,000.00 "for unreimbursed lease payments for the Strong Brothers Property under Section 9 of the Fourth Amendment." [R. 437 at 31.] Beyond that, Judge Ingram suggested two methods of calculating damages for this Court to choose from: one based on the lost tonnage royalties, and the other based on the aforementioned "NewLead figures." Citing a recent Kentucky Supreme Court case, the Defendants object broadly on the grounds that *Nami* and the economic loss rule preclude the award of damages in a breach of contract action. *Nami Res. Co., LLC v. Asher Land & Mineral, LTD.*, 554 S.W.3d 323, 328 (Ky. 2018). The Plaintiffs raise varying objections, dependent upon which method of calculation the Court intends to adopt.

**1**

Defendants' objections under *Nami* and the economic loss rule have no merit. The economic loss rule is "[t]he principle that a party generally may not recover in tort for financial harm that results from the defendant's failure to perform under a contract." The rule is designed to "prevent the law of contract and the law of tort form dissolving into one another." *Nami*, 554 S.W.3d at 335 (cleaned up). Judge Ingram deftly handled this issue in his recommended disposition: "[a]lthough the Kentucky Supreme Court in *Nami* adopted the economic loss rule for fraud claims associated with breach-of-contract claims, *Nami* did not address fraudulent inducement claims like this one." [R. 437 at 26.] Put differently, this is not a breach of contract "accomplished through fraud," as was the case in *Nami*. 554 S.W.3d at 336. Here, the fraudulent conduct pleaded in Count V occurred *before* the formation of the contract. And as the Kentucky Supreme Court has stated:

> [A] party who has been aggrieved by fraudulent or malicious conduct which results in damages that differ from the damages sustained by reason of the breach of contract, may assert an independent claim for such fraudulent or malicious conduct seeking whatever damages are appropriate for the independent claim, including punitive damages[.]

*Nami*, 554 S.W.3d at 336. The Court agrees with Judge Ingram's analysis on this point and finds that Plaintiffs are entitled to some recovery under their fraud claim.

But here we diverge. In finding that Kentucky law allows a fraud in the inducement claim to coexist alongside a breach of contract claim, Judge Ingram reasoned that the Plaintiffs could collect both compensatory and punitive damages under Count V. [R. 437 at 29.] This is so because "the breached duties predated the Fourth amendment and did not arise from the parties' contractual obligations." [R. 437 at 29.] However in this case, although the *conduct* giving rise to Counts II and V is different, the *injury* is the same: namely, Plaintiffs lost out on

the tonnage royalties which they would have received had Defendants mined the coal.  Whether Plaintiffs were injured because Defendants breached the parties' contract, or because Defendants' fraudulently induced acceptance, and never intended to mine the Fivemile coal, the financial injury to Plaintiffs is the same, and Plaintiffs may not recover twice for the same financial loss.  So while the economic loss rule does not preclude Plaintiffs' fraud in the inducement claim from proceeding alongside its breach of contract claim, the prohibition on double recovery precludes an award of compensatory damages under Count V.  *See Johnson v. Howard*, 24 F. App'x 480, 484 (6th Cir. 2001) ("A party is not entitled to recover twice for the same loss, even if the party would otherwise be able to recover for that loss under separate theories of liability.") (citing *General Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980)).  Plaintiffs could have recovered lost tonnage royalties under *either* Count II or Count V of their amended complaint, but not both.  To award them lost tonnage royalties under each Count would allow them to recover twice for the same loss, and put Plaintiffs in a better position than they would have been if Defendants had performed the contract.

      This is not to say that the calculation of compensatory damages is incorrect.  On the contrary, this Court believes that Judge Ingram correctly calculated the compensatory damages Plaintiffs could have recovered under Count V, if not for the issue of double recovery.  Therefore, the Court is not persuaded by Plaintiffs' *Sarlie* argument. [R. 438 at 13.]  Rule 54 states "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54.  Like Judge Ingram, the undersigned is not keen on "relaxing the application" of the Rules of Civil Procedure.  [R. 437 at 35.]   Accordingly, the Court declines to adopt Plaintiffs' alternative proposed methods of calculating compensatory damages, and OVERRULES their objections.

**2**

Although the rule against double recovery bars compensatory damages under Count V, Plaintiffs may still recover punitive damages. This Court has already decided that "the Plaintiffs have shown by clear and convincing evidence that the Justice Companies acted fraudulently and, hence, owe punitive damages pursuant to KRS § 411.184." [R. 227 at 6.] Judge Ingram's analysis of the propriety of punitive damages is sound, and the Court will not repeat it here. The Court likewise adopts Judge Ingram's recommendation of a 1:1 ratio, based on the compensatory damages Plaintiffs would have received under Count V if they were not barred by the prohibition on double recovery. Accordingly, the Court award punitive damages under Count V in the amount of $17,010,900.

Plaintiff did not object to the 1:1 ratio of punitive to compensatory damages. [R. 438 at 24 ("Based upon an award of fraud damages of approximately $17 million, a 1:1 ratio . . . was appropriate.").] Defendant's objection to punitive damages is the same as their objections to compensatory damages. [R. 444 at 19.] Specifically, they contend *Nami* precludes an award of punitive damages "for what is essentially a breach of contract." *Nami*, 554 S.W.3d at 328. For the reasons already stated above, this objection is OVERRULED. Judge Ingram's recommendation for punitive damages is ADOPTED.

**III**

Accordingly, it is hereby **ORDERED** as follows:

1. For Count I, as of June 26, 2019, Defendants owe $970,000 in unpaid retainer fees. That amount continues to increase by $10,000 on the first of each month. Therefore, Defendants currently owe **$1,000,000**, compounded annually at 8% interest;

2. For Count II, Defendants owe $16,990,900 in lost tonnage royalties, as determined by the independent arbiter, with pre-judgement interest compounded annually at 8% interest, beginning May 1, 2012;

3. As compensatory damages under Count V, Defendants owe $20,000 for the Strong Brothers lease reimbursements, plus 8% interest beginning October 14, 2011 for the first $5,000; October 4, 2012 for the second $5,000 payment; November 22, 2013 for the third $5,000 payment; and April 28, 2016 for the fourth $5,000 payment.  In addition to the foregoing, Defendants also owe $17,010,900 in punitive damages, without interest:

4. Under Section 14 of the Fourth Amendment, Defendants owe "all attorney fees and expenses in connection with this lawsuit, without interest.  Within thirty (30) days of entry of this Order, Plaintiffs **SHALL FILE** an affidavit of fees and costs, and Defendants shall have fourteen (14) days to respond.

5. Plaintiffs' Renewed Motion for Sanctions **[R. 378]** is **DENIED**; and

6. Defendants' Motion for leave to file a Sur-Reply **[R. 431]** is **DENIED**.

This the 23d day of September, 2019.

Gregory F. Van Tatenhove
United States District Judge