UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No: 6:12-cv-00091-GFVT |
| V. | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| KENTUCKY FUEL CORPORATION and JAMES C. JUSTICE COMPANIES, INC., | ) ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court are several loose ends in need of tying up. Defendants seek reconsideration of the Court's Order [R. 445] adopting Magistrate Judge Ingram's Report and Recommendation. [R. 447.] Defendants also move the Court for oral argument on the issue of reconsideration. [R. 450.] Plaintiffs oppose the motion for reconsideration and the motion for oral argument because they believe Defendants' arguments are improper under Rule 59 and Rule 60. So improper, in fact, that Plaintiffs have moved for Rule 11 sanctions against defense counsel. [R. 457.] Finally, Plaintiffs have filed their Statement of Attorneys' Fees, Expenses, and Costs [R. 448] as instructed by the Court's September 2019 Order.

**I**

On September 23, 2019, this Court entered an Order [R. 445] which largely adopted the Report and Recommendations [R. 437] filed by Judge Ingram, thereby resolving the issue of damages and—the Court thought—putting this matter to bed. Not a month later, Defendants Kentucky Fuel Corporation and James C. Justice Companies, Inc. filed the instant Motion for

Reconsideration. [R. 447.] Defendants' motion requests this Court review "whether the entry of default judgment and the hearing on damages denied Defendants their due process rights[.]" [R. 447-1 at 2.] Defendants further ask the Court to "reconsider three of the findings in the Opinion and Order: the award of monthly retainer fees to Mr. Brownlow through final judgment; the award of lost tonnage royalties based on the disputed report of Plaintiffs' 'independent' arbiter; and, finally, the 1:1 ratio adopted for punitive damages[.]" *Id.*

Plaintiffs emphatically object. Plaintiffs claim Defendants' motion "does not meet the standard required for motions under Rule 59 or 60 and does not even attempt to show that it does." [R. 449 at 1.] Instead, Plaintiffs argue, the motion impermissibly attempts to relitigate issues previously decided while simultaneously improperly raising new arguments that could have been raised earlier. *Id.* at 2. Plaintiffs characterize Defendants' due process arguments as "frivolous," and point out several instances where Defendants' version of the facts are either inconsistent with the record or missing important details. *Id.* at 6–7, 10. They argue the motion "is improper and not warranted by existing law," and "was filed for an improper purpose, namely, to unnecessarily delay and needlessly increase the cost of these proceedings." [R. 457.] For this and several *ad hominem* attacks on counsels' character, Plaintiffs seek Rule 11 sanctions against the Getty Law Group and Richard Getty. *Id.*

## II

Although Defendants seek relief pursuant to Rule 59 and Rule 60 "in an abundance of caution," they are correct that "the Opinion and Order is nowhere designated as a 'final' Order[.]" [R. 447-1 at 3.] Therefore, the Court will address Defendants' arguments under Rule 59 only.

A motion to alter or amend a judgment under Rule 59(e) "may be granted if there was '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 631 (6th Cir. 2012) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).  The purpose of Rule 59(e) is to allow the district court "to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (internal quotation marks omitted).  A Rule 59(e) motion, however, "is not an opportunity to re-argue a case," and "does not permit parties to reargue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).  Motions to alter or amend a judgment pursuant to Rule 59(e) "are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, *2 (W.D. Ky. April 19, 2007).  Whether to grant or deny a Rule 59(e) motion is within the discretion of the trial court. *GenCorp., Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 832 (6th Cir.1999); *Spigelman v. Samuels*, 2013 WL 1898268, at *2 (E.D. Ky. May 7, 2013).

### A

Plaintiffs' characterization of Defendants' motion is exactly correct: "[i]t does not meet the standard required for motions under Rule 59 . . . and does not even attempt to show that it does." [R. 449 at 1.]  Rule 59 "is not an opportunity to re-argue a case," and yet Defendants' begin by requesting "that the Court review whether the entry of default judgment . . . denied Defendants their due process rights[.]" [R. 447-1 at 2.]  Defendant's persistence on this point calls to mind the mythological Hydra— it feels as though every time the Court addresses this argument in one motion, it appears again in two others.

