**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC., and FIVEMILE ENERGY, LLC,     Plaintiffs, | ) ) ) ) ) |
| v. | ) No. 6:12-CV-00091-GFVT-HAI |
| | ) |
| KENTUCKY FUEL CORPORATION, and JAMES C. JUSTICE COMPANIES, INC.,     Defendants. | ) ) ) ) |

**PLAINTIFFS' MOTION FOR
MISCELLANEOUS RELIEF AND LIMITED REQUEST
FOR EXPEDITED RELIEF ON ONE CLAIM**

Plaintiffs, by counsel, bring this Motion to request the following relief: (1) That the Court certify the remanded judgment for breach of contract for lost royalties in the principal amount of $16,990,900 as a final judgment pursuant to Fed. R. Civ. P. 54(b) ("Rule 54(b)"), so that execution and collection procedures can resume. This includes the recalculation of interest on this claim, which is simply a mathematical calculation. Because this involves only a straightforward mathematical calculation of the interest due and because of the length of time that this debt has been owed (over ten years), Plaintiffs respectfully request expedited consideration of this portion of the present Motion. (2) Plaintiffs also request an award of attorneys' fees and expenses in connection with the appeal. This Motion also addresses the two other limited issues upon which the Sixth Circuit remanded: (i) the termination date for the retainer agreement, and (ii) that the prior award for attorneys' fees should not be reduced. Because the record was to be fully developed at the 2018 evidentiary hearing on damages, this Motion with the attached Exhibit 1 provide mathematical calculations of the interest due, but do not rely upon any new evidence, and limit the discussion to evidence in the record introduced at the December 2018 damages hearing.

1

1.  **The Court Should Certify the Judgment for Breach of Contract for Lost Royalties, Including Recalculated Interest as a Final Judgment Pursuant to Rule 54(b).**

The Sixth Circuit affirmed the breach of contract award of $16,990,900 for lost royalties with one modification – it held that the prejudgment interest should begin to accrue on May 8, 2012, rather than on May 1, 2012. The Sixth Circuit remanded this claim for the limited purpose of instructing this Court "to calculate the interest due from May 8, 2012." D.E. 645 at 29. The prejudgment interest due with this revised starting date through August 31, 2022, is $20,631,033.66 and it continues to accrue until the date that the Court enters its final judgment at the rate of $8,245.90 per day. The computation is shown on Exhibit 1 hereto.

In addition, the Court should certify this portion of the judgment as a final judgment pursuant to Rule 54(b). The factors relevant to a Rule 54(b) certification set out by this Court in *L.C. v. Unites States,* Case No. 5:21-cv-00124-GFVT, 2022 WL 2814889 at **3-4 (July 18, 2022) show that this is a proper case for such certification. First, it would be a final order with respect to a separate claim. *Id.* at *3. The breach of contract claim for lost royalties in Count II is completely separate from the remaining claims for the retainer fees (Count I) and the Strong Brothers lease payments (Count V).

Second, there is no just reason for delay. *Id.* at **3-4. (1) As noted above this claim is separate from the remaining claims and its remand requires only the calculation of interest. (2) Because the judgment and the principal amount were affirmed, the possibility of future appellate review would appear to be remote. (3) There does not appear to be any plausible scenario that would require any reviewing court to review the issue an additional time. (4) There is no counter claim that could result in a set-off. (5) There are a variety of additional factors: Because of the remand there currently is no final order upon which execution may issue. Thus, it appears that until the Court enters a revised final judgment order, the Plaintiffs may not resume collection actions. The parties have been involved in efforts to collect the original judgment and at the time of the Opinion, an Order for Garnishment was

outstanding to collect a debt of almost $32 million owed by James C. Justice, III to Defendant James C. Justice Companies, Inc. D.E. 632. Efforts to have that Order served have been halted. In view of the affirmance of this claim, it is fair to restore the status quo by allowing Plaintiffs to renew that garnishment and other collection actions without further delay. There is no just reason for delay because of the length of time this debt has been owed, the fact that it only involves a mathematical recalculation of interest due, militate in favor of avoiding further delay, as do the documented transfers of property by the Defendants that have depleted their assets subject to execution as well. *See, e.g.,* D.E. 512 at 14-20. The Defendants' disobedience of the Court's order to provide full discovery about their assets, liabilities and transfers of property is an additional factor that should be considered. *See* D.E. 7-11; 17-18 ("Here, the Court finds Plaintiffs have produced adequate evidence to show that the Justice affiliates have engaged in transactions, for which records exist, that Defendants have failed to produce in defiance of the Court's order.").

Because the remand on this claim involves only a calculation of the interest due and because of the length of time that this debt has been owed (over ten years), Plaintiffs respectfully request expedited consideration of this portion of the present Motion.

