UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| NEW LONDON TOBACCO MARKET, INC., and FIVEMILE ENERGY, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 6:12-CV-91-GFVT-HAI |
| v. | ) ) ) | RECOMMENDED DISPOSITION |
| KENTUCKY FUEL CORPORATION and JAMES C. JUSTICE COMPANIES, INC., | ) ) ) | & ORDER |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court now considers the Renewed Motion for Contempt and Sanctions from Plaintiffs/judgment creditors New London Tobacco Market, Inc. and Fivemile Energy, LLC. D.E. 673.  Plaintiffs seek additional sanctions against Defendants/judgment debtors Kentucky Fuel Corporation and James C. Justice Companies, Inc., for post-judgment discovery abuses.

## I. Background

While this case was on appeal after entry of judgment, on December 28, 2020, Plaintiffs' counsel Edward Shipe emailed Chambers to request a discovery dispute teleconference.  D.E. 489.  He alleged Defendants were not properly cooperating with post-judgment discovery requests, and he wished to file a motion to compel.  At the January 7, 2021 teleconference, the undersigned granted Plaintiffs leave to file a motion to compel.  As noted in the minutes, the Court directed defense counsel to obtain a copy of the audio recording of this hearing to provide to the clients.  D.E. 492.

## A.  The Motion to Compel and Discovery Order

On January 29, 2021, Plaintiffs filed their motion to compel full responses to post-judgment written discovery requests (D.E. 495) accompanied by a memorandum (D.E. 496) and exhibits (D.E. 498).  Defendants responded.  D.E. 499.  Plaintiffs replied (D.E. 500) with exhibits (D.E. 501).  The Court then ordered Plaintiffs to clarify aspects of their request for relief.  D.E. 502.  Plaintiffs filed a supplement to their motion to compel.  D.E. 503.  The Court provided an opportunity for Defendants to respond to the supplement but ordered them not to revisit arguments already made.  D.E. 504.  Defendants did not file a response to the supplement.

The Court ultimately granted in part Plaintiff's requested order under Federal Rule of Civil Procedure 37 compelling Defendants to fully respond to ten interrogatories and 18 requests for production.  D.E. 505 (the "Discovery Order").  The Court overruled Defendants' three primary objections.

First, Defendants argued that Plaintiffs' request for documents "related to parents, subsidiaries, and affiliates" needed to be narrowly defined.  D.E. 499 at 3, 5.  Defendants averred they are owned by "the Justice Family," and that family owns "well over one hundred business entities, many of which have no relationship whatsoever."  *Id*. at 5.  Defendants wished to define "affiliates" narrowly "to include only parents and subsidiaries" to avoid being in the "unenviable position" of a "burdensome production requirement."  *Id*.  Defendants insisted that many of the Justice-owned businesses are irrelevant to this case, so they need not pursue additional collection and production of materials.  *Id*. at 5-6.

The Court explained that "the complexity of the ownership and relationship among these business entities is the *reason* that further discovery is proper.   Plaintiffs are entitled to full

discovery concerning the relationships among these entities, so this objection is overruled." D.E. 505 at 2.

Second, Defendants argued they "do not typically maintain paper or electronic copies of bank statements." D.E. 499 at 6. They argued they simply did not possess "copies of many of the historical bank statements." *Id*. at 7. The Court however, ordered Defendants to obtain the responsive bank statements within their possession, custody, or control. D.E. 505 at 2-3.

Third, Defendants argued that producing pre-2015 documentation would be extremely burdensome, and such documents would not be relevant. D.E. 499 at 10. The Court, however, found it was reasonable for Plaintiffs to demand documents dating back to 2010. And "it was Defendants' delay tactics that caused this litigation to drag on for nine years. Defendants cannot rely on the effects of their own misbehavior to excuse themselves from reasonably requested materials." D.E. 505 at 3.

The Court ordered Defendants to fully respond to Plaintiffs' ten interrogatories and 18 requests for production by May 17, 2021. D.E. 505 at 3. The Court reminded Defendants they had been ordered "to **preserve** all documents and information gathered in response to the Plaintiffs' discovery requests, including documents and information that were not produced in response to those requests for any reason, so as to be available for later review by the Court as necessary." *Id*. (quoting D.E. 492). The Court further ordered "complete narrative, sworn responses to all ten interrogatories." *Id*. at 4. The Court also compelled:

- Production of all documents memorializing the acquisition, financing, refinancing, location, transfer, and/or disposition of and documents relating to all assets shown on the Judgment Debtors' balance sheets, including but not limited to:

  - copies of all notes, guarantees, financing or credit agreements to which the Debtors are parties (Request No. 5),
  - copies of all bank and financial account statements for all accounts owned or held by the Judgment Debtors (Request No. 7),

     ○  copies of the complete transaction files for all transactions involving any transfer of assets by Judgment Debtors (Request No. 8),
     ○  copies of all agreements between the Judgment Debtors and any affiliates,
     ○  subsidiaries, officers, directors, or insiders from January 1, 2010 through the present (Request No. 10).

- Production of all documents reflecting any modifications, payments, disbursements, or any other business actions taken with regard to the assets and transactions identified . . . above for both the Judgment Debtors and all affiliates/related companies.

*Id*. at 4.  The Court additionally ordered Plaintiffs to file a June 7 status report describing the extent of Defendants' compliance with the order to compel.  *Id*. at 5.  And the Court took under advisement Plaintiffs' request for attorney fees and expenses.  *Id*.

In their June 7, 2021 status report, Plaintiffs reported that the discovery responses received on May 17 did not comply with the Discovery Order.  D.E. 507.  They also stated that, on that date, June 7, they had received supplemental responses from Defendants, but had not had time to review them.  *Id*. at 3 n.1.  Plaintiffs requested permission to move for additional relief. *Id*. at 19.  The Court granted that request.  D.E. 509.

## B.  The Motion for Sanctions and Sanctions Order

On August 16, 2021, Plaintiffs moved for sanctions, including a finding of contempt against the directors/officers of Defendants.  D.E. 510, 512, 514, 516.  Defendants responded in opposition (D.E. 521, 526) and filed exhibits (D.E. 522).  Plaintiffs replied and filed additional exhibits.  D.E. 531.

On March 23, 2022, the Court granted in part Plaintiffs' motion for sanctions.  D.E. 565 (the "Sanctions Order"); 2022 WL 1301772.  In the Sanctions Order, the Court found that Defendants had violated the Discovery Order and imposed preliminary non-contempt sanctions. *Id*.  The Court ordered Stephen Ball, James C. "Jay" Justice III, Summer Harrison Deane, and

Dr. Jillean "Jill" Justice-Long[1] to submit to depositions.  *Id*. at 18.  The Court also ordered an award of attorney fees and costs, to be calculated after the depositions.  *Id*. at 19.  The Court denied without prejudice Plaintiffs' request for conclusive factual findings, Plaintiffs' request for disgorgement of payments and transfer of property, and Plaintiffs' request that certain officers and directors be held in contempt.  *Id*.  Plaintiffs now renew those requests, with some modification.  D.E. 673 at 2.

The Court in the Sanctions Order announced that, following the depositions, it intended

to proceed under the *Electric Workers* rubric for imposing sanctions on corporate officers and directors.  The Court finds that some form of sanctions is appropriate.  But the Court needs more evidence to make the proper findings as to the details of those sanctions. . . . the Court will order the relevant members of the Justice Family to submit to depositions.  The depositions will allow the parties to gather evidence on the questions implicated in the *Electric Workers* standards.  These include (among others that may occur to the parties):

- Whether Defendant's officers/directors had actual or constructive notice of the Court's April 16, 2021 order granting Plaintiffs' motion to compel discovery responses.  D.E. 505.
- Whether Defendants' officers/directors violated a definite and specific order of the Court.
- Whether Defendants' officers/directors are presently unable to comply with the Court's discovery order.
- If Defendants are unable to comply with the order, why they are unable to do so.
- Whether Defendants' officers/directors took all reasonable steps within their power to comply with the Court's discovery order.

*Id*. at 15-16.

