IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC. and FIVEMILE ENERGY, LLC | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| KENTUCKY FUEL CORPORATION, and JAMES C. JUSTICE COMPANIES, INC. | ) ) ) |
| Defendants. | ) |

No. 6:12-CV-00091-GFVT-HAI

**PLAINTIFFS' MOTION FOR STATUS CONFERENCE
AND FOR EXPEDITED CONSIDERATION**

Plaintiffs, by counsel, move the Court to schedule a telephonic status conference before the Court sets a date for the show cause hearing, as set forth in the Order (D.E. 698) granting Plaintiffs' Motion to Show Cause relating to Defendants' failure to pay the Plaintiffs' attorneys' fees and expenses within the time ordered by the Court.  The reason for this request is that, as explained below, there are various other matters pending that could affect the timing and conduct of such a hearing and a status conference will promote judicial economy and potentially save both the Court and the parties' time and expense.  The Plaintiffs also request expedited consideration of this Motion for the reasons explained at the end of this Motion and related to the Justice Family's intention to sell their coal business.

**Relevant Procedural Background –** There are potentially three contempt proceedings that may require a decision by the district court, since a magistrate judge's power of civil contempt is limited in a non-consent case. 28 U.S.C. § 636(e).  They are:

1

(1)     **The Motion to Show Cause** that was granted by the Court in D.E. 698, which the Court indicated would be set for hearing (the "2022 Show Cause Motion," D.E. 634). This involves the Defendants' failure to pay $137,213.54 in legal fees and costs within the time ordered by the Court, and the Defendants' claim that they could not pay.

(2)     **The Plaintiffs' Renewed Motion for Contempt and Sanctions**, D.E.673 ("Renewed Motion for Contempt") – On March 28, 2023, Magistrate Judge Ingram entered a Recommended Disposition and Order that, among other things, recommended that Defendants' President and Shareholder James C. Justice, III, and their Executive Vice President and General Counsel, Stephen Ball, be ordered to appear and show cause why they should not be held in contempt. D.E. 697. In his Recommendation and his certified factual findings, Magistrate Judge Ingram found that the Defendants had not complied with his Discovery Order and that Messrs. Justice and Ball had not carried their burden of establishing defenses to a contempt award against them personally. D.E. 697 at 37-38. He found that "[T]he violation of the Discovery Order thwarted Plaintiffs' ability to collect the judgment." *Id*. at 27. He found that all the companies (that have either been disclosed by Defendants or discovered by Plaintiffs' diligence) were the alter egos of Jay Justice and his sister, Jill Justice. *Id*. at 37. Among other things this was an appropriate remedy because "*The picture painted by all this evidence is consistent with Plaintiffs' theory that the Justice family treats their companies as a single financial entity—they move money around the various companies as needed*." *Id*. at 30.

Consistent with this alter ego status, Magistrate Judge Ingram recommended *"[i]f found in contempt, Stephen Ball and Jay Justice each be ordered to pay Plaintiffs contempt penalties up to the amount of final judgment (following resolution of the post-remand damages litigation)*." D.E. 697 at 38. He also recommended "*that if Judge Van Tatenhove finds Jay*

2

*Justice in contempt of court, Jay Justice face monetary sanctions both to compensate Plaintiffs for discovery abuses as discussed above and in the alternative as a sanction for diverting assets to himself, as in Electric Workers*." *Id*. at 32.  Either of these measures of sanctions would exceed the amount of any final judgment.

Thus, if this Court accepts Magistrate Judge Ingram's Recommendation that Messrs. Justice and Ball appear and show cause why they should not be held in contempt, a second contempt hearing will be required.  However, if the Recommendation is adopted by this Court, the amount of contempt sanctions cannot be determined until there is a final judgment.

(3)    **The Plaintiffs' Motion for Contempt for Failure to Pay Fees as Ordered by the Court, D.E. 688 (the "Motion for Contempt for Failure to Pay")**.  This Motion involves the Defendants' failure to pay the $316,094.45 in attorneys' fees and expenses.  The fees had been previously awarded in D.E. 512, subject to setting the amount after the depositions of Defendants key officers and directors had been taken.  The Court ordered the Plaintiffs to file affidavits of fees after the depositions had been completed.  In compliance with that Court Order, the Plaintiffs filed the required affidavits on September 20, 2022.  D.E. 651, 652.  When the Defendants did not object or otherwise respond to the fees within a reasonable time, on December 14, 2022, the Plaintiffs asked the Court to set the amount of fees to be awarded by filing a motion, D.E. 674, on that date.  Noting that the Defendants had never objected to the amount documented by Plaintiffs' September filing, the Court entered an Order on December 16, 2022, ordering the Defendants to pay $316,094.45 within fifteen days (the "Order to Pay,"  D.E. 675).  The Defendants filed an Objection to that Order. D.E. 676.  However, they did not timely seek to stay the Order directing them to pay the required fees by January 3, 2023, even though filing an objection did not relieve them of the obligation to pay the fees as they had been ordered

3

to do. *See* D.E. 206 at 15; *Maness v. Meyers,* 419 U.S. 449, 458 (1975); *Holly v. UPS Supply Chain Solutions, Inc.,* 2015 WL 2446110 at *4 (W.D.K.Y. 2015)*; Guiden v. Leatt Corp.,* 5:10 CV00175, 2013 WL 4500319 (W.D. Ky., Aug. 21, 2013). In their Response to the Motion for Contempt for Failure to Pay these fees, D.E. 692, the Defendants included a motion to stay the Court's Order to Pay, which was docketed as D.E. 693. That Motion was filed on March 7, 2023, long after the Defendants' January 3, 2023 deadline to obey the Order to Pay had expired. The Plaintiffs responded to that Motion to Stay in D.E. 694, and it is now pending for decision by the Magistrate Judge after the Defendants chose not to file a Reply.

