**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

| | | |
|---|---|---|
| **NEW LONDON TOBACCO MARKET, INC.** | ) | |
| **and FIVEMILE ENERGY, LLC** | ) | |
| | ) | **No. 6:12-CV-00091-GFVT-HAI** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KENTUCKY FUEL CORPORATION, and** | ) | |
| **JAMES C. JUSTICE COMPANIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' OBJECTIONS TO**
**RECOMMENDED DISPOSITION AND ORDER, D.E. 697**

Plaintiffs respectfully Object to the Recommended Disposition and Order, D.E. 697 (hereinafter "Recommendation"), to the extent that it does not recommend contempt sanctions against Dr. Jillian Justice. The basis for the objections is set forth below.

**1.      Relevant Facts and Procedural Background**

These contempt issues arise out of the refusal to obey the Magistrate Judge's April 16, 2021 Discovery Order, D.E. 505. That Discovery Order granted Plaintiffs' Motion to Compel in several respects. When the Defendants did not obey that Order by providing the discovery ordered by the Court, the Plaintiffs filed their Motion for Contempt. That motion was granted in part; other parts were denied without prejudice. The Defendants' directors and certain key officers were ordered to give depositions. The Plaintiffs filed a Renewed Motion for Contempt and Sanctions after the depositions ordered by Magistrate Judge Ingram had been taken.

The Renewed Motion for Contempt sought, among other things, contempt sanctions against the Defendants' two directors, James C. Justice, III, and Dr. Jillian L. Justice. Dr. Justice

1

testified that she has been a director for both Defendants since 2017. D.E. 660 at 14 [ECF page 5], 20 [ECF page 6]. When asked what companies other than the Defendants she serves as a director, she said that other than the Greenbrier Hotel, "*I really don't know what companies I'm an officer versus director.*" *Id*. at 13 [ECF page 5]. However, she does know that she is a director of other companies, but cannot identify any of them. *Id*. at 14-15 [ECF page 5]; 37 [ECF page 11]. She has executed corporate resolutions for these companies but does not know what they were. *Id*. at 37-38 [ECF page 11]. Nevertheless, Dr. Justice knew that as a director she had fiduciary responsibilities. But she has never taken any steps to consider or find out what those responsibilities are. *Id*. at 20 [ECF page 6].

Dr. Justice knew of this suit, but her testimony sometimes reflected a lack of attention to giving accurate answers. For example, she first testified that she was not aware of any court orders in the case. *Id*. at 17 [ECF page 6]. She also said that she was not aware of any "*rulings by the judge*." *Id*. at 18 [ECF page 6]. But that was loose language, at best. In fact, she did have knowledge of a then-recent court order, although she only learned about it "earlier this week." *Id*. at 23-24 [ECF page 7]. She also said that she knew that there was a "judgment" for approximately $35 million. *Id*. at 7-8 [ECF page 3]. The record is unclear when Dr. Justice first learned of this suit, as she testified that she is unsure about when she first learned of it but thinks that it may have been about "*six months ago*." *Id*. at 17 [ECF page 6]. She knows that lawsuits involve discovery but has taken no steps to inform herself about the discovery (or anything else) in this suit. *Id.* at 18-19 [ECF page 6].

In short, although Dr. Justice knew that as a director, she had certain duties and was a fiduciary, it is inarguable that she adopted a head-in-the-sand attitude of complete indifference to

the discharge of those duties. This is consistent with the Magistrate Judge's finding that Dr. Justice "*chose* to remain uninformed about this deposition…."  D.E. 697 at 22 (emphasis added).

2.      **Legal Analysis Including the Errors in the Recommendation.**

The Magistrate Judge did not recommend a contempt finding against Dr. Justice because he held that constructive notice of the existence of the Discovery Order was not sufficient, and that actual notice was required. D.E. 697 at 9 (*citing Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005), *aff'd*, 252 F. App'x 55 (6th Cir. 2007)[1] and *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985)). The Court held, "Without condoning Jill Justice's ignorance of this litigation, in the narrow context at issue, the knowledge element of civil contempt is not satisfied as to Jill Justice."  *Id*. at 24. Thus, the issue raised by this Objection is whether the notice requirement for a contempt citation is satisfied when a person has constructive, but not actual, notice, of the *existence* of the order in question.

