UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| NEW LONDON TOBACCO MARKET, INC., *et al*, | ) ) ) | Civil No. 6:12-cv-00091-GFVT-HAI |
| Plaintiffs, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KENTUCKY FUEL CORPORATION, *et al*, | ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Plaintiff New London's Motion for Miscellaneous Relief. [R. 646.] After the Court entered default judgment and awarded damages, the Defendants appealed to the Sixth Circuit. [R. 471; R. 473.] On remand, the Plaintiffs ask the Court to amend the judgment and chart a path forward based on the decisions made by the appellate Court. [R. 646.] This housekeeping order reevaluates three portions of the judgment in light of the Sixth Circuit's ruling. The Motion **[R. 646]** is **GRANTED** in part and **DENIED** in part.

**I**

This litigation began in the hills of Eastern Kentucky, where New London acquired leases and permits to mine coal on several properties. [R. 645 at 2.] It assigned those rights to Kentucky Fuel in exchange for a cut of the mined coal.[1] *Id.* But Kentucky Fuel failed to mine.

---

[1] Throughout, this Opinion refers to the Plaintiffs collectively as "New London" and the Defendants as "Kentucky Fuel."

*Id.* Dissatisfied with the result of the first bargain, the parties negotiated a series of amended contracts, eventually resulting in the instant fourth amended agreement. *Id.*

New London designed the new contract to ensure that Kentucky Fuel held up its end of the bargain, or else. *Id.* Kentucky Fuel promised to pay New London $10,000 per month as a consulting fee for help with managing the leases and permits, including assisting with the Strong Brothers Property. [R. 1-7 at 6–7.] This deal was to continue until one of them provided thirty-days' notice of its intent to terminate. *Id.* at 7.

The agreement also established two ways for New London to get paid for the coal. Kentucky Fuel agreed to pay a minimum, monthly royalty to New London. *Id.* at 5. Kentucky Fuel also promised to pay New London a percentage of the value of the coal it mined. *Id.* at 3. If Kentucky Fuel again grew truculent and refused to mine, New London could use an independent arbiter to fix a value for the coal that should have been mined and receive payment. *Id.* at 6.

As feared, Kentucky Fuel failed to mine any coal under the fourth amendment. [R. 645 at 3.] It claimed that doing so would be unprofitable, even though the contract made no exception for profitability. *Id.* New London responded by filing this lawsuit. [R. 1.] It brought claims for breach of the consulting agreement, breach of the coal royalties, and fraud. *Id.*; [R. 40.]

For years, the litigation dragged on, and Kentucky Fuel repeated its pattern of failing to play by the rules. It failed to hand over documents, missed deadlines, and failed to produce officers for depositions, all in a pattern of contumacious disregard for Court orders. [*See* R. 642 at 4.] As a sanction, the Court entered default judgment against Kentucky Fuel. [R. 206.] To determine damages, United States Magistrate Judge Hanly Ingram conducted an evidentiary

hearing in 2018.  [*See* R. 423–R. 426 (transcripts).]  He recommended damages on three counts from the complaint.  [R. 437.]

For the consulting agreement, Judge Ingram suggested an award to New London of $970,000 in unpaid monthly fees, concluding that the payments continued to accrue up to and beyond the date of his opinion.  *Id.* at 63.  As to the breach of the coal mining royalty agreements, he recommended $16,990,900.  *Id.*  For the fraud claim, Judge Ingram advised awarding $17,010,900 in compensatory damages and the same amount in punitive damages.  *Id.* at 64.  $20,000 of the compensatory damages came from reimbursements that Kentucky Fuel owed for leases on the Strong Brothers Property.  *Id.*  Finally, based on the terms of the contract, Judge Ingram believed that New London deserved to recoup its attorneys' fees.  *Id.*

The Court largely adopted Judge Ingram's recommendation.  [R. 445.]  The only departure came on the fraud count.  Based on the rule against double recovery, the Court refused to grant both punitive and compensatory damages.  *Id.* at 14.  Accordingly, it eliminated the compensatory damages award but for the $20,000 in lease reimbursements, and it adopted the recommendation of $17,010,900 in punitive damages.  *Id.* at 14, 16.

