UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NEW LONDON TOBACCO MARKET, INC., *et al*, <br><br> Plaintiffs, <br><br> V. <br><br> KENTUCKY FUEL CORPORATION, *et al*, <br><br> Defendants. | Civil No. 6:12-cv-00091-GFVT-HAI <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' objections to an order issued by Magistrate Judge Hanly Ingram. [R. 586.] Plaintiffs New London Tobacco Market, Inc., and Fivemile Energy, LLC, moved for numerous sanctions against the Defendant Entities, Kentucky Fuel Corporation and James C. Justice Companies, Inc., and their corporate officers, members of the Justice family, based on their failure to comply with a court order. [R. 512.] Judge Ingram determined that the record was insufficient for the Court to find third-party corporate officers in contempt but did award New London and Fivemile additional discovery to augment the record. [R. 565.] Because the Court agrees with Judge Ingram's order, the Defendants' objections **[R. 586]** are **OVERRULED**, and Judge Ingram's order **[R. 565]** is **AFFIRMED**.

**I**

Due to a litany of litigation misconduct in this matter, the Court entered default judgment against the Defendant Entities as a sanction. [R. 206.] After Magistrate Judge Hanly Ingram conducted an evidentiary hearing on damages, the Court adopted a modified version of his

recommendation and entered judgment. [R. 445; R. 446.] The Defendant Entities appealed and proceeded to argue the matter before the Sixth Circuit. [R. 471; R. 473.]

Meanwhile, New London and Fivemile prepared to collect their judgment. [*E.g.*, R. 483.] They believe that the Justice family officers fraudulently transferred assets to ensure that the Defendant Entities would ultimately be judgment proof. [R. 512 at 1.] So, New London and Fivemile engaged in post-judgment discovery targeted at collection, potential fraudulent transfers, and evidence that the Defendant Entities are the alter-egos of the Justice family. *Id.* at 2. Frustrated with the responses that they received, New London and Fivemile requested a discovery dispute teleconference with Judge Ingram. [R. 489; R. 565 at 3.]

At the hearing, Judge Ingram permitted New London and Fivemile to file a motion to compel. [R. 491.] He also advised the Defendant Entities of their duty to comply with discovery requests, instructed them to document their efforts to comply, directed them to provide audio of the hearing to their clients, and to preserve all documents related to the discovery at issue, regardless of whether they had deigned to produce them yet. *Id.*

Subsequently, New London and Fivemile filed a motion to compel the Defendant Entities to fully respond to ten interrogatories and eighteen requests for production. [R. 495.] The Defendant Entities took issue with three aspects of the request. First, they sought a narrowed scope of production for documents related to their parent, subsidiary, and affiliated companies. [R. 499 at 3, 5.] They argued that the massive corporate holdings of the Justice family created an undue burden of production and that many of the Justice owned companies are not relevant to this case. *Id.* at 5–6. Judge Ingram disagreed and ruled that New London and Fivemile were entitled to full discovery concerning the relationship among the Justice companies because of the complexity of their ownership and interrelationship. [R. 505 at 2.]

2

Second, the Defendant Entities argued that they do not typically maintain copies of the bank statements at issue, so they could not produce them. [R. 499 at 6–7.] Judge Ingram also found this excuse to be ineffective and ordered them to obtain any relevant bank statements within their possession, control, or custody. [R. 505 at 2–3.]

Third, the Defendant Entities took umbrage with producing documentation of their activities prior to 2015. [R. 499 at 10.] They claimed that they could not have reasonably appreciated the likelihood of facing a large judgment until 2017 and that they had changed their accounting software in 2012 and 2015. *Id.* Judge Ingram explained that "it was Defendants' delay tactics that caused this litigation to drag on for nine years. Defendants cannot rely on the effects of their own misbehavior to excuse themselves from reasonably requested materials." [R. 505 at 3.]

