UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| NEW LONDON TOBACCO MARKET, INC., *et al*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 6:12-cv-00091-GFVT-HAI |
| v. | ) ) | **OPINION** |
| KENTUCKY FUEL CORPORATION, *et al*, | ) ) ) | **&** **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter, which asks the Court to once again consider the troubling litigation tactics employed by the Defendant Entities, Kentucky Fuel Corporation and James C. Justice Companies, Inc., is before the Court on a Report and Recommendation from Magistrate Judge Hanly Ingram.  [R. 697.]  Since the beginning of this long-suffering case, the Defendants have engaged in a campaign of delay.  Their perpetual reluctance to cooperate has already resulted in admonishment, sanctions, and ever-increasing fiscal liabilities in the form of attorneys' fees and expenses.  Based on yet another instance of the Defendants' failure to cooperate, Plaintiffs New London Tobacco Market, Inc., and Fivemile Energy, LLC, filed a renewed motion for numerous sanctions against the Defendant entities and their corporate officers.  [R. 673.]  Judge Ingram recommends that the Court sanction the Defendants for failing to comply with a discovery order, and to hold Messrs. Jay Justice and Stephen Ball in contempt.  For the reasons that follow, Judge Ingram's recommendation will be **ADOPTED** in part and **REJECTED** in part.

# I

A long, long time ago, the Court entered default judgment against the Defendant Entities as a sanction.  [R. 206.]  After Magistrate Judge Hanly Ingram conducted an evidentiary hearing on damages, the Court adopted a modified version of his recommendation and entered judgment. [R. 445; R. 446.] The Defendant Entities appealed and proceeded to argue the matter before the Sixth Circuit.  [R. 471; R. 473.]

Meanwhile, New London and Fivemile prepared to collect their judgment.  [*E.g.*, R. 483.] They believe that the Justice family officers fraudulently transferred assets to ensure that the Defendant Entities would ultimately be judgment proof.  [R. 512 at 1.]  So, New London and Fivemile engaged in post-judgment discovery targeted at collection, potential fraudulent transfers, and evidence that the Defendant Entities are the alter-egos of the Justice family.  *Id.* at 2.

Frustrated with the responses that they received, New London and Fivemile requested a discovery dispute teleconference with Judge Ingram.  [R. 489; R. 565 at 3.]  At the hearing, Judge Ingram permitted New London and Fivemile to file a motion to compel.  [R. 491.]  He also advised the Defendant Entities of their duty to comply with discovery requests, instructed them to document their efforts to comply, directed them to provide audio of the hearing to their clients, and to preserve all documents related to the discovery at issue, regardless of whether they had deigned to produce them yet.  *Id.*

Subsequently, New London and Fivemile filed a motion to compel the Defendant Entities to fully respond to ten interrogatories and eighteen requests for production.  [R. 495.]   The Defendant Entities took issue with three aspects of the request.  First, they sought a narrowed scope of production for documents related to their parent, subsidiary, and affiliated companies.

[R. 499 at 3, 5.]  They argued that the massive corporate holdings of the Justice family created an undue burden of production and that many of the Justice owned companies are not relevant to this case.  *Id*. at 5–6.  Judge Ingram disagreed and ruled that New London and Fivemile were entitled to full discovery concerning the relationship among the Justice companies because of the complexity of their ownership and interrelationship.  [R. 505 at 2.]

In a subsequent status report, the Plaintiffs reported that the discovery responses received on May 17 did not comply with the Discovery Order.  [R. 507.]  The Plaintiffs then moved for sanctions, including a finding of contempt against the directors/officers of Defendants.  [R. 510; R. 512.]  Judge Ingram granted in part the Plaintiffs' motion for sanctions.  [R. 565.]  In that Sanctions Order, Judge Ingram found that the Defendants had violated the Discovery Order and imposed preliminary non-contempt sanctions.  *Id*.  Judge Ingram ordered Stephen Ball, James C. "Jay" Justice III, Summer Harrison Deane, and Dr. Jillean "Jill" Justice-Long to submit to depositions.  *Id*. at 18.  He also ordered an award of attorneys' fees and costs, to be calculated after the depositions.  *Id*. at 19.  Judge Ingram denied without prejudice the Plaintiffs' request for conclusive factual findings, the Plaintiffs' request for disgorgement of payments and transfer of property, and their request that certain officers and directors be held in contempt.  *Id*.  Following the depositions of the aforementioned individuals, the Plaintiffs renewed those requests, arguing that, based on the depositions and related discovery, further sanctions and a finding of contempt against three officers/directors are warranted.  [R. 673 at 2.]

Judge Ingram prepared a report and recommendation on the Plaintiffs' renewed motion. He granted the Plaintiffs' request for conclusive factual findings and entered a binding finding of fact, pursuant to Rule 37(b)(2)(A)(i), that the companies owned and controlled by members of the Justice family that are identified on Deposition Exhibits 1 (R. 662-1) and 5 (R. 662-5) are the

alter egos of the Defendants' shareholders, James C. Justice III and Jillean Justice. [R. 697 at 37.] Judge Ingram also granted the Plaintiffs' request for an award of attorneys' fees and expenses related to their Renewed Motion for Contempt and Sanctions. *Id.*

Further, Judge Ingram recommended that non-parties Jay Justice and Stephen Ball be ordered to appear before the Court to show cause why they should not be held in civil contempt for failing to comply with the Discovery Order and that, unless they satisfactorily show cause as to why they have not fully complied with the Discovery Order, they be held in civil contempt of court. *Id.* Judge Ingram also recommended that, if found in contempt, Messrs. Justice and Ball each be ordered to pay Plaintiffs contempt penalties up to the amount of final judgment (following resolution of the post-remand damages litigation). *Id.* at 38. And lastly, pursuant to 28 U.S.C. § 636(e)(6), Judge Ingram certified a number of facts to the Court relating to his civil contempt recommendation.

