IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

**NEW LONDON TOBACCO MARKET, INC.**,
and **FIVEMILE ENERGY, LLC**,

 *Plaintiffs*,

v.                  Case No. 6:12-CV-91-GFVT-HAI

**KENTUCKY FUEL CORPORATION**, and
**JAMES C. JUSTICE COMPANIES, INC.**,

 *Defendants*.

## DEFENDANTS' MOTION TO VACATE SANCTIONS

Since their most recent discovery response on October 25, 2024, and the Court's February 10, 2025 order imposing additional sanctions, Defendants have diligently reviewed their files and their previous postjudgment discovery productions. That review has provided a comprehensive picture of Defendants' productions and placed those productions in a new light. The complete extent of Defendants' discovery productions has perhaps not been fully understood or presented to the Court as effectively as it could have been, in part because the postjudgment discovery in this case was handled by a number of different counsel and staff over time, including individuals no longer employed by Defendants, and complete records of the production had not been maintained in one place. Upon review, however, and as set forth in the attached Declaration of Ronald H. Hatfield (Exhibit 1, hereinafter "Hatfield Decl."), it is apparent that productions made in 2021 did encompass the set of discoverable, responsive documents dating back to 2010, consistent with the Magistrate Judge's April 16, 2021 order requiring the

production of documents back to that time. This motion explains those productions in greater detail than the Court has previously seen. And after reviewing their past productions in full—which are detailed below—as well as their files, Defendants have been able to identify no further discoverable, responsive documents that can be produced. The attached declaration attests to this. A contrary conclusion would rest on a misunderstanding of what Defendants have produced.

Defendants therefore move the Court to vacate the sanctions ordered against James C. Justice III and Stephen W. Ball for the period after October 25, 2024, when they produced their most recent discovery response. Contemporaneously herewith, Messrs. Justice and Ball are submitting payment of sanctions for the period from October 15, 2024, when they made their last sanctions payment, to October 25, 2024. Defendants respectfully request a hearing before the District Court on this matter as soon as practicable and further request that the District Court review their discovery production *in camera* to confirm its completeness.

### I. History of Postjudgment Discovery

Following the entry of judgment in this case, Plaintiffs served postjudgment discovery regarding Defendants' assets and ability to pay. The discovery took the form of requests for production of documents, as well as interrogatories. Defendants responded to that discovery with several different productions and responses. On or around June 26, 2020, Defendants made an initial postjudgment document production of approximately 1492 pages of documents. On or around that same date, Defendants responded to Plaintiffs' postjudgment interrogatories. Later that year, Defendants made a supplemental production of nearly 1000 pages.

Subsequently, in response to a motion filed by Plaintiffs, the Magistrate Judge entered an Order compelling the production of certain additional documents. ECF 505. These included documents dating back to 2010 (Defendants had initially objected to producing documents

predating 2015) and documents relating to transactions with Defendants' affiliates. In response to the Magistrate Judge's ruling, Defendants produced substantially more documents. On or around May 17, 2021, they produced nearly 6000 additional pages. These included records dating back to 2010 and records relating to both Defendants and their subsidiaries.

Defendants also sought to obtain—again, in response to the Magistrate Judge's April 2021 order—copies of bank records that they no longer possessed. This required Defendants to subpoena records from banks including JP Morgan Chase, Wells Fargo, Premiere Bank, Peoples Bank, BB&T, Truist Bank, Pinnacle Bank, Carter Bank and Trust, First National Bank (located in Williamson, West Virginia), and Bank of America. Defendants served those subpoenas in or around September 2021, requesting all bank records dating back to 2010. An example of those subpoenas is attached as Exhibit 2. On or around December 7, 2022, Defendants produced more than 1100 pages of bank records provided, in response to those subpoenas, by Carter Bank and Trust, Pinnacle Bank, Premiere Bank, Peoples Bank, and First National Bank. On or around February 24, 2022, Defendants produced more than 7000 pages of bank records obtained via the subpoena to JP Morgan Chase, identified as SB1264782-F1 1-7734 and dating back to 2010. On or around April 13, 2022, Defendants produced more than 7000 pages of additional bank records from JP Morgan Chase, identified as SB1264782-F2 1-7616. Then, on or around May 10, 2022, Defendants produced additional bank records from Peoples Bank, PNC Bank, and BB&T, along with tax returns for former JCJC subsidiaries.