3

This time, Defendants allege the Court violated their due process rights through its entry of default judgment because "any prejudice to Plaintiffs occasioned by Mr. Justices' failure to appear at his deposition could have been addressed through monetary sanctions," and therefore, the sanction of default judgment "was an unnecessarily harsh response to Defendants actions and omissions." [R. 447-1 at 5.] The award of default judgment against Defendants was not error, and it was absolutely not a denial of due process. By way of procedural protections, prior to entry of default, Judge Ingram held a hearing. [R. 169.] The parties filed post-hearing briefing, and Judge Ingram prepared a Recommended Disposition. [R. 189.] Defendants were given an opportunity to object to Judge Ingram's recommendation, and did so. [R. 190.] Finally, the undersigned conducted a *de novo* review of Judge Ingram's recommendation before ultimately adopting the recommendation and granting default judgment as to liability in favor of the plaintiffs. [R. 206.]

To be perfectly clear, the Court did not award default due to "the inadvertent failure of Jay Justice to appear for his scheduled deposition," as Defendants claim. [R. 447-1 at 2.] Default judgment came on the heels of other monetary sanctions for several discovery abuses and willful noncompliance with numerous of the Court's discovery orders. [R. 206 at 11; R. 99; R. 116.] Defendants mind-bogglingly argue "a much less drastic sanction could certainly have ensured that Defendants would comply with their discovery obligations going forward." [R. 447-1 at 5.] Defendants' past conduct offers no support for that proposition. Default judgment in this case was the culmination of a "pattern of delay and non-compliance" on the part of the Defendants, beginning with "failure to serve initial disclosures as ordered," and continuing "at nearly every turn in discovery[.]" [R. 189 at 17.] As Judge Ingram explained in his Recommended Disposition, "[w]hen viewed in the context of Defendants' various violations of

this Court's orders, Mr. Justice's entirely unexplained failure to attend his properly noticed deposition warrants the entry of default judgment." *Id.* at 25. Defendants' characterization of Mr. Justice's failure to appear as an inadvertent, isolated event is incorrect.

Defendants also cannot establish a due process violation with respect to the three-day damages hearing held before Judge Ingram. They argue they were "deprived [] of a meaningful opportunity to be heard" at the hearing, because they could not cross-examine the (deceased) author of a report [hereinafter "the Conway Report"] on which the court relied, and because they were not otherwise permitted to present evidence pointing out the flaws in the Conway Report. [R. 447-1 at 6.] Defendants make much of the fact that this Court previously ordered an evidentiary hearing on damages after finding that reliance on the Conway Report *alone* was insufficient. [R. 321.] The Court awarded the hearing to develop the record and allow Defendants "to present evidence of mitigation of damages." [R. 321 at 6.] The Order granting the hearing was in no way a decree that the Conway Report was somehow bad evidence, or not to be considered at all. Furthermore, when the arbiter's report was entered as an exhibit, Defendants did not even object. [R. 390; R. 423.]

As with many evidentiary hearings, parties were given the procedural due process opportunities to file pre- and post-hearing briefing before Judge Ingram filed his Recommended Disposition. Thereafter, Defendants filed objections which were considered in *de novo* review by this Court. Not only have the Defendants been heard, they have been heard *repeatedly*. To the extent that Defendants were precluded from presenting evidence undermining the Conway report, it was the result of their failure to notice any expert witnesses. [R. 345 at 2 ("Thus, the evidentiary hearing on Plaintiffs' claims for damages will proceed without discovery by Defendants or allowing them to make any expert disclosures. That is the consequence of their

5

own decision to forego doing so during the original discovery period. . . . [D]iscovery closed and Defendants had not engaged in any meaningful effort to discover the basis for, or to oppose through expert proof, Plaintiffs' damages claims.").]