**2.      The Court Should Award the Plaintiffs Fees Incurred in Connection with the Appeal.**

The law is well established that where a contract provides for an award of fees to the prevailing party, then the fees incurred on appeal also are recoverable. *O'Bryan v. Saginaw Cty*, 722 F.2d 313, 315 (6th Cir. 1983); *Moorhead v. Dodd*, 265 S.W.3d 201, 204 (Ky. 2008). The Plaintiffs clearly are the prevailing parties. *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 615 (6th Cir. 2006) ("[A] prevailing party is one who succeed[s] ***on any significant issue*** in litigation which achieves ***some of***

3

***the benefit*** the parties sought in bringing the suit.").[1]  And the appeal plainly "relates to" the parties' contract, which provides as follows:

> 14.  **Costs.**  If any lawsuit, arbitration or other action is commenced or taken that arises out of or relates to this Agreement, the prevailing party shall be entitled to recover from the defaulting party ***all*** costs, fees and expenses, including ***all*** attorney fees and expenses, incurred in connection therewith.

D.E. 40-5 at 7, ¶14.  *See also* discussion at pp. 7-10, below.

This Court therefore should award the Plaintiffs their attorneys' fees and expenses incurred on appeal with leave to file a statement of such fees and expenses within 14 days after the Court's ruling on this Motion.

**3.  The Court Should Determine That the Contract for Retainer Fees Was Not Terminated Until May 1, 2016.**

The Sixth Circuit has ruled that the contract for retainer fees could be terminated by Defendants' ECF filing on May 1, 2016.  Opinion at 7-9; 28-29.  But it remanded for this Court to consider whether the retainer agreement had been abandoned before then when the Plaintiffs "filed the complaint and failed to provide consulting services." *Id*. 9.

First, the filing of the complaint in this case did not terminate the contract for payment of retainer fees. The complaint did not include any statement by New London of intent not to continue to perform.  The Sixth Circuit has held that any written notice of termination provided to Plaintiffs was sufficient to terminate the retainer agreement and that strict compliance with the contractual requirement for certified mail or overnight delivery was not required. *Id*. at 8-9.  However , the Opinion did not invalidate the Fourth Amendment's requirement for "thirty (30) days' prior written notice." D.E. 40-5 at p. 7, ¶9.  In fact, the Opinion validates the written notice requirement by holding that the remaining notice provisions of the Fourth Amendment determined the termination date:  "And under

---

[1] All emphasis herein is added unless otherwise noted.

the Agreement, either party may terminate the retainer fee by giving a 30-day notice to the other. So the fee terminates thirty days after notice is given, not on the day the notice is given." Opinion at 9-10.

Moreover, as a matter of law, simply filing a lawsuit resulting from a contractual dispute does not somehow automatically terminate the contract that is the subject of the suit. It is not the least bit uncommon for parties to continue a contractual relationship even though one or both have sued the other for breaching the same contract. *Cf. Knotts v. Zurich Ins. Co.,* 197 S.W. 3d 512, 517 (Ky. 2006) ("[T]he duty of good faith continues during litigation because the contractual relationship continues."), citing *White v. Western Title Ins. Co.,* 221 Cal. Rptr. 509, 710 P.2d 309 (1985).

The evidence from the damages hearing also clearly shows that New London did not abandon the consulting contract. Plaintiffs' Exhibit 10[2] is a Log of some of Mr. Brownlow's contacts and communications with Kentucky Fuel relating to his services and efforts to assist that was prepared contemporaneously with the communications. It shows that Mr. Brownlow continued to have numerous communications with Kentucky Fuel through and even past May 1, 2016. Px. 11 is a summary of just some of the emails evidencing his services after the time Defendants had contended that New London had abandoned the retainer agreement. Pxs. 11A-V are copies of relevant emails referenced in this summary.

All these exhibits evidence numerous efforts by Mr. Brownlow to assist the Defendants – including **work he did at their request** long after the time that they contend he abandoned the retainer agreement. For example, Mr. Brownlow was working almost constantly to try to get Kentucky Fuel to pay the Strong Brothers lessors so that it could continue to access that property. See Tr. (2) at 234-36;

---

[2] The exhibits cited herein are exhibits introduced in the 2018 damages hearing. They will sometimes be abbreviated as "Px."

5

Px. 11B, 11C, 11E-11I, 11O, 11T.  The emails introduced as Pxs. 11A-V, and the summary (Px. 10) are only examples and were not intended to be comprehensive.

Plaintiffs' Exhibit 10 is Mr. Brownlow' log of communications with Kentucky Fuel.  It shows multiple communications both to and from him pursuant to the retainer agreement that refute any claim of abandonment of the retainer agreement prior to May 1, 2016.  The following examples from that exhibit are representative:

3/13/2014 – Email forward to Keith Smith with multiple non-compliance orders for many Justice entities

6/11/2014 – Met David and Terrance Strong in Breathitt County, obtained signatures and mailed forms to KFC in Mousie, Ky.