### C.  Plaintiffs' Renewed Motion for Contempt Sanctions

Plaintiffs' Renewed Motion for Contempt Sanctions argues that, based on the depositions and related discovery, further sanctions and a finding of contempt against three officers/directors

---

[1] As discussed in prior orders, the director positions of Defendants have always been occupied by some combination of Jay Justice, Jill Justice, and (in the past) Governor James C. "Jim" Justice.  Summer Harrison Deane has served as Vice President of Treasury for Defendants.  Attorney Stephen "Steve" Ball has served as Executive Vice President and General Counsel for Defendants.  For consistency, with no disrespect intended, the Court will refer to James C. Justice III as "Jay Justice" and Dr. Jillean Justice-Long as "Jill Justice."

are warranted.  D.E. 673.  Plaintiffs have also filed the following deposition transcripts and exhibits:

- D.E. 638-1 & -2 (Jay Justice transcript)

- D.E. 639-1 & -2 (Summer Deane transcript)

- D.E. 659 (Stephen Ball transcript)

- D.E. 660 (Jill Justice transcript)

- D.E. 661 (Attorney Christopher Schroeck transcript)

- D.E. 662 (35 deposition exhibits)

- D.E. 663 to 668 (sealed deposition exhibits)

Defendants responded in opposition.  D.E. 686.  On February 14, 2023, Plaintiffs replied (D.E. 690) and filed the affidavit of attorney John Lucas (D.E. 689).

## II.  Legal Standards

The motion implicates both Rule 37(b)(2)'s sanction procedures and the Court's contempt powers.

Under Rule 37(b)(2), if a party or a party's officer, director, or managing agent fails to obey an order to provide discovery, the Court may take a variety of punitive actions.  These include making conclusive findings of facts (Rule 37(b)(2)(A)(i)) and "treating as contempt of court the failure to obey any order" (Rule 37(b)(2)(A)(vii)).  Rule 37(b)(2)(C) also provides for the disobedient party to pay the expenses of the moving party.  The enumerated sanctions in Rule 37(b)(2) are not exhaustive; the rule "gives the court a broad discretion to make whatever disposition is just in the light of the facts of the particular case."  Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289 (3d ed.).  Any sanction levied under Rule 37(b)(2) must be "just" and must be specifically related to the claim that was at issue in the order that was

6

disobeyed. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

Plaintiffs ask the Court to make factual findings, award fees and expenses, and find Defendant's officers and directors to be in contempt, with numerous monetary remedies flowing from that contempt finding.  D.E. 673.

A magistrate judge's power of civil contempt is limited in a non-consent case.  28 U.S.C. § 636(e).  In a non-consent case, when an act constitutes civil contempt,

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

*Id.* § 636(e)(6); *see also Total Quality Logistics, LLC v. TW Transp. Sols., LLC*, No. 1:11-CV-183, 2012 WL 2045948, at *1-3 (S.D. Ohio June 6, 2012) (recommending contempt proceedings as a rule 37 sanction for failure to comply with a discovery order), *report and recommendation adopted*, 2012 WL 3229192 (S.D. Ohio Aug. 6, 2012); *NXIVM Corp. v. Bouchey*, No. 1:11-MC-0058 GLS-DEP, 2011 WL 5080322, at *3-4 (N.D.N.Y. Oct. 24, 2011); *Int'l Bhd. of Elec. Workers, Loc. 474 v. Eagle Elec. Co.*, No. 06-CV-2151-JPM-DKV, 2007 WL 622504, at *5 (W.D. Tenn. Feb. 22, 2007) (recommending contempt as a discovery sanction against the defendant's chief executive officer).  It is the sanction selected by the magistrate judge—not the sanction requested by the moving party—that governs whether a Rule 37 motion qualifies as dispositive or nondispositive.  *Builders Insulation of Tennessee, LLC v. S. Energy Sols.*, No. 17-CV-2668-TLP-TMP, 2020 WL 265297, at *5 (W.D. Tenn. Jan. 17, 2020).

To be clear, Plaintiffs are not pursuing a traditional piercing-the-corporate-veil claim. Rather, they are seeking sanctions (in the form of civil contempt) against three individual members of the Justice family on account of Defendants' violations of the Court's Discovery Order, as detailed in the Sanctions Order.

The civil contempt power is a necessary and integral part of the independence of the judiciary. Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. And contempt sanctions "may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378-79 (6th Cir. 2003) (citations omitted).

In the *Electric Workers* case, an electricians' pension fund sued to enforce an arbitration award against a corporation, Gary's Electric Service. When Gary's Electric Service failed to pay the judgment, the fund brought contempt proceedings against both the company and its owner. The fund argued that, not only had Gary's Electric Service not paid, but the owner, Mr. Pipia, had begun "to waste the corporate assets in an effort to avoid making the court-required payments." *Elec. Workers*, 340 F.3d at 377. The district court ordered Gary's Electric Service to produce certain reports and ordered the owner, a Mr. Pipia, to submit to a deposition. *Id.* The district court ultimately granted sanctions against the company, but not Mr. Pipia. The Sixth Circuit held that the district court abused its discretion when it declined to impose sanctions on the owner.

The Sixth Circuit first explained that non-party corporate officers can be held in contempt. *Elec. Workers*, 340 F.3d at 378. The Court adopted the majority view that allows

personal jurisdiction over officers or corporate employees if they have notice of the order and its contents. *Id*. at 380. A corporate officer can be bound by a court's payment orders even when the orders make no specific reference to him. *Id*. at 382.

> The Court then summarized the standard to be applied:

> In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order. Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order. To meet this production burden in this circuit a defendant must show categorically and in detail why he or she is unable to comply with the court's order. When evaluating a defendant's failure to comply with a court order, we also consider whether the defendant took all reasonable steps within his power to comply with the court's order.

*Elec. Workers*, 340 F.3d at 379 (citations and quotation marks omitted). "[T]o show impossibility, [the contemnor] has the burden to demonstrate that (1) it was unable to comply with the court's order, (2) its inability to comply was not self-induced, and (3) it took all reasonable steps to comply. *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 802 (6th Cir. 2017) (citation and quotation marks omitted). Civil contempt does not require willfulness; the intent of the party to disobey the order is irrelevant to finding contempt. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

The movant need not always prove actual knowledge of the court's order; constructive knowledge may suffice. *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005) (citing *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985), *aff'd*, 252 F. App'x 55 (6th Cir. 2007).

> [I]n the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's *existence*, not of its precise terms. This rule is entirely consistent with our conclusion that constructive notice is sufficient: where a corporate officer knows a court order has been entered against the

corporation, but fails to inquire, as a reasonable person would, as to the terms of the order, he may properly be held in contempt. A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order, and thereby avoid a contempt citation, would defy common sense.

*Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995) (citation omitted).

As to the inability-to-comply defense, the *Electric Workers* Court explained that this defense is available if the person can establish (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply. *Elec. Workers*, 340 F.3d at 381.

In the *Electric Workers* case, the appellate court found that:

Pipia, as an officer of the corporation and the one responsible for the corporation's affairs, was subject to the court's order just as the corporation itself was. Because Pipia either prevented compliance or failed to take appropriate action within his power for the performance of the corporate duty, the district court had the authority to hold Pipia in contempt. The Funds only needed to show that Gary's Electric did not comply with the district court's judgment in order to meet their burden. That said, the Funds met their initial burden for a contempt finding against Pipia when they presented to the district court the previous order of the court affirming the LMC awards and Pipia's own deposition testimony admitting that he knew of the court's order yet failed to observe it.

*Elec. Workers*, 340 F.3d at 382. Pipia also testified that his company's business operations had ceased and he had liquidated his company's assets. *Id*. at 383 n.14.

Turning to whether Pipia's noncompliance resulted from an inability to pay, the appellate court found Pipia failed to meet his burden of showing both that he was unable to pay and that he was *not responsible for* the inability to pay. *Elec. Workers*, 340 F.3d at 383. A showing of "clean hands" was essential here. *Id*. at 384. Pipia needed to prove in great detail his inability to pay, show that he did not cause the inability, or prove that he unsuccessfully attempted compliance in good faith. *Id*. at 383. Instead, the Court observed that Pipia had paid off nearly

10

all of his company's creditors except the pension fund. *Id.* This was "ample evidence" that Pepia had not "taken all reasonable steps" to ensure compliance with the order. *Id.*

Before remanding, the Sixth Circuit explained that appropriate sanctions would aim to compensate the Funds for losses resulting from Pipia's purposeful decisions to avoid paying the judgment and to eliminate his company's resources. *Elec. Workers*, 340 F.3d at 385. Civil contempt is both a compensatory remedy and an encouragement to comply with court orders. *Id.* One possibility was that the district court could fine Pipia an amount equivalent to the funds he had diverted to avoid paying the judgment. *Id.* at 386. Such sanctions would not be "a collection" action, but rather a compensatory tool. *Id.* at 385. The Court expressly noted that Pipia could be fined in an amount equivalent to the original judgment. *Id.* at 383 n.13.