There is no question that the Defendants have not obeyed the Order to Pay. Based upon their prior filings, the Defendants will argue that they and their directors and officers should not be held in contempt for failing to obey the Order to Pay because they allegedly cannot pay these sums. However, the Magistrate Judge has already found that Messrs. Justice and Ball are "*evasive and not credible witnesses*" (D.E. 697 at 19), that the "*Defendants generally lack credibility*" (*Id.*), and that "*their claims of poverty are not credible.*" *Id.* at 34. For these reasons, it appears likely that the Magistrate Judge will also recommend that a show cause order be issued for the Defendants and their responsible officers and directors to appear before the District Court to show cause why they should not be held in contempt. This will likely result in a third show cause order for a contempt hearing.

**Reasons for a status conference** – At a status conference counsel and the Court can have an open discussion about the most efficient way to handle the multiple moving parts of this matter. For example, as discussed above, it appears likely that there will be at least two and probably three contempt motions, assuming that the Court adopts the recommendations of the Magistrate Judge. If the court were to set a hearing now on the 2022 Show Cause Motion, then

4

the Court and the parties would likely have to prepare for and attend two more similar hearings. In addition, the proof and defenses relating to many of the issues in the three potential hearings overlap considerably. For example, they all involve the imposition of personal liability of individual directors and officers; at least two of them involve the Defendants' claims that they are unable to pay the amounts ordered. These financial issues can be complex and it behooves all parties to discuss the most efficient way to present them and avoid duplication.

A scheduling conference will also allow counsel to discuss a reasonable pre-hearing schedule with the court for briefing, the exchange of witness and exhibit lists, and the like. It will also permit counsel to coordinate mutually available dates with the court, thus avoiding scheduling conflicts.

There are other timing issues that could also affect the scheduling of any contempt hearing. It is not the purpose of this short Motion to discuss them all, but one example serves to make the point: In his recent Recommendation and Order, Magistrate Judge Ingram noted that damages were still being litigated and until they have been set with a final order, the amount of an appropriate fine for contempt is uncertain. The amount of the judgment based upon the claims confirmed by the Sixth Circuit will be at least $18,182,396.57, plus interest and attorneys' fees ***and this amount is uncontested***. D.E. 697 at 31. However, the final amount will not be determined until the Court rules on Plaintiffs' Motion for Miscellaneous relief, D.E. 646, which will resolve all the issues remanded by the Sixth Circuit, and which has now been fully briefed.

Magistrate Judge Ingram recommended that "*If found in contempt, Stephen Ball and Jay Justice each be ordered to pay Plaintiffs contempt penalties up to the amount of final judgment (following resolution of the post-remand damages litigation).*" D.E. 697 at 38. As alternative relief he recommended "*that if Judge Van Tatenhove finds Jay Justice in contempt of court, Jay*

5

*Justice face monetary sanctions both to compensate Plaintiffs for discovery abuses as discussed above and in the alternative as a sanction for diverting assets to himself . . . ." Id.* at 32.

Other timing and sequence issues may affect the Court's desired procedure and counsel will be fully prepared to discuss them at a scheduling conference.

**The need for expedited consideration –** The *Wall Street Journal* recently reported that the Justice family is attempting to sell their very profitable "family's coal business." *See* Exhibit 1 hereto. This reported sale effort includes their most profitable arm, the Bluestone Resources Group, Inc. ("Bluestone Resources"), which is 40% owned by James C. Justice, III. Bluestone Resources owns at least twenty-six other companies involved in the metallurgical coal business,[1] all of which the Magistrate Judge has found are the alter egos of Jay Justice and Jill Justice. D.E. 697 at 37. Given the large number and huge amount of fraudulent transfers described in the Renewed Motion for Contempt (D. E. 673) and in Magistrate Judge Ingram's Recommended Disposition and Order (D.E. 697 at 29-30), this effort to transfer the companies that comprise the Justice family's most profitable business segment, raises obvious concerns for these Plaintiffs/Judgment Creditors. If the Defendants succeed in this regard without adequate safeguards for the Plaintiffs, then we could be in for another ten-plus years of litigation. Time therefore is of the essence in resolving the matters now before the Court.

**Conclusion** – Plaintiffs request that the Court schedule a status conference to discuss scheduling and the most efficient ways to resolve the pending matters. Plaintiffs respectfully request a telephonic conference for reasons of cost as well as flexibility and ease of scheduling.

[Signatures on next page]

---

[1] *See* Deposition Exh. 5 (D.E. 662-5), at p.2.

| | |
|---|---|
| */s/ Scott M. Webster* | */s/ John A. Lucas* |
| Scott M. Webster | *John A. Lucas (011198) |
| **TOOMS, DUNAWAY & WEBSTER** | *W. Edward Shipe (023887) |
| 1306 West Fifth Street, Suite 200 | **BROCK SHIPE KLENK PLC** |
| P.O. Box 905 | 265 Brookview Centre Way, Suite 604 |
| London, Kentucky 40743 | Knoxville, Tennessee 37919 |
| 606-864-4145 | 865-338-9700 |
| swebster@toomsdunaway.com | jlucas@bskplc.com |
| **Counsel for Plaintiffs** | eshipe@bskplc.com |
| | ***admitted pro hac vice** |