First it is necessary to carefully analyze just what is the notice requirement. It is fundamental that a non-party can be held in contempt for violation of a court order if they have knowledge of the order. *Elec. Workers Pension Tr. Fund of Loc. Union 158, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947)). Notice can be actual or constructive. D.E. 697 at 9. A corporate officer or director is charged with constructive notice when there are facts that are "sufficient to cause a reasonable person to inquire further."  *Central States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995). But there are potentially two types of notice involved, "whether actual or constructive": (1) notice of the *existence* of an order, and (2) notice of the *details* of the order. Thus, general

---

[1] The Sixth Circuit's affirming opinion did not discuss the notice requirement at issue here.

statements that notice or knowledge is required beg the question of whether the notice required is of the order's existence or of its details.

The Recommendation mistakenly infers that the constructive notice doctrine applies only to the order's details, not to its existence:

> As noted, the cases of which the Court is aware that discuss 'constructive knowledge' in this context use the term to mean that knowledge of an order's *existence* confers *constructive knowledge of the order's contents/details*.

D.E. 697 at 23 (italics in original).

The Sixth Circuit has **not** validated the above conclusion by holding that actual knowledge of an order's existence "confers constructive knowledge of the orders contents/details."   However, the Sixth Circuit **has** held that actual notice of an order is **not** required for a contempt citation. In *Polo Fashions, Inc. v. Stock Buyers International Inc*., 760 F. 2d 698 (6th Cir. 1985), the court held that a non-party who was an officer, director and shareholder of the company that violated an injunction order, could be held in contempt because he "was bound by the order **whether or not he had actual notice**." *Id*. at 700 (emphasis added). In *Polo Fashions* the Sixth Circuit was relying upon the pre-2007 version of Fed. R. Civ. P. 65(d), which did not require an officer or other agent of a corporation to have actual knowledge of an injunction to be bound by the injunction. *Id*. at 700. But the case is still relevant because *Polo Fashions* was a criminal contempt case, where the due process issues would be even greater than in this civil contempt proceeding.[2] The decision therefore shows that due process does not require actual notice of the existence of the order to hold a litigant in contempt.

---

[2] As the Magistrate Judge correctly noted, there are "different standards for constructive notice in different contexts."  D.E. 697 at 22. Thus, the standards for contempt are not identical to those under Fed. R. Civ. P. 65(d) for injunctions. For example, under Rule 65(d) a person may be bound by an injunction based upon proof by a preponderance of the evidence, but courts require

The Recommendation cites *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778 (N.D. Ohio 2005) for the proposition that "the company officers had 'constructive knowledge' when they knew the order existed but failed to inquire of its details." Reliance on that citation is misplaced, however, because the *Adcor Indus.* court did not hold that constructive knowledge of an order's *existence* was impermissible. To the contrary, the court stated that the Sixth Circuit cases that the Defendants there relied upon as requiring actual notice of the court order did ***not*** make actual notice a requirement. For the complete context, here is the full relevant paragraph:

> [The contemnors] argue that in order to find a person in contempt, the complaining party must establish that the alleged contemnor had 'actual knowledge' of the court order violated. ECF No. 115, at 1–2. In support of this position, they cite *Electrical Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*, 340 F.3d 373 (6th Cir.2003); *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716 (6th Cir.1996); and *Consolidation Coal Co. v. Local Union No. 1784*, 514 F.2d 763 (6th Cir.1975). ***These cases do not stand for the proposition that a contemnor must have actual knowledge of a court order to violate it. The Sixth Circuit has found that evidence of knowledge of a court order (or constructive knowledge) is sufficient.*** *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir.1985). This holding makes sense, since it would be unreasonable for the Court to be forced to rely on the Connellys' denials that they knew anything about the Consent Decree and its prohibitions in light of overwhelming direct and circumstantial evidence showing that they did.