Kentucky Fuel appealed.  [R. 471; R. 473.]  The Sixth Circuit vacated the award for the consulting agreement, finding that Kentucky Fuel terminated the agreement, at the latest, on May 1, 2016.  [R. 645 at 9.]  It affirmed the judgment as to breach of the royalty agreement, quibbling only with respect to the calculation of interest.  *Id.* at 17, 26.  The panel vacated the $17,010,900 in punitive damages for fraud but left intact the award of $20,000 for reimbursement of the Strong Brothers lease payments.  *Id.* at 17 n.9, 25.  On remand, New London asks the Court for a housekeeping order amending the judgment in light of the Sixth Circuit's opinion.  [R. 646.]

3

**II**

**A**

The Court will enter an amended judgment that conforms with the Sixth Circuit's instructions to recalculate prejudgment interest for the royalty claim without changing the date upon which post-judgment interest began to accrue.  In its original judgment, the Court awarded New London $16,990,900 for the royalty claim.  [R. 445 at 16; R. 467.]  The Sixth Circuit upheld that decision but disagreed on how to calculate interest.  [R. 645 at 17, 26.]  The appellate court affirmed the decision to award prejudgment interest on an unliquidated claim, to set the interest rate at eight percent, and to compound the interest rate.  *Id.* at 26.  Its only quibble was with the date upon which prejudgment interest began to accrue.  *Id.* at 28.  The Court remanded "with instructions to calculate the interest due from May 8, 2012."  *Id.* at 29.

Despite these relatively simple instructions, the parties significantly disagree on the appropriate path forward.  New London asks the Court to enter a new judgment upon which it can collect.  [R. 646 at 2.]  Kentucky Fuel argues that the Court must instead modify the existing judgment.  [R. 656 at 1.]  Naturally, this fight over procedure is motivated by money.  New London wants interest on its judgment to compound at the higher, prejudgment rate for as long as possible; whereas, Kentucky Fuel believes that it should only have to pay the lower, post-judgment rate for any period after the Court entered the original judgment on April 24, 2020. [*See* R. 656 at 2.]

Resolving this dispute requires the Court to set two dates: the beginning of prejudgment interest and the switch to post-judgment interest.  The Sixth Circuit has established the first date as May 8, 2012.  [R. 645 at 29.]  By statute, post-judgment interest in federal court is "calculated from the date of the entry of the judgment" at a rate based on the average Treasury yield for the

calendar week preceding the date of the judgment. 28 U.S.C. § 1961.  But to which judgment does the statute refer, the appealed judgment entered in 2020 or the judgment that will be entered after this Order?  *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("[W]here there has been more than one judgment, Section 1961 is silent as to which judgment post-judgment interest accrues from.").

The Federal Rules of Appellate Procedure provide a relatively straightforward answer. "Unless the law provides otherwise, if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered." Fed. R. App. P. 37(a).  Under the Rule, post-judgment interest would commence on the date of the original judgment.  *See Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015).

However, New London points to a Sixth Circuit decision that complicates matters.  [*See* R. 657 at 2.]  Where more than one judgment could be used to calculate post-judgment interest, federal courts possess the equitable power to select the last eligible judgment.  *See Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781, 792–93 (6th Cir. 2005) (selecting the last entered of a Rule 54(b) judgment, an amended judgment, and a final amended judgment).  Generally, courts invoke this power where the prejudgment interest rate on a claim is substantially higher than the post-judgment interest rate and using the earlier date would "grant[] an unjustified benefit to . . . the losing party."  *Id.* (citing the reasoning behind *AT&T Co. v. United Comput. Sys., Inc.*, 98 F.3d 1206, 1211 (9th Cir. 1996)).  Expanding the period of prejudgment interest may be appropriate where the prior judgment was "vacated pursuant to the actions of an ultimately losing party" and the delay occasioned by the actions of the losing party penalizes the prevailing party by denying them use of their funds.  *AT&T Co.*, 98 F.3d at 1211.