Ultimately, Judge Ingram ordered the Defendant Entities to fully respond to the ten interrogatories and 18 requests for production by May 17, 2021. [R. 505 at 3.] Specifically, he required them to submit "complete narrative, sworn responses to all ten interrogatories." *Id.* at 4. He also ordered them to provide disclosure of the hundred-plus businesses within the Justice family network of entities. *Id.* at 1–2.

Despite facing a clear court order, the Defendants chose to disregard Judge Ingram's commands. Rather than provide narrative responses to interrogatories, they persisted in producing documents that failed to elucidate the scope of the Justice family's businesses and their assets. [R. 565 at 8; R. 500 at 7.] Moreover, their discovery submissions recycled arguments that they brought in opposition to the motion to compel, despite Judge Ingram's contrary conclusion. [*See* R. 565 at 8 (discussing interrogatory #3).]

3

Based on these deficiencies, New London and Fivemile moved for sanctions. [R. 512.] They ask the Court for several penalties, including a finding of fact that the Defendant Entities are the Justice family's alter ego, personal payments from Justice family members, and attorneys' fees. [R. 514.] Judge Ingram found that the Defendants had violated his order but did not immediately recommend sanctions. [R. 565 at 17.] Instead, he ordered additional discovery concerning the culpability of the Justice family officers for the Defendant Entities' violations of the Court's order. *Id.* at 18. While he agreed that New London and Fivemile are due attorneys' fees, he deferred awarding the fees until after the Justice family officers are deposed. *Id.* at 19. The Defendants objected to Judge Ingram's order. [R. 586.] The matter is now ripe for review.

II

Initially, the Court must clarify the applicable standard of review. The Court referred this issue to Judge Ingram under 28 U.S.C. § 636(b). Section 636(b) governs referral of dispositive and non-dispositive matters, which are subject to different standards of review. For non-dispositive matters, a district court will only set aside a magistrate judge's order if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 515 (6th Cir. 2001). Magistrate Judge Ingram opined that his order is non-dispositive. [R. 565 at 3.] The Defendants appear to agree given that they asked the Court to review the order for clear error. [R. 586 at 1–2.] The Court agrees to the extent that the order relates to additional discovery. However, Judge Ingram's award of attorney's fees may be subject to de novo review.

Any motion which is not listed in Section 636(b)(1)(A) or which is not comparable to a listed motion is non-dispositive. *Vogel*, 258 F.3d at 516. Generally, these motions resolve matters that do not dispose of a claim or defense of a party. 14 James Wm. Moore et al., Moore's Federal Practice ¶ 72.02[2] (3d ed. 2022). Discovery is non-dispositive, and magistrate

4

judges have broad discretion in controlling it. *Id.* ¶ [7][a]; *accord Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 321 (6th Cir. 2015) (treating a motion to compel production as non-dispositive). Likewise, post-judgment discovery in collection proceedings is a non-dispositive matter that may be referred to a magistrate judge. Moore et al., *supra*, ¶ 72.02[7][a].

To the extent that Judge Ingram's order implicates sanctions, the standard of review is less clear. The majority rule is that the referral of a case to a magistrate judge to perform all pretrial functions implicitly authorizes him to issue sanctions for discovery violations. *Id.* ¶ 72.02[7][b]; *accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999). Under that view, a district court is only required to conduct de novo review of a magistrate judge's discovery-based sanctions if the chosen sanction would be dispositive of a party's claim or defense. Moore et al., *supra*, ¶ 72.02[7][b]. These courts read the term claim as the central disputes that the parties are litigating, not collateral motions for sanctions. *See Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) (holding that Rule 11 sanctions are non-dispositive); *see also* Moore et al., *supra*, ¶ 72.02[7][b] (collecting cases from other circuits).