The Parties filed timely objections to Judge Ingram's report, and the Court held a hearing requiring Messrs. Justice and Ball to show cause as to why they should not be held in contempt. The matter is now ripe for review. For organizational purposes, the Court considers the Defendants' objections before the Plaintiffs'.

**II**

**A**

The Defendants first object to Magistrate Judge Ingram's authority to order conclusive factual findings as a discovery sanction pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(i). [R. 708.] They argue that Judge Ingram's "binding finding" declaration was manifest legal error because it invoked "the authority reserved exclusively to the district judge to impose dispositive sanctions in redress of discovery violations." *Id.* at 2. The Defendants cite

4

Rules 72 and 37 of the Federal Rules of Civil Procedure, followed by a novella of case law examples, in order to explain the distinction between the roles of a magistrate judge and Article III district court judge. *Id*. at 2-7. The Defendants' objection evolves into a lengthy discussion about dispositive versus non-dispositive matters, and a magistrate judge's power to consider each type of issue. *Id*. Essentially, the Defendants contend that 28 U.S.C. § 636(b)(1)(B) constrains magistrate judges to submitting "proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." *Id*. at 3 (citing 28 U.S.C. § 636(b)). Thus, argue the Defendants, "[t]he magistrate judge's decision to sanction Defendants through the 'binding finding' that the Justice companies and their shareholders are alter egos is demonstrably contrary to law and cannot stand." *Id*. at 7.

Rule 37 governs instances where a party (or parties) fail to comply with discovery. Where a "party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). One of those orders, a sanction, includes "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]" Fed. R. Civ. P. 37(b)(2)(A)(i). Judge Ingram believes that he has the authority to order this particular sanction. The essence of the Defendants' objection is that he does not.

Judge Ingram provided well-articulated and thorough reasoning as to why Rule 37 sanctions can be ordered by a magistrate judge. He relied heavily on the reasoning of *Cage v. Harper*, No. 17-CV-7621, 2020 U.S. Dist. LEXIS 49081 (N.D. Ill. Mar. 16, 2020), where a district court in Illinois conducted a nationwide survey of case law and determined that a magistrate judge can properly order non-dispositive discovery sanctions under Rule 37. [*See* R.

697 at 35-36.]  He then analyzed a plethora of case law wherein magistrate judges ordered attorneys' fees as Rule 37 sanctions.  [*See* R. 697 at 36 (collecting cases).]  Judge Ingram concluded that he believes the same analysis for an award of attorney fees under Rule 37 applies to the Rule 37(b)(2)(A)(i) sanction of making binding findings of fact that do not themselves dispose of a claim or defense.

Despite Judge Ingram's well-researched disposition, the Defendants' objection is well-taken.  Consider *Cage v. Harper*, the district court case from Illinois that conducted a nationwide survey of case law.  Like Judge Ingram, the Court finds *Cage* persuasive.  And the Court agrees with *Cage*'s conclusion that a magistrate judge does hold the authority to order non-dispositive discovery sanctions under Rule 37.  But the Court also notes that *Cage* was primarily concerned with *monetary* sanctions under Rule 37.  Although relegated to a footnote, *Cage* readily distinguishes Rule 37's fee-shifting awards from other types of sanctions:

> Of Course, there are sanctions in Rule 37 that would likely have a dispositive effect on a case.  Nothing in this opinion should suggest that those sanction [sic] should be viewed any other way—such orders that dispose of a claim are certainly dispositive.  For example, Rule 37(b)(2)(A) permits a court to order the striking of pleadings, dismissing an action, or rendering a default judgment against a disobedient party for violations of certain discovery orders.

*Cage*, 2020 U.S. Dist. LEXIS 49081 at *46, n. 3.

The Defendants cite *FDIC v. Lewis*, Case No. 2:10-CV-439 JCM (VCF), 2015 U.S. Dist. LEXIS 98985 (D. Nev. July 29, 2015), where the district court reviewed *de novo* a recommendation from the magistrate judge that the court sanction judgment debtor under Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(ii).  The Court finds *Lewis* persuasive too.  Absent any controlling or more conclusive authority on the issue of whether a sanction under 37(b)(2)(A)(i) is dispositive or not, the Court is inclined to follow its sister courts.

So what does that mean, practically speaking?  It means that the Court does not believe that the magistrate judge holds that authority to order 37(b)(2)(A)(i) sanctions.  This does *not* mean, however, that the Court disagrees with Judge Ingram's factual findings.  Reviewing the record *de novo*, the Court agrees with Judge Ingram's underlying reasoning, and concurs in his conclusion that a sanction under Federal Rule of Civil Procedure 37(b)(2)(A) is appropriate.

The Court need not rehash all of the facts—the Court finds that Judge Ingram's recommendation provides an accurate rendition of the record.  But some facts, which are relevant to the Court's reasoning, are worth mentioning here.  The Court entered default judgment against the Defendants and awarded damages to the Plaintiffs all of the way back in April 2020. [R. 467.]  Under the federal rules, judgment creditors may obtain discovery from any person— including the judgment debtor—to aid in the judgment or execution.  Fed. R. Civ. P. 69(a)(2).  In fact, post-judgment discovery is "very broad."  *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007).  As this District as explained previously, "[a] judgment creditor 'is entitled to utilize the full panoply of federal discovery measures provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred.'"  *In re ClassicStar Mare Lease Litig.*, No. 5:06-CV-243-JMH, 2017 U.S. Dist. LEXIS 248 at *51 (E.D. Ky. Jan 3, 2017).