Plaintiffs also propounded postjudgment interrogatories. Defendants have provided numerous responses to those interrogatories. The most recent response prior to those being served today was Defendants' Fourth Supplemental Response to Plaintiffs' Post-Judgment Interrogatories, served October 25, 2024. In those Fourth Supplemental Responses, Defendants

provided detailed, narrative responses to Plaintiffs' interrogatories, as directed by the Magistrate Judge.

Notably, Plaintiffs' postjudgment discovery has not been limited to document discovery. On the contrary, Plaintiffs have taken five postjudgment depositions, including those of Mr. Justice, Mr. Ball, Jillean Justice (a director of Defendants), Defendants' Vice President of Treasury, and a former in-house counsel to Defendants. Plaintiffs were able to exhaustively question those witnesses regarding Defendants' assets and finances using documents from Defendants' voluminous postjudgment discovery production. Mr. Justice sat for a day-and-a-half deposition on May 16 and 17, 2022, and Mr. Ball sat for nearly a full day on May 19, 2022. Plaintiffs took shorter depositions of the other three witnesses shortly after the depositions of Messrs. Justice and Ball, but had the opportunity to ask all five witnesses any question they desired to ask. Defendants paid all costs associated with the depositions, pursuant to an order of the Magistrate Judge.

The depositions provided Plaintiffs detailed, narrative information about Defendants' asset transfers over time, to the extent that information is known. Mr. Justice and Mr. Ball provided narrative testimony about transactions including the sale of coal properties by Defendant KFC and farm properties by Defendant JCJC to pay off debt. They also explained the reasons that Defendants sold and transferred real property. For convenience, these narrative responses from Mr. Justice's and Mr. Ball's depositions have been appended to a supplemental version of Defendants interrogatory responses being served contemporaneously with this motion.

II. **Defendants Have Fully Complied with Plaintiffs' Post-Judgment Discovery Requests and the Magistrate Judge's April 21, 2021 order.**

A. **Defendants Have Fully Complied with Plaintiffs' Post-Judgment Requests for Production of Documents.**

Plaintiffs' Post-Judgment Requests for Production of Documents contained 18 document requests. Defendants have fully complied with each of those requests, as set forth in detail below.

1. **Request No. 1**

Request No. 1 sought all documents relating to Plaintiffs Post-Judgment Interrogatories or referenced in the answers to those interrogatories. In productions made in 2020, Defendants produced and identified more than 2400 pages of documents responsive to this request, Bates labeled KFCPOST_000001-000676 and JCJCPOST_000001-001771. These documents included:

- An Asset Disposal Report that provided a comprehensive listing of hundreds of assets belonging to Defendants, ranging from tracts of land to heavy equipment to vehicles to computer printers and other office equipment. *See* Exhibit 3 (sample pages from Asset Disposal Report).

- Depreciation summaries reflecting the depreciation of thousands of assets owned by Defendants. *See* Exhibit 4 (sample pages from depreciation summary)

- Cash receipts journals listing every receipt of cash by Defendants. *See* Exhibit 5 (sample pages from cash receipts journal).

- A listing of all Defendants' bank accounts past and current, including bank names, account numbers, bank contact information, and the dates the accounts were opened and (if applicable) closed.

- Defendants' bank statements, reflecting the deposits to and withdrawals from their bank accounts over time.
- Defendants' annual income statements, reflecting their revenue, expenses, and income for each year.
- Defendants' annual balance sheets, reflecting their assets and liabilities.
- Defendants' loan agreements with their commercial lenders.
- An asset purchase agreement documenting the sale of substantially all of Defendant KFC's assets in a transaction to eliminate KFC's indebtedness to one of its major lenders.
- Documents reflecting Defendants' sale of real property, including deeds of transfer.
- Defendants' tax returns, which span hundreds of pages and set forth detailed information on their finances.
- Defendants' articles of incorporation, bylaws, and corporate resolutions.