The Court will only briefly address the remaining of Defendants' arguments, because they do not indicate "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 631 (6th Cir. 2012) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Defendants' arguments against the award of monthly retainer fees, lost tonnage royalties, and punitive damages have been litigated already. The facts supporting the award of monthly retainer fees to Mr. Brownlow were conclusively established with the entry of default judgment. [R. 445 at 2.] Defendants' opportunity to litigate these facts ceased with the entry of default. With respect to the award of lost tonnage royalties, Defendants continue to dispute the validity and reliability of the Conway report. Their position has been considered—and rejected—by Judge Ingram and this Court. [R. 395; R. 432; R. 444.]

Finally, Defendants argue that the punitive damage award was excessive and in violation of due process. There is no constitutional formula for setting the ratio of compensatory to punitive damages. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582-83 (1996). Where, as here, "compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Defendants cite no case holding a 1:1 ratio of compensatory to punitive damages is unreasonable, and the ratio imposed by this Court is in line with Supreme Court precedent. If there is error here, it is not a "clear error of

law" warranting relief under Rule 59. Accordingly, Defendants' Motion to Reconsider [R. 447] and Motion for Oral Argument [R. 450] are denied.

**B**

Rule 11 explains that, by presenting any pleading or motion to the Court, an attorney is certifying that the pleading or motion:

> (1) [] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or a by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

Fed. R. Civ. P. 11(b)(1)–(4). The standard for imposing sanctions under Rule 11 is one of objective reasonableness. *Oakstone Cmty Sch. v. Williams*, 615 Fed. App'x 284, 288 (6th Cir. 2015) (citing *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014)). Thus, the Court is to consider whether "the attorney believes on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose." *Id.* (citing *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989)).

Plaintiffs' Motion highlights several instances of Defendants' conduct they believe warrant the imposition of sanctions against the Getty Law Group and Mr. Richard Getty. [R. 457.] Most persuasive is Plaintiffs' argument that Defendants should be sanctioned for their due process argument concerning the Conway Report. Defendants argued that reliance on the report as a measure of damages was improper because (1) they did not have the opportunity to cross-examine Mr. Conway; (2) they were deprived of the ability to present their own evidence of

damages at the hearing. [R. 447-1.] This argument is patently frivolous. Reading Defendants' Motion in isolation makes it appear as though independent arbiter Robert Conway's report was entered into evidence at the damages hearing over Defendants' objections and in defiance of this Court's Order. [R. 447-1 at 5 ("Defendants were provided with no meaningful opportunity to demonstrate the myriad reasons that the Conway report was unreliable and unsuitable as a measure of damages. . . .[B]ecause the Court determined that Plaintiffs could use the Conway report, the failure to consider Defendants' evidence regarding the mineability and merchantability of the coal, the poor quality of the coal, the failures by other entities to successfully mine the coal, and the regulatory obstacles to mining the coal, effectively deprived Defendants of a fair hearing[.]").]

In fact, as Plaintiffs point out, Defendants had ample opportunity to contest entry of the report or to poke holes in its reliability. Defendants would have had ample opportunity to depose Mr. Conway before the discovery cut-off and before he passed away, but they never noticed him for a deposition. [R. 449 at 7.] Defendants failed to object to entry of the report into evidence on at least two occasions: they did not object when the report was admitted, or when Judge Ingram asked the parties to "designate on the record which exhibits were unopposed and which were the subject of objections." *Id.* at 8. And when Defendants say they were denied an opportunity to "present[] evidence as to why the assumptions of methodologies of his report were erroneous," what they mean is they were denied the opportunity to examine Plaintiffs' expert witness, whom Plaintiffs elected not to call, and Defendants elected not to subpoena. [R. 465 at 7; R. 424.] To the extent Defendants were hampered at all at the evidentiary hearing, it was the result of their own "failure to take any discovery or identify any experts" during the original discovery period. [R. 345 at 6.] Defendants have previously said they "anticipated

8

raising the deficiencies in Plaintiffs' proof on a motion for summary judgment, or, if necessary, through cross-examination of the experts themselves." [R. 331-1 at 9.] They have to bear the consequences of that choice.