7/19/2014 – Email forward to Keith Smith regarding DNR notice of assessment conference on Strong Brothers

8/18/2014 – Email forward to Keith Smith regarding DNR assessment report on Strong Brothers

12/1/2014 – Email to Keith Smith & SB [Steve Ball] re royalty due Darrell Spicer (FM landowner)

2/11/2015 – Email to Tom Lusk re: past due minimum royalty due Strong Brothers land owners. NR [No Response]

9/8/2015 – Email to SB [Steve Ball] re past due from Office of Surface Mining re: WV3

10/22/2015 – Email to SB re past due from Office of Surface Mining

11/24/2015 – Email to SB re past due from Office of Surface Mining

4/21/2016 – Letter to JCJC re Strong Brothers annual minimum royalty

4/21/16 – Letter to KFC – Steve Ball failure to pay Strong Bros annual minimum royalty

In short, the retainer agreement did not terminate automatically upon the filing of this suit and Mr. Brownlow continued to perform it for years thereafter, often at the request of the defendants and with their "thanks" for the services he was providing.  *See, e.g.*, Pxs. 11E,11F, 11G, 11I, 11L, 11M, and 11V.  It is ironic indeed that the efforts by Mr. Brownlow pursuant to the retainer agreement to

6

maintain the viability of the New London leases in the face of Kentucky Fuel's indifference – if not outright hostility – to paying the small landowner lessors, maintained the viability of the Fivemile Assets. That work enabled Kentucky Fuel later to pocket over $8 million from the sale to New Lead and now they continue to refuse to pay New London for Mr. Brownlow's work that enabled the Justices themselves to pocket over $8 million. The Court should therefor hold that the retainer agreement did not terminate until May 1, 2016. Consistent with the Court's original judgment, and as affirmed by the Sixth Circuit, prejudgment interest should be awarded at 8% per annum, compounded annually.

Because the Plaintiffs contend that the retainer fees should not be terminated until May 1, 2016, they are attaching as Exhibit 1 hereto the arithmetical calculation of prejudgment interest on that award. The interest on the $600,000 of retainer fees totals $595,671.38 as of August 31, 2022, and $262.06 per day thereafter until the Court enters its final judgment order. *Id.*

**4. The Court Should Affirm Its Prior Award of Attorneys' Fees and Expenses Without Reduction.**

After a careful and detailed review, this Court previously awarded Plaintiffs' attorneys' fees and expenses of $1,041,496.57. The Sixth Circuit remanded for the limited purpose of allowing the Court to consider its award in light of the Opinion's partial affirmance and partial reversal. The Sixth Circuit made clear that it was **not** suggesting that the award should be reduced: "On remand, the district court may alter those fees or adhere to its original calculation. We offer no view but leave it to the district court to consider the issue in the first instance." Opinion at 25.

The award should not be reduced. The two reasons that the Sixth Circuit gave for allowing this Court to reconsider the amount were that it "vacated the monthly retainer fee award (Count I) and the punitive damages award (Count V)." *Id*. Neither supports any reduction of the fees awarded. The first part of the discussion that follows applies to the vacation of both awards, i.e., the retainer fees and the

7

punitive damages. This will be followed by a short discussion of additional reasons why the reduction of the award for unpaid retainer fees should not diminish the fee award.

### a. Factors applicable to the fees for both claims

It is important to note that the relevant case law establishes that a party need not succeed on all claims to be deemed the prevailing party for purposes of an award of fees. *See, e.g., Women's Med. Prof'l Corp. v. Baird, supra*, 438 F.3d at 615 ("a prevailing party is one who succeed[s] ***on any significant issue*** in litigation which achieves ***some of the benefit*** the parties sought in bringing the suit."). Accordingly, "[a] plaintiff does not need to prevail on all claims asserted in the complaint to be awarded attorneys' fees." *Id*. The parties could, of course, have provided for a different result in their contract, but, as discussed at pp. 8-9 below, they did not.

There is authority that fees may be reduced where a plaintiff who brings multiple distinct claims involving different actors, different theories, and which occurred at different times, is only partially successful. *Heflin v. Stewart Cty, Tenn*., Nos. 91–6219, 91–6160, 1992 WL 162554, at *2 (6th Cir. Mar. 9, 1992). That obviously is not the case here, however, since the fraud and punitive damages claims that were vacated involved the same actors and the same operative facts which occurred at the same time. The Sixth Circuit's Opinion reinforces this in its ruling on the economic loss doctrine when it held that the Plaintiffs' fraud claim did not allege any damages "above and beyond a broken contractual promise." Opinion at 23.