Finally, the Sixth Circuit included a section in the *Electric Workers* opinion explaining that a corporate officer can be held in contempt without piercing the corporate veil. *Elec. Workers*, 340 F.3d at 386. Pipia was not technically being held liable for his company's corporate debts; rather a sanction was provided that would also compensate the fund for Pipia's actions in thwarting the court's order.

### III.  Preliminary Observation

The Court pauses at this juncture to address the two frivolous lead arguments in Defendants' response brief. Defendants argue Plaintiffs' motion contains two "patently fatal" flaws: "First, the transactions discussed in the motion's first half all undisputedly occurred well before the entry of judgment or any postjudgment order in this case. They consequently cannot be the basis for a contempt sanction." D.E. 686 at 1. Defendants say,

> Those transactions . . . occurred years before the April 24, 2020 judgment in this case (D.E. 467), and before the Magistrate Judge's April 16, 2021 order compelling discovery that is the focus of the current sanctions motion (D.E. 505). Contempt sanctions are available only for conduct that violates a court order then

in existence.  Because the transactions occurred before the entry of the judgment
or the order at issue here, they cannot support a contempt sanction.

*Id* at 2-3.

This argument misses the point.  The sanctions at issue in the Sanctions Order and this Recommended Disposition & Order are sanctions for failing to obey the April 2021 Discovery Order.  The Discovery Order compelled disclosure of transactions that necessarily happened in the past.  No one is seeking sanctions for the transactions themselves.  The temporal relationship of the transactions to the Judgment in this case is immaterial, as the purpose of the post-judgment discovery was to gather information about Defendants and their affiliates to aid in enforcing the Court's judgment.  The undersigned laid out in the Sanctions Order the legal standards that would apply to this contempt dispute.  It boggles the mind that any lawyer could read the prior orders in this post-judgment discovery dispute and conclude the above argument could have any traction.

Equally inapt is Defendants' second alleged "patently fatal" flaw.

Second, Defendants assigned competent counsel to handle discovery in this matter, which is one of dozens of legal matters that the Justice companies have pending at any given time.  They directed that attorney to comply with the Court's orders and assisted him in doing so.  The notion that Defendants' officers and directors could be personally sanctioned if that attorney did not fully comply with a discovery order—absent evidence that they themselves caused the noncompliance—is absurd and lacks any legal support.

D.E. 686 at 2.

It is this blame-the-lawyer defense that is absurd in this context.  Defendants have been represented in this litigation by a series of attorneys.  Yet, even as the attorneys changed, the discovery problems never abated.  Those attorneys have always been careful to avoid directly blaming their clients for the numerous well-documented discovery abuses and defiance of Court

12

orders in this case.  Current counsel of record Mr. Schroeck is no exception.  But it has long been clear to the Court that the misbehavior in this case has been client-driven.

Additionally, like the first alleged flaw, this argument side-steps the legal standards the Court must apply.  The whole point of the case law discussed in Section III of the Sanctions Order (largely recapitulated in Section II above) is that there comes a point where the client can be held responsible for violations of court orders.  The issues here, as correctly framed by Plaintiffs, are whether Defendants' officers and directors had knowledge of the Discovery Order, whether that Order was disobeyed, and whether the officers/directors have adequate excuses for the Order not being followed.  Their conduct, not their various attorneys, is at issue.

The third section of Defendants' response brief chronicles statements regarding individual discovery matters in Plaintiffs' motion that Defendants allege are inaccurate.  D.E. 686 at 7-8.  The point appears to be to undermine Plaintiffs' overall credibility by poking holes in Plaintiffs' recitation of events.  However, none of the factual disputes in this section of the brief are material to the issues at hand.  The Court already determined Defendants violated the Discovery Order, as documented in the Sanctions Order and reviewed in Section IV below.  Little has changed since then in terms of compliance with the Discovery Order, and these factual quibbles are beside the point.

Defendants' other arguments will be addressed later.  But crucially, Defendants fail to meaningfully engage with the elements of a civil-sanctions request in light of the facts of this case.  It is not the Court's role to manufacture those arguments for them.  The Court will now apply the required analysis to the existing facts.

## IV.  Defendants Violated Court Orders

"In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citation and quotation marks omitted).

> Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.

*In re Settlement Facility-Dow Corning Tr.*, No. 00-00005, 2022 WL 3350688, at *2 (E.D. Mich. Aug. 12, 2022), *aff'd*, No. 21-2665, 2023 WL 2155056 (6th Cir. Feb. 22, 2023) (quoting *Hobson v. Eaton*, 399 F.2d 781, 784 n.2 (6th Cir. 1968)).

Here, Plaintiffs have shown by clear and convincing evidence that Defendants have violated a definite and specific order of the Court.[2]  Their violation was previously described in the Sanctions Order, whose findings are incorporated herein.  D.E. 565 at 8-11.

First, although the Court specifically ordered "complete narrative, sworn responses to all ten interrogatories" (D.E. 505 at 4), Defendants failed to provide narrative responses to interrogatories 2, 4, 5, 6, 7, and 8.  D.E. 565 at 8.  During this litigation, Defendants have never even claimed to have provided those *narrative* responses.  The evidence is thus clear and convincing that the narrative responses were never provided.

---

[2] It is a requirement that the order alleged to have been violated was "definite and specific."  *Gascho v. Glob. Fitness Holdings*, LLC, 875 F.3d 795, 800 (6th Cir. 2017).  Contempt cannot be based on a decree "too vague to be understood."  *Id.*  The Discovery Order was definite and specific, and Defendants do not dispute this point (*see* D.E. 686).  The Discovery Order overruled a series of objections from Defendants and provided specific directions for compliance.  D.E. 505.

Second, despite the Court's clear order, Defendants refused to identify all their affiliate companies and to provide information about transactions with these companies.  D.E. 565 at 9.  On this matter, the Court found "Defendants' evasiveness on this issue is exasperating and strikes the Court as a continuation of the most egregious litigation misconduct encountered in the undersigned's nearly twelve years of federal judicial service."  *Id*.  The evidence is clear and convincing that Defendants resisted the Court's order to identify these related companies and their transactions with Defendants.

Third, when Plaintiffs argued that Defendants were continuing to withhold documents from 2010 to 2015, Defendants failed to meaningfully respond.  D.E. 565 at 10.  The Court finds clear and convincing evidence that Defendants have resisted disclosure of these older records, despite clear orders from the Court.

Fourth, Defendants defied the Court's orders in failing to provide actual records of transactions between Defendants and the affiliate companies.  The Court found in its Sanctions Order "adequate evidence to show that the Justice affiliates have engaged in transactions, for which records exist, that Defendants have failed to produce in defiance of the Court's order."  D.E. 565 at 11.  The situation has not substantially improved, despite the depositions.  The Court finds clear and convincing evidence that Defendants disobeyed the Discovery Order and withheld documentation of transactions between Defendants and the affiliate companies.

On these four categories of violations, the Court incorporates its discussion in the Sanctions Order (D.E. 565 at 8-11) with its citations to the parties' filings.  The Court hereby **CERTIFIES** to District Judge Van Tatenhove the fact that Defendants violated the Court's Discovery Order in these four respects.

### V.  Actual or Constructive Knowledge of the Order

Plaintiffs seek a finding that Defendants' "Director and President, James C. Justice, III, their Director Dr. Jillean Justice and their Executive Vice President and Counsel Stephen Ball" are in contempt of Court.  D.E. 673-2 at 1.

To hold a litigant in contempt, "the movant must produce clear and convincing evidence that shows that he violated a definite and specific order . . . **with knowledge of the court's order**." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (emphasis added).  The movant need not always prove actual knowledge of the court's order; constructive knowledge may suffice.  *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005) (citing *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985), *aff'd*, 252 F. App'x 55 (6th Cir. 2007).

> [I]n the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's *existence*, not of its precise terms.  This rule is entirely consistent with our conclusion that constructive notice is sufficient: where a corporate officer knows a court order has been entered against the corporation, but fails to inquire, as a reasonable person would, as to the terms of the order, he may properly be held in contempt.  A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order, and thereby avoid a contempt citation, would defy common sense.

*Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995) (citation omitted).  These standards are met in this case.