411 F. Supp. 2d at 800 (emphasis added).

Although this paragraph concludes that there was "direct and circumstantial evidence" that the contemnors knew of the order, it also makes the point that the law in the Sixth Circuit does not mandate that the required notice of the existence of the order must be actual, and not constructive, notice.

Because the Recommendation relies heavily on *Central States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705 (N.D. Ill. Aug. 8,

---

clear and convincing evidence to support a contempt finding. See, *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 35 (1st Cir.1980).

1995), a thorough analysis of that case is appropriate. The Recommendation quoted one paragraph from *Central States* but misinterpreted what it held. To explain, we quote here that paragraph (the second one below) but put it in context by quoting from the paragraph immediately preceding it:

> [W]e reject the magistrate judge's conclusion that actual notice is required, and we hold that constructive notice, namely less than actual knowledge but awareness of facts sufficient to cause a reasonable person to inquire further, is adequate notice to a corporate officer of the existence of a court order to satisfy due process….
>
> There is one point we should clarify: in the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's *existence* not of its precise terms. *See Perfect Fit Industries Inc. v. Acme Quilting Co*., 646 F.2d 800, 808 (2d Cir. 1981) (contemnor was party which knew order had been entered against it but failed to ascertain particulars of order). This rule is entirely consistent with our conclusion that constructive notice is sufficient: **where a corporate officer knows a court order has been entered against the corporation but fails to inquire, as a reasonable person would, as to the terms of the order, he may properly be held in contempt.** A rule which would allow a corporate officer to remain greatly **ignorant of the** *particulars* **of a court order**, and thereby avoid a contempt citation, would defy common sense.

*Id*. at *8 (highlighting added; bolding and italics included in Recommendation, D.E. 697 at 22). The Recommendation concluded that the excerpt it quoted (only the second of the above paragraphs) "does not stand for the proposition that an officer/director can be held liable without even knowing an order exist, as Plaintiffs appear to suggest." *Id*.

Two observations about this quote will serve to show the Recommendation's error. First, the Recommendation omitted the first of the above paragraphs,  immediately preceding the one it quoted, and then failed to discuss the opening sentence of the quoted paragraph where the court said, "[I]n the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the order's existence not of its precise terms."  On its face, that sentence – the topic sentence of the quoted paragraph – stands for the proposition that notice of a court order's *existence* can be "actual or constructive."  And that meaning is even clearer when the Court

considers that it follows immediately after the preceding paragraph that expressly rejects the requirement for "actual notice."  Second, the sentence in bolded font that the Recommendation relies upon does indeed stand for the proposition that "an officer/director is not off the hook when he or she knows the *existence* of a court order but chooses to remain ignorant of the *details*" as the Court says. But – and this is key – it does *not* purport to say that constructive notice of the order's *existence* is not sufficient. Instead, the preceding paragraph and the opening sentence of the quoted paragraph make clear that constructive notice of the order's "*existence*" is sufficient "to satisfy due process."

Another district court relied upon this straightforward interpretation of *Central States* when it held that constructive notice of the existence of an order was sufficient to support a contempt citation. *Shales v. T. Manning Concrete, Inc.,* 847 F. Supp. 2d 1102 (N.D. Ill. 2012) involved a contempt action against a company's president for failing to abide by a citation to the company to discover assets[3] and for personally causing the transfer and disposition of company's assets to avoid execution or garnishment. Although the court concluded that the president had actual notice of the citation, it held that constructive notice would have also been sufficient to hold him in contempt:

> While the Court finds that Respondent had actual notice of the Citation, **constructive notice would also be sufficient**. Constructive notice, namely **"awareness of facts sufficient to cause a reasonable person to inquire further, is adequate notice to a corporate officer of the existence of a court order** to satisfy due process.... [I]n the context of civil contempt, notice of the court order,

---

[3]  A "citation to discover assets" in Illinois is a "supplementary proceeding that enables a judgment creditor to 'discover assets or income of the debtor not exempt from the enforcement of the judgment' and to "compel [ ] the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.' The citation may 'prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment." 847 F. Supp. 2d at 1111. Violations of a citation are punishable as contempt. *Id*. at 1113-14.

whether actual or constructive, is notice of the order's existence, not of its precise terms."