5

New London points to the litany of litigation misconduct committed in this case as the equitable justification for compounding interest at the higher rate as long as possible. [*See* R. 657 at 4.] To be sure, Kentucky Fuel has behaved egregiously. It has disobeyed court orders, prevaricated whenever possible, and made frivolous arguments. [*See* R. 698 (disobedience of an order); R. 437 (delay tactics); R. 466 (sanctions for a frivolous argument).]

But the Court cannot in good conscience say that the appeal of the judgment at issue is part of this pattern of malfeasance. Kentucky Fuel succeeded on several of its arguments. The Sixth Circuit wiped out the Court's award of $17,010,900 in punitive damages for New London's fraud claim. [R. 645 at 17.] It also changed the start date for prejudgment interest for this claim. *Id.* at 29. Accordingly, New London's argument that equity supports extending the prejudgment interest period through the appeal is diminished by Kentucky Fuel's partial victory.

Moreover, the Sixth Circuit case upon which New London primarily relies concerned a choice between judgments entered by the district court. *See Scotts Co.*, 403 F.3d at 792. Because these were interlocutory decisions, the Sixth Circuit was not yet involved, and Federal Rule of Appellate Procedure 37(a) was not yet at play. In cases like this one, where the choice for the post-judgment start date is between an original, district court judgment and a judgment changed through an appeal, courts consider the effect of the appellate decision on the original judgment. *See Addie v. Kjaer*, 836 F.3d 251, 258 (3d Cir. 2016). "Whether postjudgment interest should run from the date of the original judgment . . . or the post-remand judgment turns on the degree to which the original judgment was upheld or invalidated on appeal." *Id.* (cleaned up). "Distilled to its essence, the inquiry is when liability and damages as finally determined, were ascertained or established." *Id.* (cleaned up).

The Sixth Circuit did not vacate the original retainer fee award.  It instructed this Court to modify the prior judgment as to the start date of prejudgment interest only.  [R. 645 at 29]; *See United States v. Bank of Celina*, 823 F.2d 911, 915 (6th Cir. 1986) ("The fact that a district court's judgment was modified does not result in an entirely new judgment.").  It affirmed the amount of the judgment and its underlying legal basis.  [R. 645 at 9–17 (affirming the district court's decision to base damages on the report of an independent auditor)]; *c.f. Addie*, 836 F.3d at 259 (where the appellate court vacated a breach of contract judgment and required reentry of judgment for unjust enrichment, prejudgment interest at the higher rate was properly awarded through the date of the judgment on remand).  Because the appellate court upheld this Court's findings on liability and damages, the Court will apply Federal Rule of Appellate Procedure 37(a) and calculate post-judgment interest from April 24, 2020, the date of the original judgment.  *See Clapper*, 805 F.3d at 615 (discussing the impact of Rule 37(a)).

**B**

Next, the Sixth Circuit required the Court on remand to determine when New London's retainer fees stopped accruing.  [R. 645 at 9.]  The contract contained a provision under which Kentucky Fuel agreed to pay $10,000 per month to New London for assistance with leasing and permitting matters.  *Id.* at 3.  The parties contemplated this retainer fee remaining in effect until thirty days after either party sent a termination notice to the other.  *Id.*

Prior to the appeal, Judge Ingram recommended that the Court find that these fees continued to accrue "after the filing of the amended complaint" and "until judgment is rendered . . . ."  [R. 437 at 8–9.]  Judge Ingram based this recommendation on the legal effect of the entry of default judgment, which he reasoned required the Court to accept the amended complaint's allegation that the fees continued to accrue.  *Id.*  This Court adopted Judge Ingram's

recommendation, awarding New London $1,000,000 in unpaid fees, compounded annually at 8% interest.  [R. 445 at 9, 15.]