The Sixth Circuit disagrees. *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 998 (6th Cir. 1992). It reads the term claim expansively to include more than only "the underlying substantive claim of a party . . . ." *Id.* In the context of Rule 11, orders regarding sanctions, fees, and costs are dispositive matters under Sixth Circuit law. *Massey v. City of Ferndale*, 7 F.3d 506, 509–510 (6th Cir. 1993). Where a sanctions order results in money damages and leaves nothing more to be done than execute the judgment, it is dispositive and must be reviewed de novo by the district court. *Bennett*, 976 F.2d at 998. Indeed, the Sixth

Circuit considers sanctions to be similar to contempt proceedings because both involve misconduct before the court.  *Id.* at 998 n.7.

Some interpret these cases as only applying to Rule 11 sanctions.  *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, No. 6:12-cv-91-GFVT-HAI, 2016 U.S. Dist. LEXIS 96712, at *1 n.1 (E.D. Ky. Mar. 16, 2016); *see also Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 17-cv-2668-TLP-tmp, 2020 U.S. Dist. LEXIS 8531, at *9–10 (W.D. Tenn. Jan. 17, 2020) (collecting cases).  Judge Ingram's order at issue states that his award of attorneys' fees is a non-dispositive matter under Rule 37.  [R. 565 at 17 n.2.]  The Sixth Circuit has at times regarded the imposition of attorney fees under Rule 37 as a non-dispositive matter.  *See Baker v. Peterson*, 67 F. App'x 308, 311 (6th Cir. 2003) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458 (10th Cir. 1988)); *see also Starcher v. Corr. Med. Sys.*, 144 F.3d 418, 422 (6th Cir. 1998) (reciting, without analyzing, the procedural history of a suit in which a magistrate judge awarded attorney's fees directly rather than proceeding via recommendation to the district court).  But the Sixth Circuit has never expressly repudiated its prior holding in *Bennett*.

The instant order from Judge Ingram came in response to a motion for sanctions.  [R. 512.]  But Judge Ingram did not issue several of the requested sanctions.  He granted the Plaintiffs' request for attorney's fees and expenses from the motion to compel and the subsequent motion for sanctions.  *Id.* at 19.  He withheld ordering payment until the Plaintiffs' expenses can be determined.  *Id.*  As Judge Ingram points out, it is the sanction selected by the magistrate judge rather than the sanction sought in the underlying motion that controls the standard of review.  [R. 565 at 2–3 (citing *Builders Insulation*, 2020 U.S. Dist. LEXIS 8531, at *5)]; *see also* Moore et al., *supra*, ¶ 72.02[7][b]; *accord Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995).  Judge Ingram did not award a final amount for payment, as

6

was the case in *Bennett*. *See Bennett*, 976 F.2d at 998. Nevertheless, out of an abundance of caution, the Court will review the order on attorney's fees de novo because of the uncertainty in the Sixth Circuit precedent.

**A**

The Court reviews Judge Ingram's post-judgment discovery order for clear error. When a magistrate judge rules on a non-dispositive matter, the district court can "'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). Pursuant to Federal Rule of Civil Procedure 72(a), the Court will set aside or modify a magistrate judge's non-dispositive order only if the Court finds that at least a portion of the order is "clearly erroneous or contrary to law." An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. Winsper*, 2013 WL 5673617 at *1 (W.D. Ky. Oct. 17, 2013)). "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Bisig*, 940 F.3d at 219.

**1**

Judge Ingram grounded his path forward regarding potential sanctions upon a factually similar Sixth Circuit decision. [R. 565 at 15.] Therein, a court ordered an electrical company to make compensatory payments toward a pension fund. *Elec. Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003). A collective bargaining agreement required Gary's Electric to pay its employees' fringe benefits into a Fund. *Id.* at 376.

7

When Gary's Electric failed to pay, the Fund sued, and a district court required Gary's Electric to pay past-due contributions, to make financial disclosures and reports, and to pay the Fund its costs and attorneys' fees. *Id.* Rather than comply, Gary Pipia, Gary's Electric's sole owner and corporate officer, diverted company assets into another business that he owned and increased his personal take from the company to prevent it from complying with the judgment. *Id.* at 384.