In this particular case, the Defendants have continuously evaded and hindered the post-judgment discovery process.  In May 2021, Judge Ingram ordered them to respond to interrogatories and to turn over relevant documents.  [R. 505.]  They refused.  As far as the Court is aware, they *still* have not complied with Judge Ingram's Order.  In December 2022, the Plaintiffs renewed a motion for contempt and sanctions.  [R. 673.]  Unable to gain the discovery

7

needed to prove their post-judgment theory that the Defendant companies are closely controlled by the Justice family, the Plaintiffs specifically requested that the Court make certain findings of fact. *See id.*

Rule 37(b)(2)(A) provides that where a party fails to obey a discovery order, the court may impose sanctions "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims". The Court has broad discretion to fasten an appropriate sanction under Rule 37(b). *See Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1329 (11th Cir. 2023) (citing *Marshall v. Segona*, 621 F.2d 763, 766 (5th Cir. 1980) ("The bandwidth of the District Court's power to impose Rule 37 sanctions is broad indeed. We will not interfere unless . . . there has been an abuse of discretion.")); *see also Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 (5th Cir. 2004) (the district court's finding of alter ego as a Rule 37(b)(2)(A) discovery sanction reviewed for abuse of discretion). This broad discretion is afforded to district courts because "[a] judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." *Id.* (quoting *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996)).

The Supreme Court has instructed that discretionary sanctions under Rule 37(b)(2) which a district court may invoke must be "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The Fifth Circuit has noted that "deeming the establishment of certain facts is one of the least harsh sanctions available to courts under Rule 37(b). Indeed, it is only more severe than the granting of expenses and attorneys' fees." *Chilcutt v. United States*, 4 F.3d 1313, 1320, n. 17 (5th Cir. 1993). Multiple appellate

courts have upheld a district court's establishment of alter ego as a Rule 37(b)(2)(A) discovery sanction.  *See e.g.*, *Global NAPs, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 93-94 (1st Cir. 2010) (affirming default judgment on alter ego claim that was entered as discovery sanction); *Compaq*, 387 F.3d at 412-14 (5th Cir. 2004) (affirming in part district court's finding of alter ego as a discovery sanction under Rule 37(b)(2)(A)(i)).

The purpose of the post-judgment discovery was to discover facts that would support a finding of alter ego.  The Defendants then engaged in abusive practices for the sole purpose of frustrating the Plaintiffs' ability to extract the discovery.  Despite these facts, the Court will abstain from sanctioning the Defendants under Rule 37(b)(2)(A)(i).  Although the Defendants' conduct is egregious, declaring a factual finding of alter ego at this particular juncture is premature.  That does *not* mean, however, that alter ego will never be found.  It may very well be the case that, down the road, the Court will make a finding of alter ego.  The Court will welcome a future motion by the Plaintiffs for an alter ego finding if the Defendants continue to evade discovery after the entry of this Order.  The Defendants are hereby *warned* that if they fail to cooperate, the Court may deem it appropriate to enter a finding of alter ego as a discovery sanction.

## B

### i

The Defendants' next objection relates to contempt santions.  The Defendants object to Judge Ingram's recommendation that Jay Justice and Stephen Ball be assessed a penalty commensurate with the eventual final judgment should they be found in contempt.  [R. 708 at 7.] The Defendants first argue that Judge Ingram has already sanctioned Mr. Justice and Mr. Ball for violations of the discovery order by directing them to appear for depositions.  *Id*. at 8.  They then

argue that the depositions cured most discovery deficiencies by solving persistent mysteries regarding the Justice companies' finances. *Id*. at 8-13. These two arguments are equally unconvincing and can be quickly disposed of.

First, the notion that ordering Mr. Justice and Mr. Ball to appear for depositions constituted contempt sanctions is incorrect. In May 2023, Judge Ingram ordered Mr. Justice and Mr. Ball to appear for depositions. Judge Ingram reached that disposition after the Plaintiffs had filed a motion for sanctions against the Defendants. Why? Because the Defendants failed to obey Judge Ingram's discovery order, which instructed the Defendants to respond to interrogatories and to turn over responsive documents. In that May 2023 order, Judge Ingram found that "some form of sanctions is appropriate. But the Court needs more evidence to make the proper findings as to the details of those sanctions." [R. 565 at 15.] Judge Ingram was intending to proceed under the rubric for imposing sanctions on corporate officers and directors set out in *Elec. Workers Pension Tr. Fund of Loc. Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373 (6th Cir. 2003). But Judge Ingram also made clear that he was "not ready to impose these sanctions at this juncture because the record needs further development." [R. 565 at 11.] It was to further develop that record that Judge Ingram "order[ed] the relevant members of the Justice Family to submit to depositions." *Id*. at 15 ("The depositions will allow the parties to gather evidence on the questions implicated in the *Electric Workers* standards."). Judge Ingram clearly described the order to submit for depositions as "[p]reliminary (non-contempt) santion[]" and entered his Order on a non-dispositive matter pursuant to 28 U.S.C. § 636(b)(3) and Federal Rule of Civil Procedure 72(a). *Id.* at 18, 20. This Court later affirmed Judge Ingram's order. [*See* R. 715.] The record is clear that Mr. Justice and Mr. Ball have *not* already been sanctioned for contumacious conduct.