Subsequently, on or around May 17, 2021—and after the Magistrate Judge overruled Defendants' objections to producing documents from 2010 forward—Defendants produced nearly 6000 pages of additional documents responsive to this request, Bates labeled JCJPOST001772 through JCJPOST007714. These documents included:

- Three hundred pages of depreciation expense reports listing all Defendants' depreciable assets—thousands of them in total—dating back to 2010.
- Cash receipts reports dating back to 2010 comprising 1441 pages and providing every available record of cash received by Defendants in that time period.

- Asset disposal reports dating back to 2010 comprising 61 pages and recording every asset disposition known to Defendants—thousands of them in total—during that time period.
- Income statements of Defendants and their subsidiaries dating back to 2010, reflecting their revenue, expenses, and income.
- Balance sheets of Defendants and their subsidiaries dating back to 2010, reflecting their assets and liabilities.
- Nearly 4000 pages of tax returns for Defendants and their subsidiaries dating back to 2010, setting forth detailed information on their finances.

In December 2021, Defendants produced more than 1000 pages of additional documents, Bates labeled DEF_000001 to -1121. These included:

- Bank records from Carter Bank and Trust, obtained pursuant to the subpoena discussed above, which sought all Carter Bank and Trust records dating back to 2010.
- Bank records from Pinnacle Bank, obtained pursuant to the subpoena discussed above, which sought all Pinnacle Bank records dating back to 2010.
- Bank records from Premiere Bank, obtained pursuant to the subpoena discussed above, which sought all Premiere Bank records dating back to 2010.
- Bank records from Peoples Bank, obtained pursuant to the subpoena discussed above, which sought all Peoples Bank records dating back to 2010.
- Bank records from First National Bank, obtained pursuant to the subpoena discussed above, which sought all First National Bank records dating back to 2010.

On February 24, 2022, Defendants produced more than 7000 pages of records from JP Morgan Chase, obtained pursuant to the subpoena discussed above, which sought all bank records dating back to 2010. These records included:

- Monthly account statements for JCJC dating back to 2010, reflecting outbound wire transfers (and the recipients thereof), transfers of funds in and out of accounts, assets held in investment accounts, and other account information.
- Images of thousands of individual canceled checks written from Defendants KFC's accounts.

On or around April 13, 2022, Defendants produced more than 7000 additional pages of records from JP Morgan Chase, also obtained pursuant to the subpoena discussed above, which sought all bank records dating back to 2010, including additional monthly account statements and canceled checks.

On April 29, 2022, Defendants produced more than 400 pages of documents Bates labeled DEF_001123 to -1528. These included:

- Engagement letters from legal counsel.
- Corporate structure charts showing Defendants' affiliates.
- A 2020 tax return for Defendant JCJC and its subsidiaries.

On May 10, 2022, Defendants produced more than 600 pages of documents Bates labeled DEF_001529 to -2164. These records included:

- Additional bank records from Peoples Bank, obtained pursuant to the subpoena discussed above, which sought all Peoples Bank records dating back to 2010.
- Bank records from PNC Bank, obtained pursuant to the subpoena discussed above, which sought all PNC Bank records dating back to 2010.

- Bank records from BB&T, obtained pursuant to the subpoena discussed above, which sought all BB&T records dating back to 2010.
- More than 500 pages of additional tax returns.

The documents produced to date in response to Request No. 1 constitute all the documents of which Defendants are aware that are responsive to that request. *See* Hatfield Decl. ¶ 5.

### 2. Request No. 2

Request No. 2 sought all Defendants' balance sheets and income statements since 2010. As noted above, Defendants have produced their balance sheets and income statements. All responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 6.

### 3. Request No. 3

Request No. 3, which was redundant with Request No. 2, sought all Defendants' balance sheets and income statements showing assets, liabilities, revenue, and income covering any periods from January 1, 2010, forward. As noted above, Defendants have produced their balance sheets and income statements. All such documents that are discoverable and of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 7.