Furthermore, as already stated, Defendants were afforded an evidentiary hearing on damages that lasted *three days*, and came complete with pre-and post-hearing briefing, an opportunity to object to the magistrate judge's Recommended Disposition, and a *de novo* review by this Court. Defendants apparently equate "due process" with success on the merits. Nothing is fair unless decided in their favor. Defendants began this litigation with the same opportunities for discovery and presentation of evidence as any other litigant, but they have squandered these opportunities with poor strategic decisions and contumacious, combative conduct. And still, Defendants tell this Court "the Magistrate Judge's consideration of the evidence at the damages hearing, and the Court's adoption of it, deprived defendant of a meaningful opportunity to be heard," knowing nothing but their own conduct has hampered them. [R. 447-1 at 5.] This warrants the imposition of Rule 11 sanctions.

## C

This Court has already awarded Plaintiffs their reasonable attorneys' fees and expenses by way of is September 2019 Order. [R. 445 at 16.] Because litigation was ongoing at the time of the award, the Court ordered Plaintiffs to file an affidavit of fees and costs, to which Defendants would have fourteen days to respond. *Id.* Both parties have made these filings. [R. 448; R. 458.] Plaintiffs have also filed a reply to Defendants' response. [R. 459.]

Plaintiffs' statement identifies $838,316.03 in total fees and expenses due to John Lucas's firm, $103,423.13 in total fees and expenses due to Scott Webster's firm, $40,659.41 in fees and expenses due to Culver Schmid's Firm, and $59,098.00 in fees and expenses due to Plaintiffs for

a combined total $1,041.496.57 in fees and expenses. [R. 448 at 1.] These figures are supported by affidavits filed as attachments to Plaintiffs' statement of attorneys' fees, expenses and costs. [R. 448-1—448-7.]

After warning the Court that they plan to appeal the award of attorneys' fees—despite not objecting to Judge Ingram's Recommended Disposition on those grounds—Defendants raise several objections. First, they contend that Mr. Lucas's hourly rates are excessive and should be reduced to a more reasonable rate. [R. 458.] Defendants also argue that the fees include "certain duplicative billings and billings for unrelated matters." *Id.* For these reasons, Defendants request leave "to hire a forensic expert to review the bills in detail and present a report detailing all irregularities or, in the alternative, that the Court schedule an evidentiary hearing during which the validity of the bills could be explored to the satisfaction of the Court and the parties." *Id.*

With respect to Defendants, the Court is satisfied already. Defendants object specifically to Mr. Lucas's billing rate, which they say "has been billed at $535/hour, then $585/hour, and starting in 2019 at $425/hour." [R. 458 at 3.] But as Mr. Lucas explains, almost all of his time has been billed at $425 because he "agreed to 'grandfather' the rates charged to Plaintiffs at $425 per hour." Therefore, as is apparent from the exhibits, Mr. Lucas's bills to Plaintiffs reflect whatever his current hourly rate was at the time, plus a credit awarded to Plaintiffs that would bring the total amount paid per hour down to $425. Mr. Lucas acknowledges that "[d]uring the process of preparing this Reply Memorandum, Mr. Lucas discovered that for a small number of months, he had not given the Plaintiffs the discount that he had agreed upon[.]" [R. 459 at 4.] However, he has since given Plaintiffs credit in that amount and "Plaintiffs are only seeking compensation for his time at the . . . rate of $425." *Id.*

10

To determine reasonable attorney's fees, a court must first determine the "lodestar" amount, which is the attorney's reasonable hourly rate multiplied by the number of proven hours reasonably expended. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). Thus, Mr. Lucas's lodestar amount is $425. Defendants argue this figure ought to be reduced to $180 per hour to $210 per hour, which is "presumptively more reasonable and in keeping with market rates." [R. 458 at 3.] However, this Court has previously determined that Mr. Lucas's rate is reasonable. [R. 259 at 18; R. 285 at 6-12.] The Court sees no reason to disturb that finding now.