The right to fees here is governed by the contract, principally the Fourth Amendment, D.E. 40-5. The starting point therefore is the language of that controlling contract. The Fourth Amendment addresses the possibility of success on less than all claims by requiring the payment of "**all**" fees:

> 14. **Costs**. If any lawsuit, arbitration or other action is commenced or taken that arises out of or relates to this Agreement, the prevailing party shall be entitled to recover from the defaulting party ***all*** costs, fees and expenses, including ***all*** attorney fees and expenses, incurred in connection therewith.

8

D.E. 40-5 at 7, ¶14.

This language clearly anticipates and covers the common situation where a plaintiff brings a multi-count complaint but only succeeds on some, but not all, claims. In such cases, awards of attorneys' fees are frequently litigated when a defendant contends that the dismissal of some claims should result in a recovery of less than all fees. In this case, however, the parties freely signed a contract that protected against such a reduction by expressly agreeing that the prevailing party was entitled to recover "*all*" fees and expenses, without reduction.

It also is useful to consider and contrast what the parties did **not** include in their contract. They easily could have included a provision that limited fees to those incurred in bringing claims that were successful. An example of drafting that limits recoverable attorneys' to success is provided by Tenn. Code Ann. § 20-12-119(c)(1), which states as follows in pertinent part: "[w]here a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and **reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties**." Similarly, some contracts only provide for fees incurred in enforcing a contract. *See, e.g., In re Dow Corning Corp.*, 456 F.3d 668, 685–86 (6th Cir. 2006) and cases cited therein.

In such a case, fees incurred in bringing a fraud claim might be disallowed. The plain language of the Fourth Amendment, however, eschews any such limitations and allows recovery of "all" fees, if New London prevails on any claim that "relates to this Agreement." D.E. 45-5 at 7, ¶14. Thus, the plain language of the Fourth Amendment mandates that the Court's previous fee award should not be reduced. The Fourth Amendment was freely negotiated by the parties with the assistance of counsel. *See* D.E. 424 (Transcript, Day 2) at 52-53.

9

There is no reason why the Defendants could not have attempted to bargain for these or similar limitations in the Fourth Amendment, but they did not. Their argument for a fee reduction to something less than "**all**" fees simply proves the point Plaintiffs have made previously: "Their word is not their bond." D.E. 640 at 8.

### b. Additional factors applicable to fees for the retainer fees award

Despite the reduction of the judgment for retainer fees, there are additional reasons why the attorneys' fee award should not be reduced. That is because the Defendants never paid any of the fees in question, and therefore were the "defaulting party" under the contract. The Defendants' status as the defaulting parties therefor entitles Plaintiffs to all the fees incurred in connection with this claim.

Finally, even after the partial reversal, the principal amount of the resulting judgment for retainer fees will be between $130,000 and $600,000, exclusive of interest. Even if the Court were to rule on the low side of that range, with the prejudgment interest the judgment for unpaid retainer fees through August 31, 2022, would be $298,221.35. *See* Exhibit 1 hereto. Thus, even under that worst case scenario, not only would the Defendants be the "defaulting party," but Plaintiffs would be the "prevailing party," thereby triggering the award of "all fees and expenses." And an award of $130,000 plus interest would clearly constitute success on a "significant issue."

**5. Conclusion**

For the above reasons the Court should grant the following relief:

(1) Award Plaintiffs their attorneys' fees for the appeal;

(2) Provide that the prejudgment interest on the breach of contract claim for lost royalties from May 8, 2012, through August 31, 2022 is $20,631,033.66 and $8,245.90 per day thereafter until the Court enters its final judgment order;

(3) Determine that the contract for retainer fees did not terminate until May 1, 2016, and enter judgment accordingly for $600,000, plus prejudgment interest at 8% per annum,

10

compounded annually from the dates that each installment of the retainer fees was due, with such interest totaling $595,671.38 as of August 31, 2022, and $262.06 per day thereafter until the Court enters its final judgment order; and

(4) Affirm the previous attorneys' fee award of $1,041,496.57.

Proposed orders are submitted herewith. One assumes the Court will grant the request for a Rule 54(b) certification; the other assumes that the Court does not grant such relief.

| | |
|---|---|
| */s/ John A. Lucas* | */s/ Scott M. Webster* |
| John A. Lucas (BPR# 011198) | Scott M. Webster |
| W. Edward Shipe (BPR# 023887) | **Tooms, Dunaway & Webster** |
| **BROCK SHIPE KLENK PLC** | 1306 West Fifth Street, Suite 200 |
| 265 Brookview Centre Way, Suite 604 | P.O. Box 905 |
| Knoxville, TN 37919 | London, Kentucky 40743 |
| (865) 588-4091 | (606) 864-4145 |
| jlucas@bskplc.com | swebster@toomsdunaway.com |
| eshipe@bskplc.com | |
| | ***Counsel for Plaintiffs*** |