### A.  The Discovery Teleconference

As noted in Section I.A., the Discovery Order was preceded by a motion to compel, which was preceded by a discovery-dispute teleconference on January 7, 2021.  D.E. 492.  The Court took pains during that conference to ensure that defense counsel Mr. Schroeck was keeping the officers & directors involved in the post-judgment discovery issues.  As captured in

the audio recording (*see* D.E. 492, minutes) and Plaintiffs' transcript of the call (D.E. 501-1), the

Court said "one thing that needs to be made clear" is that Mr. Schroeck was to "relay [the

discovery issues] to [his clients]." D.E. 501-1 at 19.  The Court expressed regret for "not having

them on this call" and contemplated "just hav[ing the officers] come into court again." *Id*.  The

Court told Mr. Schroeck it could not at that point assume the clients would cooperate with

discovery in good faith. *Id*. at 20.  The Court explained:

> So what you're responsible for creating, Mr. Schroeck, is a record, a
> record of how every single request was reviewed, every single person that your
> clients, that you spoke to about them, every single person that was asked to gather
> information, every single item of information that was provided to you by your
> client.  Every single piece of information that was reviewed and not produced has
> to be preserved from this moment forward, period.

> . . . .

> [O]bviously I'm not going to invade any attorney-client privilege or work-
> product domain but eventually I will need to see a narrative of what happened,
> how your clients responded to these discovery requests.  And I'm going to find
> out whether or not they responded in good faith.

> So the record that I'm talking about that you should be creating, and I
> hope has been in existence since May, is going to be tested.  Now I say that not as
> a threat.  I say it as an acknowledgement of the misconduct that's occurred
> throughout this case by your clients.  I don't have any reason to think, Mr.
> Schroeck, that you participated in that or have thus far.  I don't want you to take it
> that way.  But I don't believe the record supports me just assuming that your
> clients are doing what they're supposed to.

> . . . .

> So in your written response to the Motion to Compel I need to see how
> your clients have responded.  I need to be able to assess their diligence and the
> reasonableness of the response.  If you need to file some of that under seal, if
> you're worried about revealing something that's work-product, you can do that
> and I'll take up that motion.  But what's not going to be satisfactory is a response
> to the Motion to Compel that just says - Well, we searched and we found
> everything and we reviewed some and we produced some.  That's not going to be
> satisfactory to the court. . . .   I expect that your response is going to entail an
> awful lot of effort by you and your client.  And then I may have to have a hearing.
> If I review the response and I have factual questions about what happened we'll

just have a hearing in court, again.  And that's fine.  We'll get your client there and answering questions under oath about how they've responded.

D.E. 501-1.  The Court "DIRECTED" Mr. Schroeck to obtain an audio recording of the

teleconference from the Clerks' Office.  D.E. 492.

So the clerk's office will provide you, Mr. Schroeck, with a copy of the audio file of this call so that you'll have that record as you formulate your response and can make it available to your clients so that they understand the court's expectations.

D.E. 501-1.  This discussion leaves no question that defense counsel was directed to share with

his clients all discovery-related orders and expectations from the Court.  And the record contains

a notation that, on January 8, 2021, Mr. Schroeck requested the recording and an audio CD was

mailed to him.  D.E. 494.

## B.  The Depositions

Mr. Schroeck was asked about this teleconference during his deposition.  He testified he

understood that the Court was "basically" referring to Stephen Ball and Jay Justice.  D.E. 661 at

10.[3]  Accordingly, Mr. Schroeck testified he "definitely discussed this order [to keep the clients

informed] and this hearing with Mr. Ball.  And I'm sure at some point I discussed it with Mr.

Justice as well, although I would imagine he heard about it from Mr. Ball before he heard about

it from me."  *Id.*  He testified that he obtained the audio CD of the January 2021 teleconference,

as directed, and he gave it to Stephen Ball.  *Id.* at 11-12.  Mr. Schroeck did not know if Mr. Ball

ever listened to the call or if Mr. Ball passed the recording along to Jay Justice.  *Id.* at 12.

Mr. Ball's deposition addressed his knowledge of the Discovery Order:  "After that April

order, I understood that we needed to provide additional information.  I did not personally read

the order at that time.  The only thing I read was [the ECF notice where] there's like a summary

in the body of the email."  D.E. 659 at 16.  He testified he understood the Discovery Order

---

[3] All page number references are to the blue page numbers generated by ECF.

compelled the production of additional documents.  But he did not read the order, "it's just not something I typically do."  *Id*. at 17.  Mr. Ball made Jay Justice "aware that we had to provide additional information."  *Id*. at 19.  But Jay Justice did not ask to see a copy of the Discovery Order or to know any other details about it.  *Id*. at 19-20.   Unlike the Discovery Order, Mr. Ball did read the Sanctions Order.  *Id*. at 19.  Mr. Ball testified that, when the Sanctions Order was issued, he briefed Jay Justice "on what the order says," but did not provide a copy to him.  *Id*.  Mr. Ball said he did not recollect hearing about the January 2021 teleconference, nor had he heard the audio recording.  *Id*. at 20.

Jay Justice at his deposition denied remembering the specifics of any court orders in this matter.  But he knew "we have been ordered to provide discovery," without knowing "the extent of that."  D.E. 638-1 at 29.  Jay Justice denied knowing the details of what had been ordered.  *Id*. at 30.  When shown the Discovery Order at the deposition, he denied having seen it before or having it described to him.  *Id*. at 99.  He testified he did not become aware of the post-judgment discovery litigation until 30 to 45 days before his May 16, 2022 deposition.  *Id*. at 102, 109-10.  He testified he did not know anything about the recording of the January 2021 teleconference.  *Id*. at 97-98.

It should be noted that Mr. Ball and Jay Justice previously testified before the undersigned at the December 2018 damages hearing.  The Court at the time found them evasive and not credible witnesses.  D.E. 437 at 24 ("Mr. Justice and Mr. Ball were not terribly credible witnesses."), 45 (noting that Defendants generally lack credibility).

Ms. Deane also testified concerning her knowledge of the Court's discovery orders.  She testified she was aware Plaintiffs had filed a motion to compel, and that it had been granted at least in part.  D.E. 639-1 at 201.  But she testified she had not personally seen the Discovery

Order or Sanctions Order. *Id*. at 202-03. She did not remember if she had been informed of the January 2021 teleconference. *Id*. at 216. Plaintiffs are not seeking contempt sanctions against Ms. Deane. Ms. Deane did confirm that Jay Justice calls the shots with the Justice-affiliated companies: "Jay wants to and will approve any and every dollar out the door." D.E. 639-1 at 122.

Jill Justice testified she had no knowledge of the Court's orders in this case until the week of her deposition. D.E. 660 at 6-7. She had only "vaguely heard about . . . the New London case" prior to the week of her deposition. *Id*. She agreed it was "fair to say" that she is "sort of a figurehead as a director" for Defendants. *Id*. at 7. Plaintiffs argue that constructive knowledge of the Orders should be ascribed to Jill Justice because she made herself deliberately ignorant. D.E. 673 at 23-24.

### C. Certified Findings of Fact

It should be noted that Defendants' response brief says nothing whatsoever about whether Mr. Ball, Jay Justice, and/or Jill Justice had actual knowledge of the Discovery Order. *See* D.E. 686. Plaintiffs' arguments regarding the knowledge element of a civil contempt action stand unopposed, unrebutted, and effectively conceded.

The record here is one-sided. First, as to Mr. Ball and Jay Justice, the evidence is clear and convincing that they had actual knowledge of the existence of the April 16, 2021 Discovery Order (D.E. 505). And there is no question they knew the Order was directed at them, meaning the Order was directed at their companies (Defendants), for which they were responsible as officers/directors. Mr. Ball testified that he did not read the Discovery Order. But he said he did read the summary from the ECF email and he "understood" after reading the notice "that we needed to provide additional information." D.E. 659 at 16. Mr. Ball then made Jay Justice

"aware that we had to provide additional information." *Id*. at 19.  Jay Justice testified he knew "we have been ordered to provide discovery," without knowing "the extent of that."  D.E. 638-1 at 29.  The Court accepts his testimony that he had not actually read or seen the Discovery Order or had its full contents explained to him.  *Id*. at 99.  But what is required is knowledge of the order's existence, not its precise contents.  *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90-C-1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995).  ("[I]n the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's existence, not of its precise terms.").

This finding is buttressed by the fact that Mr. Ball and Jay Justice had advance notice of the potential Discovery Order.   At the January 2021 teleconference, the Court ordered attorney Schroeck to keep his clients involved in the discovery dispute, even directing him to provide a recording of the call to his clients.  And Mr. Schroeck stated in his deposition that he "definitely discussed" the discovery-dispute teleconference with Mr. Ball.  D.E. 661 at 10.  And he was "sure at some point I discussed it with Mr. Justice as well, although I would imagine he heard about it from Mr. Ball before he heard about it from me."  *Id*.