*Id*. at 1112-13 (citing and quoting *Central States*) (emphasis added).

In this case, as discussed in the following Section 3, there is no question but that Dr. Justice was aware "of facts sufficient to cause [her] to inquire further."

As noted in the above cases, in the context of contempt awards, courts typically analyze the notice requirement as a due process requirement. *See Central States* and *Shales*, *supra*; *cf. NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 589 (6th Cir.1987) cited in *Elec. Workers, supra*. That is consistent with Magistrate Judge Ingram's observation that there are "different standards for constructive notice in different contexts."  D.E. 697 at 22. He also correctly noted that the notice or knowledge requirement is "tied to due process."  D.E. 673 at 24. However, the Recommendation strays when it states that a "*presumption* of knowledge would appear out of place" because it is inconsistent with the Plaintiffs' burden of "proving knowledge by clear and convincing evidence." D.E. 697 at 23. The Recommendation does not cite any authority for this argument, while other authorities show that permissive presumptions are appropriate to establish facts in criminal cases where the burden of proof is 'beyond reasonable doubt.'  Appropriately for this case, the Sixth Circuit's Pattern Jury Instructions make clear that even in a criminal case with its "beyond reasonable doubt" standard, a presumption of knowledge can be appropriate when a person is "willfully blind." *See* Instruction 2.09 (Deliberate Ignorance) available on the Sixth Circuit's web site at  https://www.ca6.uscourts.gov/pattern-jury-instructions.   One of the cases cited by the Sixth Circuit's Committee Commentary for the jury instructions is *United States v. Warshawsky*, 20 F.3d 204 (6th Cir. 1994). There, the Sixth Circuit held that even in a criminal case, the jury could find that a person who chose to remain "deliberately ignorant" could be presumed to have knowledge of a conspiracy. *Id*. at 210-11. By the same token, Dr.

Justice chose to remain deliberately ignorant of the important business affairs affecting the companies for which she is a fiduciary.  Thus, the lesser clear and convincing standard does not preclude a finding that she should be presumed to have knowledge of the Discovery Order. *See also Polo Fashions, Inc. v. Stock Buyers International Inc.*, *supra*, where the Sixth Circuit held that actual notice was not required, even in a criminal contempt case.

3.    **The Court Should Hold That Under the Unique Facts of this Case, Constructive Notice of the Discovery Order is Sufficient, and that Dr. Justice is in Contempt of Court.**

This case is *sui generis*. We have all seen other cases where directors, officers and employees did not exercise proper due diligence, but Dr. Justice has raised that bar to new heights. There is only *one* reason why Dr. Justice did not have actual knowledge of the Discovery Order – She made a conscious decision to remain totally uninformed about the companies for which she is a fiduciary and about their litigation.

Both Defendants are Delaware corporations. This case obviously does not involve a large corporation where responsibility for important matters is delegated to scores or hundreds of employees and many significant matters may never reach the level of the directors or the owners.[4]  Each Defendant has only two directors,[5] three shareholders[6] and three to five officers[7]

---

[4] The Recommendation took issue with the Plaintiffs' failure to define "closely held" company. "Closely held" is commonly used to commonly companies that are privately owned with a small number of shareholders. For example, the IRS defines "closely held corporation" as one that has more than 50% of its stock held by less than six individuals. *See* IRS Frequently asked questions, Entities 5 | Internal Revenue Service (irs.gov). *See also Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1217 (7th Cir. 1995) (corporation qualified as a close corporation under common law principals because it was a family run business with only three shareholders); *United States v. Emmons*, 8 F.4th 454 (6th Cir. 2021) (where the court had no problem describing a company owned by the father of the Kentucky Secretary of State and run by his two daughters as a "closely held corporation").

[5] James C. Justice, III and Dr. Jillian Justice.

[6] James C. Justice, II, James C. Justice, III and Dr. Jillian Justice.

at any given time. D.E. 516 (under seal) at 2-4. In such a case where there are only two directors, they should be presumed to know of significant court orders, especially in a case that Mr. Justice described as "showstoppingly material."  D.E. 638-1 at 104 [ECF page 104].