On appeal, the Sixth Circuit vacated this aspect of the judgment.  [R. 645 at 9.]  It explained that a default judgment requires the factual allegations of a complaint, "*except those relating to the amount of damages*," to be taken as true.  *Id.* at 7 (quoting 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688.1 (4th ed. 2022) (emphasis added)).  Judge Ingram could properly rely on the amended complaint's allegations as to liability but not as to the amount of damages.  *Id.*  Accordingly, the panel vacated the judgment and left open the question of when the retainer fees stopped accruing.  *Id.*

On that question, the appellate court offered some guidance.  It found that New London gave notice of its intent to terminate the retainer fee agreement on April 1, 2016.  *Id.*  Based on the thirty-day notice provision, the Sixth Circuit found that the retainer fees stopped accruing, at the latest, on May 1, 2016.  *Id.* at 8.  However, the panel left open the possibility that this Court should select an earlier date.  *See id.* at 9.  Kentucky Fuel asked Judge Ingram to find that New London abandoned the consulting portion of the contract prior to the April 1 notice.  *Id.*  The Sixth Circuit remanded the issue to this Court to "decide, in the first instance, when the retainer fees stopped accruing."  *Id.*

Given a fresh opportunity to revisit the issue, Kentucky Fuel returns to its argument that New London abandoned the retainer fee agreement.  [R. 656 at 3.]  Abandonment functions as an affirmative defense to the enforceability of a contract.  *Jack Mann Chevrolet Co. v. Assocs. Inv. Co.*, 125 F.2d 778, 784 (6th Cir. 1942).  To prove abandonment of a written agreement, Kentucky law requires clear and convincing evidence.  *Thomas & King, Inc. v. Jaramillo*, No.

08-191-JBC, 2009 U.S. Dist. LEXIS 18432, at *17 (E.D. Ky. Mar. 9, 2009) (citing *Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956)).

"[A]s a general rule, one party's total failure to perform his obligations under a contract justifies the non-breaching party in treating the contract as abandoned and suspending his own performance." *Pace v. Burke*, 150 S.W.3d 62, 66 (Ky. Ct. App. 2004) (citing *Dalton*, 293 S.W.2d at 476). "[A] party first guilty of a substantial or material breach of contract cannot complain if the other party subsequently refuses to perform. That party can neither insist on performance by the other party nor maintain an action against the other party for subsequent failure to perform." *Hodak v. Madison Cap. Mgmt., LLC*, No. 5:07-cv-00005-JMH, 2011 WL 6026705, at *2 n.3 (E.D. Ky. Dec. 5, 2011) (quoting 17A Am. Jur.2d *Contracts* § 606).

To find abandonment, courts look for conduct evincing an intention to cease performance. *See Ggnsc Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 488 (6th Cir. 2019) ("A party's actions matter: a party to a contract may not act as though an agreement does not exist and then seek the benefit of that bargain later."); *Nat'l Sur. Corp. v. Allen-Codell Co.*, 70 F. Supp. 189, 192 (E.D. Ky. 1947) (decision to cease operations, remove machinery, discharge employees from work, and state that he was unable to perform the work constituted the abandonment of a construction subcontract). "A contract may be abandoned expressly or implicitly by the parties acting inconsistently with its terms." *L.K. Comstock & Co. v. Becon Constr. Co.*, 932 F. Supp. 906, 931 (E.D. Ky. 1993). This conduct must be positively and unequivocally inconsistent with the continued existence of the contract. *Texaco, Inc. v. Debusk*, 444 S.W.2d 261, 263 (Ky. 1969) (quoting 17 Am. Jur. 2d, Contracts, Section 494). That said, the ultimate touchstone remains the effectuation of the intent of the parties. *See Estate of*

*Bramer*, 932 F.3d at 488 (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002)).

New London never manifested an unequivocal intention to quit performing under the retainer agreement.  Kentucky Fuel's first argument that New London abandoned the contract postulates that, by filing this lawsuit on May 8, 2012, New London abandoned the retainer agreement.  [R. 656 at 3.]  Does a lawsuit show an unequivocal intent to abandon a contract?  Kentucky Fuel points to no authority that it does.  *See id.* at 3.  And New London provides no binding authority that it does not.[2]  Having reviewed authority from this Circuit and others, there appears to be no support for the proposition that filing a lawsuit necessarily constitutes an intent to abandon a contract.  *See Buffalo Wild Wings, Inc. v. BW-3 of Akron, Inc.*, 763 F. App'x 558, 563–64 (6th Cir. 2019) (applying Ohio law) (holding that a party did not constructively terminate a contract by filing a lawsuit but that its conduct subsequent to the suit evinced an intention to abandon); *Kegerise v. Susquehanna Twp. Sch. Dist.*, No. 1:cv-14-0747, 2015 U.S. Dist. LEXIS 1160, at *34 (M.D. Pa. Jan. 7, 2015) (filing a lawsuit was not an anticipatory breach of contract but instead a claim that the other party breached); *Am. Seating Co. v. Transp. Seating, Inc.*, 220