The district court refused to enter a finding of contempt as to Mr. Pipia because he was not a party to the original action. *Id.* at 378. The Sixth Circuit disagreed. It reasoned that the district court had personal jurisdiction over Mr. Pipia as to the contempt proceedings because "a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt."[1] *Id.* at 380 (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d. Cir. 1930) (Hand, J.)). A court's command to a corporation functions also as a command to the persons who control it. *Id.* If they know of the order and "prevent compliance or fail to take appropriate action within their power" to ensure compliance, "they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." *Id.* (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)).

Accordingly, the Sixth Circuit held that an officer of a corporation can be liable for contempt of a court order in a case in which he is not a named defendant so long as he is "the one responsible for the corporation's affairs." *Id.* at 382. If the officer prevents compliance or fails to take appropriate action within his power to ensure performance, a district court can find him in contempt of court. *Id.* The movant for contempt bears an initial burden of showing by clear and convincing evidence that the corporation violated a definite and specific order of the court

---

[1] Although this line of case law stems for corporate disobedience to injunctions, the Sixth Circuit reasoned that "while a district court's order setting a pay schedule may or may not be classified as an injunction, it nevertheless can be treated as one when 'it compel[s] . . . affirmative, prospective obedience with it.'" *Gary's Electric*, 340 F.3d at 382 (quoting *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000)).

requiring it to perform or refrain from performing some act. *Id.* at 379, 382. The movant must also show that the officer had knowledge of the court's order. *Id.*

Then, the burden of production shifts to the officer, who must produce evidence to show that he is unable to comply with the order. *Id.* To do so, the officer must (1) show "categorically and in great detail why he or she is unable to comply with the court's order," (2) demonstrate that he "took all reasonable steps within his power to comply with the court's order," and (3) that he "is not responsible for the present inability to pay." *Id.* at 383 (cleaned up). Otherwise, a court can hold the officer in contempt to either coerce compliance or compensate the complainant for losses. *Id.* If the movant can show that the corporate officer's conduct amounts to unclean hands, he is entitled to further discovery regarding a possible contempt finding against the officer personally. *Id.* at 384.

The Sixth Circuit took pains to distinguish a contempt action against a third-party corporate officer and a proceeding to collect a judgment against a corporation. *Id.* at 385. Unlike collections actions, the primary objectives of contempt proceedings are to coerce compliance with court orders and to compensate the complainant for the purposeful decision by the corporate officer to disregard a court order. *Id.* Whereas collection proceedings target the underlying judgment as a whole, contempt proceedings concern only losses that directly relate to the officer's failure to comply with an order.[2] *Id.*

---

[2] The Sixth Circuit also considered whether its holding would vitiate the doctrine of limited liability by creating a way to collect corporate liabilities from investors without piercing the corporate veil. *Gary's Electric,* 340 F.3d at 386. The Court again emphasized the distinction between an action to enforce a judgment and a proceeding for contempt. *Id.* So long as a court's monetary sanction seeks to compensate the aggrieved party for losses traceable to an officer's "own deliberate disobedience of the court's order" rather than holding the officer "personally responsible for the amount [the entity] was ordered to pay," the sanction remains a valid punishment for contempt of court rather than an end-around collection proceeding. *Id.*

9

On a prior occasion, New London and Fivemile unsuccessfully tried to use *Gary's Electric* to recover money from the Justice Family. [*See* R. 564 at 5.] That time, they asked the Court to hold the Justices in contempt for the Defendant Entities' failure to pay $1,000,000 in attorneys' fees that the Court ordered to be paid immediately. *Id.* at 6. The Court denied their request because New London and Fivemile sought to collect on the judgment against the Defendant Entities rather than seeking compensation for the Justice families' personal disregard of a court order. [*See* R. 613 at 4–5.]