Second, the depositions certainly did *not* cure most discovery deficiencies.  The Defendants aver that the depositions helped to solve "persistent mysteries regarding the Justice companies' finances."  [R. 708 at 8.]  The only correct piece of the Defendants' assertion is that the Justice companies' finances have been, indeed, a *persistent* mystery.  Whose fault is that?  The Defendants'.  And the fact of the matter is that the mysteries *continue* to persist.  [*See* R. 741 ("Unfortunately, due to the Defendants' all-to-familiar tactics of non-cooperation and delay, more years have passed, and no one on the outside is closer to understanding the corporate web within which Defendants are only two strands."); *see also* R. 697 at 15 ("The situation has not substantially improved, despite the depositions.").]  Still, regardless of whether any discovery deficiencies were cured—which, to be clear, they were *not*—the question is whether the Defendants should be held in contempt for failing to obey a clear and direct order from Judge Ingram.  Their attempt to receive a "get out of jail free" card by arguing that they retroactively answered the Plaintiffs' discovery requests through depositions—which they were ordered to appear for in order to develop a record for the contempt proceedings now before the Court—is unconvincing.

The Defendants' third argument regarding contempt sanctions is simple:  there is no evidence of contumacious conduct.  The Defendants argue that "[i]t is impossible to reconcile the magistrate judge's recommendation of civil contempt with the deposition testimony." [R. 708 at 14.]  They aver that their failure to comply with the Discovery Order was simply the result of institutional dysfunction and negligence, stating "there is no suggestion" that Messrs. Justice and Ball "have done anything but strictly comply with the subsequent Sanctions Order." *Id*.  Accepting Judge Ingram's recommendation "would potentially hold Messrs. Justice and Ball liable for the entire judgment as the result of Defendants' violation of a *single* Discovery Order."

11

*Id.* (emphasis in original).  They suggest that the Court's "aim should be to seek and secure compliance with whatever additional documentation may presently be deemed necessary to satisfy the Court that Defendants cannot satisfy the judgment against them . . . ."  *Id*.  The Defendants contend that this Court should fasten a remedy similar to the one in *FDIC v. Lewis*, where the magistrate judge gave the judgment debtor "one last chance to provide full and complete discovery responses."  *See id.* (citing Case No. 2:10-cv-439-JCM-VCF, 2015 U.S. Dist. LEXIS 98988 at *40 (D. Nev. May 29, 2015).

Unfortunately for the Defendants, the buck stops here.  But first, a brief discussion of law is in order.  28 U.S.C. § 636(e) is the applicable section of the Federal Magistrate's Act governing a magistrate judge's contempt authority.  Section 636(e) provides that a "magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection."  In civil cases such as this one, where the parties have not consented to the magistrate judge ordering the final entry of judgment, contempt is governed by Section 636(e)(6)(B), which reads:

> Upon the commission of any such act—
>
> …
>
> (B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where—
>
> …
>
> (iii) the act constitutes a civil contempt,
>
> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall

thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B).

Basically, the magistrate judge's role on a motion for contempt in non-contempt cases is to certify facts relevant to the issue of contempt to the district judge. *Total Quality Logistics, LLC v. TW Transp. Solutions, LLC*, Case No. 1:11-cv-183, 2012 U.S. Dist. LEXIS 78718 at *4 (S.D. Oh. June 6, 2012) (collecting cases). "The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Id*. (citations omitted). Pursuant to the Magistrate's Act, the district judge shall then "hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." 28 U.S.C. § 636(e)(6)(B).

Judge Ingram certified the following facts to this Court under § 636(e)(6):

1. On April 24, 2020, judgment was entered in favor of Plaintiffs. D.E. 467.

2. On May 27, 2020, Plaintiffs served post-judgment interrogatories and requests for production of documents. D.E. 475, 476. This consisted of ten interrogatories and eighteen production requests. D.E. 498-4, 498-5. Defendants objected to 25 of the 28 total requests. *See* D.E. 498-6, 498-7.

3. On December 28, 2020, Plaintiffs' counsel Edward Shipe emailed the undersigned's Chambers to request a discovery dispute teleconference. D.E. 489.

4. On January 6, 2021, Hon. Christopher Schroeck entered his appearance as in-house counsel for Defendants Kentucky Fuel Corporation and James C. Justice Companies, Inc. D.E. 490.

5. On January 7, 2021, the Court conducted an on-the-record teleconference on the post-judgment discovery dispute. D.E. 492. Edward Shipe and Christopher Schroeck appeared on behalf of the parties. The Court granted Plaintiffs leave to file a motion to compel discovery production and set a briefing schedule. *Id*. Mr. Schroeck was "DIRECTED" to obtain a recording of the call. *Id*.

6. As can be seen in the transcript of the teleconference (D.E. 501-1), the Court told Mr. Schroeck to make the audio recording available to his clients so they would understand the Court's expectation as to their full compliance with post-judgment discovery. *Id*. The Court said "one thing that needs to be made clear" is that Mr. Schroeck was to "relay" to his clients the need to fulfill their discovery obligations under the Rules because the Court could not at this point trust they were operating in good faith. *Id*.

7. Mr. Schroeck obtained the audio recording of the January 2021 teleconference and provided it to Mr. Ball. See D.E. 494.

8. On January 29, 2021, Plaintiffs filed their motion to compel, with exhibits. D.E. 495, 496, 498.

9. After full briefing on the motion to compel, on April 16, 2021, the Court issued the Discovery Order overruling Defendant's objections and granting several of Plaintiffs' requests for relief. D.E. 505. This included an order that Defendants provide "complete narrative, sworn responses to all ten interrogatories." *Id*. at 4. Defendants were given until May 17 to comply. *Id*. at 3.