### 4. Request No. 4

Request No. 4 sought copies of all loan applications submitted by or on behalf of either Defendant from January 1, 2010, forward. Defendants are aware of no such documents. *See* Hatfield Decl. ¶ 8. They have so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents.

### 5. Request No. 5

Request No. 5 sought copies of all notes, guarantees, financing or credit agreements of any nature to which either Defendant was a party. As noted above, Defendants have produced their agreements with their lenders. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 9.

### 6. Request No. 6

Request No. 6 sought copies of all deeds of trust, mortgages, and other documents evidencing any lien or security interest granted by either Judgment Debtor. As noted above, Defendants have produced their agreements with their lenders. Those portions of the production include all discoverable documents responsive to this request of which Defendants are aware. *See* Hatfield Decl. ¶ 10.

### 7. Request No. 7

Request No. 7 sought copies of all statements for Defendants' financial accounts. As noted above, Defendants have produced their bank statements. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 11.

### 8. Request No. 8

Request No. 8 sought copies of the complete transaction files for all transactions involving any transfer of any assets by Defendants from January 1, 2010, forward. As noted above, Defendants have produced documents and records arising from the transfer of assets. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 12.

Plaintiffs have in the past stated their belief that Defendants possess more transaction files than those that have been produced. It is not uncommon in litigation, however, for a party

seeking discovery to believe that discoverable material "should" exist or "must" exist—or to wish that it existed—even when it does not. Plaintiffs' unsupported belief or wish to that effect in this case does not establish a discovery violation.

### 9. Request No. 9

Request No. 9 sought copies of the complete transaction files for all mergers, acquisitions, or other similar transactions involving either Defendant from January 1, 2010, forward. Defendants are aware of no such documents. *See* Hatfield Decl. ¶ 13. They have so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents.

### 10. Request No. 10

Request No. 10 sought copies of all agreements between Defendants and any of their affiliates, subsidiaries, officers, directors or insiders. As noted above, Defendants have produced documents relating to asset sales. These include agreements with affiliates. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 14. As Defendants stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents, the documents responsive to this request are encompassed in the transaction-related documents that are responsive to Request No. 8.

### 11. Request No. 11

Request No. 11 sought all corporate charters, operating agreements, by-laws, minutes and other governing documents. As noted above, Defendants have produced such materials. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 15.

### 12. Request No. 12

Request No. 12 sought all financing or loan agreements to which either Defendant is a party. This request was redundant with Request No. 6. As noted above, Defendants have produced their agreements with their lenders. Those portions of the production include all discoverable documents responsive to this request of which Defendants are aware. *See* Hatfield Decl. ¶ 16.

### 13. Request No. 13

Request No. 13 sought organizational charts for Defendants. Defendants are aware of no such documents, and they so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents. To the extent entity structure charts are encompassed by this request, Defendants, as noted above, have produced those, and are aware of no additional potentially responsive documents other than those already produced. *See* Hatfield Decl. ¶ 17.

### 14. Request No. 14

Request No. 14 sought all annual reports for Defendants. Defendants are aware of no such documents. *See* Hatfield Decl. ¶ 18. They have so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents.

### 15. Request No. 15

Request No. 15 sought documents sufficient to show all assets of any nature, whether tangible or intangible, including contract rights, with an acquisition price or consideration or value greater than $500.00, held at any time from January 1, 2010, forward. As noted above, Defendants produced depreciation schedules and asset disposal reports that exhaustively catalogued the assets that they owed from 2010 forward. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 19.

### 16. Request No. 16

Request No. 16 sought all Defendants' tax returns from 2010 forward. As noted above, Defendants have produced their tax returns. All discoverable, responsive documents of which Defendants are aware have been produced. *See* Hatfield Decl. ¶ 20.

### 17. Request No. 17

Request No. 17 sought all "pro forma" tax returns for Defendants from 2010 forward. Defendants are aware of no such documents. *See* Hatfield Decl. ¶ 21. They have so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents.