Defendants' second objection relates to "billing irregularities" which are attached as Exhibit A to Defendants' filing. [R. 458-1.] Defendants argue that "because of these irregularities, because the bills are supported solely by the Declarations of the billing attorneys, rather than independent reviewers, and because full copies of Mr. Lucas' invoices have not been provided, Defendants should have the benefit of more information about Plaintiffs' billings than that included in their Fee Request." [R. 458 at 6.] Thus, it appears Defendants have highlighted these billing entries as support for their request for a forensic expert to examine the bills and evidentiary hearing on the matter.

The Court finds a hearing is unnecessary. Not only is "satellite litigation" over billing matters generally discouraged, but Plaintiffs' reply adequately explains the alleged regularities. *See Gisbrecht v. Barnhart*, 535 U.S. 789 (2002); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation"). Mr. Lucas explains that he did provide complete invoices because he is representing Plaintiffs in another matter against Defendants, however "the clients had requested on consolidated bill for both matters." [R. 459 at 7.] Only expenses related to this litigation are sought, and so the

spreadsheet prevents "revealing confidential work product" related to the other case that would appear on an invoice. *Id.* Next, although Defendants object to fee reports supported "solely by the Declarations of the billing attorneys," they cite to no authority stating Plaintiffs must hire independent reviewers to prepare a fee request. Billing entries that Defendants refer to as "duplicative work by two attorneys" and "identical to next entry (same day, same attorney, same time billed)" simply reflect the reality that oftentimes more than one attorney works on a paper or motion, and an individual attorney might approach a litigation task in increments. Neither of these amount to improper billing.

Third and finally, Defendants object to handful of expenses they contend should be disallowed or supplemented by additional documentary support. Defendants argue the expenses claimed by Mr. Brownlow lack documentary support beyond his affidavit, and that Mr. Webster's and Mr. Lucas's declarations should be supported by invoices. "The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n. 2 (6th Cir. 1984)). Counsel need not itemize each minute of each day, however "the general subject matter should be identified." *Id.* (internal citations omitted).

The Court finds that Mr. Brownlow, Mr. Webster, and Mr. Lucas have each met this standard. The Court has reviewed each of their affidavits and spreadsheets. Each contains sufficient descriptions of services provided, time worked, and costs incurred in connection with this litigation. While the attorneys' fees here total a large sum, litigation has spanned over seven

years. That fact alone would explain the large award of attorneys' fees. Matters are complicated by Defendants' litigation conduct, which has at various times been described as "contumacious", "egregious" and "uncooperative." [R. 445; R. 206.] In light of the circumstances of this case, the attorneys' fees requested by Plaintiffs are reasonable.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Reconsideration **[R. 447]** is **DENIED**;

2. Defendants' Motion for Oral Argument **[R. 450]** is **DENIED**;

3. Plaintiffs' Motion for Sanctions Under Rule 11 **[R. 457]** is **GRANTED IN PART**. Plaintiffs are awarded monetary sanctions against the Getty Law Group and Mr. Richard Getty in the amount of **$10,000.00**;

4. Defendants **SHALL PAY** Plaintiffs the **$10,000.00** owed as sanctions within **thirty (30) days** of the entry of this Order, and are hereby **ADMONISHED** not to present misleading and frivolous arguments to the Court in the future;

5. Plaintiffs' Statement of Attorneys' Fees, Expenses, and Costs **[R. 448]** is **ACCEPTED**;

6. Defendants **SHALL PAY $838,316.03** in fees and expenses to John Lucas's firm, **$103,423.13** in fees and expenses to Scott Webster's firm, **$40,659.41** in fees and expenses due to Culver Schmid's firm, and **$59,098.00** in fees and expenses due to Plaintiffs, for a combined total **$1,041,496.57** in fees and expenses; and

7. Judgment shall enter contemporaneously.

This the 24th day of April, 2020.

Gregory F. Van Tatenhove
United States District Judge