The situation with Jill Justice is more complicated.  Like Plaintiffs, the Court accepts as true that she lacked actual knowledge of (even the existence of) the Discovery Order.  *See* D.E. 673 at 23.  Jill Justice in her deposition comes across as genuinely oblivious to this litigation, despite her status as a director of Defendants.

Plaintiffs cite caselaw supporting the proposition that constructive knowledge of an order can be imputed to an officer or director who engages in willful ignorance.  D.E. 673 at 23 ("A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order and thereby avoid a contempt citation, would defy common sense.").  Defendants,

who sidestep the knowledge issue entirely, provide no authority in rebuttal.  The Court could construe Defendants' response as conceding or waiving any claim regarding Jill Justice's constructive knowledge of the Discovery Order.  The evidence is univocal that Jill Justice is a director of Defendants, yet she chose to remain uninformed about this litigation until just before her deposition.  She described herself as a "figurehead" director.

Plaintiffs rely on the *Central States* case from Illinois (D.E. 673 at 23), which states, in context:

> There is one point we should clarify: in the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's *existence,* not of its precise terms.  *See Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 808 (2d Cir. 1981) (contemnor was party which knew order had been entered against it but failed to ascertain particulars of order).  This rule is entirely consistent with our conclusion that constructive notice is sufficient:  **where a corporate officer knows a court order has been entered against the corporation, but fails to inquire, as a reasonable person would, as to the terms of the order, he may properly be held in contempt**.  A rule which would allow a corporate officer to remain **deliberately ignorant of the *particulars* of a court order**, and thereby avoid a contempt citation, would defy common sense.

*Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995) (emphasis added).  The *Central States* court is making this clarifying point because that court was considering an injunction under Civil Rule 65, not a civil contempt action, and the court was noting the different standards for constructive notice in the different contexts.  The above quotation from *Central States* stands for the proposition that an officer/director is not off the hook when he or she knows the *existence* of a court order but chooses to remain ignorant of the *details*.  It does not stand for the proposition that an officer/director can be held liable without even knowing an order exists, as Plaintiffs appear to suggest.  *See also Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D.

Ohio 2005), *aff'd*, 252 F. App'x 55 (6th Cir. 2007) (explaining the company officers had "constructive knowledge" when they knew the order existed but failed to inquire of its details).

*Central States* is an unpublished district-court case from another circuit. But it contains a thorough (albeit 28 years old) discussion of existing case law concerning notice under Rule 65. The *Central States* court found a single Second-Circuit case that endorsed an officer's liability without the officer having actual knowledge of the order's existence. But the *Central States* court declined to adopt that position due to the more common refrain that "due process" requires some knowledge of the order's existence before liability can attach. *Cent. States*, 1995 WL 472705, at *3-8.

Plaintiffs argue, "For closely held business[es] such as these Defendants, it is presumed that the [officers/directors] are aware of significant court orders involving substantial matters and sums." D.E. 673 at 21. Plaintiffs provide no authority for this precise assertion, nor any analysis of whether or how Defendants are "closely held" companies. A *presumption* of knowledge would appear out of place in the civil contempt context, were *the movant bears the burden* of proving knowledge by clear and convincing evidence. As noted, the cases of which the Court is aware that discuss "constructive knowledge" in this context use the term to mean that knowledge of an order's *existence* confers *constructive knowledge of the order's contents/details*. If Plaintiffs have additional authorities to present on this issue, they may do so in response to this Recommendation.

It is interesting that the inability-to-comply component of the *Electrical Workers* analysis focuses on the contemnor's *present* ability or inability to comply with the order. *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379, 381 (6th Cir. 2003). Plaintiffs argue that Jill Justice "now knows of the relevant orders as a result of her

deposition, yet the Response gives no hint that she has taken any action to cause the Defendants to do anything other than continue to remain in contempt."   D.E. 690 at 7.   However, the knowledge element now under consideration does not appear to focus on present knowledge, but rather knowledge of the order during the period it should have been obeyed.   The knowledge element, which is tied to due process, appears to be retrospective.   Here, the Discovery Order was issued on April 16, 2021 and it required compliance by May 17, 2021.   D.E. 505.   Nothing in the record suggests Jill Justice knew the Discovery Order existed during this period.

Given there is *no* evidence in the record that Jill Justice was aware of the *existence* of the Discovery Order prior to its self-contained deadline, the Court cannot find clear and convincing evidence that she knew about it yet failed to act on it when the time was ripe.   Without condoning Jill Justice's ignorance of this litigation, in the narrow context at issue, the knowledge element of civil contempt is not satisfied as to Jill Justice.

The undersigned accordingly **CERTIFIES** that Mr. Ball and Jay Justice possessed actual or constructive knowledge of the Discovery Order, as defined by applicable law.

### VI.  Ability to Comply

> Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order.   To meet this production burden in this circuit a defendant must show categorically and in detail why he or she is unable to comply with the court's order.

*Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citations and quotation marks omitted).   The inability-to-comply defense is available if the person can establish (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply.   *Id.* at 381; *accord Gascho v. Glob.*

*Fitness Holdings, LLC*, 875 F.3d 795, 802 (6th Cir. 2017) ("[T]o show impossibility, [the contemnor] has the burden to demonstrate that (1) it was unable to comply with the court's order, (2) its inability to comply was not self-induced, and (3) it took all reasonable steps to comply." (citation and quotation marks omitted)).  Civil contempt does not require willfulness; the intent of the party to disobey the order is irrelevant to finding contempt.  *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).  The contemnor bears the "burden of showing both that he was unable to [comply] and that he was *not responsible for* the inability to [comply]." *Elec. Workers*, 340 F.3d at 383.  A showing of "clean hands" is essential.  *Id.* at 384.

Defendants do not meet their burden of proving inability to comply with the Discovery Order.  Despite this being Defendants' burden, their response brief does not meaningfully address the issue.  They argue:  "Defendants assigned in-house attorney Christopher Schroeck to handle postjudgment discovery in this matter. . . .  He [is highly qualified and] was more than capable of collecting documents and preparing discovery responses."  D.E. 686 at 5.  The Court does not doubt Mr. Schroeck's capabilities.  The fact remains that the Discovery Order was not obeyed.  Given that Mr. Schroeck was Defendants' agent and that the Court specifically instructed him to make sure the officers and directors were fully engaged in discovery, throwing Mr. Schroeck beneath the proverbial bus is unavailing.  Defendants have complained about the burden of the ordered post-judgment discovery, but they have not pointed to any external circumstance (past or present) that made compliance *impossible*.  Defendants' noncompliance with the Discovery Order was a strategic litigation decision.  This circumstance is the opposite of a non-self-induced inability to comply that must be proven to establish this defense.

"To meet this production burden in this circuit a defendant must show **categorically and in detail** why he or she is unable to comply with the court's order." *Elec. Workers*, 340 F.3d at

379 (emphasis added).  The Discovery Order mandated "complete narrative, sworn responses to all ten interrogatories," plus "production of all documents memorializing the acquisition, financing, refinancing, location, transfer, and/or disposition of and documents relating to all assets shown on the Judgment Debtors' balance sheets," plus "production of all documents reflecting any modifications, payments, disbursements, or any other business actions taken with regard to the assets and transactions . . . for both the Judgment Debtors and all affiliates/related companies."  To meet their burden, Defendants needed to address each of these categories and explain why they were and are unable to comply.  They have made no effort to do so.

> Mr. Schroeck testified at his deposition:
>
> I mean, I don't have access to the company[ies'] financial records.  I know that, you know, we produced all of the documents that were identified by Mr. Ball and Ms. Harrison [Deane].  And if there are more documents out there, I wouldn't know whether they exist or not.  From my perspective, it seemed like everyone was being diligent, collecting all the documents they could, and producing them.

D.E. 661 at 16.  Citing this testimony, Defendants argue they made a reasonable effort to comply with post-judgment discovery.  D.E. 686 at 5-6.  But, again, they fail to do what the Sanctions Order said they must do to avoid contempt.  D.E. 565 at 13-14.  They have not addressed categorically and in detail why each mandated discovery disclosure has not been accomplished.

Accordingly, the Court hereby **CERTIFIES** that Defendants were not unable to comply with the Discovery Order and they did not take all reasonable steps to comply.  They fail to meet the burden necessary to wield the inability and clean-hands defense.

## VII.  The Requested Relief

Although Plaintiffs state they are renewing their earlier request for relief (D.E. 673 at 2), their Renewed Motion (*id*. at 30-35) and accompanying proposed order (D.E. 673-2) reveal some differences from their original request (D.E. 514, proposed order).  The Court will rely only on

the relief requested in the Renewed Motion (D.E. 673 at 30-35), which incorporates previous briefing at Docket Entry 512 at 9-13.