Such a presumption is consistent with the duties imposed by Delaware law.  Delaware law provides that corporate directors owe their corporation a triad of fiduciary duties: loyalty, good faith, and due care. *Buckley v. O'Hanlon*, No. 04-955GMS, 2007 WL 956947, at *3 (D. Del. Mar. 28, 2007) *citing McMullin v. Beran,* 765 A.2d 910, 917 (Del.2000). This required duty of good faith is breached when a director consciously disregards her duties to the corporation *McCall v. Scott*, 250 F. 3d. 997, 1001 (6th Cir. 2001). *Accord Phelps Dodge Corp. v. Cyprus AMAX Minerals Co.*, 1999 WL 1054255 (Del. Ch. Sept. 27, 1999) (directors may breach their fiduciary duties when they engage "willful blindness"). Thus, Dr. Justice had a fiduciary duty as a matter of law that obligated her to be knowledgeable about important matters affecting her corporations. She cannot rely upon a violation of her fiduciary duty, i.e., her willful blindness, to escape that duty. Under these circumstances she must be charged with having constructive notice of the existence of the Discovery Order.

Even aside from her ordinary obligations as a director, the timeline of events in this litigation shows that there were numerous times when Dr. Justice should have known about this litigation and the Discovery Order. That timeline paints a picture of her willful obliviousness combined with affirmative acts and omissions by the Defendants intended to accommodate her obvious desire to do nothing. The starting point was when the shareholders (James C. Justice, II., James C. Justice, III and Dr. Justice herself) elected Dr. Justice as a director. Any prudent businessperson would have made reasonable inquiries regarding her roles and responsibilities

---

[7] James C. Justice, II (until 2017), James C. Justice, III, Steven Ball, James T. Miller, and Tom D. Lusk (2016 only).

when she was first elected. Obviously, her brother and her father elected her to be nothing more than the figurehead that she admitted to being, and she happily went along with that role. However, even though they all were content to acquiesce in that role of intentional ignorance for the next four years, things should have changed in January 2021. During the January 7 status conference, Magistrate Judge Ingram made it clear that he was instructing Defendants' counsel, Mr. Schroeck, to apprise those responsible for controlling the Defendants, of their obligation to see that the companies complied with their discovery obligations and any court orders that might be entered. D.E. 492 & 500-1. The evidence shows that at least three men decided not to inform Dr. Justice of these developments:  Mr. Ball, Mr. Justice, and Mr. Schroeck.

The next time that she should have known was on March 24, 2022, when the Magistrate Judge ordered Dr. Justice to give a deposition lasting up to two days. D.E. 565 at 16 & 18. We know that Dr. Justice knew of that because she requested a postponement and relocation of her deposition for personal reasons. *See* D.E. 627 at 5. Her deposition had to be postponed almost a month, from May 18, in Knoxville until June 16, in Lewisburg, West Virginia. *See* D.E. 580 & D.E. 660. During those twenty-nine days, she knew she was going to be deposed and had ample time to request assistance in getting up to speed on the issue and her fiduciary obligations. Surely, she asked, "Why am I being deposed?  What is going on?"  But she did nothing.

There is still another matter involving Dr. Justice that should have alerted her to this dispute and the Discovery Order. It was her motion to quash the subpoena *deuces tecum* served on her before her deposition. To appreciate how this it pertains to the present notice issue, a bit of background is necessary: Attorney Aaron Houchens represents the Defendants and numerous other Justice companies in other matters. He has also assisted the Defendants with discovery responses in this case, although he never appeared as counsel of record for them. D.E. 659 (Ball

Depo.) at 138-39 [ECF page 35]. He also represented Dr. Justice and accepted service of the subpoena *deuces tecum* on her behalf. He then served an objection to that subpoena (D.E. 601-2) and took position that any hearing on that objection had to be conducted in Virginia. *See* D.E. 603. The Magistrate Judge held that the Federal Rules of Civil Procedure required the objections to be heard by a court in Virginia, rather than by this Court. D.E. 603. But Magistrate Judge Ingram also made clear that he believed that the objections on behalf of Dr. Justice and her family members were part of the Defendants' stonewalling efforts and that it was "a continuation of the litigation misconduct and abuse that has marked Defendants' strategy in this case at nearly every turn – the most egregious example of such misconduct in the undersigned's twelve years' of service as a Magistrate Judge." *Id.* at 2.