---

[2] In its initial motion, New London pointed to a quotation from a Kentucky case that, taken out of context, could indicate that all contractual relationships continue after the commencement of litigation.  [*See* R. 646 at 5.]  But that case concerned whether the *statutory* duty of good faith continues to apply to an insurer as to its insured after "the commencement of a tort action for which a claim under the insurance policy has been made."  *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006).  The quote at issue was a description of a California case that held "that the duty of good faith continues during litigation because the contractual relationship continues[.]" *Id.* (summarizing *White v. W. Title Ins. Co.*, 710 F.2d 309, 316–17 (Cal. 1985)).  Neither a California case nor a Kentucky decision on a statutory duty govern the issue before the Court.

In its reply brief, New London cited to a Sixth Circuit case involving the enforcement of an arbitration decision regarding a coal mining contract.  [R. 646 at 5 (citing *Island Creek Coal Sales Co. v. Gainesville*, 764 F.2d 437 (6th Cir. 1985)).]  New London attempts to use this case to show that contracts routinely remain enforceable through "[d]isputes and litigation over payment or other contractual terms . . . ." *Id.*  But *Island Creek Coal* merely describes a procedural history in which the parties arbitrated the enforceability of an agreement, the arbitrators found it to be enforceable, and a district court enforced the arbitrators' decision.  *See Island Creek Coal*, 764 F.2d at 438–39.

Neither of these cases are helpful to decide the issue at bar.

F. Supp. 2d 845, 849 (W.D. Mich. 2002) (contract did not terminate upon filing of lawsuit where breaching party had the right to cure); *Sloan v. Duchscherer*, No. 17-cv-06454, 2018 U.S. Dist. LEXIS 104360, at *13 (N.D. Cal. June 20, 2018) (commencement of a lawsuit did not terminate a contract where provision in contract did not define litigation as a material breach).

So, if the filing of a lawsuit does not automatically amount to an abandonment of the contract, did this particular lawsuit show an intent to abandon? One need merely turn to the relief requested in the complaint to see that it did not. Throughout the complaint, New London uses language that indicates that it understood the contract to impose continuing obligations. [*See* R. 40 at 10 ("Kentucky Fuel's failure to pay the . . . Monthly Retainer Fee is a default under Section 7 of the Fourth Amendment. [New London] has incurred and will continue to incur fees and expenses in enforcing the terms of the Fourth Amendment.").] The Complaint did not seek recission of the contract; instead, it asked for enforcement of Kentucky Fuel's obligation to pay as the arrangement moved forward. *See generally id.*

The parties' behavior in the aftermath of the lawsuit confirms the contract's continued viability. New London points to communications presented to Judge Ingram at the 2018 hearing on damages as evidence that both parties understood the consulting arrangement to continue beyond the filing of the lawsuit in 2012.[3] [R. 646 at 5.] New London produced a log detailing emails and meetings conducted by one of its officers, William Brownlow, and various representatives of Kentucky Fuel from December 29, 2010, through November 15, 2017. [2018 Evidentiary Hearing, Plaintiff's Exhibit 10 at 1–14.]

---

[3] New London cites to these items by reference to its exhibit list from the 2018 hearing. [R. 646 at 5 (citing Plaintiffs' Exhibit 10).] Some of these items are filed in the record elsewhere. Where possible, the Court will cite to the documents' location in the record rather than to the evidence log from the 2018 hearing.