Here, New London and Fivemile are again asking the Court to apply the *Gary's Electric* framework to the Defendant Entities' violations of Judge Ingram's post-judgment discovery order. [R. 512 at 4–9.] They allege that the Justice Family is removing and hiding the Defendant Entities' assets in their other companies to prevent collection of various judgments owed in this case. *Id.* at 8–9. New London and Fivemile further argue that the Defendant Entities are intentionally disobeying Judge Ingram's post-judgment discovery order to prevent them from tracing these potentially fraudulent transfers. *Id.* As relief, they request a variety of sanctions, including a finding of fact that the Defendant Entities are the Justice families' corporate alter ego and application of the *Gary's Electric* framework to hold the Justice family personally liable. *Id.* at 10, 12.

Judge Ingram found that the Defendant Entities violated the Court's discovery order. [R. 565 at 7.] He agreed that sanctions are warranted but found that the Court requires further development of the record to consider holding the Justice family in contempt. [R. 565 at 11.] To better develop the record, Judge Ingram ordered additional discovery related to:

> (1) Whether Defendant's officer/directors had actual or constructive notice of the Court's April 16, 2021, order granting Plaintiffs' motion to compel discovery responses;

(2) Whether Defendants' officers/directors violated a definite and specific order of the Court;

(3) Whether Defendants' officers/directors are presently unable to comply with the Court's discovery order;

(4) If Defendants are unable to comply with the order, why they are unable to do so; and

(5) Whether Defendants' officers/directors took all reasonable steps within their power to comply with the Court's discovery order.

[R. 565 at 16 (internal citations omitted).]

The Defendants do not suggest that *Gary's Electric* is inapplicable to the present circumstances. [*See* R. 586.] Nevertheless, the Court has reviewed Judge Ingram's order and finds that it comports with the framework established in *Gary's Electric*.

Instead, the Defendants claim that there is no factual foundation in the record to award discovery as to their directors and officers. [R. 586 at 2 ¶ 1.] Then, they raise three additional complaints regarding Judge Ingram's prior order on the motion to compel. *Id.* at ¶¶ 2–4. Puzzlingly, the Defendants do so only after they violated that order. The Court will review the first argument for clear error because it alleges insufficient evidence in support of the new sanctions-discovery order. *See Gypsum Co.*, 333 U.S. at 395. However, the Defendants are entitled to no further review of Judge Ingram's previous order on the motion to compel because they did not timely appeal it to this Court. *Pinkerton's Inc. v. Shelly Pinkerton Corp.*, Nos. 98-1609, 98-1653, 1999 U.S. App. LEXIS 23320, at *13 (6th Cir. Sep. 15, 1999).

a

The record reflects ample facts that support Judge Ingram's sanctions-discovery order. To be entitled to further discovery under *Gary's Electric*, New London and Fivemile must demonstrate some showing of unclean hands on the part of the Justice family officers. *See*

11

*Gary's Electric*, 340 F.3d at 384. In *Gary's Electric*, the Sixth Circuit found that the "events in their entirety" afforded the Funds additional discovery based on evidence of diversion of funds to related companies and disguised personal withdrawals from the defendant entity. *Id.* Upon review, the Court cannot say with "definite and firm conviction that" Judge Ingram erred in finding that the record as a whole reflects unclean hands on the part of the Justice family officers. *U.S. Gypsum Co.*, 333 U.S. at 395.

For example, although the Defendant Entities refused to identify the directors of Defendant Kentucky Fuel Corporation, New London and Fivemile's research revealed that all the company's directors and key officers are members of the Justice family. [R. 516 at 5.] Moreover, Jim Justice, Jay Justice, and Jill Justice are the company's only shareholders. *Id.* at 4.