10. The Discovery Order was a definite and specific order of the Court.

11. Defendants failed to comply with the Discovery Order. They did not, and have not, provided complete narrative, sworn responses to all ten interrogatories. They did not, as ordered, identify all their affiliate companies and provide information about transactions with these companies. They did not fully disclose records from 2010 to 2015. And Defendants continue to withhold documentation of transactions between Defendants and the affiliate companies. Each of these findings of noncompliance is supported by clear and convincing evidence.

12. Stephen Ball had at least constructive knowledge of the Discovery Order. He testified at his deposition, "After that April order, I understood that we needed to provide additional information. I did not personally read the order at that time. The only thing I read was [the ECF notice where] there's like a summary in the body of the email." D.E. 659 at 16. Mr. Schroeck also testified he told Mr. Ball about the January 2021 teleconference, which would have put Mr. Ball on notice that a discovery order was likely imminent. Mr. Schroeck also gave Mr. Ball access to the recording of the teleconference. The evidence is clear and convincing that Stephen Ball knew of the existence of the Discovery Order.

13. Jay Justice had at least constructive knowledge of the Discovery Order. Mr. Ball testified in his deposition that, after the April Discovery Order was issued, he made Jay Justice "aware that we had to provide additional information." D.E. 659 at 19. Jay Justice testified he knew "we have been ordered to provide

discovery," without knowing "the extent of that." D.E. 638-1 at 29. Mr. Schroeck also testified he told Jay Justice about the January 2021 teleconference, which would have put Mr. Justice on alert that a discovery order was likely imminent.  The evidence is clear and convincing that Jay Justice knew of the existence of the Discovery Order.

14.  Jill Justice had no knowledge of the existence of the Discovery Order until June 2022.

15. On June 7, 2021, Plaintiffs filed a sealed status report complaining that Defendants had not complied with the Discovery Order.  D.E. 507.  Plaintiffs believed Defendants' discovery abuses were an intentional tactic to wear down Plaintiffs' resources. *Id.* at 3. They also believed Defendants had transferred their assets to affiliate companies to make themselves judgment proof and were trying to keep the paper trail under wraps.  *Id.*  The Court granted Plaintiffs leave to seek additional relief. D.E. 509.

16. On August 16, 2021, Plaintiffs filed a motion for sanctions, which included among other things a request for a finding of contempt against the directors/officers of Defendants.  D.E. 510, 512, 514.

17. On September 7, 2021, Hon. Ronald H. Hatfield entered his appearance as in-house counsel for Defendants Kentucky Fuel Corporation and James C. Justice Companies, Inc.  D.E. 519.

18. After full briefing on the motion for sanctions, on March 23, 2022, the Court issued the Sanctions Order. D.E. 565. That Order granted in part the motion for sanctions, and ordered Stephen Ball, Jay Justice, Jill Justice, and Summer Deane to submit to depositions.  *Id.*

19. Stephen Ball, Jay Justice, Jill Justice, and Summer Deane were deposed, and Plaintiffs filed the transcripts and exhibits in the record.  D.E. 638-1 & -2; D.E. 639-1 & -2; D.E. 659 to 668.

20. On December 13, 2022, Plaintiffs filed their Renewed Motion for Contempt and Sanctions (D.E. 673), which has been fully briefed.

21. Stephen Ball and Jay Justice have not met their burden of proving inability to comply with the Discovery Order.  Defendants have not addressed categorically and in detail why they may have been unable to comply with the different components of the Discovery Order.  Further, they have not pointed to any factor beyond their control that prevented compliance. In other words, their noncompliance was self-induced. Stephen Ball and Jay Justice also have not shown they took all reasonable steps to comply. Rather, their noncompliance with the Discovery Order was a strategic litigation decision.  A demonstration

of "clean hands" and present inability to comply are Defendants' burden, and they have not met it.

[R. 697 at 38-40.]

It is important to note that the Defendants do not object to the law that Judge Ingram applied. They only object to his recommendation of civil contempt based on the certified facts. On September 29, 2023, the Court held a hearing to allow Jay Justice and Stephen Ball to show cause why they should not be held in civil contempt for failing to comply with the Discovery Order. [R. 725.] Messrs. Justice and Ball were present at the hearing but, according to their counsel, did not come with the intention of putting on new testimony. *Id*.; [*see* R. 732 at 5.] In other words, their opportunity to further develop the record came and went. Based on the factual record before it then, which the Court has reviewed *de novo*, the Court is in agreeance with Judge Ingram's version of the facts.

The Defendants contend that Judge Ingram's finding that Mr. Justice and Mr. Ball personally conducted themselves with contempt and disrespect for the judicial process is against the clear weight of the evidence. [R. 708.] But the truth of the matter is that that the Defendants did not, and still have not, complied with Judge Ingram's discovery order at Record 505. And who controls the Defendant entities? To a large extent, Jay Justice and Stephen Ball.[1] The Defendants have emphatically repeated the notion that corporate formalities are important. This Court has never doubted the significance of corporate structure under the law. *See e.g.*, *CTIA - The Wireless Ass'n v. Ky. 911 Servs. Bd.*, Case No. 3:20-cv-00043-GFVT, 2024 U.S. Dist. LEXIS 57686 at *14 (E.D. Ky. March 29, 2024) ("The Court does not discount the fact that

---

[1] As Judge Ingram explained, the extensive record of this case reveals that that the director positions of Defendants have always been occupied by some combination of Jay Justice, Jill Justice, and (in the past) Governor James C. "Jim" Justice. Summer Harrison Deane has served as Vice President of Treasury for Defendants. Attorney Stephen "Steve" Ball has served as Executive Vice President and General Counsel for Defendants. [*See* R. 697 at 5, n. 1.]

corporate formalities matter a great deal.") (citing *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).  Under the law, corporate entities are treated like people.  Indeed, corporate personhood is a necessary legal fiction that allows corporations to enter into contracts, buy and sell land, commit torts, sue and be sued.  Sanford A. Schane, *The Corporation Is a Person: The Language of a Legal Fiction*, 61 Tul. L. Rev. 563 (1987).  But corporations are controlled by actual people.  And the corporate structure cannot be used as a Heraclean shield to deflect accountability when corporate officers and directors directly prevent the company that they control from complying with its obligations.