### 18. Request No. 18

Request No. 18 sought all reviews or audits of Defendants and all related correspondence or documents. Defendants are aware of no such documents. *See* Hatfield Decl. ¶ 22. They have so stated in their responses to Plaintiffs' Post-Judgment Requests for Production of Documents.

### B. Defendants Have Fully Complied with Plaintiffs' Post-Judgment Interrogatories.

Plaintiffs served 10 postjudgment interrogatories, to which Defendants initially responded on October 26, 2020. The Magistrate Judge subsequently directed that narrative responses be provided to those interrogatories. Defendants have provided narrative responses to all 10 interrogatories, with the exception of Interrogatory No. 10, which asks a specific yes-or-no question the answer to which is "No," as Plaintiffs' response to that interrogatory stated *See* Hatfield Decl. ¶ 23.

### III. Defendants Are Aware of No Further Discoverable, Responsive Documents or Information That Can Be Produced.

As noted above, Defendants have diligently reviewed their discovery productions and their files, a process that has better illuminated the full scope of what has already been produced—especially the large productions made after the Magistrate Judge's April 16, 2021

order compelling additional discovery. After that review, Defendants are aware of no further discoverable, responsive documents or information that can be produced. Undersigned counsel also conferred late last year with Plaintiffs' counsel, asking Plaintiffs to identify any specific documents that they believed had yet to be produced. Plaintiffs' counsel identified none.

Discovery sanctions must rest on something more than an opponent's bald assertion that there are more responsive documents that have yet to be produced. Otherwise, sanctions could go on forever, which is what Plaintiffs may want but not what the law allows. Parties seeking discovery often become convinced that the other side simply *must* have more documents than it has turned over, but that bare belief is no basis for sanctions. The reality is that litigants almost invariably hope to receive documents in discovery that turn out not to exist, perhaps because the target of the discovery maintained its records in a different way than proponent of the discovery expected, or perhaps because the facts were not what the proponent believed them to be.

## IV. Defendants' Postjudgment Discovery Production is Exhaustive, and Appropriate to the Purposes of Postjudgment Discovery.

Contrary to Plaintiffs' mischaracterizations, the postjudgment production in this case has provided an extraordinarily detailed picture of Defendants' finances. It encompasses more than a decade of financial records spanning more than 20,000 pages. Defendants' depreciation reports list thousands upon thousands of individual assets, providing an in-depth catalogue of what they have owned. Their asset disposal reports similarly detail thousands of assets with which they have parted over time. Their bank statements itemize thousands of inflows and outflows of cash. Their cash receipts journals further memorialize thousands of cash inflows. Their tax returns comprise thousands of pages of sensitive financial data. Their lender agreements reveal their secured debt. Their income statements disclose their revenue (or lack thereof) and expenses, and their balance sheets set forth their assets and liabilities. All this information has been provided

beginning with 2010 to the extent it is available. Defendants even subpoenaed their own banks to obtain records that were not in their possession.

A serious examination of what Defendants have actually produced—separate from Plaintiffs' mischaracterizations—underscores that the production not only satisfies Plaintiffs' requests but vastly exceeds both what is typical in postjudgment discovery and what is required under Rule 26's proportionality standard.

V. **To the Extent the Court's Sanctions Pertain to Companies Other Than Defendants, They Must Be Vacated.**

Plaintiffs have suggested that the postjudgment discovery requests they served under the party discovery rules of the Federal Rules of Civil Procedure somehow require scores of *nonparty* affiliates of Defendants to respond to them. This cannot be true. *First*, such a claim would contradict the rules themselves. Plaintiffs served postjudgment discovery under Rule 34, which governs requests for production of documents, and Rule 33, which governs interrogatories. Both rules are expressly limited to discovery of other parties. Rule 34 provides that discovery requests may be served on "any other *party*" (emphasis added) and expressly states that a Rule 45 subpoena is the vehicle for obtaining discovery from nonparties. Rule 33's very title says it all: "Interrogatories to *Parties*." (Emphasis added.) And the text of that rule makes clear that interrogatories may be served only on "any other party."