Sanctions imposed for civil contempt are meant "to compel obedience to a court order and compensate for injuries caused by noncompliance." *Redkin Labs. Inc. v. Levin*, 843 F.3d 226, 229 (6th Cir. 1988). "[S]anctions are permissible against individual officers only when (1) they are intended to compensate for actual losses, and (2) the actual losses compensated for were caused by the officer's contumacious conduct." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 803 (6th Cir. 2017). At this point compelling obedience is not realistic or potentially meaningful to advance this eleven-year-old case. Rather, the sanctions should compensate Plaintiffs for injuries caused by noncompliance. The Court finds that all the actual losses were caused by the contumacious conduct of the officers/directors. The question thus becomes an assessment of actual losses.

## A.

As noted, the main thrust of post-judgment discovery concerned Plaintiffs' belief that Defendants were making themselves judgment-proof by transferring their assets to affiliate companies and to the company directors so Defendants could claim they lack funds to pay the judgment in this case. The discovery ordered by the Court was designed to flush out where Defendants' money and assets had gone so the money and assets could be recovered to satisfy the judgment. Defendant's disobedience of the Discovery Order impeded Plaintiffs' attempt to track down Defendants' money and assets. This is the injury. The violation of the Discovery Order thwarted Plaintiffs' ability to collect the judgment.

To review the timeline a bit, it bears noting that the threat of sanctions loomed relatively early in this case. During a teleconference in June 2013 on Plaintiffs' allegations of discovery

obstruction, the Court granted leave for Plaintiffs to move to compel discovery production and to move for Rule 37 sanctions. D.E. 55. The following month, Plaintiffs filed a motion for sanctions. D.E. 80. That July 2013 motion sought a ruling that Defendants' answer and all defenses be stricken. *Id.* That motion was ultimately denied because it was rendered moot by subsequent events. D.E. 179. In October 2013, Plaintiffs moved for sanctions, including default judgment, for alleged discovery abuses. D.E. 131, 134. The Court heard oral argument on January 10, 2014, and granted Plaintiffs leave to file an additional motion for sanctions. D.E. 191 (transcript). The following January 2014 motion explicitly sought default judgment against Defendants. D.E. 170, 172. After briefing, the undersigned recommended default judgment in March 2014. D.E. 189. Judge Van Tatenhove adopted the recommendation and ordered default judgment as to liability in September 2014. D.E. 206. Litigation on damages then commenced.

Defendants made several significant financial moves during the period described in the above paragraph. First, Defendants sold mining rights to the property at issue in this case in what has been called the "New Lead" or "NewLead" transactions. *See* D.E. 437 at 42-43; D.E. 512 at 14; D.E. 673 at 8-10. From December 2013 to June 2014, millions of dollars received in these transactions were deposited in the brokerage accounts of Jay Justice and his company Justice Management Services, rather than in the accounts held by Defendants. D.E. 512 at 14. According to Plaintiffs, "All these payments should have gone to [Defendant Kentucky Fuel Corporation]. In converting these funds, Jay Justice, [the affiliate company Justice Management Services], and others working with them essentially stole $7,629,760 from [Kentucky Fuel]." D.E. 512 at 15; *see also* D.E. 673 at 10. Plaintiffs believe these funds bypassed the Defendant companies so Defendants could plead poverty before the Court. They argue their theory is

supported by Defendants' reluctance to provide documentation or narrative descriptions of these transactions. D.E. 512 at 15.

Another way Defendants are alleged to have drained their own coffers is through large loans to shareholders. According to Plaintiffs, tax returns from 2014 to 2019 show that Defendant James C. Justice Companies "transferred to its shareholders over $159 million," which it claims constitutes *repayments* for loans *to* the company for which there is no documentation. D.E. 512 at 16. Plaintiffs provide a chart illustrating the amounts of loan money transferred over time, as recorded in the tax returns. The majority of these loans happened in tax years 2014 and 2015, which would correspond to the period when pretrial discovery sanctions, including default judgment, were being litigated. D.E. 512-1.

Further, according to Plaintiffs, Jay Justice personally received $31,740,101 in loans from Defendant James C. Justice Companies and its subsidiary Justice Family Farms. D.E. 512 at 16; D.E. 673 at 4-8; D.E. 516 at 12. It is not clear when the loans were made. Defendants likewise provided no documentation or narrative description for these loans. But Mr. Ball in his deposition indicated that part of this $31.7 million receivable is what Jay Justice owes for certain real estate transferred to him. D.E. 673 at 6.

Plaintiffs also point out that the Defendant companies transferred to their affiliates "intercompany receivables" and "subsidiary receivables" totaling $179,934,880. D.E. 512 at 17. This data comes from Defendants' 2019 tax returns, which would include the period when the parties were litigating the amount of damages in this matter. Again, Defendants have not provided full documentation or narrative descriptions of these intercompany transfers.

Plaintiffs also say they have evidence of real-estate transfers whose documentation and details have not been disclosed. D.E. 512 at 17-19. They allege:

Since 2014 JCJC has made at least 31 transfers of real property for **no** consideration, plus one to Jay Justice that recited consideration, but for which there is no evidence that the consideration was actually paid. Fifteen of these transfers were to unknown recipients for *zero* consideration. We only know about these from summary Asset Disposition Reports that show the transfers, the acquired values, and the lack of consideration, but **not** the transferees. The total amount of these transfers, based on the acquired values, is $30,067,565.45. . . . The other sixteen no-consideration transfers were made to **Affiliates.**

. . . .

. . . . The total amount of the above zero-consideration transfers for which the values of the properties are known is $52,133,665.45 [which includes] the transfer to Jay Justice for which $13.5 million was "to be paid" but for which no proof of payment ever provided. But it excludes the fourteen zero-consideration transfers for which Defendants did not provide property values.

*Id*. at 17-18; *see also* D.E. 673 at 10-12, 13-15.

Finally, Plaintiffs describe a contingency payment to James C. Justice Companies from a Russian Company, Mechel, which was litigated in another court in 2014 and 2015. D.E. 512 at 19-21. They believe the payment was for $31,675,564.97, but that it was diverted away from JCJC to conceal that it had been paid to JCJC. *Id*. at 20-21; *see also* D.E. 673 at 12-13.

The picture painted by all this evidence is consistent with Plaintiffs' theory that the Justice family treats their companies as a single financial entity—they move money around the various companies as needed. *See also generally* 6:17-CV-245-GFVT, D.E. 15 at 6-15 (Amended Complaint in the currently stayed companion case). And in this matter, it is reasonable to suspect that these large transfers for which Defendants have withheld documentation and narrative descriptions were accomplished so as to drain the Defendant companies of assets to avoid paying the Judgment and fees. Their misconduct in this case was intended to delay discovery into those efforts.

**B.**

Plaintiffs accordingly argue that, as a contempt sanction, the officers/directors should face a monetary sanction in an amount up to the ultimate judgment in this case (including any interest and fees). According to Plaintiffs, at the very least this amount equals $18,182,396.57, plus interest and fees. D.E. 673 at 33-34; D.E. 673-1. The damages amount is still being litigated after remand from the Sixth Circuit (*see* D.E. 646, 656, 657). Defendants do not contest Plaintiffs' accounting of the minimum damages amount. *See* D.E. 686.

Plaintiffs propose an additional or alternative sanction against Jay Justice. D.E. 673 at 33-34 (incorporating D.E. 512 at 11-18). According to Plaintiffs, the record shows Jay Justice received a farm property worth $13.5 million from Defendant James C. Justice Companies without having to pay for it. Jay Justice also has $31.7 million in unpaid loans from James C. Justice Companies. And he diverted to himself the payments from the New Lead Transaction whereby the property underlying this case was sold to a foreign company for mining. *Id*. The facts here are reminiscent of *Electric Workers*, where the officer Pipia had diverted his company's assets to himself "to drain the corporate resources to avoid satisfying the court's order." *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 384 (6th Cir. 2003). The Court noted "the sanction of civil contempt may include a fine designed to compensate the Funds not only for the money that Pipia squandered but also for the money Pipia diverted from the Funds and paid to other creditors." *Id*. at 385. "[O]n remand, the district court could determine that a proper sanction would be to fine Pipia in an amount equivalent to those funds that Pipia reasonably diverted." *Id*. at 386.