But, consistent with her "I know nothing" defense, Dr. Justice testified that she was unaware (i) of the subpoena to her, (ii) that Mr. Houchens objected to it without her authority or knowledge, or even (iii) who Mr. Houchens was or what he did.  She also testified that (iv) she had never met or talked with Mr. Houchens, and (v) he had never represented her (even though he had filed an Objection on her behalf and appeared as her counsel before Magistrate Judge Ingram). *See* D.E. 603 (noting that Mr. Houchens appeared at the status conference as counsel for Dr. Justice and her brother, Mr. Justice); D.E. 660 (Dr. Justice deposition) at 15-16 [ECF page 5];  D.E. 627 at 6-7.

The Defendants have never contradicted any of this. Dr. Justice's testimony makes it appear that she was kept in the dark by her brother, by Mr. Ball and by her ostensible attorney,

Mr. Houchens.[8] However, with this strategy of intentionally keeping a director in the dark, these men were reinforcing the posture that she desired for herself – of knowing nothing.

This timeline and the events and non-events show that Dr. Justice, Mr. Justice, Mr. Ball and Mr. Houchens all collaborated so that when deposed, Dr. Justice could reprise the "I know nothing!" refrain. Dr. Justice's lack of actual knowledge was the result of her deliberate choice to remain oblivious, which the Defendants and the others validated by adhering to her wishes not to be bothered with her corporate duties.

A director who acknowledges that she knows that she has a fiduciary duty, but who admits that she has done "nothing" as a director and is just a "figurehead" should not be allowed to escape liability by intentionally abdicating her duty to inquire about important matters affecting the companies. As the *Central States* court said in the passage cited by the Recommendation, "A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order, and thereby avoid a contempt citation, would defy common sense." D.E. 697 at 22. Even though that statement was in the context of an officer who knew of a court order but neglected to inform himself of the particulars of the order, the concept is equally valid where, as here, a director chooses to "remain deliberately ignorant" about key matters and court orders affecting her corporation.

Finally, if the Court affirms the Magistrate Judge's Order that the Defendants (and their affiliates) are the alter egos of Dr. Justice (D.E. 697 at 37), then imputing her alter ego

---

[8] Notwithstanding this unethical conduct, the Defendants continue to reward Mr. Houchens' loyalty and willingness to cut corners, by his continued representation of defendant Kentucky Fuel and numerous other Justice family companies, including in a recent case before the U.S. Court of Appeals for the Fourth Circuit. *U.S. v. S. Coal Corp.,* 22-1110, 2023 WL 2763671 (4th Cir. Apr. 4, 2023).

companies' knowledge of the Discovery Order to Dr. Justice is consistent with a finding of constructive notice of that Order.

For the above reasons, the Plaintiffs respectfully submit this limited objection to the Recommendation and request the Court to require Dr. Jillean Justice to show cause why she should not be held in contempt of Court, and then to hold her in contempt and grant the relief sought in the Renewed Motion for Sanctions.

| | |
|---|---|
| */s/ Scott M. Webster* | */s/ John A. Lucas* |
| Scott M. Webster | *John A. Lucas (011198) |
| **TOOMS, DUNAWAY & WEBSTER** | *W. Edward Shipe (023887) |
| 1306 West Fifth Street, Suite 200 | **BROCK SHIPE KLENK PLC** |
| P.O. Box 905 | 265 Brookview Centre Way, Suite 604 |
| London, Kentucky 40743 | Knoxville, Tennessee 37919 |
| 606-864-4145 | 865-338-9700 |
| *swebster@toomsdunaway.com* | *jlucas@bskplc.com* |
| **Counsel for Plaintiffs** | *eshipe@bskplc.com* |
| | ***Admitted pro hac vice*** |