Take, for example, the Strong Brothers Property.  Kentucky Fuel used Plaintiff Fivemile Energy, LLC, as a proxy to obtain leases for the Strong Brothers Property.  [R. 424 at 235.] After this litigation began, representatives of the defendants continued to ask Mr. Brownlow for assistance with maintaining the Strong Brothers leases.  *Id.* at 236; [R. 220-1 at 26–27, 34.]  Mr. Brownlow also continued communicating with Kentucky Fuel regarding regulatory challenges facing the Strong Brothers Property.  [*See* R. 220-1 at 38–49.]  Mr. Brownlow managed to obtain Terrance Strong's signature on a needed performance bond for the defendants.  *Id.* at 48.  As late as 2013, Mr. Brownlow continued to communicate with the defendants regarding his efforts to maintain the Strong Brothers leases on their behalf.  *Id.* at 50.  Rather than evincing an intent to abandon the contract, the record reflects that New London attempted to continue to perform under the consulting agreement after this litigation commenced.

Despite this evidence of continued performance, Kentucky Fuel points to two affidavits in support of abandonment.  [R. 656 at 3.]  Therein, Stephen Ball and James Justice state that New London ceased to provide any consulting services either before the lawsuit began or immediately thereafter.  [R. 204-2 at 5 (affidavit of Stephen W. Ball stating "Mr. Brownlow and New London ceased providing consulting services not long after the Fourth Amendment was entered into."); R. 204-4 (affidavit James C. Justice III stating "Even though Mr. Brownlow had abandoned his consulting positions for several months prior to the filing of the lawsuit . . . .").] Neither affidavit is particularly persuasive.  Mr. Ball was copied on the email that initiated Mr. Brownlow's continuing assistance with the Strong Brothers lease after New London filed suit. [2018 Evidentiary Hearing, Plaintiff's Exhibit 11B.]  And Mr. Justice admitted in a deposition that he knew Mr. Brownlow continued to help the defendants obtain leases for the Strong

Brothers Property "in some form or fashion for us . . . ." [R. 424 at 236.] The record simply belies the assertions in the affidavits.

Based on the record developed for the 2018 evidentiary hearing, there is no clear and convincing evidence of New London behaving in a manner that is positively and unequivocally inconsistent with the continued existence of the contract. *See Texaco, Inc.*, 444 S.W.2d at 263; *Thomas & King, Inc.*, 2009 U.S. Dist. LEXIS 18432, at *17. Kentucky Fuel believes that it is entitled to reopen discovery to obtain that evidence. [R. 656 at 3–4.] The request is not particularly persuasive. Kentucky Fuel has had over a decade to develop the record. During the initial pendency of this case, it largely refused to participate in discovery, often in violation of Court orders. After the ultimate sanction of default judgment, Kentucky Fuel received a second opportunity, before Judge Ingram in 2018, to show that New London abandoned the contract. Now, at the eleventh, or perhaps the thirteenth, hour, Kentucky Fuel wants more discovery on remand from the Sixth Circuit.

Kentucky Fuel has received ample opportunity to develop the record on this issue and to present its evidence to the Court. At no point until May 1, 2016, has it shown clear and convincing evidence that either party terminated the contract. Accordingly, the Court finds that the monthly retainer fees continued to accrue until May 1, 2016.

Calculating the amount owed is a matter of simple math. Judge Ingram found that the retainer fees began to accrue on December 1, 2010. [R. 437 at 9.] 65 months elapsed between December 1, 2010, and May 1, 2016. At a rate of $10,000 per month, this generates $650,000 in unpaid retainer fees. The Defendants already paid $50,000 of this amount. *Id.* Therefore, the Defendants will owe $600,000 in retainer fees under the amended judgment.

What about interest on the retainer fees?  The Court previously awarded 8% prejudgment interest compounded annually on the entire amount of the fees.  [R. 445 at 15.]  New London submits to the Court an accounting that would continue to award prejudgment interest through the post-remand judgment.  [R. 646-1.]  But those calculations fail to address the applicability of post-judgment interest.