In one of the fraudulent transfers alleged by New London and Fivemile, Kentucky Fuel sold some of its assets to NewLead Holdings, Ltd. [R. 512 at 14.] Kentucky Fuel was due $7,500,000 for coal mining rights. *Id.* at 15. But all that money went into either Justice Management Services, LLC, or Jay Justice's personal accounts. *Id.* at 14–15. When New London and Fivemile sought post-judgment discovery related to these transactions, the Defendants produced no documentation and provided no narrative responses to interrogatories. *Id.* at 15. Instead, New London and Fivemile learned about the transactions through previously produced emails in which Jay Justice instructed the diversion of the funds away from Kentucky Fuel. *Id.*

Thus, the alleged transfers in this case could be like the activity in *Gary's Electric*.[3] *See Gary's Electric*, 340 F.3d at 384. Judge Ingram correctly determined that New London and

---

[3] The Court makes no remark as to whether these actions were taken in response to a court order. Rather, they are indicative of the control that the Justice family has over the Defendant Entities. The record is replete with instances of litigation misconduct that discovery could tie to the Justice family as the owners, officers, and directors of the Defendant Entities.

12

Fivemile have shown the Justice officers have unclean hands. Additional discovery is appropriate.

b

The remaining objections fail because the Defendants did not bring them in a timely manner. Appeals from a magistrate judge's non-dispositive order must be made within fourteen days of service. Fed. R. Civ. P. 72(a); *Vogel*, 258 F.3d at 515 (citing a prior version of Fed. R. Civ. P. 72(a)). Orders on motions to compel discovery are non-dispositive. *Superior Prod. P'ship*, 784 F.3d at 321. If a party fails to timely object, he waives the claim that the magistrate judge erred. *Pinkerton's Inc.*, 1999 U.S. App. LEXIS 23320, at *13.

Magistrate Judge Ingram issued his order compelling discovery on April 16, 2021. [R. 505.] Therein, he specifically overruled the Defendants' arguments regarding the scope of production and producing documents related to all the Justice family entities. *Id.* at 3. Neither party filed anything further in the record for this matter until June. [*See* R. 506.] Evidently, the Defendants chose to not bring this Court an objection to Judge Ingram's order on the motion to compel.

Instead, they delayed and now object to Judge Ingram's order regarding the plaintiff's motion for sanctions. In three objections, they argue that the discovery at issue is overbroad and that a court may not "summarily require[] discovery of every entity in a large corporate family . . . ." [R. 586 at 2–3 ¶¶ 2–4.] The time to bring these objections was within fourteen days of Judge Ingram's order on the motion to compel, not after New London and Fivemile moved for sanctions and certainly not after disobeying Judge Ingram's order. *See Indep. Prods. Corp. v. Loew's Inc.*, 30 F.R.D. 377, 380 (S.D.N.Y. 1962) ("Ordinarily on a [sanctions] motion under 37(b) there will be no need to inquire into the propriety of the questions unanswered, since this

13

will have been determined on the motion under 37(a)."). Accordingly, the Defendants have waived these arguments.

However, even if the Court were inclined to review them for clear error, these assertions have no merit. As Judge Ingram explained, "the complexity of the ownership and relationship among these business entities is the *reason* that further discovery is proper." [R. 565 at 5.] The Defendants' continued refusal to disclose the extent of their related businesses and of their self-dealing transactions only bolsters the need to permit further discovery.

## B

Because the portion of Judge Ingram's order regarding attorneys' fees will eventually result in a monetary sanction, the Court reviews it de novo. *Bennett*, 976 F.2d at 998. Federal Rule of Civil Procedure 37(b)(2) provides district courts broad discretion to sanction a party or an officer or director of a party for failing to obey an order to provide or permit discovery. 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2289 (3d ed. 2022). Whenever a party violates a court order compelling discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Wright & Miller, *supra*, § 2289 (explaining that expense awards are mandatory, "regardless of what other sanctions may be imposed, unless the delinquent party shows substantial justification for its failure . . . ."). However, sanctions under Rule 37(b)(2)(C) only compensate the moving party for expenses incurred after the court entered a discovery order. Wright & Miller, *supra*, § 2289. The moving party cannot use Rule 37(b)(2)(C) to recover expenses associated with bringing the motion to compel that led to the court's order. *Id.*