The Sixth Circuit has made clear that corporate officers can be held in contempt.  *Elec. Workers*, 340 F.3d at 378.  "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs."  *Id*. (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)).  "Thus, a corporate officer . . . with knowledge of a court order directed to his or her corporation is subject to the court order in the same manner as the corporation and may be found in contempt of court for failing to comply with that order."  *A & H Mgmt. Servs. v. Chafflose Corp.*, No. 10-3661, 2010 U.S. App. LEXIS 27436 at *4 (6th Cir. Aug. 26, 2010) (citing *Elec. Workers*, 340 F.3d at 380-83); *see also Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 803 (6th Cir. 2017) ("non-party corporate officers can be held in contempt for the corporation's failure to comply with the court's order, so long as they were responsible for the corporation's conduct and failed to take appropriate action to ensure performance.").

A sanction imposed upon a finding of civil contempt is "designed to compel future compliance with a court order" and is "considered to be coercive and avoidable through obedience."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Daily fines until the alleged contemnor complies with a court order is an acceptable civil

contempt sanction. *Id*. at 828-30. A party seeking civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly "violated a definite and specific order of the court." *Gascho*, 875 F.3d at 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Contempt cannot be based on "a decree too vague to be understood," but is instead reserved for those who fully understand the meaning of a court order and yet choose to ignore its mandate. *Id*. (citation omitted) (cleaned up). If the moving party makes the required showing, the non-movant may defend the contempt motion by showing "a present inability to comply with the order in question." *United States v. Rylander*, 460 U.S. 752, 757 (1983). To meet this production burden in the Sixth Circuit "a defendant must show categorically and in detail why he or she is unable to comply with the court's order." *Electric Workers*, 340 F.3d at 379 (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The non-movant must also show "that he is not responsible for the present inability to" comply with a court order. *Id*. at 383. When evaluating a party's failure to comply with a court order, the Court considers whether the party "took all reasonable steps within [their] power to comply with the court's order." *Id*. (citation omitted).

The Court agrees with Judge Ingram's disposition that the Plaintiffs have shown by clear and convincing evidence that the Defendants have violated a specific court order. The Defendants have not provided narrative responses, identified their affiliate companies, nor provided information about transactions with these companies. Further, the Defendants have not turned over responsive documents, which include records from 2010 to 2015 and actual records of transactions between Defendants and the affiliate companies. Moreover, the Court holds no doubt that Judge Ingram's discovery order was definite and specific. [*See* R. 505.] Judge

18

Ingram overruled a series of objections by the Defendants and provided *very* specific directions for compliance.  Yet, compliance has still never come.

The Court also agrees that the Plaintiffs have shown by clear and convincing evidence that Messrs. Justice and Ball had knowledge of Judge Ingram's discovery order.  As a sister court in this circuit has found, constructive knowledge is sufficient to find that a contemnor had knowledge of a specific court order.  *See Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005) (citing *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985)).  Constructive knowledge of the order's existence is enough; knowledge of the order's precise terms is not required.  *See id.* at 801-02; *see also Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines,* No. 90 C 1853, 1995 WL 472705, at *8 (N.D. Ill. Aug. 8, 1995).  This framework prevents corporate officers from remaining deliberately ignorant so as to avoid a contempt citation.  In this case, there is ample evidence that Messrs. Justice and Ball had knowledge of Judge Ingram's discovery order.  There was the discovery teleconference where Judge Ingram unequivocally instructed the Defendants' then-attorney to relay the discovery issues to his clients, i.e., Jay Justice and Stephen Ball[2].  [R. 501-1.]  The Defendants' then-attorney later testified in his deposition that he "definitely discussed" the discovery-dispute teleconference with Mr. Ball and that he was "sure at some point I discussed it with Mr. Justice as well, although I would imagine he heard about it from Mr. Ball before he heard about it from me."  [R. 661 at 10.]  Mr. Ball's own deposition testimony reveals that he had knowledge of the discovery order.  [R. 659 at 16.]  And Mr. Ball himself made Mr. Justice aware that the Defendants were to provide additional discovery.  *Id.* at 19.  Although Mr. Justice denies remembering specifics of any Court orders, including Judge Ingram's discovery

---

[2] The attorney was asked about this teleconference during his deposition.  He testified he understood that the Court was "basically" referring to Stephen Ball and Jay Justice.  [R. 661 at 10.]

order, he knew that the Defendants had been ordered to provide discovery.  [R. 638-1 at 29, 30, 99.]  The evidence is clear and convincing that Messrs. Justice and Ball had knowledge of Judge Ingram's discovery order.