*Second*, any claim that Plaintiff's Rule 33 and 34 discovery requests require responses from nonparties would fail for jurisdictional reasons. Defendants' affiliated entities are not parties to this action and therefore are not within the Court's jurisdiction over parties. Nor have they been brought within the Court's jurisdiction via a Rule 45 subpoena. In fact, many of them could not even be subpoenaed in this district; if they were to be subpoenaed at all, it would have to be in jurisdictions closer to their places of business, and judges outside this district would

15

evaluate those subpoenas' merits. Plaintiffs have declined to pursue such discovery, and they cannot obtain it through the back door by pretending that the Rules' clear distinction between party and nonparty discovery mechanisms does not exist.

*Third*, the Magistrate Judge's April 2021 order does not assert jurisdiction to compel performance by nonparties, nor could it. Rather, the order required Defendants to produce their own responsive documents *relating to* transactions with nonparty affiliates—which Defendants have done. Defendants have also produced responsive documents relating to their subsidiaries. In this regard, they have satisfied the Magistrate Judge's order.

What follows from these points is this: To the extent the Court's February 10, 2025 order imposes sanctions on the premise that entities other than Defendants should have responded to Plaintiffs discovery requests, those sanctions must be vacated. It is beyond dispute that the Court lacks jurisdiction over those nonparty entities. It cannot compel them to produce discovery. By extension, it cannot sanction their officers for not causing them to produce discovery. Any such sanctions would be jurisdictionally defective.

## VI.     Conclusion

Upon further review, Defendants' productions are far more extensive than likely was orginally understood. Viewed accurately—and independently of Plaintiffs' mischaracterizations—Defendants' discovery responses fully satisfy Plaintiffs' requests and the Magistrate Judge's April 2021 order. In particular, after the Magistrate Judge required the production of records that dated back to 2010, Defendants produced those records—even where, in some cases, Defendants had to subpoena the records from nonparties. Defendants have certified in the attached declaration that they are aware of no further discoverable, responsive documents or information that could be produced. The more than 20,000 pages of responses that

they have provided offer an exhaustively detailed picture of their financial condition, which is the purpose of postjudgment discovery. And to the extent Plaintiffs suggest that their discovery requests apply to nonparties, that claim fails under both the Federal Rules of Civil Procedure and the law of jurisdiction; it cannot be the basis for sanctions.

Defendants' discovery obligations were complete, at the latest, when they served their most recent responses, on October 25, 2024. Sanctions arising from after that date should be vacated. Messrs. Justice and Ball are contemporaneously tendering $5000 in sanctions for the period from October 15, 2024—their last sanctions payment—and October 25, 2024.

Defendants also are submitting their complete discovery production to the District Court. They request *in camera* review of the production to confirm its completeness. They also request a hearing before the District Court on this motion to vacate sanctions. Defendants believe that the District Court will agree that, at minimum, they have endeavored to comply with their discovery obligations in this case and that the currently effective sanctions should be vacated.

Dated: March 12, 2025

Respectfully submitted,

KENTUCKY FUEL CORPORATION
JAMES C. JUSTICE COMPANIES, INC.

/s/ Steven R. Ruby
Steven R. Ruby (admitted pro hac vice)
Carey Douglas Kessler & Ruby PLLC
707 Virginia St., E., Ste. 901
Charleston, WV 25301
Tel: 304-345-1234
Fax: 304-342-1110
sruby@cdkrlaw.com

Ronald H. Hatfield, Jr. (KBA No. 93000)

General Counsel - Litigation
302 S. Jefferson Street
Roanoke, VA  24011
Tel:     (540) 613-1460
Fax:     (540) 301-0761
Email: ron.hatfield@bluestone-coal.com
Counsel for Defendants

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on March 12, 2025, the foregoing *Defendants' Motion to Vacate Sanctions* was served upon counsel of record by filing it through the Court's CM/ECF system.

    */s/ Steven R. Ruby*
    Steven R. Ruby (WVSB #10752)