Plaintiffs acknowledge that the total recovery against Jay Justice cannot exceed the amount of the final Judgment, so they ask that this sanction be entered in the alternative to the

monetary contempt sanction just discussed.  D.E. 673 at 34.  The Court agrees and recommends that if Judge Van Tatenhove finds Jay Justice in contempt of court, Jay Justice face monetary sanctions both to compensate Plaintiffs for discovery abuses as discussed above and in the alternative as a sanction for diverting assets to himself, as in *Electric Workers*.

## C.

Rule 37(b)(2)(A)(i) also provides that a Court can levy sanctions in the form of directing that designated facts "be taken as established for purposes of the action."  In their Renewed Motion, Plaintiffs ask the Court for a conclusive factual finding that "the companies owned and controlled by members of the Justice family that are identified on Deposition Exhibits 1 (D.E. 662-1) and 5 (D.E. 662-5) are the alter egos of the Defendants' shareholders, James C. Justice, III, and Jillean Justice."   D.E. 673-2 ¶ 4.  Plaintiffs rely on *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413-14 (5th Cir. 2004), which is on-point.  D.E. 673 at 34-35; *see also Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 582 (3d Cir. 2018) (collecting cases where an alter-ego finding was imposed as a discovery sanction).

In *Compaq*, the defendant corporation refused to provide discovery related to Compaq's attempt to pierce the corporate veil.  *Compaq*, 387 F.3d at 413.  The officer, Brown, "creatively refused to provide the discovery" for over two years.  *Id*.  The district court held the officers Brown and Mowery in contempt and threatened to make an alter-ego finding if discovery was not provided within 30 days "in light of Defendants' long history of filibuster and delay on the matter."  *Id*.  Although the corporate veil was never pierced, the district court imposed alter ego liability on Brown and Mowery as a discovery sanction.  *Id*.

On appeal, the Fifth Circuit found the alter-ego sanction was "just:"

Compaq struggled for well over two years to obtain sufficient alter ego discovery from Brown and Ergonome.  Brown and Ergonome engaged in abusive practices

> for the sole purpose of frustrating Compaq's ability to extract the discovery. . . .
> The entire egregious course of overlitigation and discovery abuse is among the
> worst we have seen.

*Id*. at 413-14.  Likewise, in this case, Plaintiffs have struggled for years to obtain discovery.  In

fact, in 2015 the ultimate sanction of default judgment was levied against Defendants for their

extreme discovery abuses.  The undersigned and Judge Van Tatenhove have repeatedly remarked

that Defendants' obstructive litigation tactics have been among the worst we have seen.

One judge on the *Compaq* panel wrote separately to address the alter-ego finding.

*Compaq*, 387 F.3d at 415-16 (Pickering, J., concurring).  He noted that the defendants "were on

notice well before the sanction was imposed."  *Id*. at 415.  Here, it was August 2021 when

Plaintiffs moved for a finding of alter ego as a post-judgment discovery sanction.  D.E. 512.  The

Court denied the request without prejudice in March 2022.  D.E. 565.  At any point, Defendants

could have changed the landscape by providing the full discovery responses compelled by the

Discovery Order.  But that was never done; Defendants have long been on notice.

Judge Pickering also explained that the defense strategy was to make the litigation

unpleasant and costly.  *Compaq*, 387 F.3d at 415.  And previous sanctions had failed to produce

compliance.  *Id*.  The defense strategy "was clearly vexatious and oppressive" with plenty of

"gamesmanship."  *Id*. at 416.  The same is true here; as the Court has often remarked on the

defense's frivolous behavior, obstructionist discovery strategy, and overall gamesmanship.

Defendants' response does not address the *Compaq* case.  D.E. 686.  But they did dispute

its applicability in briefing the earlier sanctions motion.  D.E. 521 at 11-12.  Defendants argue

that *Compaq* (like the similar case of *Flame S.A. v. Indus. Carriers, Inc*., 39 F.Supp.3d 752, 766-

67 (E.D. Va. 2014)) is different because there was an underlying veil-piercing claim in the

litigation.  Granted, Plaintiffs here have not asserted a claim to pierce the corporate veil.  The

current posture is default judgment on a contract claim.  But the entire eleven-year litigation has been permeated with discovery abuses.  Defendants have been represented by a series of capable attorneys.  But at no juncture have they been fully forthcoming with discovery.  The problem clearly is not originating with the attorneys, but with Defendants' officers/directors.  Their claims of poverty are not credible.  Despite Defendants' obstruction, Plaintiffs have amassed evidence that Defendants' assets have been transferred to Jay Justice and affiliate companies. The Court's alter-ego finding is a just and apt remedy.

The Court observes one difference from *Compaq* is that Jay Justice and Stephen Ball are not only found to be alter egos of Defendants, but the alter-ego net also catches a variety of affiliate companies.  The factual finding is meant to disempower Defendants from avoiding judgment by transferring their assets to the corporate officers and/or affiliate companies.  Despite Defendants' discovery stonewalling, Plaintiffs have presented sufficient paper trails that confirm Ms. Deane's testimony that the various Justice-related companies "are basically one big economic unit" that "pays the debts for all of its constituent parts."  D.E. 673 at 35 (quoting D.E. 639-1 at 119-20).  Again, this is not a piercing of the corporate veil.  It is a factual finding as a discovery sanction congruous with *Compaq*.

**D.**

Plaintiffs also request attorney fees and expenses in connection with their Renewed Motion.  D.E. 673 at 35; D.E. 673-2 ¶ 5.  "[A]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated."  *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000).  This requested relief is appropriate.

### E.

Any Rule 37 sanction must first be "just," and must second "be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).   Here, the sanctions are just and are related to the specific claim at issue.   The issue post-judgment is Defendants' alleged attempts to hide their assets by transferring them to the officers and affiliate companies.   Defendants' defiance of the Discovery Order thwarted Plaintiffs' attempts to bring clarity to this suspicion.   The underlying issue is whether Plaintiffs will be able to collect the damages owed them under the Court's judgment.   Permitting access to those assets transferred to Jay Justice and to the affiliate companies is both just and apt in this stage of the litigation.   The binding factual finding is just and apt as it will rectify Plaintiffs' inability to collect the judgment caused by Defendants squirreling away their assets.   An award of fees is just and apt because Plaintiffs have expended their resources as a result of Defendant's litigation misconduct.

Aside from the contempt sanction, the Court finds that the Rule 37 sanctions discussed herein can be ordered by a magistrate judge.   In 2020, a District Court in Illinois conducted a nationwide survey of the case law (including law from the Sixth Circuit) and determined that a magistrate judge can properly order nondispositive discovery sanctions under Rule 37 (except for contempt sanctions, which are explicitly carved out by statute).   *Cage v. Harper*, No. 17-CV-7621, 2020 WL 1248685 (N.D. Ill. Mar. 16, 2020).   The Court finds the analysis in *Cage* persuasive.   The pivotal issue in magistrate-judge jurisdiction is whether the relief to be granted is "dispositive," meaning the relief would dispose of a claim or defense.   *Id.*   A dispositive matter is "something akin to a final disposition."   *Id.* at *13.   A ruling is dispositive if it is the

35

"functional equivalent" or produces an "identical effect" to one of the eight dispositive motions described in 28 U.S.C. § 636(b)(1)(A).  *Id*.  "Common sense" suggests that Rule 37 orders are not dispositive, as discovery orders are the "quintessential" nondispositive orders.  *Id*. at *18. The Court has previously pointed to several cases wherein magistrate judges ordered attorney fees as Rule 37 sanctions.  *See, e.g.*, *Starcher v. Corr. Med. Sys., Inc.,* 144 F.3d 418, 421 (6th Cir. 1998) *aff'd sub nom. Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999) (considering a magistrate judge's award of attorney fees under Rule 37); *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2015 WL 4742686, at *1 (S.D. Ohio Aug. 11, 2015) (same); *Zang v. Zang*, No. 1:11-CV-884, 2014 WL 5426212, at *4 (S.D. Ohio Oct. 22, 2014) (same).  The Court believes the same analysis applies to the Rule 37(b)(2)(A)(i) sanction of making binding findings of fact that do not themselves dispose of a claim or defense.  Like the award of fees, the binding factual finding in this case is a nondispositive ruling under Rule 37(b) levied as a sanction for disobeying a discovery order.  The Court recognizes that this matter is not technically "pretrial." Rule 72 and 28 U.S.C. § 636 speak of magistrate judges determining "pretrial matter[s]." However, "A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  28 U.S.C. § 636(b)(3); *see also* Joint Local Civil Rule 72.1.   And the Rule 37 sanctions discussed herein, though following entry of judgment, are equivalent to the same discovery sanctions that could clearly be levied pretrial.  In fact, the advisory committee notes to Rule 72 explains that the Rule's reference to "pretrial" matters "does not restrict" District Judges from referring "matters other than pretrial matters."