Recall that, where an appellate court alters a judgment, courts generally select the start date for post-judgment interest based on the degree to which the appeal changed the judgment. *Addie*, 836 F.3d at 258.  The Sixth Circuit nominally vacated the retainer fee award.  [R. 645 at 9.]  But the ruling did not affect liability.  *Id.*  The panel remanded with narrow instructions to determine the date when the retainer fees stopped accruing.  *Id.*  Where "much of the original judgment [is left] intact, including the liability determination" and the district court has to make a simple choice without reopening the evidentiary record, post-judgment interest should be calculated based on the original judgment date.  *Clapper*, 805 F.3d at 617.  Accordingly, the Court will amend the judgment for the retainer fee award to $600,000, with prejudgment interest accruing through April 24, 2020, and with post-judgment interest compounding thereafter.

**C**

Next, New London asks the Court to reenter its previous award of attorneys' fees and to grant it additional compensation for expenses associated with the appeal.  [R. 646 at 3; R. 657 at 13.]  Prior to the appeal, the Court awarded New London its reasonable attorneys' fees and expenses.  [R. 445 at 16.]  After permitting New London to conduct an accounting, the Court awarded it $1,041,496.57 in fees and expenses.  [R. 466 at 10.]  In so doing, the Court rejected Kentucky Fuel's request to conduct additional discovery into what it saw as irregularities in counsels' billing practices.  *See id.* at 10–13.

14

The Sixth Circuit vacated the award of attorneys' fees. [R. 645 at 25.] Because the panel vacated the Court's judgment on the monthly retainer fees and the award of punitive damages, it felt "that the most prudent course of action [was] to vacate the attorney's fees award too." *Id.* The panel gave this Court discretion to "alter those fees or adhere to its original calculation," while offering "no view" on the appropriate result. *Id.*

Now, Kentucky Fuel returns to its attempt to engage in discovery regarding the attorneys' fee award. [R. 656 at 4.] This time, it claims that the Court must distinguish between fees incurred based on successful and unsuccessful claims. *Id.* Kentucky Fuel believes that New London must "produce billing records that permit a distinction between fees incurred to advance their successful claims and those incurred for claims that failed on appeal." *Id.* Like its arguments the first time around, these new efforts have no merit.

In diversity cases, attorneys' fees are governed by state law. *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). Under Kentucky law, parties to a contract can bargain for a specific provision that shifts attorneys' fees from one party to another. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787 (Ky. 2017). These provisions can include expenses incurred upon appeal. *See Moorhead v. Dodd*, 265 S.W.3d 201, 202–03 (Ky. 2008) (contract that granted "[a]ll fees, expenses, costs and charges of any nature whatsoever, including without limitation, reasonable attorneys fees" entitled a party to appellate attorneys' fees "pursuant to the parties' agreement . . . ."). To interpret an attorneys' fees provision under Kentucky law, "a court may only look to the four corners of an unambiguous contract to determine the parties' intentions." *Boodram v. Coomes*, No. 19-5313, 2019 U.S. App. LEXIS 38284, at *13 (6th Cir. Dec. 23, 2019) (citing *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016)).

15

Here, the parties' agreement stated:

> If any lawsuit, arbitration or other action is commenced or taken which arises out of or relates to this Agreement, the prevailing party shall be entitled to recover from the defaulting party all costs, fees and expenses, including all attorney fees and expenses, in connection therewith.

[R. 40-5 at 7 ¶ 14.] The language does not predicate recovery of attorneys' fees on a claim being successful. Instead, the parties contemplated the defaulting party paying "all" fees "in connection" with litigation. Kentucky Fuel is the defaulting party, and the appeal was connected to this lawsuit. The parties' agreement, therefore, requires an award of fees from the appeal. *See Moorhead*, 265 S.W.3d at 202–03.

Kentucky Fuel's only attempt to argue otherwise cites to a case that is not relevant. [R. 656 at 4 (citing *Ky. Farm Bureau Mut. Ins. Co. v. Burton*, 922 S.W.2d 385, 389 (Ky. Ct. App. 1996)).] The case concerned a statutory claim for attorneys' fees rather than a contractual agreement to cover costs. *See Burton*, 922 S.W.2d at 389. "Generally, attorneys fees must be apportioned between claims for which there is statutory authority for an award of attorney fees and those for which there is not." *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 368 (Ky. Ct. App. 2007). In *Burton*, a statute authorized attorneys' fees for one claim, wrongful garnishment, but did not for others. *See Burton*, 922 S.W.2d at 389. Accordingly, the Court remanded with instructions to calculate the attorneys' fees stemming only from the wrongful garnishment claim. *Id.*