14

As discussed at length, the Defendants repeatedly violated a clear and definite discovery order from Judge Ingram.  New London and Fivemile asked for their expenses "incurred in connection with the Plaintiffs' Motion to Compel [R. 495] and their present Motion for Sanctions."  [R. 514 at 4.]  Judge Ingram's order on the motion for sanctions agreed that attorneys' fees and expenses will be awarded under Rule 37(b)(2)(C).  [R. 565 at 17.]  Judge Ingram delayed ordering payment until further discovery takes place because the new discovery concerns the Defendants' violations of his order on the motion to compel.  *Id.*

The Court agrees.  New London and Fivemile are entitled to expenses incurred after the violation of Judge Ingram's initial order on the motion to compel.  But New London and Fivemile cannot recover their expenses for filing the motion to compel because the Defendant Entities had not yet violated a court order.  *See* Wright & Miller, *supra*, § 2289.  Ultimately, Judge Ingram's order primarily at issue here reserved a finding on the amount of expenses for later.  [R. 565 at 17.]  In that order, there is no error.  New London and Fivemile will be permitted to only recover their expenses incurred after Judge Ingram ordered the Defendants to comply with the post-judgment discovery requests.

### C

Much has occurred since Judge Ingram's original decision to award fees.  New London filed an accounting of its attorneys' fees on September 20, 2022.  [R. 652; R. 653.]  On December 14, 2022, New London moved for an order awarding the fees.  [R. 674.]  On December 16, noting that Kentucky Fuel failed to object to New London's accounting, Judge Ingram entered an order requiring the fees to be paid.  [R. 675.]

Kentucky Fuel objected to Judge Ingram's order, arguing that it should have been given time to respond to the December 14 motion.  [R. 676.]  After Kentucky Fuel failed to pay the

15

fees, New London filed a motion for contempt. [R. 688.] Finally, Kentucky Fuel asked the Court to stay collection of the fees until resolution of its pending objection. [R. 693.]

These requests are now moot in light of the Court's decision to restrict the attorneys' fees award to costs accrued after Kentucky Fuel violated Judge Ingram's order compelling disclosure. The Court will permit New London to file an amended accounting of its fees for review.

### III

Accordingly, for these reasons and the Court being otherwise sufficiently advised, it is hereby ordered as follows:

1. The Defendants' Objections **[R. 586]** are **OVERRULED**;

2. Judge Ingram's Order regarding discovery on the issue of contempt **[R. 565]** is **AFFIRMED**;

3. To the extent that Judge Ingram's Order [R. 565] discusses attorneys' fees, it is **CONSTRUED** as a report and recommendation to the district court, and it is **ADOPTED** for and as the opinion of this Court;

4. Within fourteen (14) days of the entry of this Order, New London **SHALL** submit an amended accounting of its attorneys' fees incurred because of Kentucky Fuel's violations of Judge Ingram's Order [R. 505] compelling compliance with discovery requests. The accounting **SHALL** exclude any expenses incurred prior to the entry of the Order dated April 16, 2021;

5. Kentucky Fuel **SHALL** file any objection to the renewed accounting within twenty-four (24) days of the entry of this Order;

6. Kentucky Fuel's Objections **[R. 676]** to the Order dated December 16, 2022, are **OVERRULED** as moot;

7. New London's Motion for Contempt **[R. 688]** is **DENIED** as moot; and

8. Kentucky Fuel's Motion to Stay **[R. 693]** is **DENIED** as moot.

This the 30th day of August 2023.

Gregory F. Van Tatenhove
United States District Judge