Lastly, the Court agrees with Judge Ingram that the Defendants have not met their burden of proving a present inability to comply with the discovery order.  The Defendants' burden is to establish (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply.  *Elec. Workers*, 340 F.3d at 381.  A showing of "clean hands" is essential.  *Id*. at 384.  Judge Ingram found that the Defendants did not meaningfully address this issue.  Rather, they merely alleged that their assigned in-house attorney was assigned to handle post-judgment discovery and that he must not have been doing a great job.  But as Judge Ingram observed, the "Defendants have been represented in this litigation by a series of attorneys.  Yet, even as the attorneys changed, the discovery problems never abated . . . . it has long been clear to the Court that the misbehavior in this case has been client-driven."  [R. 697 at 12.]  Regardless of who is at fault, the Defendants have not shown "categorically and in detail" why they are unable to comply with the Court's order.  Nor have they provided any evidence indicating that their refusal to comply has been anything other than self-induced.  The Court has repeatedly cited here, and in previous orders, the egregious litigation tactics employed by the Defendants.  There are no clean hands.  The Defendants have the ability to comply with Judge Ingram's discovery order; they just simply refuse to do so.

So, where does all of this leave us?  The preceding discussion can be summed up summarily:  the Plaintiffs have shown by clear and convincing evidence that the Defendants did not comply with a Court order of which Jay Justice and Stephen Ball had knowledge.  The

20

Defendants have not provided evidence proving a present inability to comply with the discovery order.  And, pursuant to Sixth Circuit precedent, the Court finds that Messrs. Justice and Ball, as corporate officers of the Defendant entities, are in contempt for failing to comply with Judge Ingram's discovery order.  The Defendants contend that they should be granted "one last chance to provide full and complete discovery responses."  [R. 708 at 15 (citation omitted).]  In reality, the Defendants have already received their last chance.  The very discovery order they *continue* to disobey was supposed to be their last chance.  They will receive no more.

### ii

The question remains, then, what sanctions are appropriate for the Defendants' contempt.  The Plaintiffs have requested that the officers/directors should face a monetary sanction in an amount up to the ultimate judgment in this case.  [R. 673.]  The Plaintiffs also propose an additional or alternative sanction against Jay Justice.  *Id.* at 33-34.  According to Plaintiffs, the record shows Jay Justice received a farm property worth $13.5 million from Defendant James C. Justice Companies without having to pay for it.  Jay Justice also has $31.7 million in unpaid loans from James C. Justice Companies. And he diverted to himself the payments from the New Lead Transaction whereby the property underlying this case was sold to a foreign company for mining.  *Id.*  Judge Ingram recommends that this Court impose monetary sanctions on Mr. Justice both to compensate Plaintiffs for discovery abuses as discussed above and in the alternative as a sanction for diverting assets to himself.  [R. 697 at 32.]

"Contempt is serious."  *Gascho*, 875 F.3d at 799.  "To reflect its seriousness, courts must exercise the contempt sanction with caution and use '[t]he least possible power adequate to the end proposed.'"  *Id.* (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).  But "[t]he power to shape the appropriate remedy for a finding of contempt lies squarely within the

discretion of the district court." *Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 644-45 (6th Cir. 2015). The Court will only be reversed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Gascho*, 875 F.3d at 799 (citing *Elec. Workers*, 340 F.3d at 378).

"The primary purpose of a civil contempt order is to 'compel obedience to a court order and compensate for injuries caused by non-compliance.'"[3] *McMahan & Co. v. Po Folks, Inc.* 206 F.3d 627, 634 (6th Cir. 2000) (quoting *TWM Manuf. Co. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983)). "The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command." *Int'l Union United Mine Workers of Am.*, 512 U.S. at 828. The Court finds it premature, however, to impose a contempt sanction to compensate the plaintiffs up to the full amount of judgment. That day may come. At this juncture, however, the Court does find that a per diem civil penalty imposed on Jay Justice and Stephen Ball is appropriate until they ensure that Judge Ingram's discovery is *fully* complied with.

### iii

The Defendants' last objection relates to Judge Ingram's award of costs and attorneys' fees. The Defendants' one-sentence cursory objection does not command an exhausting analysis. Seeing as the Court has determined that contempt sanctions are in order, the Court finds that Judge Ingram's award of attorneys' fees and costs was appropriate. *See McMahan &*

---

[3] The Court notes recent Sixth Circuit precedent suggesting that, where the district court has the authority to sanction corporate managers, those sanctions are permissible against individual officers only when (1) they are intended to compensate for actual losses, and (2) the actual losses compensated for were caused by the officer's contumacious conduct. *Gascho*, 875 F.3d at 803. *Gascho* considered whether corporate managers should be held in contempt for violating an order to pay. Here, the Court considered whether to hold Jay Justice and Stephen Ball in contempt for failing to obey a discovery order. Thus, the Court finds *Gascho* distinguishable, and believes that under *Int'l Union United Mine Workers of Am.*, it may use sanctions as a coercive measure to compel obedience with the discovery order.

*Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) ("[a]n award of attorney's fees is appropriate for civil contempt in situations where court orders have been violated.").

## C

Finally, the Court turns to the Plaintiffs' objection to Judge Ingram's recommendation. The gist of the Plaintiffs' objection is that Dr. Jill Justice should also be held in contempt.  While not condoning Dr. Justice's ignorance of the litigation, Judge Ingram determined that the knowledge element of civil contempt was not satisfied as to Dr. Justice.  [R. 697 at 24.]  The Plaintiffs argue that Judge Ingram committed legal error in his analysis on this point.  [*See* R. 705.]  They aver that Dr. Justice did not have actual knowledge of the discovery order because she made the "conscious decision to remain totally uninformed about the companies for which she is a fiduciary and about their litigation." *Id*. at 9.  In essence, the Plaintiffs contend that Dr. Justice cannot rely upon a violation of her fiduciary duty to create an illusion of ignorance.