## VIII.  Conclusion

The Court previously found that Defendants violated the Discovery Order (D.E. 505) but denied without prejudice some of Plaintiffs' requested sanctions penalties.  D.E. 565.  Having

considered their Renewed Motion, **IT IS HEREBY ORDERED THAT** Plaintiff's Renewed Motion for Contempt and Sanctions (D.E. 673) is **GRANTED IN PART**. Additional non-contempt sanctions are **GRANTED AS FOLLOWS** under Federal Rule of Civil Procedure 37(b)(2)(A):

    (1)    Plaintiffs' request for conclusive factual findings (as detailed at D.E. 673-2) is **GRANTED**. Per Rule 37(b)(2)(A)(i), the Court enters a binding finding of fact that the companies owned and controlled by members of the Justice family that are identified on Deposition Exhibits 1 (D.E. 662-1) and 5 (D.E. 662-5) are the alter egos of the Defendants' shareholders, James C. Justice III and Jillean Justice.

    (2)    Plaintiffs' request for an award of attorney fees and expenses related to their Renewed Motion for Contempt and Sanctions (D.E. 673) is **GRANTED**. Within 21 days of entry of this Recommended Disposition & Order, Plaintiffs **SHALL FILE** a notice and affidavit that includes an accounting of fees and expenses for the Court's review.

Further, for the reasons set forth above, it is **RECOMMENDED** (per Rule 37(b)(2)(A)(vii) and 28 U.S.C. § 636(e)(6)) **THAT:**

    (1)    Non-parties Jay Justice and Stephen Ball be ordered to appear before District Judge Van Tatenhove on a date certain to show cause why they should not be held in civil contempt for failing to comply with the Discovery Order.

    (2)    Unless Jay Justice and Stephen Ball satisfactorily show cause as to why they have not fully complied with the Discovery Order, they be held in civil contempt of court by the District Judge.

(3)     If found in contempt, Stephen Ball and Jay Justice each be ordered to pay Plaintiffs contempt penalties up to the amount of final judgment (following resolution of the post-remand damages litigation).

Finally, for convenience, the undersigned hereby CERTIFIES the following facts to the District Judge under 28 U.S.C. § 636(e)(6):

1)  On April 24, 2020, judgment was entered in favor of Plaintiffs. D.E. 467.

2)  On May 27, 2020, Plaintiffs served post-judgment interrogatories and requests for production of documents.  D.E. 475, 476.  This consisted of ten interrogatories and eighteen production requests.  D.E. 498-4, 498-5.  Defendants objected to 25 of the 28 total requests.  *See* D.E. 498-6, 498-7.

3)  On December 28, 2020, Plaintiffs' counsel Edward Shipe emailed the undersigned's Chambers to request a discovery dispute teleconference.  D.E. 489.

4)  On January 6, 2021, Hon. Christopher Schroeck entered his appearance as in-house counsel for Defendants Kentucky Fuel Corporation and James C. Justice Companies, Inc. D.E. 490.

5)  On January 7, 2021, the Court conducted an on-the-record teleconference on the post-judgment discovery dispute.  D.E. 492.  Edward Shipe and Christopher Schroeck appeared on behalf of the parties.  The Court granted Plaintiffs leave to file a motion to compel discovery production and set a briefing schedule.  *Id*.  Mr. Schroeck was "DIRECTED" to obtain a recording of the call.  *Id*.

6)  As can be seen in the transcript of the teleconference (D.E. 501-1), the Court told Mr. Schroeck to make the audio recording available to his clients so they would understand the Court's expectation as to their full compliance with post-judgment discovery.  *Id*. The Court said "one thing that needs to be made clear" is that Mr. Schroeck was to "relay" to his clients the need to fulfill their discovery obligations under the Rules because the Court could not at this point trust they were operating in good faith.  *Id*.

7)  Mr. Schroeck obtained the audio recording of the January 2021 teleconference and provided it to Mr. Ball.  *See* D.E. 494.

8)  On January 29, 2021, Plaintiffs filed their motion to compel, with exhibits.  D.E. 495, 496, 498.

9)  After full briefing on the motion to compel, on April 16, 2021, the Court issued the Discovery Order overruling Defendant's objections and granting several of Plaintiffs'

requests for relief.  D.E. 505.  This included an order that Defendants provide "complete narrative, sworn responses to all ten interrogatories."  *Id*. at 4.  Defendants were given until May 17 to comply.  *Id*. at 3.

10) The Discovery Order was a definite and specific order of the Court.

11) Defendants failed to comply with the Discovery Order.  They did not, and have not, provided complete narrative, sworn responses to all ten interrogatories.  They did not, as ordered, identify all their affiliate companies and provide information about transactions with these companies.  They did not fully disclose records from 2010 to 2015.  And Defendants continue to withhold documentation of transactions between Defendants and the affiliate companies.  Each of these findings of noncompliance is supported by clear and convincing evidence.

12) Stephen Ball had at least constructive knowledge of the Discovery Order.  He testified at his deposition, "After that April order, I understood that we needed to provide additional information.  I did not personally read the order at that time.  The only thing I read was [the ECF notice where] there's like a summary in the body of the email."  D.E. 659 at 16.  Mr. Schroeck also testified he told Mr. Ball about the January 2021 teleconference, which would have put Mr. Ball on notice that a discovery order was likely imminent.  Mr. Schroeck also gave Mr. Ball access to the recording of the teleconference.  The evidence is clear and convincing that Stephen Ball knew of the existence of the Discovery Order.

13) Jay Justice had at least constructive knowledge of the Discovery Order.  Mr. Ball testified in his deposition that, after the April Discovery Order was issued, he made Jay Justice "aware that we had to provide additional information."  D.E. 659 at 19.  Jay Justice testified he knew "we have been ordered to provide discovery," without knowing "the extent of that."  D.E. 638-1 at 29.  Mr. Schroeck also testified he told Jay Justice about the January 2021 teleconference, which would have put Mr. Justice on alert that a discovery order was likely imminent.  The evidence is clear and convincing that Jay Justice knew of the existence of the Discovery Order.

14) Jill Justice had no knowledge of the existence of the Discovery Order until June 2022.

15) On June 7, 2021, Plaintiffs filed a sealed status report complaining that Defendants had not complied with the Discovery Order.  D.E. 507.  Plaintiffs believed Defendants' discovery abuses were an intentional tactic to wear down Plaintiffs' resources.  *Id*. at 3.  They also believed Defendants had transferred their assets to affiliate companies to make themselves judgment proof and were trying to keep the paper trail under wraps.  *Id*.  The Court granted Plaintiffs leave to seek additional relief.  D.E. 509.

16) On August 16, 2021, Plaintiffs filed a motion for sanctions, which included among other things a request for a finding of contempt against the directors/officers of Defendants.  D.E. 510, 512, 514.

17) On September 7, 2021, Hon. Ronald H. Hatfield entered his appearance as in-house counsel for Defendants Kentucky Fuel Corporation and James C. Justice Companies, Inc. D.E. 519.

18) After full briefing on the motion for sanctions, on March 23, 2022, the Court issued the Sanctions Order. D.E. 565. That Order granted in part the motion for sanctions, and ordered Stephen Ball, Jay Justice, Jill Justice, and Summer Deane to submit to depositions. *Id.*

19) Stephen Ball, Jay Justice, Jill Justice, and Summer Deane were deposed, and Plaintiffs filed the transcripts and exhibits in the record. D.E. 638-1 & -2; D.E. 639-1 & -2; D.E. 659 to 668.

20) On December 13, 2022, Plaintiffs filed their Renewed Motion for Contempt and Sanctions (D.E. 673), which has been fully briefed.

21) Stephen Ball and Jay Justice have not met their burden of proving inability to comply with the Discovery Order. Defendants have not addressed categorically and in detail why they may have been unable to comply with the different components of the Discovery Order. Further, they have not pointed to any factor beyond their control that prevented compliance. In other words, their noncompliance was self-induced. Stephen Ball and Jay Justice also have not shown they took all reasonable steps to comply. Rather, their noncompliance with the Discovery Order was a strategic litigation decision. A demonstration of "clean hands" and present inability to comply are Defendants' burden, and they have not met it.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 28th day of March, 2023.

Signed By:

**_Hanly A. Ingram_**

**United States Magistrate Judge**