The logic at play in *Burton* does not extend to this case. New London's claim for fees stems from its contract, not from a statute. And the contract at issue authorized fees for all claims related to the agreement. [R. 40-5 at 7 ¶ 14.] Even if the Court were inclined to apply *Burton*, an exception to its rule would apply. "[W]here all of plaintiff's claims arise from the

16

same nucleus of operative facts and each claim was 'inextricably interwoven' with the other claims, apportionment of fees is unnecessary." *Young*, 243 S.W.3d at 368.  Here, all of New London's claims stem from Kentucky Fuel's breach of the Fourth Amendment to the original lease assignment contract.  If anything, Kentucky Fuel's success on appeal shows that the claims derive from the same operative facts.  The common identity of the damages underlying New London's breach of contract claim and its fraud claim convinced the Sixth Circuit that the economic loss doctrine barred recovery under both claims.  [R. 645 at 24.]  All the claims in this litigation stem from Kentucky Fuel's failure to pay.  Apportionment of fees is simply unnecessary in this case.

The Court will reenter its original award of attorneys' fees.  It will also award fees incurred upon appeal subject to an accounting and a review for reasonableness.  *See Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991).

### III

In sum, the Court will amend the prior judgment in light of the Sixth Circuit's ruling. The Court declines to exercise any equitable discretion to extend the prejudgment interest period beyond the date of the original judgment, April 24, 2020.  Kentucky Fuel is entitled to no further discovery on these issues beyond the record prepared for Judge Ingram's 2018 evidentiary hearing.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. New London's Motion for Miscellaneous Relief **[R. 646]** is **GRANTED** in part and **DENIED** in part;

2. In light of the Sixth Circuit's decision [R. 645], the Court's prior Judgment **[R. 467]** is **AMENDED** as follows:

17

a.  For Count I, Defendants owe $600,000 in unpaid retainer fees, with prejudgment interest compounded annually at 8% interest through April 24, 2020, and with statutory post-judgment interest in accordance 28 U.S.C. § 1961 thereafter;

b.  For Count II, Defendants owe $16,990,900 in lost tonnage royalties, as determined by the independent arbiter, with prejudgment interest compounded annually at 8% interest beginning May 8, 2012, and with statutory post-judgment interest in accordance with 28 U.S.C. § 1961 beginning April 24, 2020;[4]

c.  As restitution damages under Count V, Defendants owe $20,000 for the Strong Brothers lease reimbursements, plus 8% interest beginning October 14, 2011, for the first $5,000; October 4, 2012, for the second $5,000 payment; November 22, 2013, for the third $5,000 payment; and April 28, 2016, for the fourth $5,000 payment;[5]

d.  The Court's award of $17,010,900 in punitive damages under Count V is **VACATED**;

e.  Defendants **SHALL PAY $838,316.03** in fees and expenses to John Lucas's firm, **$103,423.13** in fees and expenses to Scott Webster's firm, **$40,659.41** in fees and expenses due to Culver Schmid's firm, and **$59,098.00** in fees and expenses due to Plaintiffs, for a combined total of **$1,041,496.57** in fees and expenses, subject to applicable post-judgment interest under 28 U.S.C. § 1961 beginning April 24, 2020;[6]

---

[4] [*See* R. 445 at 16.]
[5] [*See* R. 445 at 16; R. 645 at 17 n.9.]
[6] [*See* R. 466 at 13.]

3.  It is further **ORDERED** that, under Section 14 of the Fourth Amendment, Defendants owe attorneys' fees and expenses incurred by Plaintiffs in connection with the appeal. Calculation of the amount owed, subject to a reasonableness review, is **REFERRED** to Judge Ingram to prepare a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(3). *See Callier v. Gray*, 167 F.3d 977, 982–83 (6th Cir. 1999); and

4.  An amended judgment shall enter promptly.

This the 30th day of August 2023.

Gregory F. Van Tatenhove
United States District Judge