Plaintiffs provide a thorough analysis of *Central States*, a district court case in a sister circuit that stands for the proposition that, "in the context of civil content, … notice of a court's order … is notice of the order's existence not of its precise terms." *Id*. at 6. (citing *Central States, Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 WL 472705 (N.D. Ill. Aug. 8, 1995)).  The Plaintiffs cite Judge Ingram's exclusion of *Central States* holding that "constructive notice, namely less than actual knowledge but awareness of facts sufficient to cause a reasonable person to inquire further, is adequate notice to a corporate officer of the existence of a court order to satisfy due process…." *Id*.  Basically, the Plaintiffs are arguing that Dr. Justice was aware of facts that would have been sufficient to cause her to inquire further.  Her "willful blindness" cannot shield her from having constructive notice.

The Plaintiffs' objection is well taken.  But the Court does not find that Judge Ingram committed legal error.  Judge Ingram thoroughly analyzed *Central States* and found it distinguishable.  First, he found that *Central States* is an unpublished district-court case from another circuit.  [R. 697 at 23.]  Judge Ingram also observes that, in the cases which he relied on, "constructive knowledge" is used to mean that knowledge of an order's existence confers constructive knowledge of the order's contents/details.  *Id*. at 23. Because there was no evidence in the record that Dr. Justice was aware of the existence of the discovery order prior to its self-contained deadline, Judge Ingram did not find clear and convincing evidence that she knew about the discovery order and then failed to act on it when the time was ripe.  *Id*. at 24.

The Plaintiffs cite the Sixth Circuit's Pattern Jury Instructions, which make clear that in a criminal case, a presumption of knowledge can be appropriate when a person is "willfully blind." [R. 705 at 8.]  Indeed, someone who chooses to remain "deliberately ignorant" can be presumed to have knowledge.  *See United States v. Warshawsky*, 20 F.3d 204, 210-11 (6th Cir. 1994).  But even if the Court were to adopt and apply these knowledge standards, the facts are still less than clear and convincing that Dr. Justice had knowledge of the discovery order at issue.

The Plaintiffs concede that Dr. Justice's brother and father elected her as a director to be nothing more than the figurehead, which Dr. Justice readily admits to.  [R. 705 at 11.]  Thus, unlike Jay Justice or Stephen Ball, Dr. Justice was less likely to have a keen interest in the goings-on of the Defendant entities than her brother or Mr. Ball.  The Plaintiffs aver that there were numerous times when Dr. Justice should have known about this litigation and the discovery order, and that any prudent businessperson would have made reasonable inquiries.  That is probably true.  But the only shareholders appear to be Jim Justice, Jay Justice, and Dr. Jill Justice herself.  Thus, the Court finds it just as plausible that Dr. Justice abdicated her duties, not to

24

maintain willful ignorance, but because she practically saw herself as having no role in running these particular operations. Given the fact that Judge Ingram did not commit an error of law, and given that the Plaintiffs' evidence falls short of proving clearly and convincingly that Jill Justice had knowledge of Judge Ingram's discovery order at the time prior to its self-contained deadline, the Court affirms and accepts Judge Ingram's recommendation as to Dr. Jill Justice.

III

Judge Ingram articulated a thoughtful and thorough recommendation. Although the Court departs from some of Judge Ingram's dispositions, the Court agrees with Judge Ingram that the officers and directors of the Defendant entities must be brought to account. There will be no more chasing the wind. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. To the extent that Judge Ingram's Order [**R. 697**] grants the Plaintiffs' motion to enter conclusive factual findings pursuant to Rule 37(b)(2)(A)(i), it is **OVERRULED**;

2. Judge Ingram's granting of Plaintiffs' request for attorneys' fees and expenses related to their Renewed Motion for Contempt and Sanctions is **AFFIRMED**;

3. To the extent that Judge Ingram's recommendation relates to civil contempt sanctions pursuant to rule 37(b)(2)(A)(vii) and 28 U.S.C. § 636(e)(6), it is **ADOPTED** for and as the opinion of the Court;

4. Mr. Jay Justice and Mr. Stephen Ball are held in civil **CONTEMPT** for failing to direct the Defendant entities to cooperate with Judge Ingram's discovery order at Record 505;

5. Pursuant to this Court's authority under 37(b)(2)(A)(vii) and 28 U.S.C. § 636(e)(6), Mr. Justice and Mr. Ball **SHALL** be **SANCTIONED** so long as they remain in contempt;

25

6.  Starting **fifteen (15) days** from this Order, Mr. Jay Justice **SHALL** pay sanctions to the Clerk of the United States District Court for the Eastern District of Kentucky in the amount of **$250.00 per day** for the Defendants' noncompliance with Judge Ingram's discovery order.  Mr. Justice shall continue to pay monetary sanctions until Judge Ingram's discovery order is *fully* complied with.  Whether compliance has been fully attained shall be a question of determination for Judge Ingram, who will prepare a timely recommendation for this Court.  Payment shall not cease until ordered by this Court;

7.  Starting **fifteen (15) days** from this Order, Mr. Stephen Ball **SHALL** pay sanctions to the Clerk of the United States District Court for the Eastern District of Kentucky in the amount of **$250.00 per day** for the Defendants' noncompliance with Judge Ingram's discovery order.  Mr. Ball shall continue to pay monetary sanctions until Judge Ingram's discovery order is *fully* complied with.  Whether compliance has been fully attained shall be a question of determination for Judge Ingram, who will prepare a timely recommendation for this Court.  Payment shall not cease until ordered by this Court; and

8.  The Court reserves jurisdiction to consider such other and further relief as may be appropriate in the event that the Defendant entities fail to comply with Judge Ingram's discovery order, or in the event that Messrs. Justice and Ball fail to comply with this Court's order.

This the 26th day of July 2024.

Gregory F. Van Tatenhove
United States District Judge

26